# Exhibit O

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | CR-18-00258-EJD |
| PLAINTIFF, | ) | |
| | ) | SAN JOSE, CALIFORNIA |
| VS. | ) | |
| | ) | FEBRUARY 17, 2023 |
| RAMESH "SUNNY" BALWANI, | ) | |
| | ) | PAGES 1 - 67 |
| DEFENDANT. | ) | |
| _____ | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                       BY:  JOHN C. BOSTIC
                            JEFFREY B. SCHENK
                       150 ALMADEN BOULEVARD, SUITE 900
                       SAN JOSE, CALIFORNIA 95113

                       BY:  ROBERT S. LEACH
                            KELLY VOLKAR
                       1301 CLAY STREET, SUITE 340S
                       OAKLAND, CALIFORNIA 94612


            (APPEARANCES CONTINUED ON THE NEXT PAGE.)

OFFICIAL COURT REPORTER:
                            IRENE L. RODRIGUEZ, CSR, RMR, CRR
                            CERTIFICATE NUMBER 8074


       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

```
1    A P P E A R A N C E S: (CONT'D)

2

     FOR DEFENDANT BALWANI:  ORRICK, HERRINGTON & SUTCLIFFE LLP
3                            BY:  JEFFREY COOPERSMITH
                             701 FIFTH AVENUE, SUITE 5600
4                            SEATTLE, WASHINGTON 98104

5                            BY:  SACHIKO SCHURICHT
                             405 HOWARD STREET
6                            SAN FRANCISCO, CALIFORNIA 94105

7                            BY:  STEPHEN CAZARES
                             77 SOUTH FIGUEROA STREET, SUITE 3200
8                            LOS ANGELES, CALIFORNIA 90017

9                            BY:  AMY WALSH
                             51 W 52ND STREET
10                           NEW YORK, NEW YORK 10019

11                           BY:  MARK S. DAVIES
                             1152 15TH STREET NW
12                           WASHINGTON, DC 20005

13   FOR U.S. PROBATION:     KYLE POLLAK

14

     ALSO PRESENT:           OFFICE OF THE U.S. ATTORNEY
15                           BY:  MADDI WACHS, PARALEGAL
                                  SARAH SLATTERY, PARALEGAL
16
                             UNITED STATES POSTAL INSPECTION SERVICE
17                           BY:  CHRISTOPHER MCCOLLOW

18                           UNITED STATES FOOD & DRUG
                             ADMINISTRATION
19                           BY:  GEORGE SCAVDIS

20

21

22

23

24

25
```

3

```
 1    SAN JOSE, CALIFORNIA                    FEBRUARY 17, 2023

 2                        P R O C E E D I N G S

 3         (COURT CONVENED AT 9:41 A.M.)

 4            THE COURT:  THIS IS 18-2582, UNITED STATES VERSUS

 5    RAMESH BALWANI.

 6         MAY I HAVE THE APPEARANCE OF THE PARTIES, PLEASE.

 7            MS. VOLKAR:  GOOD MORNING, YOUR HONOR.  IT'S GOOD TO

 8    SEE YOU AGAIN.

 9         KELLY VOLKAR ON BEHALF OF THE UNITED STATES.

10         I'M JOINED BY MY COLLEAGUES:  ROBERT LEACH, JOHN BOSTIC,

11    AND JEFFREY SCHENK.

12            THE COURT:  GOOD MORNING.  THANK YOU.

13            MR. COOPERSMITH:  GOOD MORNING, YOUR HONOR.  GOOD TO

14    SEE YOU.

15            THE COURT:  THANK YOU.

16            MR. COOPERSMITH:  I'M JEFF COOPERSMITH FOR

17    MR. BALWANI, AND MR. BALWANI IS PRESENT.

18         I'M JOINED BY MY COLLEAGUES:  MARK DAVIES, AMY WALSH,

19    STEPHEN CAZARES, AND SACHI SCHURICHT.

20         I'LL JUST TELL THE COURT THAT MR. DAVIES WILL ARGUE THE

21    RELEASE PENDING APPEAL MOTION, AND MS. WALSH WILL ARGUE THE

22    RESTITUTION PORTION OF THE HEARING.

23            THE COURT:  THANK YOU.

24            MR. COOPERSMITH:  YES, YOUR HONOR.

25            THE COURT:  GOOD TO SEE YOU ALL AGAIN AS WELL.
```

| | | |
|---|---|---|
| 09:41AM | 1 | WHO APPEARS FOR PROBATION? |
| 09:41AM | 2 | PROBATION OFFICER:  KYLE POLLAK FOR PROBATION. |
| 09:41AM | 3 | THE COURT:  THANK YOU. |
| 09:41AM | 4 | MR. POLLAK, LET ME JUST ASK YOU, I THINK I KNOW THE ANSWER |
| 09:42AM | 5 | TO THIS QUESTION, BUT DOES PROBATION HAVE ANY ADDITIONAL MEMOS |
| 09:42AM | 6 | WITH REGARDS TO RESTITUTION OR ANY OTHER ISSUE THAT WE'LL TALK |
| 09:42AM | 7 | ABOUT TODAY? |
| 09:42AM | 8 | PROBATION OFFICER:  WE DO NOT, YOUR HONOR. |
| 09:42AM | 9 | THE COURT:  OKAY.  THANK YOU. |
| 09:42AM | 10 | I HAVE REVIEWED THE MEMORANDUM AND THE SUPPLEMENTAL BRIEFS |
| 09:42AM | 11 | THAT COUNSEL HAVE PROVIDED.  THANK YOU FOR THOSE.  THOSE HAVE |
| 09:42AM | 12 | BEEN VERY HELPFUL. |
| 09:42AM | 13 | I WANT TO TALK THIS MORNING -- I THOUGHT WE WOULD FIRST |
| 09:42AM | 14 | TALK ABOUT RESTITUTION.  I'D LIKE TO TOUCH ON THAT FIRST, AND |
| 09:42AM | 15 | THEN WE'LL TALK ABOUT THE OTHER ISSUES ATTENDANT TO RELEASE |
| 09:42AM | 16 | PENDING APPEAL. |
| 09:42AM | 17 | THE ISSUE I WANTED TO FOCUS ON AS FAR AS RESTITUTION GOES |
| 09:42AM | 18 | IS I DO HAVE THE GOVERNMENT'S DOCUMENT 1726, AND THERE IS A |
| 09:43AM | 19 | CHART ON PAGE 6 OF THAT DOCUMENT THAT I'VE LOOKED AT, AND I'D |
| 09:43AM | 20 | LIKE SOME DISCUSSION FROM THE PARTIES ABOUT THOSE INDIVIDUALS |
| 09:43AM | 21 | LISTED THERE, THE AMOUNTS THAT ARE LISTED THERE. |
| 09:43AM | 22 | AND I'M PARTICULARLY INTERESTED IN SAFEWAY AND WALGREENS. |
| 09:43AM | 23 | AND THEY'RE NOT ON THE CHART, BUT I'M CURIOUS ABOUT THOSE TWO |
| 09:43AM | 24 | ENTITIES IN PARTICULAR REGARDING ANY OFFSETS THAT MIGHT PRESENT |
| 09:43AM | 25 | ITSELF REGARDING ANY OTHER LITIGATION OR AGREEMENTS THAT HAVE |

09:43AM 1     OCCURRED.

09:43AM 2         SO LET ME TURN TO THE GOVERNMENT TO TALK ABOUT THAT FIRST.

09:44AM 3         MR. LEACH:  THANK YOU, YOUR HONOR.

09:44AM 4     ROBERT LEACH ON BEHALF OF THE UNITED STATES.

09:44AM 5     WITH RESPECT TO THE CHART THAT THE GOVERNMENT INCLUDED ON

09:44AM 6 PAGE 6, THIS IS A LISTING OF ALL OF THE INVESTORS FOR WHOM,

09:44AM 7 WHEN THE COURT WAS CALCULATING THE LOSS, FOUND THAT THEY WERE A

09:44AM 8 VICTIM AND THAT LOSS COULD BE REASONABLY CALCULATED FOR EACH OF

09:44AM 9 THESE INDIVIDUALS.

09:44AM 10     THE REASON SAFEWAY AND PFM ARE NOT LISTED IN THIS CHART IS

09:44AM 11 BECAUSE THE COURT DID NOT MAKE FINDINGS AT THE SENTENCING ABOUT

09:44AM 12 WHETHER THEY WERE VICTIMS AND DID NOT INCLUDE THEM IN THE LOSS

09:44AM 13 CALCULATION.

09:44AM 14     WE DO THINK SAFEWAY AND WALGREENS ARE VICTIMS.  THEY WERE

09:44AM 15 BOTH BUSINESS PARTNERS TO THERANOS, BUT THEY ALSO INVESTED

09:44AM 16 THROUGH CONVERTIBLE NOTES.  SO THE ONLY REASON I DID NOT

09:45AM 17 INCLUDE THEM IN THE CHART THERE WAS SIMPLY BECAUSE THEY WEREN'T

09:45AM 18 INCLUDED IN THE LOSS CALCULATIONS THAT YOUR HONOR FOUND.

09:45AM 19     FOR PURPOSES OF RESTITUTION, WE DO THINK THAT THEY MEET

09:45AM 20 THE DEFINITION OF A VICTIM FOR A COUPLE OF REASONS.

09:45AM 21     FIRST, THE STATUTE DEFINES A VICTIM AS A PERSON DIRECTLY

09:45AM 22 OR PROXIMATELY HARMED AS A RESULT OF THE OFFENSE.

09:45AM 23     IT GOES ON TO SAY THAT INCLUDES ANY PERSON DIRECTLY HARMED

09:45AM 24 BY THE DEFENDANT'S CRIMINAL CONDUCT IN THE COURSE OF THE

09:45AM 25 SCHEME, CONSPIRACY, OR PATTERN.

09:45AM 1    AND MR. BALWANI WAS CONVICTED OF A SCHEME TO DEFRAUD

09:45AM 2  INVESTORS.  WE BELIEVE SAFEWAY AND WALGREENS WERE INVESTORS BY

09:45AM 3  VIRTUE OF THE CONVERTIBLE NOTES.

09:45AM 4    PART OF THE REASON THAT YOUR HONOR KNOWS THEY INVESTED

09:45AM 5  BASED ON STATEMENTS FROM MS. HOLMES AND MR. BALWANI ARE TRIAL

09:45AM 6  TESTIMONY IN THE HOLMES CASE FROM WADE MIQUELON WHO WAS THERE

09:46AM 7  AT THE OUTSET OF THE INVESTMENTS.  HE RECEIVED SOME OF THE SAME

09:46AM 8  PHARMACEUTICAL REPORTS THAT WENT TO SOME OF THE INVESTORS BOTH

09:46AM 9  IN THAT TIME PERIOD AND LATER.

09:46AM 10    WALGREENS WAS ALSO GIVEN STATEMENTS ABOUT THE CAPABILITIES

09:46AM 11  OF THE TECHNOLOGY BY BOTH MS. HOLMES AND MR. BALWANI.

09:46AM 12    SAFEWAY, IN THAT SAME TIME PERIOD, SIGNED A MASTER

09:46AM 13  SERVICES AGREEMENT.  THEY RECEIVED INFLATED FINANCIAL

09:46AM 14  STATEMENTS DIRECTLY FROM MR. BALWANI.  AND MR. BIRD TESTIFIED

09:46AM 15  IN MS. HOLMES'S CASE, AND THAT PROVIDES SOME OF THE EVIDENCE

09:46AM 16  SUPPORTING A RESTITUTION FINDING HERE.

09:46AM 17    WITH RESPECT TO THE OFFSETS YOUR HONOR MENTIONED, I DO

09:46AM 18  AGREE THAT SAFEWAY HAS BEEN PAID BACK MONEY, AND THAT WAS AN

09:46AM 19  OVERSIGHT ON THE GOVERNMENT'S PART IN ITS CALCULATIONS.  SO WE

09:46AM 20  HAVE NO DISPUTE WITH THE OFFSET THAT THE DEFENDANT RAISES IN

09:46AM 21  THEIR REPLY BRIEF.

09:46AM 22    WALGREENS SUBMITTED A SWORN VICTIM IMPACT STATEMENT

09:47AM 23  CLAIMING RESTITUTION IN THE AMOUNT OF $40 MILLION, WHICH IS

09:47AM 24  TIED TO THE INVESTMENT PORTION OF THE MASTER SERVICES

09:47AM 25  AGREEMENT.  THEY WERE NOT SEEKING RESTITUTION FOR OTHER

09:47AM 1    PAYMENTS THAT WERE MADE ALONG THE WAY LIKE THE INNOVATION FEE

09:47AM 2    OR, YOU KNOW, MATTERS RELATING TO THE PARTICULAR BLOOD TESTS.

09:47AM 3        SO THERE WERE SOME OTHER PAYMENTS, BUT I THINK THE AMOUNT

09:47AM 4    WE'RE REQUESTING ON BEHALF OF WALGREENS IS DIRECTLY TIED TO

09:47AM 5    THEIR SWORN VICTIM IMPACT STATEMENT, WHICH PROVIDES A BASIS FOR

09:47AM 6    THEIR LOSS.

09:47AM 7        AND BASED ON BOTH THAT AND MR. MIQUELON'S TESTIMONY AND

09:47AM 8    OTHER MATTERS BEFORE THE COURT, WE BELIEVE THAT THEY'RE

09:47AM 9    APPROPRIATELY CONSIDERED A VICTIM.

09:47AM 10       THE COURT:  OKAY.  THANK YOU.

09:47AM 11       SAFEWAY DID NOT, AS I UNDERSTAND IT, DID NOT SUBMIT A

09:47AM 12   VICTIM IMPACT STATEMENT?

09:47AM 13       MR. LEACH:  THEY DID NOT, YOUR HONOR.

09:47AM 14       THE COURT:  OKAY.  WHAT MOMENT IS THAT?

09:47AM 15       MR. LEACH:  I DON'T THINK IT -- I THINK THE PROOF

09:48AM 16   CAN COME IN A VARIETY OF DIFFERENT WAYS.  IT COULD BE -- I

09:48AM 17   CAN'T DESCRIBE A MOTIVE FOR THEM NOT SUBMITTING ONE.  THERE ARE

09:48AM 18   VICTIMS WHO SIMPLY DID NOT WANT TO BE ENGAGED IN THIS PROCESS

09:48AM 19   AND VICTIMS ARE REQUIRED TO PARTICIPATE IN RESTITUTION.

09:48AM 20       SO I DON'T THINK IT'S OF ANY IMPORT IF THERE'S SUFFICIENT

09:48AM 21   EVIDENCE IN THE RECORD FOR THE COURT TO MAKE THE FINDING THAT

09:48AM 22   THEY INVESTED BASED ON FALSE AND MISLEADING STATEMENTS BY THE

09:48AM 23   DEFENDANT OR THROUGH OTHER WAYS ARE A VICTIM.  I THINK THAT'S

09:48AM 24   ESTABLISHED BY MR. BIRD'S TESTIMONY IN THE HOLMES CASE, AND THE

09:48AM 25   NOTES THEMSELVES THAT HAVE BEEN SUBMITTED, AND THE WIRE

09:48AM 1    TRANSFER THAT HAS BEEN SUBMITTED, AND THE SETTLEMENT AGREEMENT

09:48AM 2    THAT THE COURT HAS.

09:48AM 3        BUT I DON'T THINK THE EXISTENCE OF A VICTIM IMPACT

09:48AM 4    STATEMENT IS NECESSARILY DISPOSITIVE.

09:48AM 5            THE COURT:  SHOULD I INFER THAT THEY'RE NOT

09:49AM 6    REQUESTING RESTITUTION BECAUSE THEY HAD KNOWLEDGE THAT THEY

09:49AM 7    COULD FILE A STATEMENT AND IF THEY HAVEN'T, SHOULD I JUST INFER

09:49AM 8    THAT THEY'RE NOT -- THAT THEY'RE AGNOSTIC AS TO RESTITUTION?

09:49AM 9            MR. LEACH:  I WOULD URGE THE COURT NOT TO DO THAT IN

09:49AM 10   PART BECAUSE VICTIMS ARE NOT REQUIRED TO PARTICIPATE IN THIS

09:49AM 11   PROCESS.  IT'S EITHER 3663(A) OR 3664, BUT CONGRESS HAS BEEN

09:49AM 12   QUITE CLEAR THAT NO VICTIM SHOULD BE REQUIRED TO PARTICIPATE,

09:49AM 13   AND IN A MOMENT I CAN FIND THE PRECISE CITE.

09:49AM 14       SO THAT'S NOT AN INFERENCE THAT I WOULD URGE THE COURT TO

09:49AM 15   DRAW.  I'M NOT SAYING THAT'S IMPERMISSIBLE FOR THE COURT, BUT

09:49AM 16   CONGRESS HAS MADE IT CLEAR THAT VICTIMS ARE NOT REQUIRED TO

09:49AM 17   PARTICIPATE IN THIS PROCESS.  VICTIMS HAVE A LOT OF REASONS FOR

09:49AM 18   SIMPLY NOT WANTING TO BE INVOLVED, NOT WANTING TO SPEND

09:49AM 19   ATTORNEYS' FEES PREPARING A STATEMENT.  AND SO I CERTAINLY DID

09:50AM 20   NOT COME TO THE CONCLUSION THAT SAFEWAY DID NOT THINK IT WAS A

09:50AM 21   VICTIM AND DID NOT WANT ITS MONEY BACK.  AND BECAUSE OF THE

09:50AM 22   CONGRESSIONAL MANDATE, I WOULD URGE THE COURT NOT TO DRAW THAT

09:50AM 23   INFERENCE.

09:50AM 24            THE COURT:  OKAY.  THANK YOU.

09:50AM 25       I THINK -- CAN YOU HELP US OUT A LITTLE BIT ABOUT THEIR

09:50AM 1    FINANCIAL RELATIONSHIP, AND, THAT IS, THEIR INVESTMENT.  WAS IT

09:50AM 2    A CONVERTIBLE LOAN?  AND WHAT DISTINCTION, IF ANY, DOES THAT

09:50AM 3    HAVE AS TO RESTITUTION?

09:50AM 4         MR. LEACH:  IT WAS -- I DON'T THINK THE NAME OF THE

09:50AM 5    SECURITY MATTERS FOR PURPOSES OF RESTITUTION.  THE TEST IS

09:50AM 6    WHETHER IT'S SOMEBODY WHO HAS BEEN HARMED AS A RESULT OF THE

09:50AM 7    OFFENSE.  SAFEWAY BECAME A PARTNER OF THERANOS IN 2000.  THEY

09:50AM 8    HAD A MASTER SERVICES AGREEMENT.

09:50AM 9         PART OF THAT AGREEMENT PERMITTED SAFEWAY TO INVEST IN A

09:51AM 10   CONVERTIBLE NOTE, WHICH COULD BE CONVERTED INTO STOCK IN

09:51AM 11   THERANOS.

09:51AM 12        THE NOTE ITSELF REFERS TO SAFEWAY AS AN INVESTOR.

09:51AM 13   MS. HOLMES AND MR. BALWANI TALKED ABOUT SAFEWAY IN TERMS OF

09:51AM 14   MAKING AN INVESTMENT ON THIS PIECE.

09:51AM 15        AND IN 2011 AS THE RELATIONSHIP WITH -- BETWEEN THERANOS

09:51AM 16   AND SAFEWAY WAS PROGRESSING, SAFEWAY ELECTED TO EXERCISE THE

09:51AM 17   RIGHTS TO ACQUIRE THAT NOTE.  THEY TRANSFERRED $30 MILLION TO

09:51AM 18   THERANOS IN 2011.  THIS IS AFTER MR. BALWANI AND MS. HOLMES HAD

09:51AM 19   PROVIDED FALSE FINANCIAL PROJECTIONS TO SAFEWAY.  THIS IS AFTER

09:51AM 20   THEY'VE SAID THE DEVICE CAN DO ALL OF THE TESTS.  THIS IS AFTER

09:51AM 21   OTHER STATEMENTS THAT MS. HOLMES AND MR. BALWANI HAVE MADE TO

09:51AM 22   THEM.  AND THAT'S ALL FROM THE TESTIMONY OF STEVE BIRD IN THE

09:51AM 23   HOLMES TRIAL.

09:51AM 24        SO THAT'S THE NATURE OF THEIR -- THE INVESTMENT PIECE OF

09:52AM 25   THEIR RELATIONSHIP.  I THINK SAFEWAY WAS -- THE PARTNERSHIP

| | | |
|---|---|---|
| 09:52AM | 1 | NEVER REALLY GOT OFF THE GROUND. THEY -- SAFEWAY HAD A |
| 09:52AM | 2 | THERANOS -- OR THERANOS DREW BLOOD AT A SAFEWAY STORE BOTH FROM |
| 09:52AM | 3 | THE FINGER AND FROM THE VEIN, BUT THEY WERE NEVER OFFERING |
| 09:52AM | 4 | THERANOS SERVICES IN SAFEWAY STORES. THAT WAS JUST FOR |
| 09:52AM | 5 | EMPLOYEES OF SAFEWAY AS SOMEWHAT OF A PILOT. SO I HOPE THAT'S |
| 09:52AM | 6 | RESPONSIVE TO YOUR HONOR'S QUESTION. |
| 09:52AM | 7 | THE COURT: THANK YOU. AND WHAT -- |
| 09:52AM | 8 | MR. COOPERSMITH'S EXHIBIT C I THINK HAS THE -- ISN'T THAT THE |
| 09:52AM | 9 | AGREEMENT THAT THE PARTIES ENTERED INTO, SAFEWAY AND THERANOS? |
| 09:52AM | 10 | MS. WALSH WILL HELP US WITH THIS IN A MOMENT. |
| 09:52AM | 11 | MS. WALSH: YES, IT IS, YOUR HONOR. |
| 09:52AM | 12 | IT'S DOCKET 1728-2 AT PAGE 205. |
| 09:52AM | 13 | THE COURT: CORRECT. |
| 09:52AM | 14 | MS. WALSH: YEAH. |
| 09:53AM | 15 | THE COURT: RIGHT. |
| 09:53AM | 16 | SO WHAT DOES THIS DO TO THE DISCUSSION AS TO SAFEWAY AND |
| 09:53AM | 17 | WHAT AMOUNT THEY'RE ENTITLED TO, MR. LEACH? |
| 09:53AM | 18 | MR. LEACH: I'M SORRY, YOUR HONOR. I'M TRYING TO |
| 09:53AM | 19 | CULL THAT UP. |
| 09:53AM | 20 | I UNDERSTAND 1728-2, EXHIBIT C TO BE THE AGREEMENT |
| 09:53AM | 21 | TERMINATING THE RELATIONSHIP, AND I AGREE WITH THE DEFENSE THAT |
| 09:53AM | 22 | ANY AMOUNTS PAID PURSUANT TO THIS AGREEMENT SHOULD REDUCE THE |
| 09:53AM | 23 | AMOUNT OF RESTITUTION TO SAFEWAY. |
| 09:53AM | 24 | THE COURT: OKAY. |
| 09:53AM | 25 | MR. LEACH: IT IS PROPERTY OF SAFEWAY THAT HAS BEEN |

09:53AM 1    RETURNED UNDER 3663(A)(2).  SO I APOLOGIZE FOR OVERLOOKING THIS

09:53AM 2    IN THE INITIAL CALCULATION, BUT I AGREE, IT SHOULD BE REDUCED

09:53AM 3    BY THIS AMOUNT.

