No. 22-10338

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RAMESH "SUNNY" BALWANI,

Defendant-Appellant.

_____

**UNITED STATES' OPPOSITION TO APPELLANT'S MOTION FOR RELEASE PENDING APPEAL**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 18-CR-00258-EJD-2

_____

**ISMAIL J. RAMSEY**
United States Attorney

**MATTHEW M. YELOVICH**
Chief, Appellate Section, Criminal Division

**KELLY I. VOLKAR**
Assistant United States Attorney

450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
(415) 436-7185

**Attorneys for Plaintiff-Appellee**
**March 27, 2023**        **UNITED STATES OF AMERICA**

# TABLE OF CONTENTS

BACKGROUND ........................................................................................2

LEGAL STANDARD.............................................................................3

ARGUMENT ...........................................................................................5

    I.    Balwani's Constructive Amendment Claim Does Not Raise a
Substantial Question Likely to Result in Reversal of All Counts.........5

        A.    No Constructive Amendment Occurred ....................................5

        B.    Balwani's Constructive Amendment Claim Was
Insufficiently Preserved and Applies Only to the Patient
Counts of Conviction .................................................................9

    II.    The District Court Did Not Err in Admitting Percipient Testimony
of Former Theranos Scientists and Any Error Would Not Result in
Reversal of All Counts of Conviction.................................................12

    III.    The Government Did Not Violate *Napue v. Illinois*, and Any
Violation Would Affect at Most One Count of Conviction...............15

        A.    Background ...............................................................................15

        B.    Argument .................................................................................18

CONCLUSION ......................................................................................21

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Napue v. Illinois*, 360 U.S. 264 (1959) ............................................................ *passim*

*United States v. Adamson*, 291 F.3d 606 (9th Cir. 2002) ........................................6

*United States v. Anderson*, 532 F.2d 1218 (9th Cir. 1976) ......................................9

*United States v. Bilanzich*, 771 F.2d 292 (7th Cir. 1985) ........................................4

*United States v. Feldman*, 931 F.3d 1245 (11th Cir. 2019) ......................................6

*United States v. Garcia*, 340 F.3d 1013 (9th Cir. 2003) ..........................................5

*United States v. Handy*, 761 F.2d 1279 (9th Cir. 1985) ................................. *passim*

*United States v. Houston*, 648 F.3d 806 (9th Cir. 2011) ........................................20

*United States v. Hugs*, 384 F.3d 762 (9th Cir. 2004) ..............................................5

*United States v. Lopez*, 4 F.4th 706 (9th Cir. 2021) ................................................6

*United States v. Mett*, 41 F.3d 1281 (9th Cir. 1994) ................................................4

*United States v. Miller*, 753 F.2d 19 (3d Cir. 1985) ....................................... *passim*

*United States v. Renzi*, 769 F.3d 731 (9th Cir. 2014) ...................................... 19, 20

*United States v. Tuan Ngoc Luong*, 965 F.3d 973 (9th Cir. 2020) ...........................5

*United States v. Ward*, 747 F.3d 1184 (9th Cir. 2014) .............................................5

### FEDERAL STATUTES

18 U.S.C. § 3143(b) ......................................................................................... *passim*

No. 22-10338

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RAMESH "SUNNY" BALWANI,

Defendant-Appellant.

_____

**UNITED STATES' OPPOSITION TO APPELLANT'S MOTION FOR RELEASE PENDING APPEAL**

Defendant-Appellant Ramesh "Sunny" Balwani and his co-defendant, Elizabeth Holmes, stand convicted following separate jury trials for their multi-year scheme to defraud investors and patients into believing that their company, Theranos, had a revolutionary market-ready product that had been endorsed and adopted at high levels—when in fact that was not true. Balwani was sentenced to 155 months of imprisonment. Balwani now seeks to delay serving that sentence, urging that the district court that oversaw these months-long trials and examined each of Balwani's potential claims in detail erred in concluding that he failed to overcome the statutory presumption that he should begin serving his sentence as scheduled. This Court should deny Balwant's motion, as he falls well short of

meeting the statutory requirements for relief in pressing three unpreserved or meritless claims as purported "substantial questions" for his appeal.

