No. 22-10338

In The
# United States Court of Appeals for the Ninth Circuit

United States of America,

*Plaintiff-Appellee*,

v.

Ramesh "Sunny" Balwani,

*Defendant-Appellant*.

On Appeal from United States District Court
for the Northern District of California
No. 5:18-cr-00258-EJD-2, Hon. Edward J. Davila

**APPELLANT'S REPLY IN SUPPORT OF
MOTION FOR RELEASE PENDING APPEAL**

| | |
|---|---|
| Jeffrey B. Coopersmith<br>Aaron Brecher<br>Orrick, Herrington &<br>  Sutcliffe LLP<br>401 Union Street, Suite 3300<br>Seattle, WA  98101 | Mark S. Davies<br>James Anglin Flynn<br>Orrick, Herrington &<br>  Sutcliffe LLP<br>1152 15th Street, NW<br>Washington, DC  20005<br>(202) 339-8400 |
| Amy Walsh<br>Orrick, Herrington &<br>  Sutcliffe LLP<br>51 West 52nd Street<br>New York, NY  10019 | Sachi Schuricht<br>Amari L. Hammonds<br>Orrick, Herrington &<br>  Sutcliffe LLP<br>405 Howard Street<br>San Francisco, CA  94105 |
| Stephen A. Cazares<br>Orrick, Herrington &<br>  Sutcliffe LLP<br>355 South Grand Avenue,<br>Suite 2700<br>Los Angeles, CA  90071 | |

*Counsel for Appellant*

# TABLE OF CONTENTS

                                                                                                                     **Page**

TABLE OF AUTHORITIES ................................................................................. ii

ARGUMENT ............................................................................................................2

      I.      The Appeal Raises Substantial Questions About The Constructive Amendment Of The Indictment......................................2

            A.      The indictment is limited to the accuracy of Theranos' proprietary technology ..............................................................2

            B.      The substantial question about the district court's admission of extensive evidence distinct from the charges in the indictment is likely to result in a new trial on all counts ............................................................................................4

      II.     The Appeal Raises A Substantial Question About The Erroneous Admission Of Specialized Testimony ................................6

            A.      The district court erred in interpreting and applying Rules 701 and 702 ..............................................................................6

            B.      The substantial question about the district court's violation of Rules 701 and 702 is likely to result in a new trial on all counts ......................................................................8

      III.    The Appeal Raises A Substantial Question About The Government's Failure To Correct False Testimony ...........................9

            A.      The government knowingly solicited and failed to correct false testimony in violation of *Napue v. Illinois* .........................9

            B.      The substantial question about the government's *Napue* violation is likely to result in a new trial on all investor counts ..........................................................................................11

CONCLUSION .......................................................................................................13

LIST OF EXHIBITS ...............................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dow v. Virga*,
  729 F.3d 1041 (9th Cir. 2013) ...................................................................12

*Hayes v. Brown*,
  399 F.3d 972 (9th Cir. 2005) ................................................................10, 12

*Jones v. United States*,
  362 U.S. 257 (1960)......................................................................................3

*Napue v. Illinois*,
  360 U.S. 264 (1959) ............................................................................*passim*

*Stirone v. United States*,
  361 U.S. 212 (1962).................................................................................5, 6

*United States v. Alli*,
  344 F.3d 1002 (9th Cir. 2003) ...............................................................11, 13

*United States v. Handy*,
  761 F.2d 1279 (9th Cir. 1985) .....................................................................8

*United States v. Hartz*,
  458 F.3d 1011 (9th Cir. 2006) .....................................................................5

*United States v. Houston*,
  648 F.3d 806 (9th Cir. 2011) .....................................................................11

*United States v. Oaxaca*,
  233 F.3d 1154 (9th Cir. 2000) .....................................................................8

*United States v. Varela-Rivera*,
  279 F.3d 1174 (9th Cir. 2002) .....................................................................6

*United States v. Renzi*,
  769 F.3d 731 (9th Cir. 2014) .....................................................................10

*United States v. Riddle*,
  103 F.3d 423 (5th Cir. 1997) .......................................................................8

**Statutes**

18 U.S.C. § 3143(b)(1) .................................................................................... 13

**Rules and Regulations**

Fed. R. Evid. 701 ............................................................................................. 8

Fed. R. Evid. 702 .................................................................................... 1, 6, 8

This Court should grant release pending appeal based on three substantial questions. The government's opposition offers no meaningful resistance, as it is riddled with inaccurate factual and legal premises.