09:54AM 4          THE COURT:  DO YOU HAVE A FIGURE THAT YOU WOULD

09:54AM 5    SUGGEST TO THE COURT FOR SAFEWAY?

09:54AM 6       AND I'LL ASK THE SAME QUESTION ABOUT WALGREENS WHEN WE GET

09:54AM 7    TO THAT.

09:54AM 8          (PAUSE IN PROCEEDINGS.)

09:54AM 9          MR. LEACH:  YES, YOUR HONOR.

09:54AM 10      THE AMOUNT OF SAFEWAY INVESTMENT WAS $30 MILLION, AND IT

09:54AM 11   SHOULD BE REDUCED BY I BELIEVE IT'S 15 OR 15.5 PURSUANT TO THE

09:54AM 12   AGREEMENT.  SO 15 OR 14.5 MILLION.

09:54AM 13         THE COURT:  OKAY.  THANK YOU.  LET'S TURN TO

09:54AM 14   WALGREENS.

09:54AM 15      WALGREENS HAD A SIMILAR DOCUMENT, BUT THERE WAS SOME

09:54AM 16   ACTIVITY IN ANOTHER COURT, WASN'T THERE, ABOUT WALGREENS?

09:55AM 17      LET'S SEE.  I THINK -- DID MR. COOPERSMITH GIVE US SOME

09:55AM 18   INFORMATION ON THAT AS WELL?

09:55AM 19         MR. LEACH:  I DON'T RECALL THAT FROM

09:55AM 20   MR. COOPERSMITH'S PLEADING, YOUR HONOR, BUT WALGREENS'S VICTIM

09:55AM 21   IMPACT STATEMENT WAS PART OF THE GOVERNMENT'S SUBMISSION, AND

09:55AM 22   THIS IS 1726-3.

09:55AM 23      AND THEY'RE CLAIMING $40 MILLION IN RESTITUTION

09:55AM 24   SPECIFICALLY RELATING TO A NOTE THAT A WALGREENS ENTITY MADE IN

09:55AM 25   THE 2012 TIME PERIOD DURING THE CONSPIRACY.

09:55AM 1    I THINK THE LITIGATION YOUR HONOR MIGHT BE REFERRING TO IS

09:55AM 2    WALGREENS, WHEN THERANOS DID NOT PAY THAT NOTE, SUED TO GET A

09:55AM 3    JUDGMENT ON THAT NOTE, GOT A JUDGMENT, BUT I HAVE NO REASON TO

09:55AM 4    THINK THAT WALGREENS HAS COLLECTED ON THAT JUDGMENT.

09:55AM 5    WALGREENS IS ALSO A CODEFENDANT WITH THERANOS,

09:56AM 6    MR. BALWANI, AND MS. HOLMES, AND SOME LITIGATION INVOLVING

09:56AM 7    PATIENTS, BUT I DON'T THINK THERE'S BEEN A JUDGMENT IN THAT

09:56AM 8    CASE.

09:56AM 9    AND AS I MENTIONED, WALGREENS DID RECEIVE OTHER MONIES

09:56AM 10   FROM THERANOS AS PART OF ITS BUSINESS PARTNERSHIP IN TERMS OF

09:56AM 11   INNOVATION FEES BUT THAT'S NOT THE 40 MILLION THAT'S BEING

09:56AM 12   CLAIMED HERE.

09:56AM 13   THE COURT:  THANK YOU.  I THINK IT'S ACTUALLY YOUR

09:56AM 14   EXHIBIT, ISN'T IT, YOUR EXHIBIT B?  I THINK IT IS.  AND THAT'S

09:56AM 15   THEIR VICTIM IMPACT STATEMENT, PARAGRAPH 4.  IT'S THE ADDENDUM

09:56AM 16   TO QUESTION 4 I SHOULD SAY.  IT TALKS ABOUT A JUDGMENT FROM THE

09:56AM 17   DISTRICT OF DELAWARE.

09:56AM 18   MR. LEACH:  YES, YOUR HONOR.

09:56AM 19   THE COURT:  AND WHAT -- SO HOW MUCH SHOULD WALGREENS

09:56AM 20   RECEIVE AS RESTITUTION IN THIS CASE?

09:57AM 21   MR. LEACH:  40 MILLION, YOUR HONOR.  SIMPLY BECAUSE

09:57AM 22   OF THE FACT THAT THEY HAVE UNPAID JUDGMENTS, I THINK THE

09:57AM 23   JUDGMENT ESTABLISHES THEIR CLAIM, BUT IT -- THEY HAVEN'T

09:57AM 24   RECEIVED THAT MONEY.  AND SO I DON'T THINK IT SHOULD BE REDUCED

09:57AM 25   IN ANY WAY BUT SIMPLY BECAUSE THEY HAVE AN UNPAID JUDGMENT.

| | | |
|---|---|---|
| 09:57AM | 1 | THE COURT:  OKAY.  ALL RIGHT.  THANK YOU. |
| 09:57AM | 2 | THAT'S REALLY WHAT I WANTED TO TALK ABOUT. |
| 09:57AM | 3 | OH, OH.  ANYTHING ELSE YOU WANT TO ADD AS TO YOUR CHART ON |
| 09:57AM | 4 | PAGE 6 OF 1726? |
| 09:57AM | 5 | MR. LEACH:  NO, YOUR HONOR. |
| 09:57AM | 6 | THIS WAS OUR EFFORT TO SUMMARIZE THE AMOUNTS OF |
| 09:57AM | 7 | INDIVIDUALS AND ENTITIES THAT THE COURT HAD FOUND FOR PURPOSES |
| 09:57AM | 8 | OF LOSS WITH THEIR TOTAL AMOUNTS OF INVESTMENTS AND THE MONEY |
| 09:57AM | 9 | RETURNED. |
| 09:57AM | 10 | I URGE THE COURT NOT TO DRAW AN INFERENCE THAT SAFEWAY AND |
| 09:57AM | 11 | WALGREENS AREN'T MENTIONED THERE.  THAT WAS REALLY TO AID THE |
| 09:57AM | 12 | COURT IN TERMS OF WHAT IT'S ALREADY FOUND. |
| 09:57AM | 13 | BUT WE THINK THAT THOSE ARE -- THAT'S THE AMOUNT OF THE |
| 09:58AM | 14 | TOTAL INVESTMENTS BY THESE INDIVIDUALS.  THEY'VE BEEN FOUND TO |
| 09:58AM | 15 | BE VICTIMS FOR PURPOSES OF LOSS.  WE THINK THEY SHOULD RECEIVE |
| 09:58AM | 16 | THE ENTIRETY OF THEIR INVESTMENT, NOT SIMPLY WHAT THE COURT |
| 09:58AM | 17 | FOUND FOR PURPOSES OF THE LOSS CALCULATION, WHICH IS TRYING TO |
| 09:58AM | 18 | MEASURE THE OVERALL HARM TO SOCIETY FOR RESTITUTION, WE'RE |
| 09:58AM | 19 | TRYING TO PUT THE VICTIMS BACK BEFORE THE CRIME COMMITTED, AND |
| 09:58AM | 20 | THAT'S THE ONLY WAY TO DO THAT HERE. |
| 09:58AM | 21 | THE COURT:  OKAY.  THANK YOU. |
| 09:58AM | 22 | MS. WALSH. |
| 09:58AM | 23 | MS. WALSH:  YES, YOUR HONOR. |
| 09:58AM | 24 | IF I COULD ADDRESS WALGREENS AND SAFEWAY FIRST SINCE THE |
| 09:58AM | 25 | COURT OPENED WITH THAT? |

09:58AM 1    THE COURT:  YES.  SURE.

09:58AM 2    MS. WALSH:  SO THE AMOUNT THAT THE GOVERNMENT IS

09:58AM 3 SEEKING FOR SAFEWAY AND WALGREENS -- AND YOU'RE RIGHT, SAFEWAY

09:58AM 4 DID NOT FILE A RESTITUTION CLAIM, BUT THESE REALLY SOUND MORE

09:58AM 5 IN BREACH OF CONTRACT THAN AS HAVING RESULTED FROM THE FRAUD

09:58AM 6 CHARGED IN THE INDICTMENT.

09:58AM 7    THE GIST OF MR. BIRD'S TESTIMONY AT TRIAL, AT MS. HOLMES'S

09:59AM 8 TRIAL WAS THAT HE WAS PROMISED A BOX AND HE DIDN'T GET HIS BOX,

09:59AM 9 AND THAT CAUSED ALL KINDS OF DAMAGES TO SAFEWAY BECAUSE THEY

09:59AM 10 BUILT, YOU KNOW, KIND OF AN INFRASTRUCTURE TO PUT THAT BOX INTO

09:59AM 11 AND IT DIDN'T WORK OUT.  THAT'S ESSENTIALLY A BREACH OF

09:59AM 12 CONTRACT, AND THAT'S THE HARM THAT IS BEING PURSUED BY THE

09:59AM 13 GOVERNMENT IS NOT AS A RESULT OF ANY FRAUD.

09:59AM 14    SAME THING WITH WALGREENS.  WALGREENS, AS WE SET FORTH IN

09:59AM 15 OUR BRIEF, HAD THESE DEVICES FOR YEARS.  THEY HAD THERANOS

09:59AM 16 DEVICES FOR YEARS THAT THEY USED FOR TESTING.  AND TO THE

09:59AM 17 EXTENT THAT WALGREENS DID NOT GET THE BENEFIT OF ITS BARGAIN IN

09:59AM 18 ITS AGREEMENT WITH THERANOS WAS BECAUSE OF A BREACH OF A

09:59AM 19 PROMISE, NOT BECAUSE OF FRAUD.

09:59AM 20    IN FACT, WE HEARD LOTS OF TESTIMONY FROM MR. JHAVERI

10:00AM 21 DURING THE TRIAL ABOUT HOW THEY WERE TRACKING THE NUMBERS OF

10:00AM 22 VENIPUNCTURE VERSUS FINGERSTICK, AND MR. BALWANI WAS COMPLETELY

10:00AM 23 OPEN AND TRUTHFUL WITH THEM ABOUT THOSE PERCENTAGES.  THERE WAS

10:00AM 24 NEVER ANY ALLEGATION THAT HE LIED ABOUT THE PERCENTAGES OF

10:00AM 25 VENIPUNCTURE VERSUS VENOUS DRAWS.

10:00AM 1    SO THESE AMOUNTS MAY BE THE RESULT OF UNREALIZED PROMISES,

10:00AM 2    BUT THEY'RE NOT THE RESULT OF FRAUD.

10:00AM 3         THE COURT:  SO WHAT DO WE DO WITH THE JURY VERDICT

10:00AM 4    THAT FOUND YOUR CLIENT GUILTY OF THOSE CHARGES, THOUGH?  DOES

10:00AM 5    THAT -- DOESN'T THAT INSTRUCT THE COURT AS TO THE MANDATORY

10:00AM 6    VICTIM'S RESTITUTION?

10:00AM 7         MS. WALSH:  RIGHT.  SO THERE WERE NO CHARGES THAT

10:00AM 8    ALLEGED WALGREENS WAS A VICTIM OF THE FRAUD ALLEGED AGAINST

10:00AM 9    OTHER VICTIMS.

10:00AM 10   SAME THING WITH SAFEWAY.  THE ALLEGATION WAS THAT

10:01AM 11   WALGREENS WAS A PARTNER OF THERANOS, AS WAS SAFEWAY, AND

10:01AM 12   CERTAINLY THINGS DIDN'T WORK OUT THE WAY THE PARTIES WANTED

10:01AM 13   THEM TO, BUT I THINK THEY WERE IN A CATEGORICALLY DIFFERENT

10:01AM 14   BUCKET AS FAR AS RESTITUTION IS CONCERNED.  THEY'RE NOT IN THE

10:01AM 15   SAME SHOES AS INVESTORS WHO INVESTED IN THERANOS TO MAKE MONEY

10:01AM 16   IN THERANOS AND WHO WERE THE SUBJECT OF THE COUNTS OF

10:01AM 17   CONVICTION.  I THINK IT'S TOTALLY DIFFERENT.

10:01AM 18        THE COURT:  I SEE.  LET ME ASK MR. LEACH'S THOUGHT

10:01AM 19   ON THAT.

10:01AM 20        MR. LEACH:  YOUR HONOR, THE THIRD SUPERSEDING

10:01AM 21   INDICTMENT AT DOCKET 469, PARAGRAPH 3 SAYS, "THERANOS'S

10:01AM 22   INVESTORS INCLUDED INDIVIDUALS, ENTITIES, CERTAIN BUSINESS

10:01AM 23   PARTNERS, MEMBERS OF ITS BOARD OF DIRECTORS, AND INDIVIDUALS

10:01AM 24   AND ENTITIES WHO INVESTED THROUGH FIRMS."

10:01AM 25        MR. BALWANI WAS CONVICTED OF A CONSPIRACY TO DEFRAUD

10:01AM 1    INVESTORS DURING THE TIME PERIOD WHEN THERANOS -- WHEN SAFEWAY

10:02AM 2    AND WALGREENS INVESTED.  THERE WAS A MOTION TO DISMISS THE

10:02AM 3    INDICTMENT BASED ON THE INCLUSION OF CERTAIN BUSINESS PARTNERS

10:02AM 4    IN THIS ALLEGATION.

10:02AM 5        SO I DON'T THINK THERE'S ANY CREDIBLE CLAIM THAT SAFEWAY

10:02AM 6    AND WALGREENS WERE NOT PUT AT ISSUE IN PARAGRAPH 3.  AND IT IS

10:02AM 7    TRUE THAT THERE'S NOT A PARTICULAR WIRE FRAUD COUNT WITH

10:02AM 8    SAFEWAY OR WALGREENS AS THE VICTIM OF THAT WIRE FRAUD COUNT,

10:02AM 9    BUT I THINK THEY'RE INCLUDED WITHIN THE CONSPIRACY ALLEGATION.

10:02AM 10       MR. MIQUELON TESTIFIED IN THE HOLMES TRIAL ABOUT WHAT

10:02AM 11   INDUCED THE INVESTMENT.  MR. BIRD TESTIFIED IN THE HOLMES TRIAL

10:02AM 12   ABOUT WHAT INDUCED THE INVESTMENT.

10:02AM 13       THERE'S NO REASON SIMPLY BECAUSE THEY WERE ALSO BUSINESS

10:02AM 14   PARTNERS TO SOMEHOW CARVE THEM OUT OF THE EQUATION HERE.

10:02AM 15           THE COURT:  OKAY.

10:02AM 16           MS. WALSH:  YOUR HONOR, IF I COULD JUST SAY ONE MORE

10:02AM 17   THING ON THIS?

10:03AM 18           THE COURT:  SURE.

10:03AM 19           MS. WALSH:  SO I UNDERSTAND THERE ARE ALLEGATIONS

10:03AM 20   ABOUT WALGREENS IN THE INDICTMENT, HOWEVER, WE GOT A GENERAL

10:03AM 21   JURY VERDICT ON THE CONSPIRACY.  SO THERE'S NO WAY TO TELL FROM

10:03AM 22   THAT GENERAL VERDICT WHETHER WALGREENS OR SAFEWAY WERE VICTIMS

10:03AM 23   OF THE FRAUD.

10:03AM 24       AND THE TRIAL EVIDENCE SHOWED, ESPECIALLY WITH REGARD TO

10:03AM 25   WALGREENS, THAT THERANOS AND WALGREENS WERE WORKING TOGETHER.

10:03AM 1 AND IT WAS BECAUSE THERANOS WAS TRUTHFUL WITH WALGREENS ABOUT

10:03AM 2 THESE PERCENTAGES GOING UP IN VENIPUNCTURE THAT THEY DECIDED TO

10:03AM 3 END THE RELATIONSHIP, NOT BECAUSE THERANOS LIED TO THEM ABOUT

10:03AM 4 THAT ASPECT OF THE RELATIONSHIP. I THINK THAT IS AN IMPORTANT

10:03AM 5 DISTINCTION.

10:03AM 6 THERE IS NO WAY TO TELL WHETHER THE CONSPIRACY VERDICT IS

10:03AM 7 PREMISED ON A FINDING BY THE JURY THAT WALGREENS AND SAFEWAY

10:03AM 8 WERE DEFRAUDED.

10:03AM 9 MR. LEACH: MR. JHAVERI TESTIFIED THAT HE HAD HIS

10:04AM 10 BLOOD DRAWN AT THERANOS RIGHT BEFORE THE LAUNCH AND WAS SHOCKED

10:04AM 11 TO LEARN THAT IT WASN'T BEING RUN ON A THERANOS DEVICE.

10:04AM 12 THERE WERE TEXT MESSAGES INTRODUCED AT THE TRIAL ABOUT

10:04AM 13 WALGREENS FREAKING OUT WHEN IT LEARNED ABOUT "THE

10:04AM 14 WALL STREET JOURNAL" ARTICLE IN OCTOBER OF 2015.

10:04AM 15 THERE ARE TEXT MESSAGES FROM MR. BALWANI TELLING

10:04AM 16 MS. HOLMES, WE HAVE TO COME CLEAN WITH WALGREENS AT THIS POINT

10:04AM 17 BECAUSE THEY KNEW.

10:04AM 18 OUR BURDEN HERE IS PREPONDERANCE OF THE EVIDENCE. I JUST

10:04AM 19 THINK THE TESTIMONY OF MR. JHAVERI AND MR. MIQUELON AMPLY

10:04AM 20 SUPPORT THE PROPOSITION THAT WALGREENS WAS AS DEFRAUDED AS THE

10:04AM 21 OTHER INVESTORS IN THIS CASE.

10:04AM 22 THE COURT: OKAY. THANK YOU. OH.

10:04AM 23 MS. WALSH: YES. JUST ONE COMMENT ON ONE OF THE

10:04AM 24 FACTUAL ASSERTIONS MR. LEACH MADE ABOUT WADE MIQUELON GETTING

10:05AM 25 THE PHARMA REPORTS THAT HAD BEEN CHANGED FROM MS. HOLMES.

10:05AM 1      AS YOUR HONOR KNOWS FROM PRIOR MOTION PRACTICE,

10:05AM 2  MR. BALWANI DID NOT KNOW ANYTHING ABOUT THAT.  HE HAD NO IDEA

10:05AM 3  THAT THOSE CHANGES WOULD -- HAD BEEN MADE AND THAT DOCTOR

10:05AM 4  REPORTS WERE BEING SENT TO WALGREENS.  SO I JUST WANT TO MAKE

10:05AM 5  THAT CLEAR ON THE RECORD.

10:05AM 6      THE COURT:  OKAY.  THANK YOU.

10:05AM 7      MS. WALSH, WHAT ELSE WOULD YOU LIKE ME TO KNOW ABOUT

10:05AM 8  RESTITUTION?

10:05AM 9      MS. WALSH:  YES, YOUR HONOR.

10:05AM 10     SO THE GOVERNMENT IS SEEKING ALL OF THE MONEY THAT WAS

10:05AM 11 PAID BY INVESTORS IN THE B&C ROUNDS, AND WHERE I'D LIKE TO

10:05AM 12 START TO ADDRESS THAT POINT IS THE COURT'S DECISION FROM

10:05AM 13 YESTERDAY IN MR. BALWANI'S SENTENCING WHERE THE COURT CONCLUDED

10:05AM 14 ON PAGE 9 OF DOCKET 1730 THAT THE GOVERNMENT DID NOT ESTABLISH

10:06AM 15 EITHER BY A PREPONDERANCE OR CLEAR AND CONVINCING EVIDENCE THAT

10:06AM 16 THERANOS'S ULTIMATE COLLAPSE WAS THE RESULT OF MR. BALWANI'S

10:06AM 17 CONSPIRATORIAL CONDUCT.

10:06AM 18     AND I REALIZE THIS ADDRESSED LOSS, NOT RESTITUTION.

10:06AM 19     BUT I THINK THE SAME PRINCIPLE AND CONCLUSION SHOULD APPLY

10:06AM 20 TO RESTITUTION AS WELL.  IF MR. BALWANI WAS NOT THE PROXIMATE

10:06AM 21 CAUSE -- IF HIS CONDUCT WAS NOT THE PROXIMATE CAUSE OF

10:06AM 22 INVESTORS LOSING ALL OF THEIR MONEY, THEN HE CANNOT BE ON THE

10:06AM 23 HOOK FOR ALL OF THEIR -- THE MONEY THAT THEY INVESTED FOR

10:06AM 24 RESTITUTION PURPOSES.

10:06AM 25     SO I THINK THE COURT'S FINDING ALONE, WHICH, OF COURSE, WE

10:06AM 1     AGREE WITH, IS THE RIGHT RESULT HERE.

10:06AM 2     AND ONE OF THE REASONS IT'S THE RIGHT RESULT AS TO

10:06AM 3     MR. BALWANI ESPECIALLY, IS BECAUSE MR. BALWANI LEFT IN

10:06AM 4     MAY 2016. HE LEFT THERANOS.