## BACKGROUND

On July 28, 2020, a grand jury returned the Third Superseding Indictment ("TSI"), charging Balwani and Holmes with ten counts of wire fraud (Counts 3–12) and two counts of conspiracy to commit wire fraud (Counts 1–2). CR-469.[1] The district court granted Balwani's severance motion. CR-362. Beginning on August 31, 2021, Holmes's trial spanned four months, during which over 900 exhibits were admitted and 32 witnesses testified. CR-1721. After nearly eight days of deliberation, the jury found Holmes guilty of four investor-related counts (Counts 1, 6–8 (referred to as "C-2 investors" at trial)), could not reach a verdict on three investor-related counts (Counts 3–5 (referred to as "C-1 investors" at trial)), and acquitted on the patient-related counts (Counts 2, 10–12). Dkt. 8-5.

Beginning with jury selection on March 9, 2022, Balwani's trial similarly spanned four months, during which over 500 exhibits were admitted and 26 witnesses testified. CR-1562. On July 7, 2022, after multiple days of deliberation, the jury found Balwani guilty of all twelve counts. Dkt. 8-6; *see* Ex. A (describing trial evidence supporting jury verdict). The district court

---

[1] CR refers to the district court clerk's record for No. 5:18-CR-00258-EJD, "Dkt." to this Court's docket, and "Ex." to exhibits attached to this opposition brief.

2

sentenced Balwani to 155 months' imprisonment on each count to run concurrently. Dkt. 8-9.

Balwani moved for bail pending appeal below, asserting eight purported substantial questions, only three of which he maintains on appeal: constructive amendment, erroneously admitted expert testimony, and *Napue* error. CR-1711. The district court denied his motion, holding as to the first claim that Balwani did not raise a fairly debatable question of whether the TSI had been constructively amended throughout the course of the trial, particularly given the court's unobjected-to jury instructions and Balwani's abandonment of a variance claim. Dkt. 8-11 at 4–13. As for the expert testimony and *Napue* claim, the court determined that Balwani's challenges, even if meritorious, would not result in reversal on all counts of conviction. *Id.* at 13–18.

## LEGAL STANDARD

Detention is the mandatory, routine norm for any defendant following conviction and the imposition of a custodial sentence. 18 U.S.C. § 3143(b)(1). Congress enacted the Bail Reform Act of 1984 ("the Act") to "toughen the law with respect to bail pending appeal" and to "make[ ] it considerably more difficult for a defendant to be released on bail pending appeal." *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985).

3

Under the Act, the burden shifts to the defendant to prove: (1) by clear and convincing evidence that he is not a flight risk or a danger to the community; and (2) that his appeal is not for the purpose of delay and (3) raises a substantial question of law or fact that is (4) likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to less than time served. 18 U.S.C. § 3143(b)(1); *accord United States v. Mett*, 41 F.3d 1281, 1282 n.3 (9th Cir. 1994) (listing requirements).

"[T]he word 'substantial' defines the level of merit required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of question that must be presented." *Handy*, 761 F.2d at 1281. "For example, harmless errors, errors that have no prejudicial effect, or errors that have been insufficiently preserved would not justify a court's granting bail." *United States v. Bilanzich*, 771 F.2d 292, 299 (7th Cir. 1985). Put differently, "[a] court may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985); *see Handy*, 761 F.2d at 1280–83 (adopting *Miller*) (noting question must be "likely to result in reversal or an order for a new trial of *all counts* on which imprisonment has been imposed" (emphasis added)).

4

This Court reviews factual findings underlying the district court's denial of release pending appeal for clear error, and its legal determinations *de novo*. *United States v. Garcia*, 340 F.3d 1013, 1015 (9th Cir. 2003).