First, regarding constructive amendment, the district court allowed the government to introduce a complex of facts that morphed a case about the accuracy of proprietary blood-testing technology into one in which the jury could have convicted based on inaccurate conventional blood-testing technology. To brush past this, the government ignores the controlling Supreme Court case and advocates for a reading of the indictment contrary to what it urged before trial.

Second, the government ignores law and facts in response to Mr. Balwani's challenge to the district court's ruling allowing the specialized testimony of three non-expert witnesses under Rule 702. The government refuses to engage in the required analysis: whether the jury likely would have convicted on those alternative grounds absent the improper testimony. The only possible answer is no.

Third, the government mischaracterizes Mr. Balwani's challenge under *Napue v. Illinois*, 360 U.S. 264 (1959), and does not dispute the important discrepancies between Mr. Tolbert's testimony and Ms. Holmes' statements. And the government says nothing about the false testimony it emphasized in its closing.

# ARGUMENT

**I.     The Appeal Raises Substantial Questions About The Constructive Amendment Of The Indictment.**

**A.     The indictment is limited to the accuracy of Theranos' proprietary technology.**

The indictment, properly construed, relates to the accuracy of only Theranos' proprietary technology. By admitting a complex of facts distinct from those charges, the district court constructively amended the indictment. The district court even recognized the substantial question on the indictment's meaning, reasoning that the "allegations regarding the *proprietary* tests' inaccuracies, combined with the absence of similar allegations regarding the *commercial* tests' inaccuracies, could support an interpretation that the [indictment]'s alleged falsity only extended to Theranos's *proprietary* blood tests." Mot. 5. The district court also interpreted the indictment this way before trial. *Id.*

The government ignores the district court's readings of the indictment as well as key portions of the indictment's text. Paragraph 16 of the indictment refers to the capabilities of "Theranos" as an example ("[i]n particular") of the problem described in the prior sentence, which was limited to "Theranos's technology." Def. Ex. A ¶ 16. And the first phrase of ¶ 17 limits the allegations to the "accuracy and reliability problems" charged earlier in the indictment, i.e., of proprietary technology. The government also ignores that the alleged falsehood regarding the

2

patient conspiracy was about "Theranos technology." *Id.* ¶ 22; *see also* Mot. 5 & n.2.

Before trial, the government also read the indictment to exclude inaccuracy of non-Theranos technology.[1] It argued then that evidence about the accuracy of non-proprietary technology was irrelevant, the opposite of what it asserts now. Mot. 5. The Court must not "permit the Government to have the advantage of contradictory positions as a basis for conviction." *Jones v. United States*, 362 U.S. 257, 263 (1960).

The government tries to support its current position by arguing that the indictment's listing of "multiple assays" not tested with proprietary technology in ¶ 16 shows that the government sought and the grand jury agreed to include non-Theranos technology in the charges. Opp'n 7-8. But the only blood test that ¶ 16 lists that never ran on proprietary technology is HIV, and the record shows unequivocally that the government mistakenly believed HIV was run on Theranos' proprietary technology at the time. Def. Ex. R at 3; Def. Ex. S at 2. Thus, the government's argument—that including HIV in the indictment proves that it sought an indictment based on non-Theranos technology—is flatly inconsistent with the record.

---

[1] The government agrees (at 7) that "the scheme to defraud *investors* involved false statements about the capabilities of Theranos's proprietary analyzer …."

3

The government also claims that it presented evidence of non-Theranos technology inaccuracies to the grand jury, and that this supports its current reading of the indictment. Opp'n 6-7. But the government told the grand jury only that CMS found an "immediate jeopardy" and other lab deficiencies and that some patients received incorrect results—without also telling the grand jury that the CMS report and incorrect results related to non-Theranos technology. And the government did not show the grand jury the CMS report that the district court allowed it to admit into evidence at trial. Def. Ex. U at 117-18, 136-39. The government gave the grand jury no evidence on which it could have based allegations about non-Theranos technology in the charges, and its claim otherwise is false.