10:07AM 5     AND WHEN HE LEFT THERANOS, THERE WAS $350 MILLION IN CASH

10:07AM 6     AT THERANOS. THERE WAS ALSO AT LEAST $100 MILLION IN VALUABLE

10:07AM 7     IP OWNED BY THE COMPANY.

10:07AM 8     WHEN HE WALKED OUT THE DOOR, THE COMPANY WAS EXTREMELY

10:07AM 9     VALUABLE. AND IT WAS -- AND THE INVESTORS AT ISSUE IN THIS

10:07AM 10     CASE ONLY LOST THEIR MONEY YEARS LATER, YEARS DOWN THE ROAD

10:07AM 11     AFTER MULTIPLE DECISIONS HAD BEEN MADE NOT BY MR. BALWANI BUT

10:07AM 12     BY MANAGEMENT AT THE TIME, THE CHIEF EXECUTIVE AT THE TIME, THE

10:07AM 13     BOARD AT THE TIME, WHO MADE ALL KINDS OF DECISIONS THAT

10:07AM 14     AFFECTED SHAREHOLDERS.

10:07AM 15     THERANOS MADE THE DECISION TO BORROW $100 MILLION FROM

10:07AM 16     FORTRESS AND USE AS COLLATERAL THEIR IP PORTFOLIO.

10:07AM 17     THERANOS MADE THE DECISION IN 2017, LONG AFTER "THE

10:08AM 18     WALL STREET JOURNAL" ARTICLES WERE OUT, THAT THEY WOULD ENTER

10:08AM 19     INTO AN AGREEMENT, AN EXCHANGE AGREEMENT, WITH THE EXISTING

10:08AM 20     SHAREHOLDERS, MANY OF WHOM ARE LISTED BY THE GOVERNMENT, THE

10:08AM 21     B&C SHAREHOLDERS, TO EXCHANGE THEIR SHARES FOR SHARES THAT HAD

10:08AM 22     MORE POWER AND HAD AN EXCHANGE RATE OF SOMETHING LIKE $5 A

10:08AM 23     SHARE. THAT'S A CRITICAL DECISION AS TO THE SHAREHOLDERS, AND

10:08AM 24     IT'S A DECISION NOT TO USE THE MONEY TO PAY BACK THOSE

10:08AM 25     SHAREHOLDERS BUT TO ENTER INTO YET ANOTHER AGREEMENT WITH THE

| | | |
|---|---|---|
| 10:08AM | 1 | SHAREHOLDERS WHERE THEY'RE STILL HANGING ON TO THERANOS STOCK. |
| 10:08AM | 2 | MR. BALWANI HAD NOTHING TO DO WITH THAT.  SO AT THE END OF |
| 10:08AM | 3 | THE DAY THE SHAREHOLDERS LOST ALL OF THEIR MONEY, AND THAT'S |
| 10:08AM | 4 | INCREDIBLY UNFORTUNATE, BUT THAT'S NOT BECAUSE OF MR. BALWANI'S |
| 10:08AM | 5 | CONDUCT. |
| 10:08AM | 6 | THE CAUSAL CHAIN WAS BROKEN WHEN HE LEFT THE COMPANY AND |
| 10:09AM | 7 | DECISIONS OVER THE COURSE OF YEARS PLAYED OUT THAT ULTIMATELY |
| 10:09AM | 8 | ENDED WITH INVESTORS LOSING ALL OF THEIR MONEY. |
| 10:09AM | 9 | THE COURT:  WELL, WAS HIS CONDUCT THEN THAT THE JURY |
| 10:09AM | 10 | FOUND AND CONVICTED HIM OF, ARE YOU SAYING THAT HIS CONDUCT IS |
| 10:09AM | 11 | COMPLETELY DIVORCED FROM ULTIMATE THERANOS DEMISE? |
| 10:09AM | 12 | MS. WALSH:  DIVORCED? |
| 10:09AM | 13 | SO WE DON'T KNOW WHAT THE CAUSAL LINKS ARE IN THE ULTIMATE |
| 10:09AM | 14 | DEMISE, BUT WHAT WE DO KNOW IS THAT THERE ARE SO MANY |
| 10:09AM | 15 | INTERRUPTIONS IN THE CAUSAL CHAIN, VIS-A-VIS MR. BALWANI, THAT |
| 10:09AM | 16 | HE CAN'T BE HELD RESPONSIBLE UNDER THE STANDARD OF PROXIMATE |
| 10:09AM | 17 | CAUSE FOR THE ULTIMATE DEMISE, AND THE COURT RECOGNIZED THAT IN |
| 10:09AM | 18 | ITS LOSS ANALYSIS IN THE ORDER THAT WAS ISSUED YESTERDAY. |
| 10:09AM | 19 | THE COURT:  SO CAN WE OBSERVE THAT THE GENESIS OF |
| 10:09AM | 20 | THE DEMISE WAS THE CONSPIRACY AND THE CONDUCT THAT THE JURY |
| 10:10AM | 21 | FOUND? |
| 10:10AM | 22 | MS. WALSH:  SO IN TERMS OF GENESIS, WHEN I THINK OF |
| 10:10AM | 23 | GENESIS I THINK OF "BUT FOR CAUSE," YOU KNOW, A BUTTERFLY FLAPS |
| 10:10AM | 24 | ITS WINGS AND AN EARTHQUAKE HAPPENS ACROSS THE WORLD.  THAT MAY |
| 10:10AM | 25 | BE BUT FOR CAUSE, BUT THAT'S NOT PROXIMATE CAUSE.  AND WHAT |

10:10AM  1    RESTITUTION REQUIRES IS PROXIMATE CAUSE.

10:10AM  2         THE COURT:  OKAY.

10:10AM  3         MR. LEACH:  I THINK MS. WALSH IS READING FAR TOO

10:10AM  4    MUCH INTO THE CONCEPT OF PROXIMATE CAUSE HERE.  AND, YOU KNOW,

10:10AM  5    IT BROUGHT ME BACK TO LAW SCHOOL IN THE PALSGRAF CASE WHERE,

10:10AM  6    YOU KNOW, THE ATTENDANT FOR THE RAILROAD HELPED SOMEBODY ON AND

10:10AM  7    THE PACKAGE FALLS AND THERE'S AN EXPLOSION AND SOME

10:10AM  8    UNFORESEEABLE EVENT HAPPENS.

10:10AM  9         THAT'S NOT WHAT HAPPENED HERE, YOUR HONOR.  INVESTORS

10:10AM 10    INVESTED MONEY IN THERANOS BASED ON LIES BY MS. HOLMES AND

10:10AM 11    MR. BALWANI, AND THEN LOST THEIR MONEY AS A RESULT OF THAT.

10:10AM 12    THAT WAS COMPLETELY FORESEEABLE FROM THE FRAUD THAT THIS

10:10AM 13    DEFENDANT COMMITTED.

10:11AM 14         IT'S A REMARKABLE POSITION TO SAY IF I JOIN A CONSPIRACY

10:11AM 15    THAT DEFRAUDS AN INVESTOR OF MONEY, BUT ONE OF MY

10:11AM 16    CO-CONSPIRATORS ELECTS NOT TO GIVE IT BACK AND DOES SOMETHING

10:11AM 17    ELSE AND WAITS A NUMBER OF YEARS, THAT THE VICTIM IS SOMEHOW

10:11AM 18    OUT OF LUCK BECAUSE I HAD LEFT THE COMPANY.  THEY CITE NO CASE

10:11AM 19    FOR THAT PROPOSITION.

10:11AM 20         RESTITUTION IS INTENDED TO PUT THE VICTIM BACK IN A

10:11AM 21    POSITION BEFORE THE CRIME WAS COMMITTED AND PARTICULARLY WITH

10:11AM 22    RESPECT TO ALL OF THE INDIVIDUALS ON PAGE 6 THAT WE'VE LISTED.

10:11AM 23    THAT'S ALL WE'RE ASKING FOR HERE WITH RESPECT TO THOSE.

10:11AM 24         I DO THINK BY VIRTUE OF THE CONSPIRACY COUNT THAT ALL OF

10:11AM 25    THE C1 AND C2 INVESTORS WOULD BE PROPERLY INCLUDED.  THE COURT

10:11AM 1    DID DECLINE TO DRAW THAT INFERENCE IN THE SENTENCING.

10:11AM 2         BUT I THINK THEY'RE READING FAR TOO MUCH INTO THIS CONCEPT

10:11AM 3    OF PROXIMATE CAUSE.  THE IDEA OF RESTITUTION THAT BOTH THE

10:12AM 4    SUPREME COURT AND THE NINTH CIRCUIT HAVE EMPHASIZED ARE TO PUT

10:12AM 5    SOMEONE BACK IN THE POSITION BEFORE THE EVENT.

10:12AM 6         AND I THINK THIS IS -- YOU KNOW, ONE OF THE BEST CASES FOR

10:12AM 7    THIS PROPOSITION IS THE ROBERS (PHONETIC) CASE, WHICH WE CITED

10:12AM 8    IN OUR BRIEF FROM THE SUPREME COURT.  I DON'T SEE ANY REAL

10:12AM 9    RESPONSE TO THAT FROM THE DEFENSE.  AND THAT'S WHERE THERE WAS

10:12AM 10   A LOAN FOR SOME COLLATERAL.  AND THE DEFENSE WAS TAKING THE

10:12AM 11   POSITION, WELL, LET'S MEASURE THE COLLATERAL THE DAY THE BANK

10:12AM 12   TOOK TITLE -- THE VICTIM TOOK TITLE TO THE COLLATERAL.

10:12AM 13        AND THE SUPREME COURT SAID NO.  YOU LOOK AT THE SPECIFIC

10:12AM 14   PROPERTY THAT IS RETURNED, AND HERE THE SPECIFIC PROPERTY IS

10:12AM 15   CASH.  SO THE FACT THAT SHARES OF THERANOS MIGHT HAVE GONE UP,

10:12AM 16   MIGHT HAVE GONE DOWN, I REALLY THINK WOULD BENEFIT MR. BALWANI

10:12AM 17   AT THE EXPENSE OF VICTIMS HERE.

10:12AM 18        I THINK THE ANSWER TO THIS QUESTION IS ANSWERED BY

10:13AM 19   3663(A), WHICH SAYS IN THE CASE OF FRAUD, RESTITUTION IS

10:13AM 20   RETURNED OF THE PROPERTY, AND THE PROPERTY HERE IS THE MONEY

10:13AM 21   THAT HE GOT FROM INVESTORS THROUGH THESE LIES.  AND IT REALLY

10:13AM 22   TAKES PROXIMATE CAUSE -- IT'S THE PROXIMATE CAUSE AT THE TIME

10:13AM 23   OF THE CRIME, IS IT FORESEEABLE THAT THESE INVESTORS WOULD LOSE

10:13AM 24   MONEY AS A RESULT OF THE DECEPTION?  AND I JUST THINK THAT

10:13AM 25   THAT'S OBVIOUS HERE.

| | | |
|---|---|---|
| 10:13AM | 1 | THE COURT:  THANK YOU. |
| 10:13AM | 2 | MS. WALSH:  YOUR HONOR, MR. LEACH SAID THAT ALL OF |
| 10:13AM | 3 | THE INVESTOR LOSSES AT THE END OF THE DAY WERE ENTIRELY |
| 10:13AM | 4 | FORESEEABLE BY MR. BALWANI.  I COULD NOT DISAGREE MORE.  THEY |
| 10:13AM | 5 | WERE NOT FORESEEABLE. |
| 10:13AM | 6 | WHEN HE LEFT THAT COMPANY, AS I SAID, THE COMPANY HAD |
| 10:13AM | 7 | ENORMOUS VALUE IN CASH AND IP.  IT WAS NOT FORESEEABLE THAT |
| 10:13AM | 8 | THOSE INVESTORS WOULD LOSE ALL OF THEIR MONEY.  AND IT HAS TO |
| 10:13AM | 9 | BE FORESEEABLE FOR IT TO COUNT UNDER RESTITUTION. |
| 10:13AM | 10 | WHAT THIS SITUATION REMINDS ME OF IS THE CIRCUMSTANCES IN |
| 10:13AM | 11 | LONICH, WHICH THE COURT CITED IN ITS OPINION YESTERDAY. |
| 10:14AM | 12 | LONICH WAS A CASE WHERE THE BANK THAT LOANED THE |
| 10:14AM | 13 | DEFENDANT'S MONEY ULTIMATELY FAILED.  AND THE COURT SAID THESE |
| 10:14AM | 14 | DEFENDANTS CANNOT BE HELD RESPONSIBLE FOR THAT ULTIMATE BANK |
| 10:14AM | 15 | FAILURE BECAUSE THERE WERE ALL OF THESE INTERVENING CAUSES THAT |
| 10:14AM | 16 | WERE NOT THE RESULT OF THE DEFENDANT'S CONDUCT. |
| 10:14AM | 17 | I THINK THE SAME APPLIES HERE WITH MR. BALWANI.  WHEN HE |
| 10:14AM | 18 | LEFT THE COMPANY, THERE WAS NO LONGER A CONSPIRACY.  SO HE |
| 10:14AM | 19 | CAN'T BE HELD RESPONSIBLE FOR MS. HOLMES'S DECISIONS. |
| 10:14AM | 20 | I KNOW MR. LEACH LABELED THEM AS CONSPIRATORS, BUT THAT |
| 10:14AM | 21 | ENDED WHEN THE ALLEGED CONSPIRACY ENDED.  AND WHEN MR. BALWANI |
| 10:14AM | 22 | LEFT, THERE WAS NO CONSPIRACY.  SHE WAS ACTING ON HER OWN ON |
| 10:14AM | 23 | BEHALF OF THERANOS AND IN CONJUNCTION WITH THE BOARD OF |
| 10:14AM | 24 | DIRECTORS. |
| 10:14AM | 25 | AND MR. BALWANI CAN'T BE HELD RESPONSIBLE FOR THOSE |

| | |
|---|---|
| 10:14AM | 1 |
| 10:14AM | 2 |

10:14AM 1 UNFORESEEABLE DECISIONS AND EVENTS THAT ULTIMATELY LED TO A

10:14AM 2 TOTAL LOSS FOR INVESTORS.

10:15AM 3 THE COURT: WHAT SHOULD HIS RESTITUTION BE? WHAT

10:15AM 4 SHOULD THE COURT ORDER AS RESTITUTION AS TO YOUR CLIENT?

10:15AM 5 MS. WALSH: SO, YOUR HONOR, WE'VE THOUGHT A LOT

10:15AM 6 ABOUT THIS. YOUR HONOR'S LOSS CALCULATION IS THE 130 MILLION.

10:15AM 7 IN THINKING ABOUT WHETHER THAT FIGURE IS AN APPROPRIATE

10:15AM 8 RESTITUTION AMOUNT, WE HAVE CONCLUDED THAT THAT FIGURE IS NOT

10:15AM 9 APPROPRIATE EITHER FOR DIFFERENT REASONS, AND THE DIFFERENT

10:15AM 10 REASON IS THAT THAT FIGURE IS, AS THE COURT DETERMINED, THE

10:15AM 11 DELTA BETWEEN THE PRICE THAT THE SHAREHOLDERS PAID ON

10:15AM 12 DECEMBER 31ST, 2014, AND THE ACTUAL VALUE OF THE COMPANY AS

10:15AM 13 DETERMINED BY THE COURT WITH ASSISTANCE FROM THE GOVERNMENT'S

10:15AM 14 EXPERT.

10:15AM 15 AND THAT DELTA IS -- THAT MAY BE A FINE DELTA TO USE IN

10:16AM 16 TERMS OF A LOSS CALCULATION, BUT IT IS A THEORETICAL LOSS.

10:16AM 17 IT'S AN UNREALIZED LOSS. THOSE SHAREHOLDERS DID NOT ACTUALLY

10:16AM 18 LOSE THAT MONEY AT THAT TIME.

10:16AM 19 WHEN THEY ACTUALLY LOST THE MONEY WAS WELL AFTER

10:16AM 20 MR. BALWANI LEFT. AND AGAIN, HE CAN'T BE HELD RESPONSIBLE FOR

10:16AM 21 THOSE AMOUNTS.

10:16AM 22 THE COURT: SO THE ANSWER TO MY QUESTION IS?

10:16AM 23 MS. WALSH: WE BELIEVE THAT HE IS -- BASED ON THE

10:16AM 24 STANDARDS OF PROXIMATE CAUSE IN THE RESTITUTION STATUTE, THE

10:16AM 25 RESTITUTION SHOULD BE ZERO.

| | | |
|---|---|---|
| 10:16AM | 1 | THE COURT: ZERO? |
| 10:16AM | 2 | MS. WALSH: YES. |
| 10:16AM | 3 | THE COURT: THANK YOU. |
| 10:16AM | 4 | MR. LEACH. |
| 10:16AM | 5 | MR. LEACH: THE BETTER ANALOGY FROM LONICH, |
| 10:16AM | 6 | YOUR HONOR, WOULD BE THE MONEY THAT IS THE SUBJECT OF THE |
| 10:16AM | 7 | FRAUDULENT LOANS, AND HERE THE MONEY -- THE ANALOGY WOULD BE |
| 10:16AM | 8 | THE MONEY THAT THE INVESTORS GAVE. SO I DON'T THINK LONICH |
| 10:16AM | 9 | HELPS THE OTHER SIDE AT ALL. |
| 10:16AM | 10 | THE FINDING THAT THERE WAS -- THAT REPAYMENT OF THE LOANS |
| 10:17AM | 11 | DID NOT CAUSE THE ULTIMATE FAILURE OF THE BANK OR AT LEAST THE |
| 10:17AM | 12 | GOVERNMENT HADN'T PROVED THAT, SO I THINK THAT ACTUALLY PROVES |
| 10:17AM | 13 | THE ARGUMENT THAT THE GOVERNMENT IS MAKING. |
| 10:17AM | 14 | I JUST THINK IT IS A REMARKABLE POSITION TO SAY THAT |
| 10:17AM | 15 | RESTITUTION HERE IS ZERO. YOU ASKED THESE INVESTORS DID YOU |
| 10:17AM | 16 | LOSE MONEY AS A RESULT OF MR. BALWANI'S CRIME? THE ANSWER IS |
| 10:17AM | 17 | ABSOLUTELY, YES. |
| 10:17AM | 18 | TO SAY THAT IF A CONSPIRATOR DOESN'T GIVE THE MONEY BACK |
| 10:17AM | 19 | OR DOES SOMETHING ELSE WITH IT, AND, THEREFORE, I DON'T HAVE TO |
| 10:17AM | 20 | PAY ANYTHING AS A RESULT OF MY CRIMES IS REALLY, I THINK, |
| 10:17AM | 21 | EXTRAORDINARY. WE URGE THE COURT AT A MINIMUM TO AWARD WHAT IT |
| 10:17AM | 22 | FOUND AS LOSS, BUT WE ALSO THINK THAT THE COMPLETE AMOUNT OF |
| 10:17AM | 23 | THE INVESTMENTS BY AT LEAST THE ONES THAT THE COURT HAS MADE |
| 10:17AM | 24 | FINDINGS FOR THE PARTICULAR VICTIMS IS APPROPRIATE. |
| 10:17AM | 25 | THE COURT: THANK YOU. |

10:17AM 1             MS. WALSH, ANYTHING FURTHER?

10:17AM 2                   MS. WALSH:  NOTHING FURTHER, YOUR HONOR.

10:17AM 3                   THE COURT:  OKAY.

10:17AM 4                   MS. WALSH:  ACTUALLY ONE MORE THING, YOUR HONOR.

10:17AM 5 I'M SORRY TO INTERRUPT YOU.

10:17AM 6                   THE COURT:  YES.  OF COURSE.

10:17AM 7                   MS. WALSH:  IF THE COURT DOES IMPOSE A RESTITUTION

10:18AM 8 ORDER, WE HAVE REQUESTED IN OUR BRIEF --

10:18AM 9                   THE COURT:  INTEREST.

10:18AM 10                   MS. WALSH:  THAT THE COURT -- YES, EXERCISE ITS

10:18AM 11 DISCRETION UNDER THE STATUTE AND NOT -- AND STAY INTEREST.

10:18AM 12                   THE COURT:  THANK YOU FOR RAISING THAT.

10:18AM 13               ANY COMMENT ON THE INTEREST?

10:18AM 14                   MR. LEACH:  I'LL SUBMIT ON THE BRIEFS, YOUR HONOR.

10:18AM 15                   THE COURT:  OKAY.  THANK YOU.

10:18AM 16              AND I APPRECIATE YOU BOTH RECOGNIZING IN YOUR PLEADINGS

10:18AM 17 AND IN YOUR COMMENTS THIS MORNING THAT RESTITUTION IS DIFFERENT

10:18AM 18 THAN LOSS CALCULATION.  THE LOSS CALCULATION IS GUIDELINE

10:18AM 19 FOCUSSED, ISN'T IT?  IT'S LOOKING AT GUIDELINES.  AND

10:18AM 20 RESTITUTION UNDER THE ACT IS REALLY VICTIM FOCUSSED, AND THAT'S

10:18AM 21 THE LENS THAT WE LOOK AT HERE.

10:18AM 22             BUT THANK YOU FOR YOUR COMMENTS.  I APPRECIATE IT.

10:18AM 23             ANYTHING FURTHER BEFORE WE TURN TO THE OTHER PART OF OUR

10:18AM 24 CONVERSATION?