## ARGUMENT

## I.     Balwani's Constructive Amendment Claim Does Not Raise a Substantial Question Likely to Result in Reversal of All Counts

Balwani first urges that his appeal raises a substantial question because he claims that the district court constructively amended the indictment by admitting evidence regarding Theranos testing of patient blood samples (inaccurately) on commercially available machines. Dkt. 8-1 at 9–16. His claim fails because (1) it is not fairly debatable, as the district court held below (Dkt. 8-11 at 4–13), (2) it is insufficiently preserved, and (3) it is unlikely to result in reversal of all counts.

### A.     No Constructive Amendment Occurred

The district court correctly concluded that Balwani does not raise a substantial question on appeal with respect to his constructive amendment claim. This Court generally determines whether an indictment has been constructively amended by looking to whether any of the essential elements alleged in the indictment do not match the proof at trial or the jury instructions provided. *See*, *e.g.*, *United States v. Tuan Ngoc Luong*, 965 F.3d 973, 985–86 (9th Cir. 2020); *United States v. Ward*, 747 F.3d 1184, 1191 (9th Cir. 2014) (collecting cases); *United States v. Hugs*, 384 F.3d 762, 768 (9th Cir. 2004) (finding no plain error

5

where indictment provided fair notice, evidence at trial matched each element contained in the indictment, jury was instructed not to convict on uncharged conduct, and defendant did not object to jury instructions). Otherwise, any discrepancies between the indictment and proof at trial or instructions constitute a variance, which can only result in reversal if prejudicial. *See United States v. Lopez*, 4 F.4th 706, 728–29 (9th Cir. 2021); *United States v. Adamson*, 291 F.3d 606, 615–16 (9th Cir. 2002) (concluding that defendant's claimed divergence constituted a variance rather than constructive amendment); *see also United States v. Feldman*, 931 F.3d 1245, 1259–61 (11th Cir. 2019) (holding that discrepancies between allegations in indictment and proof at trial for tactics defendant used in wire fraud conspiracy were minor so constituted only a variance rather than constructive amendment).

In this case, no variance,[2] let alone a constructive amendment, occurred. As the district court correctly concluded, Balwani's appeal fails to present a substantial question on this topic where the essential elements alleged in the TSI were proven at trial and any risk of the jury relying on uncharged conduct for any particular element would have been corrected by the court's jury instructions. Dkt. 8-11 at 8–9. Indeed, the evidence presented to the grand jury matched the

---

[2] Balwani has disclaimed any argument that a prejudicial variance, rather than a constructive amendment, occurred. Dkt. 8-11 at 12 n.2.

evidence presented to the petit jury at his trial. *Compare* CR-1711-3 at 117–18, 135–39 (providing grand jury transcript during which CMS report, CMS's "immediate jeopardy" finding, and Counts 9 and 10 were described), *with* Ex. A at 9–10 (describing testimony at trial supporting Counts 9 and 10). And Balwani cannot dispute that portions of the CMS report were relevant, such as the portions detailing inaccurate testing on Theranos's analyzer or the fact that Theranos was using third-party, commercially available machines (unbeknownst to investors).

Furthermore, as to the jury instructions, the district court explicitly instructed the jury not to consider any conduct not charged in the indictment *and* included a special instruction proposed by the defense that alleged violations of regulations and industry standards could not form the basis of the jury's verdict. Dkt. 8-11 at 9. Balwani did not object to either jury instruction or propose any jury instruction to purportedly cure the amendment he now claims. *See* CR-1476.[3]

In urging otherwise, Balwani's interpretation of the TSI blurs the two distinct fraud schemes alleged in the indictment—the scheme to defraud *investors* involved false statements about the capabilities of Theranos's proprietary analyzer as compared to conventional methods as well as the fact that Theranos was using third-party, commercially available analyzers at all. Dkt. 8-2 ¶ 12(A), (G). By