**B.    The substantial question about the district court's admission of extensive evidence distinct from the charges in the indictment is likely to result in a new trial on all counts.**

The district court improperly allowed extensive evidence about regulatory deficiencies related to ordinary lab practices and conventional technology, including the inflammatory CMS "immediate jeopardy" finding. The court also allowed the testimony of two patients about alleged incorrect results untethered to proprietary technology. This evidence was central to the government's presentation but was wholly improper as it was not within the scope of the charges. Mot. 6-7.

4

Under *Stirone v. United States*, 361 U.S. 212 (1960), which the government ignores completely, the complex of facts about non-proprietary technology transformed the charges endorsed by the grand jury into something different. There is a grave danger that Mr. Balwani was unconstitutionally convicted for "*different behavior* than that alleged in the original indictment." *United States v. Hartz*, 458 F.3d 1011, 1021 (9th Cir. 2006), *cited at* Mot. 8.

The government's argument about jury instructions ignores their substance. One instruction told the jury to "consider" the irrelevant regulatory findings, confirming only that the jury *was* permitted to use them among other evidence to convict. *See* Mot. 9-10. The other instruction told the jury to convict only on the charges in the indictment—a circular point because the improper evidence could have led the jury to understand the charges as including the uncharged conduct. Def. Ex. J at 8. The government has no response.

The government also ignores this Court's holding that a constructive amendment "always requires reversal." Mot. 10. As for which counts must be reversed, both the government and the district court acknowledged that claims about accuracy could have been the basis for every count. *See* Mot. 11; Def. Ex. J at 5. The impermissible accuracy evidence could therefore have been the jury's basis for convicting on every count. Because the Court cannot know whether the jury convicted on a valid or invalid basis, prejudice is automatic as to every count.

Last, the district court did not adopt the government's preservation argument. *See* Def. Ex. J at 4; Def. Ex. G at 16. When "the substance of an objection has been thoroughly explored and the trial court's ruling was explicit and definitive, the issue is preserved." *United States v. Varela-Rivera*, 279 F.3d 1174, 1177 (9th Cir. 2002). Like the defendant in *Stirone*, who objected to the challenged evidence's "materiality and relevancy," 361 U.S. at 214, Mr. Balwani explained that evidence "that non-Theranos technology was inaccurate and unreliable … was not put before a grand jury, and … cannot be put before this petit jury." Gov. Ex. B at 9; *see also id.* at 1-10; Def. Ex. W at 30-69, Def. Ex. T at 1-10.

**II.   The Appeal Raises A Substantial Question About The Erroneous Admission Of Specialized Testimony.**

   **A.   The district court erred in interpreting and applying Rules 701 and 702.**

On appeal, Mr. Balwani will challenge the district court's ruling allowing the specialized testimony of three non-expert witnesses under Rule 702,[2] whom the government contends were "[f]undamentally" "percipient witnesses." Opp'n 15. But "mere percipience … does not trump Rule 702." Mot. 14 (quoting *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997)).

---

[2] As the motion explained, this Court reviews "de novo" the "construction or interpretation of … the [rules], including whether particular evidence falls within [their] scope." Mot. 12 n.5. The government prefers abuse of discretion but cites no authority, and this Court's binding precedent rebuts that baseless assertion.

6

The government does not even try to respond to the specialized testimony Mr. Balwani challenges, pointing instead to other, unchallenged testimony from the witnesses. The government does not and cannot defend, for example, Ms. Cheung's opinions on quality control or data analysis, Dr. Pandori's opinions on the state of the art or proficiency testing, or Dr. Rosendorff's opinions on chemical reference ranges or error detection. *See* Mot. 12-13. The government also does not even try to defend the prejudicial testimony from all three witnesses about the accuracy and reliability of Theranos' blood testing. *See id.* And the government does not engage with the cases establishing that each of these passages constituted improper expert testimony. *See id.* at 14.

The only challenged testimony that the government even addresses is Ms. Cheung's testimony comparing industry standards to Theranos' practices and concluding that Theranos did not follow those standards. Opp'n 15 (citing Def. Ex. M at 1552-58). The government suggests this testimony "may well be invited error given that [it was] elicited on *cross-examination* or discussed correspondingly on re-direct." Opp'n 15.[3] But on cross, Ms. Cheung testified only that she had never heard of the industry group that published the manual and was not familiar with its techniques. Def. Ex. X at 1480-81. That did not grant the

---

[3] In fact, none of the 15 challenged passages was elicited on cross, despite the government's emphatic claim. *See* Mot. 12-13.