10:18AM 25                   MS. WALSH:  NO, YOUR HONOR.

| | | |
|---|---|---|
| 10:18AM | 1 | MR. LEACH: NO, YOUR HONOR. THANK YOU. |
| 10:18AM | 2 | THE COURT: ALL RIGHT. THANK YOU. |
| 10:19AM | 3 | LET'S NEXT FOCUS ON THE ISSUES RAISED IN MR. COOPERSMITH'S |
| 10:19AM | 4 | MOTION REGARDING RELEASE PENDING APPEAL. |
| 10:19AM | 5 | LET ME HEAR FROM THE PARTIES ON THAT. AND I HAVE READ -- |
| 10:19AM | 6 | I'M FOCUSSED ON DOCUMENT 1711, MR. DAVIES, WHICH IS YOUR |
| 10:19AM | 7 | SUBMISSION REGARDING RELEASE PENDING APPEAL. AND I -- YOU'VE |
| 10:19AM | 8 | LISTED EIGHT SEPARATE ITEMS THERE. |
| 10:19AM | 9 | I AM INTERESTED -- YOUR PLEADINGS, BOTH OF YOUR PLEADINGS |
| 10:19AM | 10 | ARE FULSOME, BUT I'M INTERESTED IN JUST A CONVERSATION ABOUT |
| 10:19AM | 11 | TWO OF THESE REALLY AND IT'S MR. TOLBERT'S TESTIMONY AND THE |
| 10:20AM | 12 | CONSTRUCTIVE AMENDMENT. |
| 10:20AM | 13 | LET'S START WITH MR. TOLBERT'S TESTIMONY. |
| 10:20AM | 14 | MR. DAVIES, DO YOU WANT TO TALK ABOUT THAT FIRST? |
| 10:20AM | 15 | MR. DAVIES: SURE. THANK YOU, YOUR HONOR. |
| 10:20AM | 16 | I DO WANT TO JUST START, WITH YOUR INDULGENCE, CAN I JUST |
| 10:20AM | 17 | START WITH AN OVERFRAME OF THE CONVERSATION? |
| 10:20AM | 18 | THE COURT: WELL, I THINK I KNOW WHAT WE'RE TALKING |
| 10:20AM | 19 | ABOUT. BUT, NO, I'M NOT GOING TO PRECLUDE YOU FROM -- |
| 10:20AM | 20 | ABSOLUTELY. SURE. |
| 10:20AM | 21 | MR. DAVIES: SO I WOULD LIKE TO START WITH THE TEXT |
| 10:20AM | 22 | IF THAT'S OKAY WITH YOU AT 3143(B)(1) AND THEN JUST TO SET UP |
| 10:20AM | 23 | THE CONVERSATION FOR US BECAUSE WHAT WE'RE LOOKING AT HERE IS A |
| 10:20AM | 24 | SUBSTANTIAL -- WE NEED TO SHOW A NONFRIVOLOUS ISSUE THAT IS |
| 10:20AM | 25 | FAIRLY DEBATABLE. |

| | | |
|---|---|---|
| 10:20AM | 1 | AND WE ALSO NEED TO SHOW THAT IT RESULTS IN A NEW TRIAL. |
| 10:20AM | 2 | AND THE THEMES OF THE NEW TRIAL THAT WE WANT TO EMPHASIZE THIS |
| 10:20AM | 3 | MORNING ARE THE ACCURACY AND THE LIABILITY OF THE THERANOS |
| 10:21AM | 4 | TESTS, AND THE SECOND GOVERNMENT THEME OF USE OF THE MILITARY |
| 10:21AM | 5 | AND HOW THAT PLAYED OUT IN THE TRIAL. |
| 10:21AM | 6 | THE COURT:  PULL THAT MICROPHONE CLOSER TO YOU. |
| 10:21AM | 7 | THAT MIGHT BE HELPFUL TO YOU. |
| 10:21AM | 8 | MR. DAVIES:  YES, YOUR HONOR. |
| 10:21AM | 9 | THE SECOND THEME IS THE GOVERNMENT'S USE OF THE MILITARY |
| 10:21AM | 10 | AND HOW THAT PLAYED OUT IN THE TRIAL. |
| 10:21AM | 11 | SO THERE ARE TWO THEMES, BECAUSE WE NEED TO SHOW NOT JUST |
| 10:21AM | 12 | A SUBSTANTIAL LIKELIHOOD OF SUCCESS, BUT WE NEED TO ALSO SHOW |
| 10:21AM | 13 | THAT IT COMES TO A NEW TRIAL.  SO I WANTED TO SET THAT FRAME. |
| 10:21AM | 14 | SO I APOLOGIZE IF I -- |
| 10:21AM | 15 | THE COURT:  NO, NO, NO.  I'M NOT -- MR. DAVIES, YOU |
| 10:21AM | 16 | CAN SAY WHATEVER YOU NEED TO SAY, PLEASE, I'M NOT GOING TO -- |
| 10:21AM | 17 | MR. DAVIES:  I WOULD LIKE TO ADD A THIRD ISSUE TO |
| 10:21AM | 18 | THE CONVERSATION, WHICH IS THE NAPUE ISSUE, BUT I'M HAPPY TO |
| 10:21AM | 19 | FOCUS ON THOSE THREE, YOUR HONOR. |
| 10:21AM | 20 | SO THE GOVERNMENT HAS CONSTRUCTED THE AMENDMENT OF THIS |
| 10:21AM | 21 | INDICTMENT.  I WANT TO START WITH THE FIFTH AMENDMENT. |
| 10:21AM | 22 | THE COURT:  SO I WANT YOU TO START WITH TOLBERT |
| 10:21AM | 23 | FIRST.  COULD WE DO THAT? |
| 10:22AM | 24 | MR. DAVIES:  CERTAINLY, YOUR HONOR. |
| 10:22AM | 25 | THE ISSUE THERE, YOUR HONOR, IS THAT WE HAVE FEDERAL RULES |

10:22AM 1    OF EVIDENCE 701 AND 702.  WE ALSO HAVE THE GOVERNMENT'S -- SO

10:22AM 2    WE ALSO -- I'M A LITTLE DISTURB -- LET ME START AGAIN,

10:22AM 3    YOUR HONOR.

10:22AM 4        THE GOVERNMENT HAS AN OBLIGATION TO CORRECT FALSE

10:22AM 5    TESTIMONY.  THAT IS AN OBLIGATION THAT IT OWES TO US BECAUSE IT

10:22AM 6    IS PART OF THE GOVERNMENT, AND THEY HAVE A GREATER OBLIGATION.

10:22AM 7    AND THAT'S WHERE WE STARTED WITH THE NAPUE ARGUMENT, WHICH IS

10:22AM 8    WHERE THE SUPREME COURT SAYS QUOTE, "A CONVICTION OBTAINED

10:22AM 9    THROUGH USE OF FALSE EVIDENCE KNOWN TO SUCH BY THE GOVERNMENT

10:22AM 10   MUST FALL UNDER THE DUE PROCESS CLAUSE."

10:22AM 11       AND THE SAME RESULT OBTAINS WHEN THE STATE, EVEN THOUGH

10:22AM 12   NOT SOLICITING FALSE EVIDENCE, ALLOWS IT TO GO UNCORRECTED.

10:23AM 13   AND THAT'S WHAT HAPPENED HERE.

10:23AM 14       MR. TOLBERT'S TESTIMONY, IF I RECALL IN DECEMBER OF 2013,

10:23AM 15   WAS IN DIRECT CONFLICT WITH THE TAPE OF THAT TESTIMONY.

10:23AM 16   TOLBERT SAID AT TRIAL, 4435, "THAT TESTS," QUOTE, "WERE

10:23AM 17   EMPLOYED."  "THAT THESE TESTS," QUOTE, "WERE BEING USED."

10:23AM 18       BUT THE TAPE THAT THE GOVERNMENT IS CERTAINLY FAMILIAR

10:23AM 19   WITH, HAS MS. HOLMES SAYING "POTENTIAL" USE OF THE TAPES.

10:23AM 20       SO WE HAVE FALSE EVIDENCE.

10:23AM 21       WE ALSO HAVE THE GOVERNMENT KNEW IT WAS FALSE.  THEY

10:23AM 22   PLAYED THE TAPE MANY, MANY TIMES, THREE OR FOUR TIMES IN THE

10:23AM 23   PRIOR TRIAL, DIDN'T USE IT HERE.  AND WHEN MR. TOLBERT SAID HE

10:23AM 24   WAS NOT SURE OF THE CALL, HE WOULD -- HE COULD LOOK AT THE

10:23AM 25   TRANSCRIPT, THE GOVERNMENT DID NOT DO THAT.

| | |
|---|---|
| 10:23AM | 1 |
| 10:23AM | 2 |
| 10:24AM | 3 |
| 10:24AM | 4 |

SO IF WE HAVE FALSE EVIDENCE, AND IF WE HAVE FALSE
EVIDENCE THAT THE GOVERNMENT KNEW ABOUT, THEN THE QUESTION
BECOMES, IS THERE ANY REASONABLE LIKELIHOOD THAT WE COULD HAVE
PREVAILED?

WHAT IF THE JURY HAD HEARD -- IT LOOKS LIKE YOU HAD A
QUESTION, YOUR HONOR?

THE COURT:  NO.

MR. DAVIES:  OKAY.  IS IT FAIRLY DEBATABLE THAT WE
MEET THIS CRITERIA, THAT WE HAVE SHOWN FALSE OR DISTORTED
EVIDENCE, THAT WE HAVE SHOWN THE GOVERNMENT KNEW IT, AND WE
HAVE SHOWN IT'S MATERIAL BECAUSE WE MIGHT HAVE PREVAILED
WITHOUT THIS EVIDENCE.  AND IT WOULD AFFECT ALL COUNTS.

IT WAS THE CENTERPIECE OF THE CLOSING ARGUMENT.  NUMEROUS
TIMES IT WAS REFERRED TO QUOTE, "HOLMES BRAGS ABOUT DOD
MILITARY WORK THAT THERANOS DID."  THAT'S AT 6970.

7681, "TWO SCREENS BARRED THE CREDIBILITY OF THE
GOVERNMENT."

WE KNOW THAT THE JURY HUNG ON RELATED COUNTS.  SO THERE'S
JUST NO QUESTION WE HAVE THE FALSE EVIDENCE, WE HAVE THE
GOVERNMENT KNOWING IT, AND WE HAVE MATERIAL EVIDENCE.  THAT
MEETS THE CRITERIA THAT WE NEED TO SHOW BECAUSE WE DON'T NEED
TO PERSUADE YOU THAT WE'RE RIGHT ON THE MERITS.  WE JUST NEED
TO SHOW THAT WE HAVE A FAIRLY DEBATABLE ARGUMENT, AND THEN WE
WILL HAVE SHOWN SUBSTANTIAL LIKELIHOOD OF SUCCESS.

I DO WANT TO EMPHASIZE THAT THIS ARGUMENT IS ABOUT

| | | |
|---|---|---|
| 10:25AM | 1 | GOVERNMENT CONDUCT. THAT IS WHAT <u>NAPUE</u> WAS EMPHASIZING, THAT |
| 10:25AM | 2 | WHEN THE GOVERNMENT KNOWS TESTIMONY IS FALSE, IT HAS AN |
| 10:25AM | 3 | OBLIGATION TO FIX IT BECAUSE THEY'RE AFTER JUSTICE. AND IT'S |
| 10:25AM | 4 | VERY HARD TO SEE HOW THAT WAS DONE, AND THE GOVERNMENT KNEW THE |
| 10:25AM | 5 | TAPE WAS DIRECTLY CONTRARY TO TESTIMONY THAT THEY SOLICITED, |
| 10:25AM | 6 | TESTIMONY THAT WAS FUNDAMENTAL TO ONE OF THEIR KEY THEMES IN |
| 10:25AM | 7 | THIS CASE. |
| 10:25AM | 8 | I WILL ALSO EMPHASIZE THAT THE NINTH CIRCUIT TAKES THIS |
| 10:26AM | 9 | ISSUE VERY SERIOUSLY AS THE <u>HAYES</u> CASE EN BANC. AND SO WHAT WE |
| 10:26AM | 10 | HAVE HERE -- ALL WE HAVE TO SHOW IS A FAIRLY DEBATABLE ISSUE |
| 10:26AM | 11 | THAT THE NINTH CIRCUIT HAS TAKEN SERIOUSLY AND FOR THE REASONS |
| 10:26AM | 12 | THAT I'VE JUST REVIEWED. |
| 10:26AM | 13 | SO, YOUR HONOR, SHOULD I PAUSE HERE, OR SHOULD I CONTINUE |
| 10:26AM | 14 | ON? |
| 10:26AM | 15 | THE COURT: WELL, LET'S -- WHY DON'T WE HAVE MS. -- |
| 10:26AM | 16 | MR. DAVIES: I THINK THAT IS -- |
| 10:26AM | 17 | THE COURT: YES. MS. VOLKAR. |
| 10:26AM | 18 | MS. VOLKAR: THANK YOU, YOUR HONOR. |
| 10:26AM | 19 | THERE IS NO GOVERNMENT MISCONDUCT HERE. I THINK THAT'S |
| 10:26AM | 20 | THE SIMPLE ANSWER TO MR. DAVIES'S COMMENTS. |
| 10:26AM | 21 | FIRST AND FOREMOST, TO RESET THE SCENE, MR. DAVIES REFERS |
| 10:26AM | 22 | TO THE GOVERNMENT CONDUCT IN MS. HOLMES'S TRIAL AND CONTRASTS |
| 10:26AM | 23 | IT WITH MR. BALWANI'S TRIAL. AND, OF COURSE, THE BACKGROUND TO |
| 10:26AM | 24 | THAT IS THAT THERE WERE SEVERED TRIALS BECAUSE MR. BALWANI |
| 10:26AM | 25 | SOUGHT THAT SUCCESSFULLY. |

10:26AM  1     IF IT WERE THE SAME TRIAL, THEN THEY MIGHT HAVE SEEN THE

10:26AM  2  EVIDENCE THAT WAS PRESENTED IN BOTH TRIALS IN THAT SAME TRIAL.

10:27AM  3     WHAT THE GOVERNMENT DID WAS IN THE TRIAL AGAINST

10:27AM  4  MS. HOLMES, WHEN SHE WAS THE DEFENDANT, AND THE GOVERNMENT HAD

10:27AM  5  A TAPE WITH HER SPEAKING ON IT, THEY PLAYED THAT TAPE FOR THE

10:27AM  6  JURY.

10:27AM  7     WHAT THE GOVERNMENT DID IN MR. BALWANI'S TRIAL WHEN HE WAS

10:27AM  8  THE DEFENDANT SITTING IN THE SEAT, WAS HAD AN INVESTOR TESTIFY

10:27AM  9  WHO SPOKE DIRECTLY WITH MR. BALWANI, AND THAT WAS

10:27AM 10  MR. MENDENHALL, AND HE TOOK DETAILED NOTES THAT WAS IN THAT

10:27AM 11  TRIAL EXHIBIT.

10:27AM 12     AND I FAIL TO SEE HOW THERE'S PROSECUTORIAL MISCONDUCT

10:27AM 13  WHERE THE GOVERNMENT PUT FORWARD THE MOST PERSUASIVE EVIDENCE

10:27AM 14  WITH RESPECT TO THE DEFENDANT WHO WAS IN THE CHAIR AT THAT

10:27AM 15  TIME.

10:27AM 16     NOW I WANT TO GO TO SPECIFICALLY MR. TOLBERT.  I HAVE YET

10:27AM 17  TO HEAR AND HAVE YET TO SEE ANY FALSEHOOD BETWEEN WHAT

10:27AM 18  MR. TOLBERT SAID ON THE STAND AND THE TAPES.

10:27AM 19     MR. TOLBERT, I BELIEVE, HAD SAID THAT HE HAD REVIEWED THE

10:27AM 20  TRANSCRIPT OF THE TAPE BEFORE HIS TESTIMONY.  I BELIEVE THAT HE

10:28AM 21  WAS TESTIFYING BOTH TO THE BEST OF HIS RECOLLECTION BUT ALSO

10:28AM 22  BASED ON HIS UNDERSTANDING OF WHAT HE HEARD ON THAT CALL.

10:28AM 23     DEFENSE COUNSEL ALSO HAD THE TRANSCRIPT OF THAT TAPE.  AND

10:28AM 24  THERE WAS -- THEY COULD HAVE, AND I CAN'T QUITE RECALL, BUT I

10:28AM 25  THINK THEY MAY HAVE IN SOME INSTANCES, THEY COULD HAVE

10:28AM  1    IMPEACHED HIM WHILE HE WAS ON THE STAND WITH PORTIONS OF THAT

10:28AM  2    CALL.

10:28AM  3        THE CHOICE BY THE GOVERNMENT TO NOT PLAY ONE PIECE OF

10:28AM  4    EVIDENCE THAT -- ABOUT A CALL, AND AGAIN, TO SET THE STAGE FOR

10:28AM  5    THAT CONFERENCE CALL ABOUT THE TAPE THAT WE'RE TALKING ABOUT,

10:28AM  6    WE DO NOT HAVE ANY EVIDENCE THAT MR. BALWANI WAS ON THAT CALL

10:28AM  7    OR HAD ANY CONNECTION WITH THAT CALL.

10:28AM  8        WE DO KNOW THAT HE DID NOT SPEAK ON THAT CALL IF HE WAS

10:28AM  9    LISTENING IN.  SO WE, THE GOVERNMENT, DON'T NECESSARILY HAVE

10:28AM 10    ANY EVIDENCE TYING MR. BALWANI TO THAT CALL IN THE WAY THAT WE

10:28AM 11    DO HAVE EVIDENCE AND DID PRESENT EVIDENCE TYING HIM TO THE CALL

10:29AM 12    WITH MR. MENDENHALL.

10:29AM 13        SO I FAIL TO SEE HOW THE GOVERNMENT'S CHOICE NOT TO

10:29AM 14    PRESENT A TAPE OF A COCONSPIRATOR SPEAKING AND INSTEAD PRESENT

10:29AM 15    DIRECT EVIDENCE OF A CALL WITH AN INVESTOR FROM MR. BALWANI

10:29AM 16    HIMSELF, HOW THAT IS PROSECUTORIAL MISCONDUCT OR DECEPTIVE.

10:29AM 17        BUT AGAIN, GOING SPECIFICALLY TO THE NAPUE STANDARD, THERE

10:29AM 18    HAS TO BE FALSEHOODS BETWEEN WHAT MR. TOLBERT SAID THAT THEY

10:29AM 19    THINK THAT WE DIDN'T CORRECT, AND ALL I'VE HEARD SO FAR IS THE

10:29AM 20    USE OF THE MILITARY VERSUS MS. HOLMES'S WORD "POTENTIAL."

10:29AM 21        AGAIN, I APOLOGIZE I DON'T HAVE THE TRANSCRIPT BEFORE ME,

10:29AM 22    BUT THERE WAS CERTAINLY AT LEAST THE OPPORTUNITY FOR THEM TO

10:29AM 23    CROSS-EXAMINE MR. TOLBERT ON THAT WHILE HE WAS ON THE STAND

10:29AM 24    USING THE TRANSCRIPT OF THE CALL.

10:29AM 25        I DO RECALL IN CLOSING ARGUMENT THAT I BELIEVE

10:29AM 1 MR. COOPERSMITH MADE THE POINT WE DIDN'T HEAR THE CALL, THAT

10:30AM 2 MADE THE POINT TO THE JURY, THAT BECAUSE THE GOVERNMENT DIDN'T

10:30AM 3 PLAY THE TRANSCRIPT, WE DON'T KNOW WHAT EXACT WORDS MS. HOLMES

10:30AM 4 USED, WE DON'T KNOW IF IT WAS WORD WAS POTENTIAL, WE DON'T KNOW

10:30AM 5 IF IT WAS FUTURE, WE DON'T KNOW IF IT WAS PRESENT. SO THE

10:30AM 6 POINT WAS CERTAINLY MADE BY THE DEFENSE.

10:30AM 7 AND I JUST THINK THAT UNDER THE NAPUE STANDARD, THERE HAS

10:30AM 8 TO BE BOTH THE FALSE STATEMENTS AND IF I'M NOT MISTAKEN, THE

10:30AM 9 SORT OF THE MATERIALITY PIECE OF IT OR WHAT THE RESULT WAS. I

10:30AM 10 DON'T THINK THAT THEY CAN MEET EITHER STANDARD HERE.

10:30AM 11 MR. TOLBERT TESTIFIED BASED ON HIS BEST RECOLLECTION AND

10:30AM 12 ALSO HIS IMPRESSIONS WHAT HE WALKED AWAY FROM THE CALL

10:30AM 13 UNDERSTANDING. AND HE'S NOT THE ONLY ONE.

10:30AM 14 WE ALSO HEARD THAT SAME CATEGORY OF FALSE STATEMENTS FROM

10:30AM 15 MR. GROSSMAN ON BEHALF OF PFM, FROM MR. LUCAS, I BELIEVE FROM

10:30AM 16 MS. PETERSON, IF NOT IN THIS TRIAL IN THE HOLMES TRIAL. AND I

10:30AM 17 SAY THAT TO SAY IT DOES MATTER, AND I IMAGINE IT MATTERED TO

10:30AM 18 THE JURY, THAT IT WASN'T JUST ONE INVESTOR THAT CAME AWAY WITH

10:31AM 19 THIS IMPRESSION.

10:31AM 20 SO WHILE THE DEFENSE MAY HAVE WANTED TO PARSE AND

10:31AM 21 WORDSMITH THE EXACT LANGUAGE USED AS THE HOLMES DEFENSE TEAM

10:31AM 22 HAD CHOSEN TO DO, I DON'T SEE HOW THAT RISES TO A LEVEL OF

10:31AM 23 NAPUE.