---

[3] Notably, Balwani cites authority from this Court finding a constructive amendment resulted from *jury instructions* permitting a conviction on a different basis, not solely erroneous admission of evidence. Dkt. 8-1 at 12–13 n.3.

contrast, the scheme to defraud patients—who did not know which method Theranos was using to test their blood—involved Balwani and Holmes promising that "*Theranos* could provide accurate, fast, reliable, and cheap blood tests and test results" despite their knowledge that "*Theranos* was not capable of consistently producing accurate and reliable results for certain blood tests, including but not limited to . . . HIV, . . . PT/INR, . . . vitamin D (25-OH), *and all assays conducted on Theranos's [proprietary analyzer]*." *Id.* ¶ 16 (emphasis added). Further buttressing the point, TSI ¶ 17 lists the *methods* through which Balwani and Holmes spread these misrepresentations to patients, including "marketing materials and advertisements" and "the Theranos website" that provided "materially false and misleading information concerning the accuracy and reliability of *Theranos's blood testing services*[.]" *Id.* ¶ 17; *see* CR-1326 at 7–8 (emphasis added).

While Balwani points to the single use of "Theranos technology" in ¶ 16 (Dkt. 8-1 at 10 n.2), the general reference is immediately followed by a specific list of assays, including assays that Theranos did not perform on its proprietary analyzer (*e.g.*, HIV, PT/INR), and then further lists "all assays" on Theranos's analyzer. Dkt. 8-2 ¶ 16. Balwani's interpretation urges the Court to presume the general reference overcomes the specific list of assays spelled out explicitly in the TSI, which by their terms includes multiple assays that were not run on Theranos's proprietary analyzer. Therefore, adopting Balwani's interpretation would be

contrary to this Court's guidance that "an indictment is not to be read in a technical manner, but is to be construed according to common sense with an appreciation of existing realities." *United States v. Anderson*, 532 F.2d 1218, 1222, 1227–28 (9th Cir. 1976) (rejecting challenge to sufficiency of indictment, and variance claims).

In sum, the evidence presented at trial matched the essential elements described in the TSI and, to the extent any minor discrepancies exist, the district court's unobjected-to jury instructions provided affirmative guardrails.

### B. Balwani's Constructive Amendment Claim Was Insufficiently Preserved and Applies Only to the Patient Counts of Conviction

In addition to failing to meet the third requirement of § 3143(b)(1), Balwani's claim fails the fourth requirement because it was insufficiently preserved and unlikely to result in reversal on all counts of conviction. *See Miller*, 753 F.2d at 23 ("A question of law or fact may be substantial but may, nonetheless, in the circumstances of a particular case, be considered harmless, to have no prejudicial effect, or to have been insufficiently preserved."); *Handy*, 761 F.2d at 1280–83 (adopting *Miller*).

Below, Balwani did not object to the relevant jury instructions, nor did he request any jury instructions to cure the amendment he now claims occurred. *See* CR-1476. Despite extensive pretrial and trial motion practice, he never referenced a potential constructive amendment. *See, e.g.*, Ex. B at 12–22. He did not object on this ground in the moment the relevant testimony was admitted, nor did he

9

reference it in his motion to strike testimony from the Centers for Medicare and Medicaid Services ("CMS") witness who testified or in his motion to reconsider striking portions of her testimony. CR-1483; CR-1487-2. His motion for bail pending appeal was the first time he squarely raised this argument and, in post-hoc support below, he pointed to a few stray lines of oral argument by his counsel arguing that the evidence was irrelevant. Dkt. 8-16 at 53 (citing Dkt. 8-13). Balwani has insufficiently preserved this issue.