7

government license to elicit Ms. Cheung's re-direct testimony evaluating and applying her non-existent expertise to industry standards she had never seen. *See, e.g.*, *United States v. Riddle*, 103 F.3d 423, 429 (5th Cir. 1997).

**B.    The substantial question about the district court's violation of Rules 701 and 702 is likely to result in a new trial on all counts.**

The government essentially concedes that the violation of Rules 701 and 702 related to the accuracy of blood-testing would undermine the verdict on all the patient counts,[4] arguing only that the investor counts are immune. *See* Opp'n 13-14.[5] As the motion explained, the district court's analysis was wrong as a matter of law: It incorrectly asked whether there was sufficient evidence to convict absent the improper testimony, not whether the error was harmless. Mot. 16 (citing *United States v. Oaxaca*, 233 F.3d 1154, 1158 (9th Cir. 2000)).

The government has no response on the law, doubling down on the district court's mistaken analysis and pointing to other alleged misrepresentations that it contends a jury *could* have found sufficient to convict Mr. Balwani. Opp'n 13-14.

---

[4] The government (at 12) refers to a "plethora of evidence" on accuracy apart from the challenged testimony, but tellingly it can cite nothing for this proposition.

[5] As to prejudice, the government (at 13-14) misstates the burden. Mr. Balwani must show that this evidentiary error, if resolved in his favor, is "likely [to] result in an order for a new trial." *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985). And the question on appeal will be whether the government can carry its burden to rebut the presumption of prejudice arising from the error. Mot. 15. Taken together, these principles require only that Mr. Balwani show the government is not likely to be able to carry that burden on appeal—and it is not.

But the government never engages in the analysis this Court requires: whether the jury *likely would* have convicted on those alternative grounds absent the improper testimony. The answer is no. As the government itself proclaimed, accuracy and reliability was "the key overlapping misrepresentation" underlying *all* the counts. Def. Ex. G at 11. And those other alleged misrepresentations were all hotly contested at trial: To take just one of the government's examples, it was allegedly fraud for Mr. Balwani, in October 2014, "to estimate that Theranos would be in 900 Walgreens locations by 2015." Opp'n 13-14. But the government omits that the jury also heard that Walgreens itself told Mr. Balwani in August that Theranos would reach "2000 stores in 2015." Def. Ex. Z at 1.

### III. The Appeal Raises A Substantial Question About The Government's Failure To Correct False Testimony.

#### A. The government knowingly solicited and failed to correct false testimony in violation of *Napue v. Illinois*.

The government mischaracterizes Mr. Balwani's challenge under *Napue* as a "challenge [to] the government's decision not to seek admission of" the audiotape of the December 2013 call. Opp'n 20; *see also* Def. Ex. G at 18. That is not Mr. Balwani's argument, which is based on the government's distinct decision "to put false testimony before the jury." Mot. 17. This question is a substantial issue.

The government does not dispute it was fully aware of the serious discrepancies between Mr. Tolbert's testimony and Ms. Holmes' statements. *See*

9

Opp'n 19-20. Instead, it claims that the testimony fell short of knowing perjury by the witness. *Id.* at 20. That misstates *Napue*'s first prong: "There is nothing in *Napue*, its predecessors, or its progeny, to suggest that the Constitution protects defendants only against the knowing use of perjured testimony." *Hayes v. Brown*, 399 F.3d 972, 981 (9th Cir. 2005) (en banc).[6] The government's knowledge that the testimony was false is a substantial question under *Napue*. Mot. 18-20.

The government also cites extended portions of Mr. Tolbert's testimony in the two trials to argue that he "testified similarly in both," Opp'n 19, though what matters is the difference between how he testified at Mr. Balwani's trial and what Ms. Holmes actually said on the December 2013 call. In failing to address the misleading nature of its witnesses' testimony, the government implies that Ms. Holmes made other misleading statements about Theranos' work with the military. *Id.* at 16-17 (emphasizing "work in the Middle East and specifically Afghanistan"). But Mr. Balwani is challenging the government's soliciting testimony that Ms. Holmes said Theranos devices were currently being used on military medevacs, Def. Ex. M at 4435, 5631, 5685—because the government knew the tape proved she did not, Def. Ex. N at 4504-05. That Mr. Tolbert accurately testified that Ms. Holmes spoke about work focused on Afghanistan simply does not address the

---

[6] If *United States v. Renzi*, 769 F.3d 731 (9th Cir. 2014), *cited at* Opp'n 19, says otherwise, there is an intra-circuit split making this issue "fairly debatable."