10:31AM 24 AND THEY COULD HAVE PERHAPS TAKEN THE SAME STRATEGY WITH

10:31AM 25 THE MENDENHALL -- THE EXHIBIT WITH MR. MENDENHALL THAT HAD THE

| | | |
|---|---|---|
| 10:31AM | 1 | DETAILED NOTES FROM HIS CALL WITH MR. BALWANI. |
| 10:31AM | 2 | BUT I JUST END WITH THERE WAS NO PROSECUTORIAL MISCONDUCT |
| 10:31AM | 3 | HERE.  THE DEFENSE PERHAPS WISHES THAT THE GOVERNMENT DID THE |
| 10:31AM | 4 | EXACT SAME TRIAL AGAINST MR. BALWANI THAT IT DID AGAINST |
| 10:31AM | 5 | MS. HOLMES, AND IF THEY WERE TRIED TOGETHER, THEY WOULD HAVE |
| 10:31AM | 6 | SEEN ALL OF THE SAME EVIDENCE. |
| 10:31AM | 7 | BUT THE GOVERNMENT CHOSE THE BEST EVIDENCE THAT IT HAD |
| 10:31AM | 8 | WITH RESPECT TO EACH DEFENDANT, AND THAT IS NOT PROSECUTORIAL |
| 10:31AM | 9 | MISCONDUCT.  THE GOVERNMENT DID NOT MISLEAD THE JURY AND THERE |
| 10:31AM | 10 | WAS AMPLE OPPORTUNITY FOR THE DEFENSE IN THE ADVERSARIAL |
| 10:31AM | 11 | PROCESS TO MAKE THE POINTS THAT THEY'RE MAKING NOW. |
| 10:31AM | 12 | THE COURT:  THANK YOU. |
| 10:31AM | 13 | MR. DAVIES. |
| 10:32AM | 14 | MR. DAVIES:  SO, YOUR HONOR, AT TRANSCRIPT 7574 THE |
| 10:32AM | 15 | CLOSING ARGUMENT SAYS, "YOU'VE HEARD THE TAPE.  YOU HEARD THE |
| 10:32AM | 16 | TAPE." |
| 10:32AM | 17 | NOW, IN THIS CASE THE JURY DID NOT HEAR THE TAPE.  BUT THE |
| 10:32AM | 18 | IDEA THAT IN CLOSING ONE REFERS TO HEARING THE TAPE BUT IT'S |
| 10:32AM | 19 | NOT MATERIAL IS NOT IMPORTANT, THAT IS NOT ACCURATE. |
| 10:32AM | 20 | THE GOVERNMENT CLEARLY EMPHASIZED THAT THE MATERIAL THAT |
| 10:32AM | 21 | WAS DISCUSSED ON THIS TAPE. |
| 10:32AM | 22 | THE COURT:  WAS THAT THE -- WAS THAT QUOTE FROM THE |
| 10:32AM | 23 | REBUTTAL PRESENTATION? |
| 10:32AM | 24 | MR. DAVIES:  I BELIEVE SO. |
| 10:32AM | 25 | THE COURT:  OR FROM THE ORIGINAL ARGUMENT? |

10:32AM 1          MR. DAVIES:  I CAN CONFIRM, BUT I BELIEVE IT WAS THE

10:32AM 2     REBUTTAL.

10:32AM 3          THE COURT:  OKAY.  THANK YOU.

10:32AM 4          MR. DAVIES:  WHICH TALKS A LOT ABOUT THIS ISSUE.

10:32AM 5       THE MILITARY DISCUSSION IS A LOT OF THE REBUTTAL,

10:32AM 6     YOUR HONOR.

10:32AM 7       SO THAT'S THE FIRST POINT.  THE IDEA THAT THIS IS NOT

10:32AM 8     MATERIAL IS NOT SUPPORTED BY THE RECORD.

10:32AM 9       THE IDEA THAT THERE'S NO FALSITY IS NOT SUPPORTED BY THE

10:33AM 10    RECORD BECAUSE, AS I SAID, MS. HOLMES SAYS "POTENTIAL" AND THE

10:33AM 11    TESTIMONY IS THAT IT HAPPENED.

10:33AM 12      BUT AGAIN, ALL WE HAVE TO SHOW IS THAT WE HAVE A FAIRLY

10:33AM 13    DEBATABLE ISSUE.  I DID NOT HEAR A RESPONSE TO THAT.  WE DO NOT

10:33AM 14    HAVE TO PERSUADE YOU ON THE MERITS, JUST THAT IT IS FAIRLY

10:33AM 15    DEBATABLE.

10:33AM 16      AND WHEN AN ISSUE GOES FROM IT'S HAPPENING TO IT IS

10:33AM 17    PLANNED TO HAPPEN, AT LEAST ON THIS RECORD IT'S FAIRLY

10:33AM 18    DEBATABLE.  AND THEN WE HAVE SATISFIED THE THREE CRITERIA OF

10:33AM 19    THE -- OF WHAT IS REQUIRED BECAUSE WE HAVE THE FALSE EVIDENCE.

10:33AM 20    WE HAVE THE GOVERNMENT KNOWING IT.

10:33AM 21      WE DID NOT MENTION THE PRIOR USE OF THE TAPE TO SUGGEST

10:33AM 22    ANY SORT OF STRATEGIC CALL OR OBLIGATION FOR THE GOVERNMENT TO

10:33AM 23    FOCUS ON ONE WITNESS VERSUS THE OTHER.

10:33AM 24      WE MENTION IT TO SHOW THAT THE GOVERNMENT KNEW ABOUT THE

10:33AM 25    TAPE.  THIS IS NOT A CASE WHERE SOME SURPRISE TAPE COMES UP

| | | |
|---|---|---|
| 10:33AM | 1 | LATER.  THE GOVERNMENT KNEW ABOUT THE TAPE, KNEW WHAT IT SAID, |
| 10:34AM | 2 | IT WASN'T AS EFFECTIVE AS THEY MIGHT HAVE HOPED, THEY OPTED NOT |
| 10:34AM | 3 | TO USE IT HERE.  IT DOESN'T SAY WHAT THE WITNESS SAID, AND YET |
| 10:34AM | 4 | THEY DON'T CORRECT IT.  THAT IS A CLASSIC NAPUE VIOLATION |
| 10:34AM | 5 | BECAUSE THAT'S WHAT WE DON'T WANT THE GOVERNMENT DOING, PLAYING |
| 10:34AM | 6 | THESE SORTS OF GAMES.  THEY KNEW ABOUT THE TAPE, AND IT WAS |
| 10:34AM | 7 | FALSE. |
| 10:34AM | 8 | WE ASKED FOR IT TO COME IN, AND THAT'S AT TRANSCRIPT 42 -- |
| 10:34AM | 9 | 4396.  YOUR HONOR OPTED NOT TO LET IT IN.  SO THERE'S NO |
| 10:34AM | 10 | OBLIGATION.  WE DID OUR OBLIGATION. |
| 10:34AM | 11 | BUT AS I'M TRYING TO EMPHASIZE HERE, THE OBLIGATION IS ON |
| 10:34AM | 12 | THE GOVERNMENT.  THEY KNEW THIS WAS FALSE. |
| 10:34AM | 13 | ANOTHER REASON WE KNOW IT'S MATERIAL, AND THIS IS AN |
| 10:34AM | 14 | UNUSUAL CASE WHERE WE HAVE THE JURY ASKING FOR THE TAPE, NOT |
| 10:34AM | 15 | CONVICTING ON THE MOST RELEVANT COUNTS AFTER THEY HEARD THE |
| 10:34AM | 16 | CASE. |
| 10:34AM | 17 | SO THE IDEA THAT THIS TAPE IS NOT MATERIAL TO THESE |
| 10:34AM | 18 | CHARGES ALSO DOESN'T HOLD UP WHEN ONE LOOKS AT THE RECORD. |
| 10:35AM | 19 | AGAIN, ALL WE HAVE TO SHOW IS THAT IT IS FAIRLY DEBATABLE, THAT |
| 10:35AM | 20 | WE HAVE THE FALSE EVIDENCE, THAT THEY HAVE THE GOVERNMENT |
| 10:35AM | 21 | KNOWING IT, AND THAT IT WAS MATERIAL. |
| 10:35AM | 22 | MS. VOLKAR:  NO SURPRISE TO THE COURT, THE |
| 10:35AM | 23 | GOVERNMENT DOES NOT BELIEVE IT IS FAIRLY DEBATABLE. |
| 10:35AM | 24 | AS I SAID IN MY PAPERS, I THINK THIS IS A BORDERLINE |
| 10:35AM | 25 | FRIVOLOUS CLAIM, BUT THAT BEING SAID, THE DEFENSE IN THIS |

10:35AM 1    MOMENT IS CHOOSING TO FOCUS ON WHAT WAS DONE IN THE HOLMES

10:35AM 2    TRIAL AND NOT FOCUSSING ON WHAT WAS DONE IN ITS TRIAL.

10:35AM 3          EVEN IF IT IS FAIRLY DEBATABLE, THIS GOES TO AT MOST THREE

10:35AM 4    COUNTS.  WE KNOW THAT IN THE HOLMES TRIAL, THE JURY STILL

10:35AM 5    CONVICTED ON FOUR COUNTS, EVEN THOUGH IT HUNG ON THE THREE THAT

10:35AM 6    WE'RE TALKING ABOUT RIGHT NOW.  AND THE REASON I BRING THAT UP

10:35AM 7    IS BECAUSE I THINK THAT THAT DEMONSTRATES THAT MR. BALWANI

10:35AM 8    CANNOT SATISFY THE FOURTH REQUIREMENT, EVEN IF HE CAN SHOW THIS

10:35AM 9    ISSUE IS FAIRLY DEBATABLE, THIS IS NOT LIKELY TO RESULT IN

10:36AM 10   REVERSAL ON ALL COUNTS OF CONVICTION.

10:36AM 11         SO I GUESS I'D JUST RESPOND, I STRONGLY DISAGREE WITH

10:36AM 12   MR. DAVIES ON THE IMPORTANCE OF THE ISSUE.  I STRONGLY DISAGREE

10:36AM 13   THAT IT WAS PROSECUTORIAL MISCONDUCT.  I STRONGLY DISAGREE THAT

10:36AM 14   IT MEETS EITHER OF THE REQUIREMENTS OF NAPUE, BUT EVEN IF WE'RE

10:36AM 15   IN THIS LAND THAT HE'S TALKING ABOUT WITH FAIRLY DEBATABLE, I

10:36AM 16   WOULD SAY THAT THAT DOES NOT MATTER BECAUSE EVEN IF HE --

10:36AM 17   MR. DAVIES IS RIGHT AND I AM WRONG, IT WON'T LEAD TO REVERSAL

10:36AM 18   ON ALL COUNTS OF CONVICTION, AND, THEREFORE, MR. BALWANI STILL

10:36AM 19   CAN'T MEET HIS BURDEN UNDER 3143(B).

10:36AM 20         THE COURT:  OKAY.  THANK YOU.

10:36AM 21      MR. DAVIES.

10:36AM 22         MR. DAVIES:  SO, YOUR HONOR, YOUR QUESTION ABOUT

10:36AM 23   WHETHER THAT WAS SAID, YOU HEARD THE TAPE.  THAT'S ACTUALLY IN

10:36AM 24   THE ORIGINAL CLOSING.  IT'S AT TRX 6970.

10:36AM 25         THE COURT:  THAT'S BEFORE THE DEFENSE MADE THEIR

| | | |
|---|---|---|
| 10:36AM | 1 | ARGUMENT? |
| 10:36AM | 2 | MR. DAVIES:  YES.  YES. |
| 10:36AM | 3 | THE COURT:  OKAY.  THANK YOU. |
| 10:36AM | 4 | MR. DAVIES:  THE NUMBER OF TIMES THAT THE MILITARY |
| 10:36AM | 5 | CAME UP IN THESE CLOSING ARGUMENTS, YOUR HONOR, I COUNTED NINE. |
| 10:37AM | 6 | THE IDEA THAT THIS WAS NOT MATERIAL TO ALL COUNTS IS |
| 10:37AM | 7 | INCONSISTENT WITH HOW IT WAS USED IN THE CLOSING ARGUMENT. |
| 10:37AM | 8 | WE HAVE HOLMES BRAGGING ABOUT DOD MILITARY WORK THAT |
| 10:37AM | 9 | THERANOS DID, WE HAVE THE "YOU HEARD THE TAPE COMMENT."  SO THE |
| 10:37AM | 10 | IDEA THAT THIS WAS LIMITED TO TWO COUNTS IS NOT SUPPORTED BY |
| 10:37AM | 11 | THE RECORD. |
| 10:37AM | 12 | THE COURT:  DO YOU WANT TO COMMENT ON -- WELL, GO |
| 10:37AM | 13 | AHEAD. |
| 10:37AM | 14 | DO YOU WANT TO COMMENT?  MS. VOLKAR'S LAST POINT WAS EVEN |
| 10:37AM | 15 | IF, IT WOULD NOT RESULT IN -- EVEN IF THIS ISSUE WERE |
| 10:37AM | 16 | SUBSTANTIAL, IT WOULD NOT RESULT IN A REVERSAL OF ALL COUNTS. |
| 10:37AM | 17 | MR. DAVIES:  SO I DON'T AGREE WITH THAT BECAUSE THE |
| 10:37AM | 18 | MILITARY THEME, AND THAT'S ONE OF THE REASONS I WANTED TO START |
| 10:37AM | 19 | THERE, DOES COME OUT THROUGHOUT THE TRIAL THAT THE CREDIBILITY |
| 10:37AM | 20 | OF THE MILITARY ACCORDING TO THE GOVERNMENT WAS USED TO HELP |
| 10:37AM | 21 | PROMOTE THERANOS PRODUCTS. |
| 10:37AM | 22 | WE HAVE TR 7603, 7612.  I HAVE NINE OR SO CITES.  I MEAN, |
| 10:38AM | 23 | I DON'T MEAN TO BORE YOUR HONOR -- |
| 10:38AM | 24 | THE COURT:  NO. |
| 10:38AM | 25 | MR. DAVIES:  -- BUT IT WAS A KEY PART.  THE |

10:38AM 1    GOVERNMENT'S USE OF THE MILITARY, MISSTATEMENTS ABOUT THE

10:38AM 2    MILITARY, OVERSTATEMENTS ABOUT THE MILITARY IS AN EFFECTIVE

10:38AM 3    RHETORICAL TOOL, AND THAT IS WHAT WAS DONE HERE.

10:38AM 4         THE CREDIBILITY OF THE MILITARY WAS USED TO SAY THERANOS

10:38AM 5    SORT OF MISSPOKE ABOUT -- MISREPRESENTED ABOUT ITS RELATIONSHIP

10:38AM 6    WITH THE MILITARY.

10:38AM 7         AND WHEN YOU LISTEN TO THE TAPE AND YOU LISTEN TO THE

10:38AM 8    TESTIMONY, YOU SEE THAT THAT WAS FALSE, AND IT'S MATERIAL AND

10:38AM 9    IT HITS ALL OF THE COUNTS BECAUSE OF THAT IMPACT OF THE THEME

10:38AM 10   IN THIS CASE.

10:38AM 11              THE COURT:  OKAY.  THANK YOU.

10:38AM 12         ANYTHING FURTHER ON MR. TOLBERT'S TESTIMONY?

10:38AM 13              MS. VOLKAR:  I WAS NOT SURE IF HE WAS REFERRING TO

10:38AM 14   THE MILITARY IN TERMS OF THE HOLMES CLOSING OR THE BALWANI

10:38AM 15   CLOSING.

10:38AM 16         BUT THE ONLY -- WITHOUT HARPING FURTHER ON IT, THE ONLY

10:38AM 17   THING THAT I HAVE TO ADD IS THAT MR. BALWANI POINTED OUT IN HIS

10:38AM 18   TRIAL THAT THE MILITARY RELATIONSHIP WAS LARGELY DRIVEN BY

10:39AM 19   MS. HOLMES AND HE HAD NOTHING TO DO WITH IT.

10:39AM 20         SO I JUST WANT TO BE CLEAR THAT THE GOVERNMENT IS NOT

10:39AM 21   STATING THE MILITARY ASPECT WASN'T IMPORTANT IN THE HOLMES

10:39AM 22   TRIAL.  IT WAS DISCUSSED QUITE EXTENSIVELY AT CLOSING AND IN

10:39AM 23   REBUTTAL.

10:39AM 24         I DON'T RECALL IT APPEARING OR BEING AS THOROUGHLY

10:39AM 25   DISCUSSED IN THE BALWANI TRIAL, AND I DO SEEM TO REMEMBER

10:39AM 1    MR. COOPERSMITH SAYING IN HIS CLOSING THAT MR. BALWANI HAD

10:39AM 2    NOTHING TO DO WITH THE MILITARY RELATIONSHIP, THAT THAT WAS ALL

10:39AM 3    MS. HOLMES.

10:39AM 4        SO I JUST WANT TO MAKE SURE THAT THAT POINT WAS MADE.

10:39AM 5            THE COURT:  OKAY.  THANK YOU.

10:39AM 6            MR. DAVIES:  THANK YOU, YOUR HONOR.

10:39AM 7        I DO -- I MEAN, I HAVE THE NAPUE OPINION RIGHT IN FRONT OF

10:39AM 8    ME AND IT IS AN IMPORTANT POINT THAT THIS IS ABOUT THE

10:39AM 9    GOVERNMENT'S CONDUCT THAT MAY HAVE HAD AN EFFECT ON THE OUTCOME

10:39AM 10   OF THIS TRIAL.

10:39AM 11       "THE PRINCIPLE THAT A STATE MAY NOT KNOWINGLY USE FALSE

10:39AM 12   EVIDENCE, INCLUDING FALSE TESTIMONY, TO OBTAIN A TAINTED

10:39AM 13   CONVICTION IS IMPLICIT IN ANY CONCEPT OF AWARD OF LIBERTY.  ANY

10:40AM 14   CONCEPT OF AN AWARD OF LIBERTY."

10:40AM 15       WE CANNOT HAVE OUR GOVERNMENT CONVICTING ON FALSE

10:40AM 16   EVIDENCE, AND IT DOES HIT ALL OF THE COUNTS AND THE REASONS I

10:40AM 17   GAVE.

10:40AM 18           THE COURT:  NAPUE WAS A SERIOUS CONDUCT BY THE

10:40AM 19   GOVERNMENT, WASN'T IT?

10:40AM 20       AND IN NAPUE THERE WAS -- WASN'T THAT THE CASE WHERE THERE

10:40AM 21   WAS A CONFIDENTIAL INFORMANT THAT THE UNITED STATES ATTORNEY

10:40AM 22   HAD USED, INTERVIEWED, RECEIVED INFORMATION FROM, AND THEN WHEN

10:40AM 23   THAT WITNESS WAS PUT ON THE STAND, TESTIFIED CONTRARY TO?

10:40AM 24       AND THE UNITED STATES ATTORNEY HAD FULL KNOWLEDGE.  HE HAD

10:40AM 25   INTERVIEWED HIM, KNEW THE STATEMENT, AND RATHER THAN PRESENT

| | | |
|---|---|---|
| 10:40AM | 1 | THAT TO THE COURT AND TO THE PARTIES, HE ALLOWED THAT TO GO |
| 10:40AM | 2 | FORWARD, WHICH THEN RESULTED IN A CONVICTION.  OF COURSE IT WAS |
| 10:40AM | 3 | REVERSED, BECAUSE AS YOU POINT OUT, THE COURT, THE REVIEWING |
| 10:41AM | 4 | COURT FOUND THAT THAT CONDUCT WHERE THE WITNESS ACTUALLY, |
| 10:41AM | 5 | EXCUSE ME, THE UNITED STATES ATTORNEY ACTUALLY KNEW THAT, IN |
| 10:41AM | 6 | FACT, PERJURY WAS TAKING PLACE IN A COURTROOM, THAT IS |
| 10:41AM | 7 | SOMETHING THAT THE JUSTICE SYSTEM CANNOT, AND THAT WAS THE |
| 10:41AM | 8 | CONDUCT THERE. |
| 10:41AM | 9 | MR. DAVIES:  YES. |
| 10:41AM | 10 | THE COURT:  THAT PARTICULAR -- IT SEEMS IF I RECALL |
| 10:41AM | 11 | CORRECTLY, IT SEEMS THAT THE U.S. ATTORNEY WAS THE ONE THAT |
| 10:41AM | 12 | INTERVIEWED AND RECEIVED THE INFORMATION DIRECT FROM THE |
| 10:41AM | 13 | WITNESS. |
| 10:41AM | 14 | MR. DAVIES:  RIGHT.  RIGHT. |
| 10:41AM | 15 | THE COURT:  RIGHT. |
| 10:41AM | 16 | MR. DAVIES:  BUT IT IS DEFINITELY A PRINCIPLE THAT |
| 10:41AM | 17 | HAS MORE THAN JUST THAT ONE PARTICULAR APPLICATION. |
| 10:41AM | 18 | WE CAN'T HAVE THE GOVERNMENT ALLOWING UNCORRECTED |
| 10:41AM | 19 | TESTIMONY TO SIT THERE EITHER, AND THAT IS ALSO IN THE NAPUE |
| 10:41AM | 20 | DECISION.  IT'S BEEN EXTENDED IN OTHER CASES. |
| 10:41AM | 21 | AGAIN, WE DON'T HAVE TO BE RIGHT ON THE MERITS.  WE JUST |
| 10:41AM | 22 | HAVE TO BE FAIRLY DEBATABLE. |
| 10:41AM | 23 | THE COURT:  RIGHT. |
| 10:41AM | 24 | MR. DAVIES:  I MEAN, I'M SORRY TO REPEAT MYSELF ON |
| 10:41AM | 25 | THAT. |

| | | |
|---|---|---|
| 10:41AM | 1 | THE COURT:  NO.  YOU SHOULD. |
| 10:41AM | 2 | MR. DAVIES:  BUT I THINK FOR THIS PARTICULAR |
| 10:41AM | 3 | PROCEEDING AND FOR THIS PARTICULAR CONTEXT AND FOR THIS |
| 10:42AM | 4 | PARTICULAR DECISION, YOUR HONOR, THAT IS A FUNDAMENTAL POINT. |
| 10:42AM | 5 | IF YOU CAN DISTINGUISH NAPUE, WE CAN TALK ABOUT |
| 10:42AM | 6 | EXTENSIONS, BUT WE CLEARLY HAVE AN OBLIGATION ON THE GOVERNMENT |
| 10:42AM | 7 | THAT WAS NOT FULFILLED AND THAT THE LEGAL SYSTEM AT LEAST |
| 10:42AM | 8 | FAVORABLY SHOULD NOT PERMIT. |
| 10:42AM | 9 | THE COURT:  OKAY.  THANK YOU. |
| 10:42AM | 10 | SHOULD WE TURN TO THE CONSTRUCTIVE AMENDMENT NOW?  LET'S |
| 10:42AM | 11 | DO THAT.  TELL ME YOUR THOUGHTS, MR. DAVIES, ON THAT. |
| 10:42AM | 12 | MR. DAVIES:  WELL, I'D LIKE TO START WITH THE FIFTH |
| 10:42AM | 13 | AMENDMENT WHICH SAYS THAT NO PERSON SHALL BE HELD TO ANSWER FOR |
| 10:42AM | 14 | A CRIME UNLESS ON INDICTMENT OF A GRAND JURY.  INDICTMENT OF A |
| 10:42AM | 15 | GRAND JURY.  THAT'S WHAT OUR FIFTH AMENDMENT SAYS, YOUR HONOR. |
| 10:42AM | 16 | AND THEN THE SUPREME COURT'S STIRONE CASE PUTS IT THIS |
| 10:42AM | 17 | WAY, "WE ALL HAVE A RIGHT TO BE TRIED ONLY ON CHARGES PRESENTED |
| 10:42AM | 18 | IN AN INDICTMENT RETURNED BY A GRAND JURY."  SO IT'S A |
| 10:42AM | 19 | FUNDAMENTAL PART OF OUR CONSTITUTION THAT WE HAVE A GRAND JURY. |
| 10:42AM | 20 | THE QUESTION HERE IS WHETHER THE THIRD SUPERSEDING |
| 10:42AM | 21 | INDICTMENT MEETS THAT STANDARD BECAUSE NOWHERE IS FRAUD RELATED |
| 10:43AM | 22 | TO INACCURATE RESULTS ON CONVENTIONAL TESTS. |
| 10:43AM | 23 | NOW, FOR -- YOUR HONOR ENGAGED WITH THIS IN THE FIRST MIL |
| 10:43AM | 24 | RULING, AND WHAT YOUR HONOR SAID AND FOCUSSED ON PARAGRAPH 18 |
| 10:43AM | 25 | SAYING THAT WHEN THE INDICTMENT SAYS QUOTE, "THERANOS TEST |

10:43AM 1    RESULTS," IT INCLUDES WHAT WE JUST MENTIONED.