Moreover, even if Balwani had sufficiently preserved the claim and even if the Court were to resolve it favorably to him—which is, at best, improbable, as described above—he cannot obtain release pending appeal because the claim would not result in reversal of *all* counts of conviction. Below, Balwani sought pretrial to exclude as irrelevant and unduly prejudicial specific pieces of evidence—portions of a January 2016 CMS report (*see* Dkt. 8-18) and associated testimony, and testimony of two patient-victims underlying Counts 9 and 10 in the TSI. Ex. B at 12–22. He now challenges as improperly admitted those same portions of evidence. Dkt. 8-1 at 9–15. Even if the Court were to resolve this issue favorably to Balwani, Balwani's motion leaves entirely intact Count 11—a patient-victim who indisputably received an inaccurate blood test from a Theranos analyzer (*see* CR-1551 at 31)—and all of the investor-related counts, on which concurrent terms of imprisonment were imposed. *See* Dkt. 8-2. Balwani fails to

explain how admission of the CMS report or testimony of two separate patient-victims would in any way affect the jury's verdict on Count 11, nor can he. Furthermore, Balwani attempts to contest the dearth of connection to the investor-related fraud counts of conviction by noting that one of the misrepresentations to investors related to the accuracy and reliability of Theranos's blood testing.  Dkt. 8-1 at 15–16.[4]  In doing so, he ignores both that the CMS report was but one of many pieces of evidence the government admitted demonstrating the falsity of this claim and that Theranos's claims regarding accuracy and reliability were one subpart among other subparts relating to its proprietary devices' capabilities, which was itself only one of seven categories of entirely distinct misrepresentations made to investor-victims as proven at trial.  *See* Dkt. 8-2 ¶ 12(A)–(H).

In sum, Balwani cannot meet his burden of proving the fourth requirement—even if his constructive amendment claim were sufficiently preserved and resolved favorably to him, it would at most result in reversal of a handful of counts, not *all* counts of conviction for which imprisonment was imposed.  *See Handy*, 761 F.2d at 1283 (noting question must be "likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed").

---

[4]  In doing so, Balwani selectively quotes the government's brief below, which stated that accuracy and reliability is a sufficient—but not necessary—finding for all counts of conviction.  *Compare* Dkt. 8-1 at 16, *with* Dkt. 8-8 at 16.

**II.    The District Court Did Not Err in Admitting Percipient Testimony of Former Theranos Scientists and Any Error Would Not Result in Reversal of All Counts of Conviction**

Balwani challenges—as impermissible expert testimony—the admission of testimony from former Theranos employees Erika Cheung, Dr. Mark Pandori, and Dr. Adam Rosendorff about their daily tasks at Theranos in the clinical laboratory overseeing the testing of patients' blood.  Dkt. 8-1 at 16–22.  At the outset, the district court did not err in noting that erroneous admission of expert testimony is subject to harmless error review, and that "a favorable decision to Mr. Balwani would not have operated to exclude the entirety of these witnesses' testimony because certain portions of their [days-long] testimony are indisputably admissible, such as the details of their jobs at Theranos, the events they witnessed, and the things they said or did."  Dkt. 8-11 at 13.  The portions of testimony that Balwani alleges were improperly admitted are but a few lines of testimony among a plethora of evidence presented at trial demonstrating the inability of Theranos to consistently provide accurate and reliable test results—and that, itself, is only one of more than seven categories of misrepresentations made to investors.  *See* Dkt. 8-2 ¶ 12(A)–(H).  Therefore, Balwani cannot demonstrate likelihood of reversal on all counts where even a favorable resolution on this question would be harmless and non-prejudicial in the context of the entire trial.

12

One straightforward way of identifying the harmlessness is that, for the investor-related convictions, investors repeatedly testified at trial that they would have been shocked to learn before they invested that Theranos was using third-party machines—not its own proprietary device as pitched—to run patient blood samples. *See* Ex. A at 3 (describing testimony of three investors not knowing that Theranos used third-party machines); Ex. D at 4448–50 (testimony of a fourth investor describing the same). And even if the Court had struck all testimony Balwani claims was improperly admitted from Cheung, Dr. Pandori, and Dr. Rosendorff, they still would have been permitted to testify to their observation that Theranos used third-party machines to test blood samples. Indeed, they were not the only Theranos insiders to testify to that fact—Daniel Edlin, whose testimony is not challenged, also testified that Theranos used third-party machines and that that information was not freely shared or public before 2016. Dkt. 8-8 at 16.