10

testimony that the government knew was false. Theranos was in fact working with the military with the goal of deploying devices in Afghanistan and Africa. Def. Exs. Y, AA, BB, CC; Def. Ex. X at 2736-2780.

As to the false medevac testimony emphasized in the government's closing (Mot. 21-22), the government has nothing to say. Indeed, the government fails to address Mr. Lucas' testimony despite Mr. Balwani's challenge to it here and (*contra* Opp'n 18) in the district court below. Mot. 18-19; Def. Ex. V at 10. The government also ignores Ms. Holmes' statement that the company "'had to *pause* a large number of [its] ongoing pharmaceutical and military programs so that [it] could focus' on retail opportunities." Mot. 18-19. *United States v. Houston*, 648 F.3d 806 (9th Cir. 2011), *cited at* Opp'n 20, is not on point because there, inconsistencies between the witness' testimony and a prior statement were "fully explored and argued to the jury," *id.* at 814. Here, in contrast, the government successfully fought to keep the jury from learning the truth of the December 2013 call. Mot. 20. In any event, when the false testimony was admitted, the government had an "independent obligation" to "immediately … take steps to correct known misstatements of its witnesses." *United States v. Alli*, 344 F.3d 1002, 1007 (9th Cir. 2003). It cannot be disputed that the government failed to do so here.

  **B.**  **The substantial question about the government's *Napue* violation is likely to result in a new trial on all investor counts.**

Trying to downplay the impact of the *Napue* violation, the government

11

variously contends that it would affect at most "one" or "two" counts, because Ms. Holmes' jury heard the tape of the December 2013 investor call and "still convicted [her] on four investor-related counts." Opp'n 15, 18, 19. But the materiality analysis does not require Mr. Balwani to show that removing the false testimony *would* affect the outcome or *did* affect the outcome in the first trial—only that the jury *could* "have relied on [it] in reaching its verdicts." Mot. 23 n.11, 24. And this jury would have been in a different position than the Holmes jury because the government would have been "forced to disclose" it had offered false testimony, which could have "a devastating effect on the credibility of the entire prosecution case." *Hayes*, 399 F.3d at 988.

The witnesses' deviation from the truth was neither "slight" nor "immaterial." Opp'n 21. The government urged the jury to convict Mr. Balwani on all investor counts because Ms. Holmes allegedly "told investors that the technology *was* saving lives, that it *was* deployed on medevac helicopters and on the battlefield," Def. Ex. M at 7027 (emphases added), knowing full well that evidence it fought hard to exclude proved otherwise. Had the government been forced to correct the testimony, there is a reasonable possibility that "*could* have affected the judgment of the jury." *Dow v. Virga*, 729 F.3d 1041, 1048 (9th Cir. 2013). The jury was entitled to decide for itself whether Ms. Holmes' statements supported the government's charges and whether to credit witnesses' demonstrably

12

false memories of conversations from almost a decade ago.[7]

A new trial on all investor counts would satisfy 18 U.S.C. § 3143(b)(1) (*contra* Opp'n 18), because, as the government does not dispute, these largely served as the basis for Mr. Balwani's imprisonment. Mot. 21 n.10; Def. Ex. J at 13 (district court evaluating error's impact on "*all* investor fraud counts").

As for preservation (Opp'n 18-19), at trial, Mr. Balwani argued that the jury should hear "the actual words [Ms. Holmes] said" and not just Mr. Tolbert's false "recollection of what she said." Def. Ex. M at 4249. The issue was discussed extensively, *id.* at 4248-61, 4389-96, and the court ruled it "would not permit [admission]," *id.* at 4396. "Seek[ing] to admit the recordings" or transcript "while Tolbert was testifying," Opp'n 18, thus would have been futile. In any event, the *Napue* claim at a minimum is reviewed for plain error, and Mr. Balwani has presented a substantial question under that standard. *See Alli*, 344 F.3d at 1008 ("relatively rare" for *Napue* violation not to affect substantial rights); Mot. 17-20.

## CONCLUSION

The Court should grant Mr. Balwani's motion for release pending appeal.