10:43AM 2        AND FOR SEVERAL REASONS.  I JUST THINK THAT'S FAIRLY

10:43AM 3    DEBATABLE.

10:43AM 4        THE FIRST IS WHEN THE INDICTMENT WANTS TO TALK ABOUT

10:43AM 5    CONVENTIONAL TECHNOLOGY, IT USES THE PHRASE CONVENTIONAL

10:43AM 6    TECHNOLOGY.  IT TALKS ABOUT CONVENTIONAL LABS WITH CONVENTIONAL

10:43AM 7    METHODS AND MACHINES TO DO CONVENTIONAL BLOOD TESTING.  THAT'S

10:43AM 8    AT PARAGRAPH 6, 12, AND 17.

10:43AM 9        SO WE HAVE A DOCUMENT THAT KNOWS HOW TO SAY CONVENTIONAL

10:43AM 10   BLOOD TESTING INSTEAD OF SAYING THERANOS TESTING.

10:43AM 11       AND SO THAT'S THE FIRST POINT.

10:43AM 12       AND THE SECOND IS AT PARAGRAPHS 5 AND 6 THE DOCUMENT IS

10:44AM 13   DEFINING ITS TERMS AND IT SAYS THERANOS'S PROPRIETARY ANALYZING

10:44AM 14   TECHNOLOGY THAT COULD RUN CLINICAL TESTS WITH A TINY DROP.

10:44AM 15   THAT'S PARAGRAPH 5.

10:44AM 16       THERANOS'S PROPRIETARY TEST RESULTS, THAT'S PARAGRAPH 6.

10:44AM 17       SO IF THE QUESTION IS WHETHER THIS DOCUMENT IS TALKING

10:44AM 18   ABOUT INACCURATE RESULTS OF CONVENTIONAL TESTS, THERE'S

10:44AM 19   CERTAINLY A FAIRLY DEBATABLE ARGUMENT THAT GIVEN THE PIECES OF

10:44AM 20   IT THAT I JUST MENTIONED, THAT IT DID NOT INCLUDE INACCURATE

10:44AM 21   RESULTS OF CONVENTIONAL TESTS.

10:44AM 22       AND AT TRANSCRIPT 45 WE HAVE THE GOVERNMENT SAYING QUOTE,

10:44AM 23   "ONE POSSIBLE WAY TO READ THE INDICTMENT."  SO WE HAVE WORDS

10:44AM 24   "CONVENTIONAL TESTS," WE HAVE A DEFINITION OF "THERANOS TEST

10:44AM 25   RESULTS," WE HAVE THE GOVERNMENT AGREEING, AND THEN ON TOP OF

10:44AM  1    ALL OF THAT WE HAVE DE NOVO APPELLATE REVIEW, WHAT THIS

10:44AM  2    DOCUMENT MEANS.

10:44AM  3        AND SO THAT'S WHY WE THINK AS A TEXTURAL MATTER IT IS NOT

10:44AM  4    INCLUDING THE CHARGE.

10:44AM  5        AND THEN THE QUESTION IS, OKAY, SO IT DOESN'T INCLUDE THE

10:45AM  6    CHARGE, WELL, THEN WHAT?

10:45AM  7        WELL, A LOT OF EVIDENCE CAME IN, YOUR HONOR, THAT WAS ONLY

10:45AM  8    RELEVANT TO THE CHARGES NOT IN THE DOCUMENT, TO THE INACCURATE

10:45AM  9    RESULTS, THE CONVENTIONAL TESTS.

10:45AM 10        THE BIGGEST ONE I THINK IS WHEN YOU HAVE THE CMS INSPECTOR

10:45AM 11    TALKING ABOUT REGULATORY PROBLEMS, MAKING AN IMMEDIATE JEOPARDY

10:45AM 12    FINDING.  THAT IS POWERFUL EVIDENCE.

10:45AM 13        WE HAVE TWO WITNESSES WHO WERE TESTED ON NON-THERANOS

10:45AM 14    MACHINES.

10:45AM 15        SO WE HAVE AN INDICTMENT CHARGING THAT DOES NOT INCLUDE

10:45AM 16    THE CHARGE THAT WE'RE TALKING ABOUT, WE HAVE THAT BECAUSE OF

10:45AM 17    THAT, WE HAVE A COMPLEX OF FACTS COMING IN, AND THAT WILL HIT

10:45AM 18    ALL COUNTS.

10:45AM 19        ON THE ALL COUNTS POINT, YOUR HONOR, THE INDICTMENT ITSELF

10:45AM 20    USES THE PHRASE "ACCURACY AND RELIABILITY" TO HIT BOTH THE

10:45AM 21    INVESTOR COUNTS AND THE PATIENT COUNTS.

10:45AM 22        WE HAVE THE GOVERNMENT IN ITS PAPERS IN THIS PARTICULAR

10:45AM 23    MOTION SAYING ACCURACY AND RELIABILITY ARE THE KEY OVERLAPPING

10:46AM 24    REPRESENTATIONS BETWEEN THE TWO FRAUD CHARGES.

10:46AM 25        AND SO WE HAVE AN ARGUMENT WHERE WE HAVE AN INDICTMENT

| | | |
|---|---|---|
| 10:46AM | 1 | THAT DOESN'T INCLUDE THE CHARGE WE'RE TALKING ABOUT, WE HAVE |
| 10:46AM | 2 | BECAUSE OF THAT, BECAUSE OF THAT WE HAVE ALL OF THIS EVIDENCE |
| 10:46AM | 3 | COMING IN AND IT HITS ALL COUNTS. |
| 10:46AM | 4 | AND BECAUSE THE GRAND JURY IS A REALLY IMPORTANT PROCESS, |
| 10:46AM | 5 | THE REVIEW HERE IS ACTUALLY STRUCTURAL, THAT IT'S JUST |
| 10:46AM | 6 | REVERSAL, BECAUSE AGAIN, WE HAVE THE GOVERNMENT NOT COMPLYING |
| 10:46AM | 7 | WITH WHAT OUR CONSTITUTION EXPECTS. |
| 10:46AM | 8 | THERE IS A GRAND JURY PROCESS WHICH PROTECTS US ALL FROM |
| 10:46AM | 9 | THE EXECUTIVE BRANCH EXPANDING INDICTMENTS. THIS WAS CLEARLY |
| 10:46AM | 10 | AN EXPANSION OF THE INDICTMENT. THEY DID NOT GO BACK TO THE |
| 10:46AM | 11 | GRAND JURY. WE DO NOT KNOW HOW THE GRAND JURY WOULD HAVE |
| 10:46AM | 12 | RULED. AND SO THAT IS WHY, AT LEAST FAIRLY DEBATABLE, AND WE |
| 10:46AM | 13 | HAVE A SUBSTANTIAL LIKELIHOOD AND WE HAVE IT HERE AND WE |
| 10:46AM | 14 | REQUIRE A NEW TRIAL ON ALL COUNTS. |
| 10:47AM | 15 | THE COURT: OKAY. THANK YOU. |
| 10:47AM | 16 | DOES IT MATTER THAT THE JURY INSTRUCTION 15 AND 28 TALKED |
| 10:47AM | 17 | ABOUT THE REGULATORY ASPECT AND WHAT THE JURY COULD NOT AND |
| 10:47AM | 18 | WOULD NOT AND SHOULD NOT DO? AND I THINK IT WAS 15 WAS THE |
| 10:47AM | 19 | ACTIVITIES NOT CHARGED. SO THE JURY HAD SOME INFORMATION, SOME |
| 10:47AM | 20 | GUIDANCE ON THAT. |
| 10:47AM | 21 | DOES THAT HAVE ANY IMPACT? |
| 10:47AM | 22 | MR. DAVIES: I DON'T BELIEVE SO. I RECALL IT BEING |
| 10:47AM | 23 | A QUITE PRECISE INSTRUCTION. BUT ALSO, THIS IS A STRUCTURAL |
| 10:47AM | 24 | ERROR. AGAIN, THIS IS NOT SOMETHING THAT WE WANT THE |
| 10:47AM | 25 | GOVERNMENT DOING, GETTING AN INDICTMENT AND THEN EXPANDING IT |

10:47AM 1 BEYOND WHAT THE CRIMINAL DEFENDANT EXPECTS. SO THE SHORT

10:47AM 2 ANSWER IS NO, YOUR HONOR.

10:47AM 3 THE COURT: OKAY. THANK YOU.

10:47AM 4 LET ME ASK ANOTHER QUESTION, WHY ISN'T THIS, ASSUMING

10:47AM 5 EVERYTHING THAT YOU'VE SAID IS ACCURATE, AND I'M NOT

10:47AM 6 DISCOUNTING IT, BUT IS IT POSSIBLE THAT THIS IS A VARIANCE

10:47AM 7 SITUATION AS OPPOSED TO AN AMENDMENT SITUATION?

10:47AM 8 MR. DAVIES: IT'S TOO FUNDAMENTAL, YOUR HONOR, FOR

10:47AM 9 THE REASONS I GAVE. TO HAVING A FEDERAL REGULATORY COME IN AND

10:48AM 10 USE THE WORD "IMMEDIATE JEOPARDY" ON A COUNT THAT IS NOT --

10:48AM 11 IT'S SO FUNDAMENTAL TO THE ACCURACY AND RELIABILITY OF THE

10:48AM 12 TESTS, AND THEN THE INDICTMENT ITSELF USES ACCURACY AND

10:48AM 13 RELIABILITY IN BOTH CONTEXTS, AND SO, NO, YOUR HONOR.

10:48AM 14 THE COURT: OKAY. THANK YOU.

10:48AM 15 MS. VOLKAR.

10:48AM 16 MS. VOLKAR: THANK YOU, YOUR HONOR.

10:48AM 17 FOR REASONS I'LL SAY IN JUST A MOMENT, THE GOVERNMENT

10:48AM 18 BELIEVES IT'S NOT A VARIANCE OR A CONSTRUCTIVE AMENDMENT, BUT I

10:48AM 19 DO WANT TO START WITH THE LAST REQUIREMENT THAT MR. BALWANI HAS

10:48AM 20 TO DEMONSTRATE BECAUSE I BELIEVE, AS WITH THE LAST ONE, THINK

10:48AM 21 THAT WOULD BE A HURDLE THAT HE CAN'T OVERCOME EVEN AS WE DEBATE

10:48AM 22 THE MERITS OR WHETHER OR NOT THE QUESTION IS FAIRLY DEBATABLE,

10:48AM 23 AND THAT IS THAT HIS CONSTRUCTIVE AMENDMENT ARGUMENT WAS NOT

10:48AM 24 PRESERVED. AND I'M HAPPY TO GO INTO THAT FURTHER, BUT THIS IS

10:48AM 25 THE FIRST TIME THAT WE HAVE EVER SEEN OR HEARD CONSTRUCTIVE

10:48AM 1    AMENDMENT.  AND SO THAT'S, AS WE KNOW FROM THE <u>MILLER</u> CASE

10:48AM 2    ADOPTED BY THE NINTH CIRCUIT, THAT'S A BAR TO FINDING THAT IT'S

10:48AM 3    LIKELY TO RESULT IN REVERSAL.

10:48AM 4        THE SECOND REASON IS THAT EVEN IF MR. DAVIES IS RIGHT

10:49AM 5    ABOUT EVERYTHING, WHICH OF COURSE WE CONTEST FOR REASONS I'LL

10:49AM 6    GET TO IN A MOMENT, THIS IMPACTS THE PATIENT COUNTS.

10:49AM 7        AND WHILE HE IS CORRECT AND THE GOVERNMENT STANDS BY THAT

10:49AM 8    THE ACCURACY AND RELIABILITY IS ONE OF THE CHARGED

10:49AM 9    MISREPRESENTATIONS, IT IS THE UNDERLYING CHARGE BETWEEN THE TWO

10:49AM 10   DIFFERENT SCHEMES TO DEFRAUD.  I BELIEVE EVEN IN CLOSING,

10:49AM 11   MR. SCHENK EMPHASIZED HOW IT'S QUITE IMPORTANT TO THE PATIENTS.

10:49AM 12   OBVIOUSLY WHEN YOU GO TO GET A BLOOD TEST, ACCURACY IS

10:49AM 13   PARAMOUNT, BUT SIMPLY BECAUSE IT IS SUFFICIENT, DOESN'T MEAN

10:49AM 14   THAT IT IS NECESSARY TO THE JURY'S ULTIMATE CONCLUSION.  AND

10:49AM 15   THIS IS WHERE THE DEFENSE CONFUSES AND CONFLATES THOSE TWO

10:49AM 16   THINGS.

10:49AM 17       THE FACT THAT ONE SUBPART OF 12(A), ONE OF FOUR DIFFERENT

10:49AM 18   TYPES OF MISREPRESENTATIONS THAT ARE MENTIONED IN THE THIRD

10:49AM 19   SUPERSEDING INDICTMENT, PARAGRAPH 12(A) OF THE TYPES OF

10:50AM 20   MISREPRESENTATIONS ABOUT THE CAPABILITIES OF THE DEVICE THAT

10:50AM 21   MS. HOLMES AND MR. BALWANI MADE TO INVESTORS, THE FACT THAT

10:50AM 22   THAT IS ACCURACY AND RELIABILITY, THAT DOES NOT OVERCOME ALL OF

10:50AM 23   THE OTHER EVIDENCE THAT THE GOVERNMENT PRESENTED ON THE AT

10:50AM 24   LEAST SEVEN OTHER CATEGORIES NOT COUNTING SUBCATEGORIES.

10:50AM 25       AND WE KNOW, FOR EXAMPLE, THAT ONE OF THOSE CATEGORIES, I

10:50AM 1   BELIEVE IT'S PARAGRAPH G OF -- PARAGRAPH 12(G), PARDON ME,

10:50AM 2   TALKS ABOUT THE USE OF CONVENTIONAL DEVICES AND HOW MR. BALWANI

10:50AM 3   AND MS. HOLMES HID THAT FROM INVESTORS.

10:50AM 4       SO WHEN WE HAVE ALL OF THESE OTHER CATEGORIES OF

10:50AM 5   MISREPRESENTATION WITH RESPECT TO THE INVESTORS, I DON'T THINK

10:50AM 6   THAT MR. BALWANI CAN SAY EVEN IF EVERYTHING THAT MR. DAVIES

10:50AM 7   SAYS IS CORRECT AND THE NINTH CIRCUIT AGREES WITH HIM, THAT

10:50AM 8   IT'S LIKELY TO RESULT IN REVERSAL ON ALL COUNTS.

10:50AM 9       SO I WANTED TO START THERE BECAUSE I THINK IT'S THE

10:50AM 10  HIGHEST HURDLE FOR HIM TO OVERCOME.

10:50AM 11      BUT THAT BEING SAID, THERE IS NO CONSTRUCTIVE AMENDMENT

10:50AM 12  AND THERE IS NO VARIANCE HERE.  EVEN IF WE ARE TALKING ABOUT

10:51AM 13  THE MERITS, I DO NOT BELIEVE THAT IT IS EVEN FAIRLY DEBATABLE.

10:51AM 14      AND STARTING WITH I GUESS THE VARIANCE POINT FIRST, THE

10:51AM 15  THIRD SUPERSEDING INDICTMENT HAS A BILL OF PARTICULARS -- OR

10:51AM 16  HAS IN IT SPECIFIC TESTS AND THERE WAS ALSO A BILL OF

10:51AM 17  PARTICULARS AS YOUR HONOR WILL RECALL.

10:51AM 18      AND ON BOTH OF THOSE LISTS ARE THE VERY TESTS THAT

10:51AM 19  PATIENTS, MR. BINGHAM AND MS. TOMPKINS WHO TESTIFIED AT TRIAL,

10:51AM 20  THEIR TESTS ARE ON THAT LIST.  SO EVEN THOUGH THOSE TWO TESTS

10:51AM 21  WERE NOT RUN ON THE THERANOS ANALYZER, THE EDISON, THE TSPU,

10:51AM 22  THOSE -- MR. BALWANI HAS BEEN ON NOTICE ABOUT THOSE TESTS BEING

10:51AM 23  AT ISSUE AND THOSE SPECIFIC PATIENTS BEING AT ISSUE FROM THE

10:51AM 24  THIRD SUPERSEDING INDICTMENT.

10:51AM 25      AND I'LL COME BACK TO THE CMS REPORT IN JUST A MOMENT.

10:51AM  1         THERE IS ALSO NO VARIANCE BETWEEN THE GRAND JURY TESTIMONY

10:52AM  2    BECAUSE IF YOU LOOK AT THE GRAND JURY TESTIMONY, WHICH

10:52AM  3    MR. DAVIES PUBLICALLY FILED ON THE DOCKET WITHOUT ANY REDACTION

10:52AM  4    OR SEALING, YOU CAN SEE THAT THE TESTIMONY THAT AGENT MCCOLLOW

10:52AM  5    GAVE ABOUT THOSE TWO COUNTS, MS. TOMPKINS AND MR. BINGHAM,

10:52AM  6    MATCHES WHAT THEY SAID WHEN THEY CAME IN HERE AT TRIAL AND

10:52AM  7    TESTIFIED.

10:52AM  8         AND IF I'M NOT MISTAKEN, I BELIEVE PORTIONS OF THE CMS

10:52AM  9    REPORT WERE ALSO DISCUSSED BEFORE THE GRAND JURY THAT LED TO

10:52AM  10    THE THIRD SUPERSEDING INDICTMENT.

10:52AM  11         SO WHAT WE'RE MISSING HERE PARTICULARLY WHEN WE THINK

10:52AM  12    ABOUT A VARIANCE IS ANY KIND OF A MISMATCH BETWEEN THE FACTS

10:52AM  13    THAT WERE PRESENTED TO THE GRAND JURY AND THE FACTS THAT WERE

10:52AM  14    PRESENTED TO THE PETIT JURY, AND, THEREFORE, WE CANNOT HAVE A

10:52AM  15    VARIANCE.

10:52AM  16         NOW, I WANT TO TALK ABOUT THE CONSTRUCTIVE AMENDMENT

10:52AM  17    PORTION BECAUSE YOUR HONOR RIGHTFULLY POINTED OUT WITH THE JURY

10:52AM  18    INSTRUCTION, THE JURY WAS -- THIS IS WHERE THE PART ABOUT THE

10:52AM  19    CMS REPORT BECOMES QUITE CRITICAL.  THE JURY WAS SPECIFICALLY

10:53AM  20    INSTRUCTED NOT TO CONSIDER THE FACT THAT CMS CAME IN AND MADE

10:53AM  21    THIS IMMEDIATE JEOPARDY FINDING AND FOUND THAT THERANOS MAY NOT

10:53AM  22    HAVE MET ALL OF THE RIGHT REGULATORY STANDARDS FROM CMS'S VIEW.

10:53AM  23         THE JURY WAS TOLD THAT THEY COULD NOT CONVICT MR. BALWANI

10:53AM  24    EVEN IF THEY BELIEVED MS. BENNETT WHEN SHE TALKED ABOUT THOSE

10:53AM  25    REGULATORY VIOLATIONS, WHEN SHE WALKED THROUGH THE D-TAGS AND

10:53AM 1    WHAT THIS PARTICULAR VIOLATION MEANT WITH RESPECT TO THIS

10:53AM 2    REGULATORY CODE.

10:53AM 3         ALTHOUGH THAT WAS IMPORTANT FOR A DIFFERENT REASON, THE

10:53AM 4    JURY WAS INSTRUCTED THEY COULD NOT CONSIDER THAT WHEN

10:53AM 5    CONSIDERING MR. BALWANI'S GUILT.

10:53AM 6         AND THE REASON WHY IT WAS RELEVANT, OF COURSE, WAS BECAUSE

10:53AM 7    ONE OF CMS'S FINDINGS THAT WAS QUITE CRITICAL TO THIS CASE, WAS

10:53AM 8    THAT ALL TESTS ON THE THERANOS ANALYZER DEVICE WERE SUSPECT.

10:53AM 9    AND WE KNOW FROM THE HOLMES TRIAL THAT LED DR. DAS TO RECOMMEND

10:54AM 10   INTERNALLY THAT ALL TESTS ON THE THERANOS DEVICE SHOULD BE

10:54AM 11   VOIDED AND THERANOS, OF COURSE, DID ULTIMATELY VOID ALL OF

10:54AM 12   THOSE TESTS.  SO IT'S AN IMPORTANT PART OF THE SCHEME.

10:54AM 13        NOW, THE REASON WHY THERE'S NO CONSTRUCTIVE AMENDMENT

10:54AM 14   BETWEEN THE LANGUAGE OF THE THIRD SUPERSEDING INDICTMENT AND

10:54AM 15   THAT THOSE FACTS THAT WERE PRESENTED AT TRIAL IS FIRST AND

10:54AM 16   FOREMOST, THE JURY INSTRUCTIONS, WHICH I THINK GAVE GUARDRAILS

10:54AM 17   TO THE JURY CONSIDERING SOMETHING BEYOND THE PARAMETERS.