Furthermore, a review of the evidence admitted at trial showing several other categories of false statements that Balwani and Holmes made to investors demonstrates any error related to these three witnesses is non-prejudicial at best. For example, at the same time Balwani was told by Walgreens executives that Walgreens would never expand their relationship with Theranos beyond a few dozen stores if the percentage of venous draws remained around 40%, in the fall of 2014, Balwani falsely represented to investors that it was reasonable to estimate

13

that Theranos would be in 900 Walgreens locations by 2015. Ex. A at 4. As another example, Balwani spoke directly with investor Mendenhall, who wrote detailed notes from their call and who testified that Balwani told him "that the science behind Theranos was complete; that no new invention was needed; and that Theranos was completely vertically integrated"—none of which was true. *Id.* at 8. Balwani also provided unattainable financial projections to investors, when he knew Theranos was barely generating any revenue, and shared falsified reports portrayed as if written by large pharmaceutical companies. *Id.* at 3–4. And he created "what was called the 'null protocol' to shield device failure from investors" during demonstrations of the proprietary analyzer's purported capabilities. *Id.* at 7.

Therefore, in denying Balwani's motion for bail pending appeal, the district court correctly concluded that "the admission or exclusion of the relevant witnesses' testimony is not 'so integral to the merits' of (at least) the investor fraud convictions" that it would be likely to result in reversal or a new trial. Dkt. 8-11 at 14. Balwani incorrectly asserts that he does not bear the burden here (*cf.* Dkt. 8-1 at 20)—but he does bear the burden to demonstrate every requirement of 18 U.S.C. § 3143(b), including likelihood of reversal on all counts of conviction. Balwani cannot meet that burden considering he challenges 33 pages out of over 7,000 pages of trial transcript under the abuse of discretion standard.

14

But even aside from harmlessness, there was no abuse of discretion at all in admitting this testimony. Balwani does not present a substantial question on this issue given that the three witnesses testified about their daily activities while working in Theranos's clinical lab testing patient blood samples. Fundamentally, these three witnesses testified as percipient witnesses—describing what their roles and responsibilities were at Theranos, how their respective interactions with Theranos's proprietary technology led each of them to question its ability to consistently provide accurate and reliable results to patients, and their ultimate resignations when Balwani dismissed their concerns or berated them for raising them. Indeed, certain portions may well be invited error given that they were elicited on *cross-examination* or discussed correspondingly on re-direct. *See* Dkt. 8-14 at 1552–58. This Court should deny Balwani's motion on this issue.

## III. The Government Did Not Violate *Napue v. Illinois*, and Any Violation Would Affect at Most One Count of Conviction

### A. Background

Bryan Tolbert testified at both trials as a representative of Hall Group, which is the investor-victim represented in Count 5 in the TSI. Exs. C, D. On December 20, 2013, Holmes held a conference call with current Theranos investors to extend an opportunity to invest in the C-1 round before the end of that calendar year. Ex. C at 4466–71. Tolbert joined that conference call and recorded it. *Id.*

15

Balwani did not speak or participate in the conference call, and his counsel represented that he was not present on the call. Ex. D at 4257, 4406, 4470–71.