---

[7] The government states that on cross-examination, Mr. Tolbert confirmed he "had re-reviewed the transcript of the call recordings in preparing for his testimony." Opp. 19. In fact, Mr. Tolbert said he "ha[d] not" reviewed the recording or transcript recently. Gov. Ex. D at 4469; *see also* Def. Ex. M at 4435.

April 3, 2023

Jeffrey B. Coopersmith
Aaron Brecher
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101

Amy Walsh
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

Stephen A. Cazares
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
355 South Grand Avenue,
Suite 2700
Los Angeles, CA 90071

Respectfully submitted,

*/s/ Mark S. Davies*
Mark S. Davies
James Anglin Flynn
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

Sachi Schuricht
Amari L. Hammonds
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105

*Counsel for Appellant*

## LIST OF EXHIBITS

Exhibit A: Dkt. No. 469, Third Superseding Indictment, filed July 28, 2020

Exhibit B: Dkt. No. 1155, United States' Motions in Limine, filed November 19, 2021

Exhibit C: Dkt. No. 1218, Minute Order for December 23, 2021, filed December 23, 2021

Exhibit D: Dkt. No. 1235, Verdict Form for Elizabeth Holmes, filed January 3, 2022

Exhibit E: Dkt. No. 1507, Verdict Form for Ramesh "Sunny" Balwani, filed July 7, 2022

Exhibit F: Dkt. No. 1508, Minute Order for July 7, 2022, filed July 7, 2022

Exhibit G: Dkt. No. 1725, United States' Opposition to Defendant Ramesh "Sunny" Balwani's Motion for Release Pending Appeal, filed January 30, 2023

Exhibit H: Dkt. No. 1730, Order on Sentencing, filed February 16, 2023

Exhibit I: Dkt. No. 1731, Judgment in a Criminal Case, filed February 16, 2023

Exhibit J: Dkt. No. 1743, Order Denying Motion for Release Pending Appeal, filed March 9, 2023

Exhibit K: Dkt. No. 1744, Order Granting Defendant's Administration Motion and Extending Defendant's Reporting Date, filed March 9, 2023

Exhibit L: Excerpts from Transcript of February 4, 2022 Hearing

Exhibit M: Excerpts from Trial Transcript of Ramesh "Sunny" Balwani

Exhibit N: Excerpts from Trial Transcript of Elizabeth Holmes

Exhibit O: Transcript of February 17, 2023 Hearing

Exhibit P: Certificate of the Court Reporter

Exhibit Q: TX4621 - CMS letter titled "Condition Level Deficiencies - Immediate Jeopardy."

Exhibit R: Dkt. No. 265, United States' Opposition to Defendants' Motion to Dismiss Superseding Indictment for Lack of Notice and, in the Alternative, for a Bill of Particulars, filed January 13, 2020

Exhibit S: Dkt. No. 267, United States' Opposition to Defendants' Motion to Dismiss Counts Two and Nine Through Eleven of Superseding Indictment, filed January 13, 2020

Exhibit T: Dkt. No. 1193, Defendant Ramesh "Sunny" Balwani's Replies in Support of his Motions in Limine, filed December 13, 2021

Exhibit U: Dkt. No. 1711-3, Exhibit 1 to Defendant Ramesh "Sunny" Balwani's Motion for Release Pending Appeal: Excerpts from Transcript of July 14, 2020 Grand Jury Testimony of Christopher McCollow, filed January 9, 2023

Exhibit V: Dkt. No. 1729, Defendant Ramesh "Sunny" Balwani's Reply in Support of Motion for Release Pending Appeal, filed February 10, 2023

Exhibit W: Excerpts from Transcript of February 4, 2022 Hearing

Exhibit X: Excerpts from Trial Transcript of Ramesh "Sunny" Balwani

Exhibit Y: TX504 - Email thread from Daniel Edlin to Stephen Cook, Subject: RE: Lab Set

Exhibit Z: TX1891 - Exhibit 952: Email from Nimesh Jhaveri to Sunny Balwani, Subject: Re: store build out

Exhibit AA: TX10446 - Email from D. Edlin to M. Givens re SOCAFRICA update

Exhibit BB: TX10457 - Email from D. Edlin to E. Holmes re Approved IRB Protocol for Theranos LOE

Exhibit CC: TX20161 - Email from D. Edlin to S. Balwani re deployment to Afghanistan