10:54AM 18        BUT ALSO FOR THE REASONS THAT YOUR HONOR FOUND PRETRIAL,

10:54AM 19   THERE WAS NO QUESTION ABOUT WHETHER OR NOT, PARDON ME, THE

10:54AM 20   PATIENTS WHO WERE RECEIVING INFORMATION, THEY WERE NOT

10:54AM 21   NECESSARILY TOLD WHAT TECHNOLOGY THEIR BLOOD TESTS WERE GOING

10:54AM 22   TO BE RUN ON.  THEY JUST KNEW THAT THERANOS WAS RUNNING THEIR

10:54AM 23   BLOOD TESTS AND THAT IN CERTAIN CASES AND IN THE CERTAIN

10:55AM 24   PATIENTS WHO TESTIFIED, THEY WERE RECEIVING INACCURATE AND

10:55AM 25   UNRELIABLE BLOOD TESTS.

10:55AM 1     SO IN SUM, I THINK THAT THE KEY PART, THE KEY POINT OF THE

10:55AM 2   SUPERSEDING -- THE THIRD SUPERSEDING INDICTMENT IS TO PROVIDE

10:55AM 3   NOTICE TO MR. BALWANI OF THE CHARGES.  HE WAS ON NOTICE.  THERE

10:55AM 4   WAS A BILL OF PARTICULARS.  THERE WAS A LIST OF TESTS.  WE

10:55AM 5   PRESENTED PATIENTS TESTIFYING WITHIN THOSE PARAMETERS.

10:55AM 6     AND WHEN IT COMES TO THE CMS REPORT, IT'S IMPORTANT --

10:55AM 7   MR. DAVIES IS PARSING OUT SPECIFIC PIECES OF IT, BUT THERE WERE

10:55AM 8   STILL OTHER PIECES THAT WERE CRITICALLY RELEVANT OR QUITE

10:55AM 9   RELEVANT OR WERE GOING TO THE CORE OF CERTAIN PIECES OF THE

10:55AM 10  CASE, AND EVEN IF WE'RE TALKING ABOUT ONE PORTION OF IT, THAT

10:55AM 11  COULD HAVE BEEN SOLVED WITH OBJECTIONS OR WAYS TO LIMIT IT IN

10:55AM 12  THE MOMENT THAT DID NOT OCCUR IN THIS CASE AS WE KNOW IT DID

10:55AM 13  OCCUR IN THE HOLMES CASE.

10:55AM 14    SO WITH THAT, THERE'S NO VARIANCE, THERE'S NO CONSTRUCTIVE

10:56AM 15  AMENDMENT.  AND AGAIN, EVEN IF IT'S FAIRLY DEBATABLE TO

10:56AM 16  MR. DAVIES'S POINT, WE COULD BE HERE FOR MUCH LONGER PROBABLY

10:56AM 17  TALKING ABOUT THIS, EVEN IF IT'S FAIRLY DEBATABLE, IT WASN'T

10:56AM 18  PRESERVED, AND IT'S NOT LIKELY TO RESULT IN REVERSAL ON ALL

10:56AM 19  COUNTS.

10:56AM 20          THE COURT:  THANK YOU.

10:56AM 21          MR. DAVIES:  SO ON THE QUESTION OF PRESERVATION, I

10:56AM 22  WOULD DIRECT YOU TO TRANSCRIPT 32.  HERE'S THE QUOTE:  "THE

10:56AM 23  GOVERNMENT SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE

10:56AM 24  RELATING TO ACCURACY AND UNRELIABILITY PROBLEMS ON THE

10:56AM 25  COMMERCIAL TESTING.  THAT IS SIMPLY OUTSIDE OF THE INDICTMENT."

| | | |
|---|---|---|
| 10:56AM | 1 | THAT IS THE ARGUMENT. |
| 10:56AM | 2 | THE FACT THAT PARTIES DON'T USE PARTICULAR LINGO AT |
| 10:56AM | 3 | PARTICULAR TIMES IS JUST NOT RELEVANT TO THE QUESTION OF |
| 10:56AM | 4 | WHETHER IT WAS RAISED.  THAT IS A VERY CLEAR RAISING OF THIS |
| 10:56AM | 5 | ISSUE.  THE FACT THAT YOUR HONOR ENGAGED IN THE MEETING OF THE |
| 10:56AM | 6 | TSI SHOWS THAT IT WAS DEFINITELY FOR THE PARTIES. |
| 10:56AM | 7 | STANDARD OF REVIEW HERE UNDER STIRONE IT'S WHAT MIGHT HAVE |
| 10:57AM | 8 | BEEN THE BASIS UPON WHICH THE TRIAL JURY CONVICTED PETITIONER. |
| 10:57AM | 9 | MIGHT HAVE BEEN THE BASIS UPON WHICH THE TRIAL JURY CONVICTED |
| 10:57AM | 10 | THE PETITIONER.  THAT IS WHAT WE CAN SHOW UNDER STIRONE. |
| 10:57AM | 11 | THE QUESTION OF THESE TWO WITNESS, BINGHAM AND TOMPKINS, |
| 10:57AM | 12 | IF YOU LOOK AT THE TRANSCRIPT PAGES AT 5953 TO 56, 5977 TO 91, |
| 10:57AM | 13 | THERE IS NOTHING TO MAKE CLEAR THAT THE GOVERNMENT KNEW OF |
| 10:57AM | 14 | THOSE TESTS, KNEW THAT THOSE TESTS WERE UNCONVENTIONAL |
| 10:57AM | 15 | TECHNOLOGY.  SO IT DOES NOT HELP THEM SHOW THAT THIS INDICTMENT |
| 10:57AM | 16 | WAS RELEVANT TO CONVENTIONAL TESTING. |
| 10:57AM | 17 | AGAIN, ON THE JURY INSTRUCTION POINT, THAT CANNOT REFUTE A |
| 10:57AM | 18 | FUNDAMENTAL PROBLEM WITH THE INDICTMENT.  IT'S A CONSTITUTION |
| 10:57AM | 19 | VIOLATION OF THE GOVERNMENT.  THAT IS WHAT HAS HAPPENED HERE. |
| 10:57AM | 20 | THE COURT:  THANK YOU.  AND TELL ME ABOUT REVERSAL |
| 10:58AM | 21 | ON ALL COUNTS?  IS THAT SOMETHING THAT HAS TO BE CONSIDERED? |
| 10:58AM | 22 | MR. DAVIES:  YES, BECAUSE -- AND THAT'S WHY WE |
| 10:58AM | 23 | STARTED WITH THE ACCURACY AND RELIABILITY.  THAT IS A |
| 10:58AM | 24 | FUNDAMENTAL THEME HERE, THE ACCURACY AND RELIABILITY OF THESE |
| 10:58AM | 25 | TESTS, THE THERANOS TESTS, AND WHEN EVIDENCE COMES IN THAT GOES |

10:58AM 1    TO ACCURACY AND RELIABILITY OF A DIFFERENT TYPE OF TEST, THAT

10:58AM 2    AFFECTS ALL OF THE COUNTS.

10:58AM 3          AND TO QUOTE THE GOVERNMENT, THIS IS IN THE MOTION, QUOTE,

10:58AM 4    "KEY OVERLAPPING REPRESENTATIONS BETWEEN THE TWO FRAUD CHARGES

10:58AM 5    ARE ACCURACY AND RELIABILITY."  THAT'S AT PAGE 11 OF THEIR

10:58AM 6    OPPOSITION.  SO THERE'S REALLY NO DISPUTE THAT ACCURACY AND

10:58AM 7    RELIABILITY ARE THE KEY OVERLAPPING REPRESENTATIONS.

10:58AM 8          THERE CAN'T BE ANY DISPUTE THAT A FEDERAL REGULATOR COMING

10:58AM 9    IN HAS A DRAMATIC IMPACT SAYING THINGS LIKE IMMEDIATE JEOPARDY.

10:58AM 10   AND IT CAN'T BE -- I GUESS THE FAIRLY DEBATABLE QUESTION IS HOW

10:58AM 11   YOU READ THE DOCUMENT, AND WE'VE BEEN OVER THAT.

10:58AM 12          THE COURT:  OKAY.

10:58AM 13          MS. VOLKAR:  I HAVE NOTHING FURTHER, YOUR HONOR,

10:59AM 14   UNLESS YOU HAVE ANY QUESTIONS FOR ME.

10:59AM 15          THE COURT:  WELL, I WAS CURIOUS ABOUT, IS THE

10:59AM 16   GOVERNMENT'S POSITION THAT THE DEFENSE READS THIS TOO NARROWLY

10:59AM 17   OR LOOKS AT THE INDICTMENT TOO NARROWLY?

10:59AM 18          AND THEN I'M GOING TO COME BACK TO MR. DAVIES AND SAY THE

10:59AM 19   CONTRARY IS THE GOVERNMENT SAYING, YOU KNOW, WE SHOULD HAVE

10:59AM 20   BROAD -- THERE ARE CASES THAT SAY THAT THE INDICTMENT SHOULD BE

10:59AM 21   READY BROADLY AND NOT NARROWLY.

10:59AM 22          MS. VOLKAR:  YES, YOUR HONOR.

10:59AM 23          AND AGAIN, I GO BACK THE POINT OF THE INDICTMENT IS TO PUT

10:59AM 24   THE DEFENDANT ON NOTICE.  I KNOW WE HAD THAT CONFERENCE

10:59AM 25   PRETRIAL AS WELL.  BUT IF YOU LOOK AT THE LANGUAGE OF IT,

10:59AM 1    PARAGRAPH 16 AND 17, AND I DO BELIEVE THAT THE PARTIES ARE IN

10:59AM 2    FULL AGREEMENT THAT PARAGRAPH 12 IS SORT OF THE PARAGRAPH THAT

10:59AM 3    LAYS OUT THE MISREPRESENTATIONS WITH RESPECT TO THE INVESTORS

10:59AM 4    AND PARAGRAPH 16 IS THE PARAGRAPH THAT LAYS OUT THE

10:59AM 5    MISREPRESENTATIONS WITH RESPECT TO THE PATIENTS.  I KNOW

10:59AM 6    THERE'S BEEN QUITE A BIT OF LITIGATION OVER THOSE TWO

10:59AM 7    PARAGRAPHS.

10:59AM 8         AND PARAGRAPH 16, WITH RESPECT TO THE PATIENT COUNTS,

10:59AM 9    READS:  "THERANOS COULD PROVIDE ACCURATE, FAST, RELIABLE, AND

11:00AM 10   CHEAP BLOOD TESTS AND TEST RESULTS, DESPITE THE DEFENDANT'S

11:00AM 11   KNOWLEDGE THAT THERANOS WAS NOT CAPABLE OF CONSISTENTLY

11:00AM 12   PRODUCING ACCURATE AND RELIABLE RESULTS FOR CERTAIN BLOOD

11:00AM 13   TESTS, INCLUDING," AND THEN THAT'S THE LIST THAT I MENTIONED.

11:00AM 14        AND THIS IS SOMETHING THAT WAS A KEY DISTINCTION THAT WE

11:00AM 15   DISCUSSED PRETRIAL AND ALSO THAT WAS A KEY PART OF YOUR HONOR'S

11:00AM 16   RULING.  THAT IS THERANOS.  DESPITE THE FACT THAT THERANOS'S

11:00AM 17   TECHNOLOGY IS MENTIONED IN OTHER PARTS OF THE INDICTMENT, WHEN

11:00AM 18   IT COMES TO WHAT WAS THE MISREPRESENTATION, THE INDICTMENT IS

11:00AM 19   CLEAR, THERANOS, THE COMPANY, THE COMPANY SAID THAT IT COULD

11:00AM 20   OFFER ACCURATE, FAST, RELIABLE, AND CHEAP BLOOD TESTS DESPITE

11:00AM 21   THE DEFENDANT'S KNOWLEDGE THAT THERANOS WAS NOT CAPABLE OF

11:00AM 22   DOING SO.

11:00AM 23        AND IN CASE THERE IS ANY DOUBT, THOSE CLAUSES ARE

11:00AM 24   IMMEDIATELY FOLLOWED BY A LIST OF TESTS THAT INCLUDE HIV AND

11:00AM 25   THE PLATELETS TEST FOR THE TWO VICTIMS THAT PRETRIAL DEFENDANT

| | | |
|---|---|---|
| 11:01AM | 1 | WAS SEEKING TO PRECLUDE THEIR TESTIMONY ENTIRELY AND NOW IN |
| 11:01AM | 2 | THIS POSTURE THEY'RE SAYING ESSENTIALLY THAT THEY SHOULDN'T |
| 11:01AM | 3 | HAVE BEEN ABLE TO TESTIFY BECAUSE THEIR BLOOD TESTS WEREN'T |
| 11:01AM | 4 | DONE ON THE THERANOS ANALYZER. |
| 11:01AM | 5 | BUT AGAIN, I SAY, THE DEFENDANT IS READING -- IS BEING |
| 11:01AM | 6 | HYPER TECHNICAL AND ALSO IGNORING THE KEY LANGUAGE WITH RESPECT |
| 11:01AM | 7 | TO THE ACTUAL MISREPRESENTATION ALLEGED. |
| 11:01AM | 8 | THE COURT: MR. DAVIES. |
| 11:01AM | 9 | MR. DAVIES: TO ANSWER YOUR QUESTION, YOUR HONOR, |
| 11:01AM | 10 | THE REVIEW HERE IS A COMMON SENSE READING OF THE INDICTMENT. |
| 11:01AM | 11 | I THINK YOU WERE ASKING SHOULD IT BE NARROWLY CONSTRUED? |
| 11:01AM | 12 | SHOULD IT BE BROADLY CONSTRUED? AND THERE'S AN AGREEMENT AMONG |
| 11:01AM | 13 | THE PARTIES THAT IT'S A COMMON SENSE READING. THAT'S THE LENS |
| 11:01AM | 14 | TO WHICH YOU NEED TO LOOK AT THIS INDICTMENT. |
| 11:01AM | 15 | SO IT'S FAIRLY DEBATABLE -- I AM NOT GOING TO -- I MADE |
| 11:01AM | 16 | THOSE POINTS, YOUR HONOR. BUT THE LENS AT WHICH YOU NEED TO |
| 11:01AM | 17 | LOOK THROUGH THIS IS A COMMON SENSE LENS. IT'S NOT |
| 11:02AM | 18 | PARTICULARLY HARSH EITHER WAY I WOULD SAY. |
| 11:02AM | 19 | THE COURT: OKAY. THANK YOU. |
| 11:02AM | 20 | WELL, LET ME TURN NOW TO ANY OTHER DISCUSSION THEN ON |
| 11:02AM | 21 | THOSE TWO TOPICS. I TOLD YOU THOSE WERE THE ONES THAT I WANTED |
| 11:02AM | 22 | SOME ADDITIONAL HELP ON. YOUR PLEADINGS OTHERWISE WERE FULSOME |
| 11:02AM | 23 | ON THE OTHER ISSUES, THE OTHER SIX ISSUES THAT YOU RAISED. |
| 11:02AM | 24 | MR. DAVIES: MAY I RAISE ONE, YOUR HONOR? |
| 11:02AM | 25 | THE COURT: SURE. GO RIGHT AHEAD. |

11:02AM  1      MR. DAVIES:  SO WE WERE PLANNING TO RAISE THREE,

11:02AM  2  ALTHOUGH WE DID RAISE MORE.  THE THIRD ONE THAT WE WERE

11:02AM  3  PLANNING TO RAISE IS THE SECOND ONE, THE ONE WE PUT SECOND

11:02AM  4  ABOUT THE VIOLATION OF RULE 701, 702 EVIDENCE.

11:02AM  5      THE COURT:  THIS IS ABOUT WITNESSES, INCLUDING

11:02AM  6  MS. CHEUNG AND OTHERS WHO MAY HAVE BEEN PERMITTED TO TESTIFY AS

11:02AM  7  EXPERTS?

11:02AM  8      MR. DAVIES:  YES.  AND THAT IS AN ISSUE THAT THE

11:02AM  9  NINTH CIRCUIT CARES DEEPLY ABOUT.  WHEN YOU LOOK AT THE FEDERAL

11:02AM  10  RULES OF EVIDENCE, THE AMENDMENT NOTES FROM 2000, IT CITES THE

11:02AM  11  NINTH CIRCUIT'S CASE FIGUEROA-LOPEZ THREE TIMES.  SO OBVIOUSLY

11:02AM  12  THIS IS AN ISSUE THAT THE COURT OF APPEALS IN THIS CIRCUIT HAS

11:02AM  13  HAD A BIG INFLUENCE ON.

11:02AM  14      THE COURT:  THAT WAS A CASE, WASN'T IT WHERE -- THAT

11:03AM  15  WAS A NARCOTICS CASE, I BELIEVE, AND THE OFFICERS WERE

11:03AM  16  PERMITTED TO TESTIFY ABOUT "IN MY EXPERIENCE," IN ESSENCE, I'M

11:03AM  17  PARAPHRASING, BUT IN ESSENCE "IN MY EXPERIENCE THIS LOOKS LIKE

11:03AM  18  A DRUG RING TO ME."  SOMETHING LIKE THAT.

11:03AM  19      MR. DAVIES:  SOMETHING LIKE THAT.  OR THE CODE

11:03AM  20  WORDS, THAT IS WHAT STRUCK ME.  BUT THEY WERE ALLOWED TO

11:03AM  21  EXPLAIN CODE WORDS.

11:03AM  22      THE COURT:  RIGHT.  AND IN THIS CASE MS. CHEUNG WAS

11:03AM  23  TESTIFYING, IF I RECALL CORRECTLY, ABOUT HER TRAINING,

11:03AM  24  EXPERIENCE, AND THEN SHE TESTIFIED A LITTLE BIT ABOUT SOMETHING

11:03AM  25  ABOUT, "WELL, THAT DIDN'T LOOK RIGHT TO ME."

| | | |
|---|---|---|
| 11:03AM | 1 | IS THIS WHAT YOU'RE REFERENCING? |
| 11:03AM | 2 | MR. DAVIES:  YES, BUT SOME CLARIFICATIONS, |
| 11:03AM | 3 | YOUR HONOR.  THE WORDS "TRAINING" AND "EXPERIENCE" ARE NOT IN |
| 11:03AM | 4 | THE RULES OF EVIDENCE.  IT'S ABOUT MAKING SURE WE HAVE EXPERTS |
| 11:03AM | 5 | WHEN THEY'RE APPLYING SPECIALIZED TRAINING. |
| 11:03AM | 6 | AND I HAVE TO SAY, IT'S SURPRISING THAT THE GOVERNMENT HAS |
| 11:03AM | 7 | NOT USED AN EXPERT IN THIS CASE ON THIS TOPIC BECAUSE IT'S A |
| 11:03AM | 8 | SCIENTIFIC TOPIC THAT IS COMPLEX. |
| 11:03AM | 9 | AND TWO QUOTES FROM MS. CHEUNG ABOUT QUALITY CONTROL |
| 11:03AM | 10 | TESTING, AN INDICATION THAT THERE WAS SOME ISSUE IN THE |
| 11:03AM | 11 | ACCURACY OF THE ACTUAL DEVICE.  THAT IS AN EXPERT TESTIMONY |
| 11:04AM | 12 | APPLYING OPINION.  IT IS NOT THAT LAY WITNESS TESTIMONY. |
| 11:04AM | 13 | THE COURT:  WAS THAT ARGUED BY THE GOVERNMENT? |
| 11:04AM | 14 | MR. DAVIES:  WAS THAT? |
| 11:04AM | 15 | THE COURT:  DID THE GOVERNMENT ARGUE THAT THE JURY |
| 11:04AM | 16 | SHOULD CONVICT BECAUSE OF MS. CHEUNG'S RECOGNITION OF THE |
| 11:04AM | 17 | INACCURACY OF THE TESTING? |
| 11:04AM | 18 | MR. DAVIES:  THEY MADE THE POINT THAT BECAUSE OF |
| 11:04AM | 19 | THESE THREE WITNESSES, THAT WAS POWERFUL TESTIMONY FOR |
| 11:04AM | 20 | CONVICTION. |
| 11:04AM | 21 | THE COURT:  OKAY. |
| 11:04AM | 22 | MR. DAVIES:  THAT WAS POWERFUL TESTIMONY FOR |
| 11:04AM | 23 | CONVICTION. |
| 11:04AM | 24 | ANOTHER QUOTE FROM MS. CHEUNG, "IF YOU JUST EXTRAPOLATE |
| 11:04AM | 25 | OUT ESSENTIALLY THE PERCENTAGE OF FAILURES THAT ARE HAPPENING |

11:04AM 1   ACROSS THE SYSTEM, IT SEEMS LIKELY THAT THERE MAY BE SOME ISSUE

11:04AM 2   WITH THE CHEMISTRY." THAT IS APPLICATION OF EXPERTISE. THAT

11:04AM 3   IS SPECIALIZED OPINION APPLIED TO THIS CASE. THAT'S AT 1246 TO

11:04AM 4   48.

11:04AM 5      WE HAVE DR. PANDORI SAYING -- ASKING WHETHER THERANOS'S

11:04AM 6   TEST IS QUOTE, "MORE ACCURATE THAN COMPETITORS." THAT'S AT

11:04AM 7   1734. WHETHER IT'S GROUNDBREAKING, THAT IS AT 1608. WE HAVE

11:05AM 8   DR. ROSENDORFF TALKING ABOUT DILUTION OF ACCURACY AND

11:05AM 9   RELIABILITY, 3265 TO 3266. TESTING RANGES FOR FINGERSTICK

11:05AM 10  TECHNOLOGY, 3266. ARE ANY ERRORS SYSTEMATIC PROBLEMS, 3268 TO

11:05AM 11  69.

11:05AM 12     AND THE ISSUE THE NINTH CIRCUIT WAS WORRIED ABOUT WAS

11:05AM 13  ABOUT EXPERTS IN LAY WITNESS CLOTHING.

11:05AM 14     THAT'S EXACTLY WHAT HAPPENED HERE, YOUR HONOR. WE HAD

11:05AM 15  THREE FORMER EMPLOYEES USING THEIR SPECIALIZED KNOWLEDGE, WHICH

11:05AM 16  IS A VIOLATION OF 701(C). THAT IS WHY WE HAVE 701(C). IT WAS

11:05AM 17  ADDED BECAUSE THE NINTH CIRCUIT WAS CONCERNED ABOUT EXPERT

11:05AM 18  TESTIMONY BY PEOPLE WHO HAVE NOT BEEN QUALIFIED AS EXPERTS.