The government played portions of that recording during Holmes's trial—which included false and misleading information about the financial health of Theranos, the state of Theranos's technology, the company's purported "ongoing" relationships with pharmaceutical companies and the military, and the likelihood of national rollout with Walgreens—and questioned Tolbert about his understanding based upon Holmes's statements. Ex. C at 4466–517. The government did not play portions of the recording during Balwani's trial, but rather asked Tolbert to summarize his recollection and understanding of Holmes's statements. Ex. D at 4429–41. Tolbert testified similarly in both trials. Balwani's motion asserts that Tolbert testified falsely at his trial as related to the military statements because the government did not play the recordings, but a comparison of what Holmes said and Tolbert's testimony in both trials demonstrates his consistency:

> **Recording of Holmes:** "In terms of the military aspect of this, military *is* a big deal for us and I can tell you confidentially a couple of the areas which we have been focussed [sic] there. *One is in the context of work in the Middle East and specifically Afghanistan.* The survival rate of our men and women in the field when they're hit is 98 percent if they get through the doors of an emergency room within 60 minutes from the point of injury. And if we miss that window that's where the bulk of our fatalities occur. And so *the ability* to take a technology like this and put it in flight, specifically on a medevac, has the potential to change survival rates. And what it does is it makes it possible to begin transfusion and stabilization in place. And so *we're*

16

*[sic] been doing a lot of work there*."  (Ex. C at 4503–04 (emphasis added).)

**Tolbert's Testimony in Holmes's Trial:  "**[Q.] When she said the word there that she could tell you confidentially, what did you take that to mean?  A. That this is information that wasn't public and wasn't to be shared publicly, but that it represented capabilities that Theranos and the company had developed and were, you know, were operational at that point.  Q. And when she said . . . , did you take that to mean that Theranos had done work in Afghanistan? A. I did."  (Ex. C at 4512–15.)

**Tolbert's Testimony in Balwani's Trial:**  "[Q.] How about the topic of Theranos's work with the military?  Did Ms. Holmes talk about that?  A. She did talk about military applications and about, you know, that Theranos devices were employed on the medevac helicopters and being used to kind of improve survival rates of military personnel who had been injured in combat. . . .  Q. So how does this, this concept or this area of work compare with your understanding of what Theranos was doing in 2006?  A. So it represented a broadening of their business opportunities, one that was exciting, notwithstanding the fact that it was helping people that were injured[.]"  (Ex. D at 4435–38.)

In both trials, the government objected based on hearsay when defense counsel attempted to play portions of the recordings beyond what the government offered.  *See* Ex. C at 4542; Ex. D at 4247–61, 4389–96.  In both trials, Tolbert admitted that he did not remember what was said on the call word-for-word.  *See* Ex. C at 4534; Ex. D at 4434–35, 4467–70.  During Balwani's trial, Tolbert also testified that he had never met or spoken with Balwani.  Ex. D at 4406, 4470–71.

## B.  Argument

As a threshold matter, Balwani cannot meet the final requirement because he cannot show that he preserved his *Napue* claim and, even if he did, it would not result in reversal on any more than at most two investor-related counts (those who listened to the recorded conference call).  *See Handy*, 761 F.2d at 1283; *Miller*, 753 F.2d at 23.  Balwani did not object to or move to strike the testimony he now challenges.  *See* Ex. D at 4435–38.  Balwani did not ask questions on cross-examination about the military portion of the recording, nor did he seek to admit the recordings while Tolbert was testifying, nor even seek to impeach him or refresh his recollection with portions of the transcript.  Ex. D at 4247–61.  Balwani never raised *Napue* or alleged prosecutorial misconduct or deception despite lengthy argument over whether the recordings could be played in front of the jury.  *See* Ex. D.  The first time he raised this issue was in his motion for bail pending appeal before the district court.  He has thus insufficiently preserved this claim.