11:05AM 19        THE COURT: OKAY.

11:05AM 20        MS. VOLKAR: YOUR HONOR, I'M PREPARED TO SUBMIT ON

11:05AM 21  THE PAPERS UNLESS THE COURT HAS ANY QUESTIONS FOR ME. I KNOW

11:05AM 22  WE FULLY BRIEFED IT, BUT I AM HAPPY TO ADDRESS ANY QUESTIONS

11:05AM 23  THAT THE COURT HAS.

11:05AM 24        THE COURT: NO. THANK YOU. THANK YOU. THANKS FOR

11:05AM 25  RAISING THOSE. THANK YOU.

11:05AM 1      LET'S TURN NOW TO THE OTHER FACTORS THAT THE COURT MUST

11:06AM 2    CONSIDER IN REGARDS TO RELEASE PENDING APPEAL.

11:06AM 3      I THINK THE BURDEN IS ON YOU, MR. DAVIES, TO -- WHAT OTHER

11:06AM 4    THINGS SHOULD I CONSIDER?  LET'S TALK ABOUT FLIGHT RISK AND

11:06AM 5    SAFETY.

11:06AM 6        MR. DAVIES:  MR. BALWANI IS NOT LIKELY TO FLEE.  HE

11:06AM 7    WAS CHARGED IN JUNE OF 2018, CONVICTED JULY 20TH.  NO

11:06AM 8    SUGGESTION OF FLEEING.

11:06AM 9      HE WAS SENTENCED DECEMBER OF 2022.  NO SUGGESTION OF

11:06AM 10   FLEEING.  THE PROBATION OFFICER QUOTE, "NOT VIEWED AS A FLIGHT

11:06AM 11   RISK."

11:06AM 12     HE'S BEEN IN THIS COUNTRY 23 YEARS, STRONG CONNECTIONS TO

11:06AM 13   CALIFORNIA, MARYLAND, AND OHIO.

11:06AM 14     THE PRINCIPAL REASON THAT WE HEARD FROM THE GOVERNMENT WAS

11:06AM 15   ESSENTIALLY THAT HE WAS BORN IN PAKISTAN.  AND THEY CITED TO A

11:06AM 16   CASE WHICH HAD VERY FEW CONNECTIONS TO THIS MATTER, AND WE CAN

11:07AM 17   COME BACK TO WHY THAT MIGHT HAVE BEEN DONE.

11:07AM 18     BUT WE DON'T SEE ANY REASON THAT HE'S LIKELY TO FLEE, AND

11:07AM 19   THERE'S ALSO NO DANGER HERE TO THE COMMUNITY.  HE'S NOT IN

11:07AM 20   HEALTH CARE.  THERE'S NOTHING VIOLENT OR NO OTHER CRIMES.  AND

11:07AM 21   AT SENTENCING, THE COURT AND PROBATION FOUND SUFFICIENT

11:07AM 22   EVIDENCE OF RISK, AND THE APPEAL IS NOT FOR DELAY, YOUR HONOR.

11:07AM 23        THE COURT:  OKAY.  THANK YOU.

11:07AM 24        MS. VOLKAR:  THANK YOU, YOUR HONOR.

11:07AM 25     I THINK THAT THIS IS WHERE IT'S IMPORTANT TO RECOGNIZE NOT

11:07AM 1    ONLY THAT IT IS THE DEFENDANT'S BURDEN, BUT IT IS THE

11:07AM 2    DEFENDANT'S BURDEN TO SHOW BY CLEAR AND CONVINCING EVIDENCE

11:07AM 3    THAT HE IS -- THAT HE DOES NOT QUOTE, "POSE A RISK OF FLIGHT

11:07AM 4    AND DOES NOT POSE A DANGER TO THE COMMUNITY."  AND THAT IS

11:07AM 5    REALLY WHAT THE GOVERNMENT EMPHASIZES HERE, WHICH IS THAT IN

11:07AM 6    THIS POSTURE, AFTER MR. BALWANI HAS BEEN CONVICTED BY A JURY ON

11:07AM 7    ALL 12 COUNTS, AFTER HE HAS BEEN SENTENCED BY THE COURT, THE

11:08AM 8    BURDEN HAS SHIFTED AND CONGRESS'S VIEW IS THAT IT SHOULD BE

11:08AM 9    QUITE DIFFICULT FOR DEFENDANTS TO MEET THIS CLEAR AND

11:08AM 10   CONVINCING STANDARD AT THIS POINT IN TIME BECAUSE AFTER THEY

11:08AM 11   HAVE BEEN CONVICTED PARTICULARLY OF FELONY CONVICTIONS, HERE 12

11:08AM 12   FELONY CONVICTIONS, THEY ARE ESSENTIALLY PRESUMED TO BE A

11:08AM 13   DANGER TO THE COMMUNITY AND TO POSE A FLIGHT RISK.  SO THAT IS

11:08AM 14   WHERE WE START.

11:08AM 15       AND THE GOVERNMENT'S POINT IS THAT WHEN IT IS THE

11:08AM 16   DEFENDANT'S BURDEN TO SHOW SOMETHING THAT CAN CHANGE THAT

11:08AM 17   PRESUMPTION, CAN BALANCE AGAINST THAT, WHAT MR. BALWANI HAS PUT

11:08AM 18   FORWARD IS HIS PRETRIAL RECORD AND HIS CLOSE TIES TO THE

11:08AM 19   COMMUNITY HERE IN THE UNITED STATES, HIS CLOSE RELATIONSHIP

11:08AM 20   WITH HIS BROTHERS AND THE SUPPORT THAT HE HAS PROVIDED TO LOCAL

11:08AM 21   COMMUNITIES.

11:08AM 22       THE GOVERNMENT'S RESPONSE TO THAT IS THAT THOSE FACTORS

11:08AM 23   ARE REALLY AT BEST NEUTRAL.  THEY DON'T WEIGH AS MUCH AGAINST

11:09AM 24   THAT PRESUMPTION AS MR. BALWANI WANTS THEM TO.  BECAUSE WHAT WE

11:09AM 25   ALSO KNOW FROM MR. BALWANI, WHAT HE HAS TOLD PROBATION IS THAT

11:09AM 1     HE HAS CLOSE TIES HERE IN THE UNITED STATES, BUT HE'S ALSO VERY

11:09AM 2     CLOSE WITH HIS SISTERS IN INDIA, AND HE ALSO HELPS OUT

11:09AM 3     ORGANIZATIONS IN INDIA. AND THAT IS COMMENDABLE, AND THAT'S

11:09AM 4     PART OF WHY THEY TOLD PROBATION ABOUT THAT AND YOUR HONOR

11:09AM 5     RECOGNIZED THAT IN THE ORDER YESTERDAY.

11:09AM 6         BUT WHEN WE'RE TALKING ABOUT THE DEFENDANT MEETING HIS

11:09AM 7     BURDEN HERE, IT MEANS THAT THE TIES HE'S POINTING TO TO THIS

11:09AM 8     COMMUNITY, I DON'T THINK THAT THE COURT SHOULD WEIGHT THEM VERY

11:09AM 9     HIGH BECAUSE HE HAS TIES BOTH HERE AND ABROAD, AND THAT'S

11:09AM 10     PERFECTLY FINE TO HAVE TIES HERE AND ABROAD, BUT WE'RE ASKING

11:09AM 11     WHETHER OR NOT THE GOVERNMENT -- OR EXCUSE ME, THE DEFENDANT

11:09AM 12     CAN MEET HIS BURDEN BY CLEAR AND CONVINCING EVIDENCE. THAT'S

11:09AM 13     WHAT THE COURT HAS TO LOOK AT.

11:09AM 14         AND AGAIN, HIS PRETRIAL RECORD WHILE SO FAR HE HAS A GOOD

11:09AM 15     PRETRIAL RECORD, NO ONE IS DISPUTING THAT. WHAT WE NOW HAVE TO

11:09AM 16     WEIGH AGAINST THIS, AND THIS IS WHAT YOUR HONOR DID IN THE

11:10AM 17     KAKKAR CASE, WHAT WE NOW HAVE TO WEIGH AGAINST THAT IS THE FACT

11:10AM 18     THAT THE DEFENDANT IS FACING A SUBSTANTIAL PRISON SENTENCE OF

11:10AM 19     155 MONTHS AND HE, BEFORE TRIAL, DIDN'T KNOW IF HE WOULD OR

11:10AM 20     WOULD NOT BE CONVICTED. AND NOW HE KNOWS HE'S BEEN CONVICTED,

11:10AM 21     HE KNOWS THE SENTENCE THAT HE IS FACING, AND AGAIN, THAT IS

11:10AM 22     JUST SOMETHING THAT NEUTRALIZES THAT FACTOR FROM THE

11:10AM 23     GOVERNMENT'S PERSPECTIVE.

11:10AM 24         SO THE GOVERNMENT THINKS THAT THE TWO FACTORS THAT THE

11:10AM 25     DEFENDANT HAS PUT FORWARD TO MEET HIS CLEAR AND CONVINCING

| 11:10AM | 1 | EVIDENCE BURDEN ARE REALLY NEUTRAL AT BEST, AND THEREFORE, THE |
|---|---|---|
| 11:10AM | 2 | GOVERNMENT THINKS THAT THE PRESUMPTION SHOULD CARRY THE DAY AND |
| 11:10AM | 3 | THE PRESUMPTION SHOULD BEAT -- THE PRESUMPTION IS THAT HE POSES |
| 11:10AM | 4 | A RISK OF FLIGHT. |
| 11:10AM | 5 | SIMILARLY WITH DANGER, WHAT WE REPEATEDLY HEAR FROM THE |
| 11:10AM | 6 | DEFENDANT AND DEFENSE COUNSEL IS THAT HE DID NOT COMMIT A |
| 11:10AM | 7 | VIOLENT CRIME. HE'S NOT A VIOLENT PERSON. THE COURT FOUND |
| 11:10AM | 8 | THAT AT SENTENCING. THE GOVERNMENT HAS NEVER STATED THAT |
| 11:11AM | 9 | MR. BALWANI IS VIOLENT. |
| 11:11AM | 10 | WHAT WE ARE STATING HERE AND WHAT WE HAD PUT FORTH IN OUR |
| 11:11AM | 11 | PAPERS IS THAT, AGAIN, THERE IS THIS PRESUMPTION THAT HE POSES |
| 11:11AM | 12 | A DANGER TO THE COMMUNITY BASED ON HIS FELONY CONVICTIONS. HE |
| 11:11AM | 13 | HAS TO OVERCOME THAT PRESUMPTION. IN HIS OPENING MOTION, HE |
| 11:11AM | 14 | DOESN'T EVEN MENTION DANGER. |
| 11:11AM | 15 | OF COURSE WE KNOW, THE COURT KNOWS, THAT DANGER CAN COME |
| 11:11AM | 16 | IN THE FORM OF PECUNIARY HARM, ECONOMIC FARM AS MUCH AS IT CAN |
| 11:11AM | 17 | COME IN THE FORM OF VIOLENT HARM. AND WHEN WE LOOK AT THE |
| 11:11AM | 18 | OFFENSE CONDUCT OF WHAT MR. BALWANI DID HERE, I THINK THAT THAT |
| 11:11AM | 19 | IS DEMONSTRATED IN SPADES AND THAT'S WHAT THE JURY FOUND, AND, |
| 11:11AM | 20 | THEREFORE, I THINK MR. BALWANI REALLY PUTS FORWARD NOTHING TO |
| 11:11AM | 21 | MOVE THE NEEDLE, AND THEREFORE, AGAIN THE PRESUMPTION SHOULD |
| 11:11AM | 22 | APPLY THAT HE IS A DANGER TO THE COMMUNITY AS IS PRESUMED BY |
| 11:11AM | 23 | CONGRESS, BY THE STATUTE, AND AT THIS POINT IN THE PROCEEDINGS. |
| 11:11AM | 24 | THE COURT: THANK YOU. |
| 11:11AM | 25 | I RECALL DURING THE HISTORY OF THE CASE THERE WAS AT ONE |

11:12AM 1     POINT MR. BALWANI MADE PETITION TO THE COURT TO LEAVE TO GO TO

11:12AM 2     INDIA I THINK TO ATTEND A MEMORIAL SERVICE FOR HIS MOTHER, I

11:12AM 3     BELIEVE.

11:12AM 4          MS. VOLKAR:  RIGHT.

11:12AM 5          THE COURT:  AND ULTIMATELY HE DID NOT GO.

11:12AM 6          MS. VOLKAR:  THAT'S CORRECT.

11:12AM 7          THE COURT:  I THINK HIS -- I DON'T THINK HIS

11:12AM 8     PASSPORT WAS RETURNED TO HIM.  AND HE NOTIFIED PRETRIAL SERVICE

11:12AM 9     AND THE GOVERNMENT AND THE COURT THAT HE DID NOT INTEND TO

11:12AM 10    TRAVEL THERE.

11:12AM 11      HAS ANYTHING TRANSPIRED SINCE THE JURY VERDICT OR

11:12AM 12    SENTENCING?  HAS THE DEFENDANT DONE ANYTHING THAT WOULD SUGGEST

11:12AM 13    THAT THE COURT SHOULD LOOK AT HIM AS A FLIGHT RISK?

11:12AM 14          MS. VOLKAR:  NOT THAT THE GOVERNMENT IS AWARE OF,

11:12AM 15    YOUR HONOR.

11:12AM 16      AGAIN, TO BE VERY CLEAR, HERE WE ARE SIMPLY RELYING ON THE

11:12AM 17    PRESUMPTION FOR BOTH THE FLIGHT RISK AND DANGER.

11:12AM 18          THE COURT:  OKAY.  OKAY.  THANK YOU.

11:12AM 19          MR. DAVIES:  SO, YOUR HONOR, MR. BALWANI HAS BEEN IN

11:12AM 20    THIS COUNTRY FOR 36 YEARS, AND HE'S BEEN A CITIZEN FOR

11:13AM 21    23 YEARS.  AND WHAT I AM HEARING FROM THE GOVERNMENT IS THAT

11:13AM 22    ANY NATURALIZED CITIZEN IS GOING TO BE GOING TO JAIL RIGHT AWAY

11:13AM 23    BECAUSE THE PRESUMPTION THAT THEY'VE IDENTIFIED WOULD APPLY TO

11:13AM 24    I THINK ALMOST ANY NATURALIZED CITIZEN.  OF COURSE THEY'RE

11:13AM 25    GOING TO HAVE FAMILY ABROAD.  OF COURSE THEY'RE GOING TO HAVE

11:13AM 1    TIES HERE AND THERE.  IT'S A VERY BROAD STATEMENT OF A

11:13AM 2    PRESUMPTION, BUT CONGRESS PUT A PRESUMPTION.  IT DIDN'T JUST

11:13AM 3    DENY IT OUTRIGHT.  THERE'S A PRESUMPTION.

11:13AM 4        AND THE CASE THAT THEY CITE, THE KAKKAR CASE, HE IS NOT A

11:13AM 5    CITIZEN AND THERE IS ONGOING FRAUD.  IT'S NOTHING LIKE THIS

11:13AM 6    CASE WHERE WE HAVE A CITIZEN AND WE HAVE NO ONGOING FRAUD.

11:13AM 7        I DON'T THINK I NEED TO SAY ANY MORE.

11:13AM 8            THE COURT:  OKAY.  NO.  THANK YOU.

11:13AM 9        LET ME JUST SAY, I APPRECIATE YOUR -- I THINK YOUR

11:13AM 10   RESPONSE TO THIS STARTED OUT WITH, OR MR. COOPERSMITH'S

11:14AM 11   RESPONSE, SOMETHING ABOUT EVERYONE -- IT'S AN AFFRONT TO ALL

11:14AM 12   AMERICA.  I APPRECIATE THE CONTENT, AND I THINK THAT WAS TAKEN

11:14AM 13   TO SUGGEST THE TENSION TO THE COURT THAT THE COURT SHOULD PAY

11:14AM 14   TO IT.

11:14AM 15       I DON'T, I DON'T RECEIVE THAT AND I HAD HAVEN'T RECEIVED

11:14AM 16   THAT INFORMATION SUGGESTING THAT THE GOVERNMENT'S POSITION IS

11:14AM 17   THAT NATURALIZED CITIZENS SHOULD ALWAYS BE CONSIDERED WITH A

11:14AM 18   DIFFERENT VEIN THAN ANYBODY ELSE.  I DON'T, I DON'T LOOK AT IT

11:14AM 19   THAT WAY.

11:14AM 20           MR. DAVIES:  NATURALIZED WITH SOUTH ASIAN DESCENTS.

11:14AM 21           THE COURT:  YES.  I DON'T SEE IT THAT WAY.  I

11:14AM 22   UNDERSTAND THE ARGUMENT.  AND THERE ARE PEOPLE WHO ARE BORN IN

11:14AM 23   THIS COUNTRY BY BIRTH WHO HAVE RELATIVES IN OTHER COUNTRIES AND

11:14AM 24   PERHAPS POSE THE SAME TYPE OF CONSIDERATIONS.

11:14AM 25       AND THE KAKKAR CASE WAS VERY DIFFERENT AND YOU POINTED

| | | |
|---|---|---|
| 11:14AM | 1 | THAT OUT AND THE DISTINCTIONS. |
| 11:15AM | 2 | MR. DAVIES: AND THE SIMILARITIES, YES. |
| 11:15AM | 3 | THE COURT: I'M SORRY? |
| 11:15AM | 4 | MR. DAVIES: AND THE SIMILARITIES WITH THE SOUTH |
| 11:15AM | 5 | ASIAN CONNECTIONS. |
| 11:15AM | 6 | THE COURT: WELL, THERE WAS THAT. BUT WHAT'S |
| 11:15AM | 7 | DIFFERENT WAS THAT THE DEFENDANT IN THAT CASE ENGAGED, I THINK |
| 11:15AM | 8 | YOU TOUCHED ON IT, CONTINUED FINANCIAL FRAUD. HE SHELTERED |
| 11:15AM | 9 | MONEY. HE TRIED TO MOVE MONEY AROUND AFTER THE CONVICTION. |
| 11:15AM | 10 | THAT WAS TROUBLESOME, WASN'T IT? YES. SO THERE ARE SOME |
| 11:15AM | 11 | DISTINCTIONS. |
| 11:15AM | 12 | I UNDERSTAND YOU'RE SAYING, WELL, THEY BOTH WERE |
| 11:15AM | 13 | SOUTH ASIAN. BUT I'M NOT -- I DON'T SEE IT THAT WAY HERE, BUT |
| 11:15AM | 14 | I APPRECIATE YOU'RE RAISING IT. IT RAISES AN ISSUE THAT IS |
| 11:15AM | 15 | IMPORTANT TO YOU, AND I APPRECIATE THAT. |
| 11:15AM | 16 | (PAUSE IN PROCEEDINGS.) |
| 11:15AM | 17 | THE COURT: OKAY. THOSE ARE ALL OF THE QUESTIONS |
| 11:15AM | 18 | THAT I HAD ABOUT LIKELIHOOD OF FLIGHT OR DANGER TO THE |
| 11:16AM | 19 | COMMUNITY. |
| 11:16AM | 20 | ANYTHING ELSE EITHER PARTY WANTS TO DRAW TO MY ATTENTION? |
| 11:16AM | 21 | MS. VOLKAR: NO, YOUR HONOR. |
| 11:16AM | 22 | MR. DAVIES: LET ME JUST CHECK. |
| 11:16AM | 23 | NO. |
| 11:16AM | 24 | THE COURT: OKAY. THANK YOU. I'M GOING TO TAKE THE |
| 11:16AM | 25 | MATTER UNDER SUBMISSION. THANK YOU. |

11:16AM 1    I THINK THE PARTIES ARE AWARE, I HAVE SET A SURRENDER DATE

11:16AM 2    AND THAT DAY -- I'M NOT GOING TO DISTURB THAT DATE TODAY.  BUT

11:16AM 3    AS YOU KNOW, THE COURT IS TAKING THIS UNDER SUBMISSION.  IT

11:16AM 4    NATURALLY EXTENDS THAT SURRENDER DATE UNTIL YOU GET AN ORDER.

11:16AM 5    I HOPE TO GET SOMETHING OUT TO YOU SHORTLY.

11:16AM 6    BUT LET ME SAY THIS, I AM -- IT SHOULD NOT SURPRISE YOU,

11:16AM 7    OR I HOPE IT DOESN'T SURPRISE YOU, BUT IT MAY BE THAT THE COURT

11:16AM 8    WILL NOT ISSUE ITS ORDER ON RESTITUTION UNTIL THE

11:16AM 9    CO-DEFENDANT'S CASE IS HEARD ON RESTITUTION.  IT MAY BE THAT

11:16AM 10   THAT'S WHAT I'M GOING TO DO ON THAT ISSUE.  AND THAT REMAIN

11:16AM 11   UNDER SUBMISSION.  SO I JUST WANT TO GIVE YOU FULL TRANSPARENCY

11:17AM 12   ON THAT.

11:17AM 13   BUT OTHERWISE THE MOTION IS UNDER SUBMISSION.  THANK YOU

11:17AM 14   FOR YOUR HELP THIS MORNING.  IT IS APPRECIATED.  AND AS ALWAYS,

11:17AM 15   IT'S GOOD TO SEE ALL OF YOU.

11:17AM 16   THANK YOU.  I APPRECIATE IT.

11:17AM 17        MS. VOLKAR:  THANK YOU, YOUR HONOR.

11:17AM 18   (COURT CONCLUDED AT 11:17 A.M.)

19

20

21

22

23

24

25

1
2
3                    CERTIFICATE OF REPORTER
4
5
6
7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE
8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO
10   HEREBY CERTIFY:
11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
13   ABOVE-ENTITLED MATTER.
14
15
16                   _____
                     IRENE RODRIGUEZ, CSR, RMR, CRR
17                   CERTIFICATE NUMBER 8074
18
                     DATED:  FEBRUARY 20, 2023
19
20
21
22
23
24
25