Furthermore, Balwani's motion itself concedes that favorable resolution on the *Napue* claim leads to reversal "on at least all investor counts" (Dkt. 8-1 at 29)—leaving the four patient-related counts entirely intact.  He was unwilling to make such a bold claim below, and, below, he did not even reference a purported connection to the investor count associated with Chris Lucas.  *See* CR-1711 at 19–21.  Regardless, even his bold assertion that reversal on all investor-related counts

would be warranted is wrong given that the recording Balwani claims should have been played before his jury was played before the jury in the Holmes trial and that jury *still* convicted Holmes on four investor-related counts. *See* Dkt. 8-5. As but one difference between the C-1 and C-2 investors, the latter received written slide decks containing false statements in addition to hearing them from Balwani and Holmes. Ex. A at 3. The Court should reject the *Napue* question on the fourth requirement alone, as the district court did. Dkt. 8-11 at 14.

Regardless, the government did not commit a *Napue* violation. To establish a due process violation for government misconduct under *Napue v. Illinois*, 360 U.S. 264 (1959), Balwani must show: "(1) that the testimony was actually false, (2) that the government knew or should have known that it was false, and (3) that the testimony was material, meaning there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Renzi*, 769 F.3d 731, 751 (9th Cir. 2014) (internal quotation omitted). Balwani's claim stumbles at the first step because "[m]ere inconsistencies or honestly mistaken witness recollections generally do not satisfy the falsehood requirement." *Id.* at 752. Balwani has provided no evidence that Tolbert knew his testimony was inaccurate—to the contrary, defense counsel confirmed on cross-examination that Tolbert had re-reviewed the transcript of the call recordings in preparing for his testimony. Ex. D at 4467–70. As shown above, Tolbert testified similarly in both

trials with and without playing of the recording. *Compare* Ex. C at 4512–15, 4534–41, 4561, 4566–67, *with* Ex. D at 4429–41, 4467–71. At bottom, defense counsel seeks to challenge the government's decision not to seek admission of two exhibits that it had admitted in his co-defendant's trial—but that does not rise to the level of knowingly permitting a witness to perjure himself and thus fails to establish a due process violation under *Napue*. *See*, *e.g.*, *United States v. Houston*, 648 F.3d 806, 814 (9th Cir. 2011) (finding no falsity where allegations "at most point to evidence creating an inference of falsity" and the "inconsistencies were fully explored and argued to the jury").

Moreover, Balwani cannot demonstrate the third requirement of a *Napue* violation because there is "no reasonable likelihood that false testimony affected the jury where 'defense counsel effectively attacked [the witness's] credibility'" on cross-examination. *Renzi*, 769 F.3d at 752 (quoting *Houston*, 648 F.3d at 814). Not only did defense counsel elicit on cross-examination that there is a recording, that Tolbert does not have the transcript memorized, and that it would "help [him] to recall what was on the tape if [he] looked at a transcript of the tape," but defense counsel spent time criticizing the government in closing argument for failing to provide that recording for the jury. *See* Ex. D at 4467–71; CR-1551 at 168. Despite laying the foundation for it, Balwani did not seek to refresh Tolbert's recollection with the transcript, nor did he attempt to impeach Tolbert's testimony

with the transcript or recording. As demonstrated by the quotes above, any deviation between Tolbert's recollection and what Holmes said on the tape are slight at best and immaterial.

In sum, Balwani does not present a substantial question and, in any event, not one likely to result in reversal on all counts of conviction for which imprisonment has been imposed.

## CONCLUSION

For the reasons set forth above, this Court should affirm the district court and deny Balwani's motion for bail pending appeal.


Dated: March 27, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

MATTHEW M. YELOVICH
Chief, Appellate Section, Criminal Division

*/s/ Kelly I. Volkar*
KELLY I. VOLKAR
Assistant United States Attorney

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing complies with the type size and typeface requirements of Fed. R. App. P. 32(a)(5) and (6) and with the 20-page length limit of Ninth Circuit Rule 27-1(1)(d) under the page/word count conversion formula of Circuit Rule 32-3.  The foregoing is 4,991 words.

Dated:  March 27, 2023                    */s/ Kelly I. Volkar*
                                        KELLY I. VOLKAR
                                        Assistant United States Attorneys