# Exhibit W

1

2                UNITED STATES DISTRICT COURT

3              NORTHERN DISTRICT OF CALIFORNIA

4                   SAN JOSE DIVISION

5

   UNITED STATES OF AMERICA,        )
6                                   )  CR-18-00258-EJD
               PLAINTIFF,           )
7                                   )  SAN JOSE, CALIFORNIA
          VS.                       )
8                                   )  FEBRUARY 4, 2022
   RAMESH SUNNY BALWANI,            )
9                                   )  PAGES 1 - 192
               DEFENDANT.           )
10  _____)

11

12              TRANSCRIPT OF ZOOM PROCEEDINGS
          BEFORE THE HONORABLE EDWARD J. DAVILA
              UNITED STATES DISTRICT JUDGE
13
    A P P E A R A N C E S:
14
    FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
15                        BY:  JOHN C. BOSTIC
                               JEFFREY B. SCHENK
16                             AMANI FLOYD
                          150 ALMADEN BOULEVARD, SUITE 900
17                        SAN JOSE, CALIFORNIA 95113

18                        BY:  ROBERT S. LEACH
                               KELLY VOLKAR
19                        1301 CLAY STREET, SUITE 340S
                          OAKLAND, CALIFORNIA 94612
20
        (APPEARANCES CONTINUED ON THE NEXT PAGE.)
21

22  OFFICIAL COURT REPORTERS:
                          IRENE L. RODRIGUEZ, CSR, RMR, CRR
23                        CERTIFICATE NUMBER 8074
                          LEE-ANNE SHORTRIDGE, CSR, CRR
24                        CERTIFICATE NUMBER 9595

25      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
          TRANSCRIPT PRODUCED WITH COMPUTER

| | | |
|---|---|---|
| 12:15PM | 1 | ARRANGEMENT FOR VARIOUS PARTIES AND HOW THE I.T. WAS SET UP |
| 12:15PM | 2 | BOTH FOR THE DEFENSE AND THE GOVERNMENT, AND I INTEND TO FOLLOW |
| 12:15PM | 3 | THAT AGAIN. |
| 12:15PM | 4 | MR. COOPERSMITH:  THANK YOU, YOUR HONOR.  YES, WE |
| 12:15PM | 5 | LOOK FORWARD TO HAVING THAT CONVERSATION WITH MS. KRATZMANN. |
| 12:15PM | 6 | THE COURT:  GREAT.  GREAT JOB. |
| 12:15PM | 7 | MR. BOSTIC:  AND WE WILL MAKE OURSELVES AVAILABLE AS |
| 12:15PM | 8 | WELL, YOUR HONOR. |
| 12:15PM | 9 | THE COURT:  OKAY.  GREAT.  OKAY. |
| 12:15PM | 10 | WELL, LET'S TALK ABOUT MOTIONS IN LIMINE AND GET THAT |
| 12:16PM | 11 | DISCUSSION STARTED. |
| 12:16PM | 12 | AGAIN, I'M REFERRING TO DOCUMENT 1316, WHICH WAS YOUR |
| 12:16PM | 13 | JOINT STATEMENT IN ADVANCE OF A PRETRIAL CONFERENCE THAT |
| 12:16PM | 14 | DISCUSSED -- AND THANKS FOR THIS -- YOUR MOTIONS, AS WELL AS |
| 12:16PM | 15 | THE SUGGESTED ORDER OF DISCUSSING THEM. |
| 12:16PM | 16 | AND I INTEND TO ADOPT YOUR SCHEDULE JUST FOR YOUR |
| 12:16PM | 17 | INFORMATION.  SO LET'S GO THROUGH THESE BEARING THAT IN MIND. |
| 12:16PM | 18 | THE FIRST IS MR. BALWANI'S MOTION IN LIMINE NUMBER 1. |
| 12:16PM | 19 | MR. COOPERSMITH:  YOUR HONOR, MR. CAZARES WILL |
| 12:16PM | 20 | ADDRESS THAT ON BEHALF OF MR. BALWANI. |
| 12:16PM | 21 | THE COURT:  OKAY.  THIS IS A MOTION TO EXCLUDE |
| 12:16PM | 22 | EVIDENCE OF ACCURACY AND RELIABILITY OF TESTS RUN ON UNMODIFIED |
| 12:16PM | 23 | COMMERCIAL DEVICES, AND THIS IS DOCUMENT 1156.  IT'S PAGE 1, |
| 12:17PM | 24 | ECF PAGE 12. |
| 12:17PM | 25 | THE GOVERNMENT'S RESPONSE IS IN DOCUMENT 1181, AND THE |

| | | |
|---|---|---|
| 12:17PM | 1 | REPLY IS DOCUMENT 1193. |
| 12:17PM | 2 | SO I'VE READ THAT.  MR. CAZARES? |
| 12:17PM | 3 | MR. CAZARES:  GOOD AFTERNOON, YOUR HONOR. |
| 12:17PM | 4 | STEPHEN CAZARES FOR MR. BALWANI. |
| 12:17PM | 5 | YOUR HONOR, MAY I REMOVE MY MASK? |
| 12:17PM | 6 | THE COURT:  YES. |
| 12:17PM | 7 | MR. CAZARES:  THANK YOU VERY MUCH. |
| 12:17PM | 8 | WHAT MR. BALWANI IS ASKING FOR IN THIS MOTION IN LIMINE |
| 12:17PM | 9 | NUMBER 1 IS FOR THE COURT TO REQUIRE THE GOVERNMENT TO |
| 12:17PM | 10 | ESTABLISH SUFFICIENT FOUNDATION THAT ANY TESTING EVIDENCE, |
| 12:17PM | 11 | WHETHER IT BE WITNESS TESTIMONY OR DOCUMENTATION THAT THE |
| 12:17PM | 12 | GOVERNMENT INTENDS TO INTRODUCE, THAT THERE BE A FOUNDATION TO |
| 12:17PM | 13 | ESTABLISH THAT THAT TESTING WAS RELATED TO OR WAS RUN ON EITHER |
| 12:17PM | 14 | THERANOS'S PROPRIETARY EDISON DEVICE OR ON MODIFIED COMMERCIAL |
| 12:17PM | 15 | DEVICES USING THE FINGERSTICK TECHNOLOGY. |
| 12:17PM | 16 | AND THE REASON AND THE BASES FOR THE MOTION IS, FIRST, THE |
| 12:17PM | 17 | FOUR CORNERS OF THE INDICTMENT AND THE TEXT.  I THINK READING |
| 12:18PM | 18 | THE INDICTMENT JUST ON ITS FACE REFERENCES THERANOS'S |
| 12:18PM | 19 | TECHNOLOGY, THERANOS'S PROPRIETARY TECHNOLOGY MORE THAN A DOZEN |
| 12:18PM | 20 | TIMES IN RELATION TO ACCURACY AND RELIABILITY. |
| 12:18PM | 21 | THERE IS NOT A SINGLE PLACE IN THE INDICTMENT THAT |
| 12:18PM | 22 | REFERENCES ACCURACY AND RELIABILITY AND RELIABILITY PROBLEMS |
| 12:18PM | 23 | WITH COMMERCIAL TESTING, AND INTERESTINGLY THE INDICTMENT DOES |
| 12:18PM | 24 | IN MULTIPLE PLACES JUXTAPOSE THERANOS'S ALLEGEDLY INACCURATE |
| 12:18PM | 25 | TESTING VERSUS WHAT HAPPENS WITH COMMERCIAL TESTING. |

12:18PM  1      AND I THINK IT MAKES CLEAR JUST ON THE TEXT ALONE THAT THE

12:18PM  2   INDICTMENT ALLEGES INACCURACY ISSUES RELATED TO JUST THE

12:18PM  3   FINGERSTICK TECHNOLOGY.

12:18PM  4      AND IF THAT'S THE CASE, THE GOVERNMENT SHOULD NOT BE

12:18PM  5   PERMITTED TO INTRODUCE EVIDENCE RELATING TO ACCURACY AND

12:18PM  6   UNRELIABILITY PROBLEMS ON THE COMMERCIAL TESTING.  THAT IS

12:18PM  7   SIMPLY OUTSIDE OF THE INDICTMENT.

12:18PM  8          THE COURT:  ARE THERE ANY -- THANK YOU.

12:18PM  9      ARE THERE ANY GROUNDS OR ANY METHOD WHERE YOU THINK THAT

12:18PM  10  TYPE OF INFORMATION MIGHT BE RELEVANT?

12:19PM  11     I UNDERSTAND THAT HE'S NOT -- YOUR CLIENT IS NOT CHARGED

12:19PM  12  WITH DOING ANYTHING WITH COMMERCIAL MACHINES.  HE'S CERTAINLY

12:19PM  13  NOT CHARGED WITH THAT.

12:19PM  14     AND IF THAT IS THE ONLY EVIDENCE AND YOU ASKED THE COURT

12:19PM  15  TO GRANT A DIRECTED VERDICT, I WOULD PROBABLY GRANT THAT IF

12:19PM  16  THEY DIDN'T PUT ANYTHING IN ABOUT THE COMPANY'S MACHINES LIKE

12:19PM  17  THEY SAID IN THE INDICTMENT.

12:19PM  18     BUT ARE THERE ANY -- IS THERE ANY WAY THAT THAT WOULD BE

12:19PM  19  RELEVANT HERE?

12:19PM  20          MR. CAZARES:  WELL, YOUR HONOR HAS ALREADY ADDRESSED

12:19PM  21  THAT IN RESPONSE TO THE PARTIES' MOTIONS IN LIMINE ORDER NUMBER

12:19PM  22  798, AND I BELIEVE IN THAT ORDER THE COURT PRECLUDED THE

12:19PM  23  GOVERNMENT FROM INTRODUCING EVIDENCE OF ASSAYS OUTSIDE OF WHAT

12:19PM  24  WERE LISTED IN THE BILL OF PARTICULARS, WHICH WERE ALSO LISTED

12:19PM  25  IN THE ULTIMATE INDICTMENT AT ISSUE, THE THIRD SUPERSEDING

12:19PM  1      INDICTMENT, BUT DID PERMIT SOME REFERENCE TO OTHER TESTING,

12:19PM  2      OTHER ASSAYS FOR CONTEXTUAL REASONS I THINK IS KIND OF THE BEST

12:20PM  3      WAY TO PUT IT, BUT NOT ACCURACY AND RELIABILITY.

12:20PM  4           SO TO THE EXTENT A DOCUMENT, A PIECE OF EVIDENCE OR A

12:20PM  5      REPORT INCLUDED BOTH A FINGERSTICK TESTING AND MAYBE SOME

12:20PM  6      ISSUES WITH THE ACCURACY ON THAT FINGERSTICK TESTING, BUT ALSO

12:20PM  7      REFERENCES SOME OTHER TESTING, IF THAT REFERENCE TO THE OTHER

12:20PM  8      TESTING DIDN'T POINT TO INACCURACY ISSUES OR UNRELIABILITY

12:20PM  9      ISSUES, CONTEXTUALLY I DON'T THINK THAT WOULD NECESSARILY BE

12:20PM  10     IMPERMISSIBLE.

12:20PM  11          AND I THINK BECAUSE OF THE INVESTOR FRAUD CASE AND THE

12:20PM  12     JUXTAPOSITION OF, YOU KNOW, THE CONCEALMENT THEORETICALLY OF

12:20PM  13     THE USE OF COMMERCIAL TESTING FROM THE INVESTORS AS ALLEGED IN

12:20PM  14     THE INDICTMENT, WE DON'T THINK THAT THERE'S NO PLACE FOR

12:20PM  15     REFERENCE TO COMMERCIAL TESTING IN THE TRIAL, ITS ACCURACY AND

12:20PM  16     RELIABILITY.

12:20PM  17          COMMERCIAL TESTING, THAT'S NOT A PART OF THIS TEST AS FAR

12:20PM  18     AS ACCURACY AND RELIABILITY.

12:20PM  19          THE FINGERSTICK TESTING, YES, THAT'S FAIR ENOUGH, THAT'S

12:20PM  20     WHAT IS ALLEGED IN THE INDICTMENT AND THAT'S WHAT WE'RE

12:20PM  21     PREPARED TO DEFEND.

12:20PM  22          THE PROBLEM IS A LOT OF THE EVIDENCE THAT THE GOVERNMENT

12:20PM  23     WANTS TO INTRODUCE IN THE TRIAL, WHAT THEY TRIED TO INTRODUCE

12:20PM  24     AND DID IN THE HOLMES TRIAL, AND WHAT THEY WANT TO INTRODUCE

12:21PM  25     HERE RELATES TO ACCURACY AND RELIABILITY ISSUES ON TESTING THAT

12:21PM 1    WAS RUN ON COMMERCIAL DEVICES THAT WERE UNMODIFIED.  THAT WAS

12:21PM 2    NOT FINGERSTICK TESTING.

12:21PM 3         AND MR. BALWANI'S POSITION IS UNTIL THE GOVERNMENT CAN

12:21PM 4    ESTABLISH A FOUNDATION THAT THOSE TESTS WERE RUN ON THE

12:21PM 5    COMMERCIAL -- I MEAN, THE MODIFIED FINGERSTICK TESTING OR THE

12:21PM 6    EDISON, IT SHOULDN'T BE PERMITTED.

12:21PM 7         AND THAT INCLUDES, BY THE WAY, MOST OF THE CMS SURVEY

12:21PM 8    REPORT BECAUSE MOST OF THE CMS SURVEY REPORT DOES NOT RELATE TO

12:21PM 9    THERANOS'S PROPRIETARY FINGERSTICK TECHNOLOGY OR THE MODIFIED

12:21PM 10   PREDICATE TESTING.  IT SIMPLY DOESN'T.

12:21PM 11             THE COURT:  OKAY.

12:21PM 12             MR. CAZARES:  IT'S OTHER ISSUES.

12:21PM 13             THE COURT:  OKAY.

12:21PM 14        MR. BOSTIC?

12:21PM 15             MR. BOSTIC:  SO, YOUR HONOR, MY COLLEAGUE,

12:21PM 16   MS. VOLKAR, IS GOING TO ADDRESS THE ISSUES WITH THE CMS REPORT.

12:21PM 17        BUT GENERALLY SPEAKING, I JUST WANT TO CLARIFY A COUPLE

12:21PM 18   MUCH THINGS.

12:21PM 19        ONE IS THAT IT'S REALLY IMPORTANT NOT TO MISS THE FACT

12:21PM 20   THAT THE USE OF UNMODIFIED COMMERCIAL DEVICES BY THERANOS IS

12:21PM 21   REALLY CENTRAL TO THE FRAUD IN THIS CASE, AND I THINK

12:22PM 22   MR. CAZARES ACCOUNTED FOR THAT WHEN HE SAID THAT, YES, THE

12:22PM 23   ALLEGED CONCEALMENT OF THE USE OF THOSE THIRD PARTY DEVICES WAS

12:22PM 24   A BIG PART OF THE DECEPTION IN THIS CASE THAT AFFECTED VICTIMS.

12:22PM 25        BUT IT'S IMPOSSIBLE TO REALLY SEPARATE THE INVESTOR SIDE

12:22PM 1     FROM THE PATIENT SIDE WHEN IT COMES TO THAT FACT AS WELL.

12:22PM 2        SO THE USE OF UNMODIFIED DEVICES WAS RELEVANT ON THE

12:22PM 3     PATIENT SIDE AS WELL, AND I RESPECTFULLY DISAGREE WITH

12:22PM 4     MR. CAZARES'S READING OF THE INDICTMENT WHEN HE SAYS THAT THE

12:22PM 5     INDICTMENT LANGUAGE LIMITS THE GOVERNMENT'S CASE TO THE USE OF

12:22PM 6     THERANOS TECHNOLOGY ONLY.

12:22PM 7        TO BE SURE, THE INDICTMENT USES THE PHRASE THERANOS

12:22PM 8     TECHNOLOGY MULTIPLE TIMES, BUT IT ALSO HAS BROADER ALLEGATIONS

12:22PM 9     ABOUT THE COMPANY'S OVERALL ABILITY TO DELIVER ACCURATE

12:22PM 10     RESULTS, TO DELIVER FAST RESULTS.

12:22PM 11        AND THOSE REPRESENTATIONS THAT THE DEFENDANTS MADE, THE

12:22PM 12     REPRESENTATION THAT THERANOS'S TESTS WERE ACCURATE, THAT

12:22PM 13     THERANOS'S TESTS WERE RELIABLE, THEY WERE FAST, THEY WERE

12:22PM 14     CHEAP, THOSE REPRESENTATIONS WEREN'T BROKEN DOWN BY TEST TYPE,

12:23PM 15     BY ASSAY TYPE, OR BY THE KIND OF DEVICE USED.

12:23PM 16        THEY WERE BLANKET REPRESENTATIONS THAT THE DEFENDANTS USED

12:23PM 17     TO ATTRACT CUSTOMERS WHO WOULD MAKE USE OF THE ENTIRE RANGE OF

12:23PM 18     THERANOS'S TESTS.

12:23PM 19        AND THOSE CLAIMS OF ACCURACY WERE FALSE. THEY WERE UNTRUE

12:23PM 20     FOR A FEW DIFFERENT REASONS.

12:23PM 21        WHEN IT CAME TO THE THERANOS TECHNOLOGY -- AND THE

12:23PM 22     INDICTMENT IS CLEAR ON THIS -- THOSE REPRESENTATIONS WERE FALSE

12:23PM 23     BECAUSE THE THERANOS TECHNOLOGY SUFFERED FROM ACCURACY PROBLEMS

12:23PM 24     SPECIFIC TO THAT TECHNOLOGY, AND THE COURT HEARD PLENTIFUL

12:23PM 25     EVIDENCE ON THAT DURING THE OTHER TRIAL.

12:23PM 1    THOSE REPRESENTATIONS WERE ALSO TRUE BECAUSE -- OR SO,

12:23PM 2    WERE ALSO UNTRUE BECAUSE THERANOS WAS FORCED TO USE UNMODIFIED

12:23PM 3    COMMERCIAL DEVICES FOR MANY OF ITS ASSAYS.

12:23PM 4    AND SO WHEN THE COMPANY HELD OUT ITS TESTS AS SUPERIOR TO

12:23PM 5    WHAT WAS OTHERWISE AVAILABLE, WHEN MS. HOLMES, FOR EXAMPLE, WAS

12:24PM 6    INTERVIEWED BY "THE WALL STREET JOURNAL" FOR A SEPTEMBER 2013

12:24PM 7    ARTICLE AND THEN, BASED ON HER REPRESENTATIONS, THE ARTICLE

12:24PM 8    PRINTED THAT THE ACCURACY OF THERANOS'S TESTS REPRESENTED AN

12:24PM 9    ADVANCE COMPARED TO WHAT HAD COME PREVIOUSLY, WHEN SHE APPROVED

12:24PM 10   THAT ARTICLE BEFORE IT WAS PUBLISHED, THAT CAUSED PATIENT

12:24PM 11   VICTIMS TO BELIEVE THAT WHEN THEY WENT TO THERANOS, THEY WOULD

12:24PM 12   BE RECEIVING A TEST THAT NOT ONLY WAS ACCURATE, BUT WAS MORE

12:24PM 13   ACCURATE THAN WHAT THEY COULD GET ELSEWHERE, AND THAT WAS FALSE

12:24PM 14   AS TO THERANOS TECHNOLOGY TESTS BECAUSE OF THE PROBLEMS THAT WE

12:24PM 15   JUST TALKED ABOUT.

12:24PM 16   BUT IT WAS ALSO FALSE AS TO TESTS RUN ON COMMERCIAL

12:24PM 17   DEVICES BECAUSE THOSE TESTS RUN ON COMMERCIAL DEVICES WERE NOT,

12:24PM 18   IN FACT, MORE ACCURATE THAN THE TESTS THAT THOSE SAME PATIENTS

12:24PM 19   COULD HAVE GOTTEN ELSEWHERE.

12:24PM 20   SO THOSE MISREPRESENTATIONS ABOUT BOTH KINDS OF TESTS WERE

12:24PM 21   PART OF THE OVERALL SCHEME TO DEFRAUD PATIENTS, AND THAT'S ONE

12:24PM 22   REASON WHY TESTIMONY FROM PATIENTS LIKE VICTIM E.T. WAS

12:25PM 23   ADMISSIBLE IN THE HOLMES CASE AND IS ADMISSIBLE HERE AS WELL.

12:25PM 24   WHEN IT COMES TO NOTICE TO THE DEFENSE ALSO, IT'S

12:25PM 25   IMPORTANT TO NOTE THAT THE HIV TEST, WHICH THE PARTIES BOTH

12:25PM 1     AGREE WAS RUN ON AN UNMODIFIED COMMERCIAL DEVICE, IS LISTED

12:25PM 2     EXPRESSLY IN THE INDICTMENT.  AND IT'S BEEN LISTED THERE, IN

12:25PM 3     FACT, SINCE SEPTEMBER 2018.

12:25PM 4         SO AS EARLY AS SEPTEMBER 2018, MORE THAN THREE YEARS AGO,

12:25PM 5     BOTH DEFENDANTS IN THIS CASE WERE ON WRITTEN NOTICE THAT THE

12:25PM 6     GOVERNMENT'S ALLEGATIONS INCLUDED THAT THERE WERE ACCURACY AND

12:25PM 7     RELIABILITY PROBLEMS WITH, FOR EXAMPLE, THAT ASSAY WHICH IS NOT

12:25PM 8     RUN ON A THERANOS-SPECIFIC DEVICE.

12:25PM 9         SO TO THE EXTENT SOME OF THE LANGUAGE IN THE INDICTMENT

12:25PM 10    MIGHT BE SUBJECT TO TWO COMPETING READINGS, EITHER THAT THE

12:25PM 11    INDICTMENT IS LIMITED TO ALLEGATIONS RELATING TO

12:25PM 12    THERANOS-SPECIFIC TECHNOLOGY AS THE DEFENSE WOULD HAVE THE

12:25PM 13    COURT READ IT, OR THAT IT'S NOT AND THAT IT ALSO INCLUDES

12:26PM 14    THERANOS'S BROADER CAPABILITIES, THE INCLUSION OF HIV ON THAT

12:26PM 15    LIST PRECLUDES THE DEFENSE'S READING.

12:26PM 16        THE INCLUSION OF HIV ON THAT LIST IS INCONSISTENT WITH AN

12:26PM 17    INTERPRETATION OF THE INDICTMENT THAT IT IS LIMITED ONLY TO

12:26PM 18    THERANOS TECHNOLOGY TESTS.

12:26PM 19             THE COURT:  OKAY.

12:26PM 20             MR. CAZARES:  CAN I ADDRESS THAT, YOUR HONOR?

12:26PM 21             THE COURT:  YES.

12:26PM 22             MR. CAZARES:  FIRST OF ALL, WITH RESPECT TO THE HIV

12:26PM 23    TESTING, YES, PATIENT E.T. RECEIVED AN HIV ON THE UNMODIFIED

12:26PM 24    COMMERCIAL DEVICE.

12:26PM 25        THE ISSUE WAS RAISED SLIGHTLY, VAGUELY, BY MS. TREFZ

12:26PM 1    BEFORE PATIENT E.T. TESTIFIED THAT HER TESTING IN FACT WASN'T

12:26PM 2    EVEN ON THERANOS TECHNOLOGY.

12:26PM 3        AND THE GOVERNMENT IGNORED THAT ARGUMENT AND PRESSED AHEAD

12:26PM 4    AND ADDRESSED OTHER ISSUES.

12:26PM 5        BUT THE PROBLEM HERE IS PATIENT E.T.'S TESTING IS SIMPLY A

12:26PM 6    PART OF THE -- THEORETICALLY THE ALLEGED SCHEME TO DEFRAUD.  TO

12:26PM 7    THE EXTENT THAT SHE RECEIVED THERANOS FINGERSTICK TESTING, OR

12:26PM 8    THE MODIFIED COMMERCIAL TESTING, AND THEN HER REPORT WAS

12:27PM 9    WIRED -- AND THAT'S THE GOVERNMENT'S THEORETICAL EXECUTION OF

12:27PM 10   THE SCHEME TO DEFRAUD -- THE EXECUTION OF THE SCHEME TO DEFRAUD

12:27PM 11   DOESN'T DEFINE THE SCHEME TO DEFRAUD.  THAT'S JUST A

12:27PM 12   JURISDICTIONAL HOOK.

12:27PM 13       THE WIRE TRANSMISSION THAT MAKES WHAT OTHERWISE CONDUCT IS

12:27PM 14   NOT FEDERALLY ILLEGAL SUDDENLY ILLEGAL.  I MEAN, THE

12:27PM 15   GOVERNMENT -- THE COURT KNOWS THIS AND I'M NOT TELLING YOU

12:27PM 16   ANYTHING YOU DON'T KNOW.

12:27PM 17       BUT THE PROBLEM IS THAT THE EXECUTION DOESN'T DEFINE THE

12:27PM 18   SCHEME.

12:27PM 19       AND THE GOVERNMENT ALSO IGNORES WHAT MR. BALWANI INCLUDED

12:27PM 20   IN OUR BRIEFING, THAT THE GOVERNMENT BELIEVED HIV WAS ON

12:27PM 21   FINGERSTICK TESTING BEFORE IT INDICTED.  THE GOVERNMENT

12:27PM 22   PRESENTED HIV TESTING ALONG WITH A LIST OF ASSAYS IT ASKED

12:27PM 23   DR. MASTER TO EVALUATE AND TO OPINE ON.

12:27PM 24       NOW, HE WASN'T ABLE TO DO THAT BECAUSE THEY DIDN'T HAVE

12:27PM 25   MUCH EFFORT OR MUCH INFORMATION TO PROVIDE TO HIM, BUT IN THEIR

12:27PM 1    EXCHANGES WITH DR. MASTER, THE GOVERNMENT BELIEVED HIV TESTING

12:27PM 2    WAS ON THERANOS PROPRIETARY FINGERSTICK TESTING.

12:27PM 3        AND I THINK THAT ALONE IS VERY TELLING BECAUSE NOW THE

12:27PM 4    GOVERNMENT IS REPRESENTING SOMETHING DIFFERENT THAN WHAT THEY

12:28PM 5    WERE REPRESENTING WITHIN THEIR OWN KIND OF DISCUSSIONS ON THEIR

12:28PM 6    TEAM AND DISCLOSED TO THE DEFENSE AS A PART OF THEIR OWN EXPERT

12:28PM 7    TESTIMONY DISCLOSURES IN THAT INSTANCE.

12:28PM 8        BUT I THINK IT'S ALSO REALLY IMPORTANT FOR THE COURT,

12:28PM 9    THERE ARE OTHER ELEMENTS THAT DEMONSTRATE AND SUPPORT THE

12:28PM 10    DEFENSE READING OF THE INDICTMENT, AND THAT'S THE COURT'S OWN

12:28PM 11    DESCRIPTION OF THE ALLEGATION IN THE ORDER RELATING TO THE

12:28PM 12    MOTIONS IN LIMINE IN THE HOLMES CASE AT DOCKET 798.

12:28PM 13        THIS COURT READ AND DESCRIBED AND CHARACTERIZED THE

12:28PM 14    ALLEGATIONS EXACTLY AS MR. BALWANI IS ASKING THIS COURT TO DO

12:28PM 15    TODAY.

12:28PM 16        AND, IN FACT, THE GOVERNMENT IN THEIR OWN MOTION IN LIMINE

12:28PM 17    NUMBER 12 ASKED THE COURT TO PRECLUDE MR. BALWANI FROM

12:28PM 18    INTRODUCING EVIDENCE OF HIS FAMILY'S TESTING UNLESS MR. BALWANI

12:28PM 19    COULD ESTABLISH THE VERY SAME FOUNDATION THAT WE'RE ASKING THE

12:28PM 20    COURT TO REQUIRE OF THE GOVERNMENT.

12:29PM 21        I DON'T SEE HOW THE GOVERNMENT CAN CONSISTENTLY ASK THE

12:29PM 22    COURT TO PRECLUDE US FROM INTRODUCING COMMERCIAL TESTING

12:29PM 23    WITHOUT A FOUNDATION THAT IT TOUCHES THERANOS TECHNOLOGY, YET

12:29PM 24    THE GOVERNMENT SOMEHOW DOES, IS PERMITTED?  THAT DOESN'T MAKE

12:29PM 25    SENSE.

|            |    |                                                              |
|------------|----|--------------------------------------------------------------|
| 12:29PM    | 1  | THE COURT:  OKAY.                                             |
| 12:29PM    | 2  | MR. BOSTIC:  SO, YOUR HONOR, ON THE FIRST POINT, AND          |
| 12:29PM    | 3  | AS FAR AS IT RELATES TO THE SCOPE OF DR. MASTER'S WORK, I THINK |
| 12:29PM    | 4  | THAT MR. CAZARES IS RELYING ON SOME LANGUAGE THAT WAS CITED IN |
| 12:29PM    | 5  | THE DEFENSE'S BRIEFING INDICATING THAT THE GOVERNMENT BELIEVED |
| 12:29PM    | 6  | THAT TESTING WAS DONE ON FINGERSTICK.                         |
| 12:29PM    | 7  | THAT TESTING WAS DONE ON FINGERSTICK, HOWEVER.  IT WAS        |
| 12:29PM    | 8  | DONE ON A COMMERCIAL UNMODIFIED DEVICE, BUT THE TEST METHOD WAS |
| 12:29PM    | 9  | FINGERSTICK.                                                  |
| 12:29PM    | 10 | SO I THINK IT WOULD BE AN IMPROPER CONCLUSION TO ASSUME       |
| 12:29PM    | 11 | THAT FINGERSTICK IN THE GOVERNMENT'S MIND EQUATES IN EVERY CASE |
| 12:29PM    | 12 | TO THERANOS PROPRIETARY TECHNOLOGY.  WE KNOW THAT'S NOT THE   |
| 12:29PM    | 13 | CASE.                                                         |
| 12:29PM    | 14 | AND AGAIN, THE EXPLICIT EXPRESS INCLUSION OF HIV ON THAT      |
| 12:30PM    | 15 | LIST PUT THE DEFENSE ON NOTICE YEARS AGO THAT HIV TESTING     |
| 12:30PM    | 16 | ACCURACY AND RELIABILITY WAS WITHIN THE SCOPE OF THESE        |
| 12:30PM    | 17 | ALLEGATIONS.                                                 |
| 12:30PM    | 18 | WHEN IT COMES TO THE TENSION THAT THE DEFENSE SEES BETWEEN    |
| 12:30PM    | 19 | THE GOVERNMENT'S POSITION HERE AND WITH RESPECT TO THE TESTING |
| 12:30PM    | 20 | PERFORMED FOR MR. BALWANI'S MOTHER, THERE WERE MULTIPLE REASONS |
| 12:30PM    | 21 | WHY, IN THE GOVERNMENT'S VIEW, THAT EVIDENCE WAS NOT          |
| 12:30PM    | 22 | ADMISSIBLE, INCLUDING SOME LACK OF CLARITY AS TO WHETHER THE  |
| 12:30PM    | 23 | DEFENDANT'S MOTHER RELIED ON THAT TESTING, HOW IT WAS USED,   |
| 12:30PM    | 24 | WHAT TESTS WERE RUN, AND THE ULTIMATE PURPOSE.               |
| 12:30PM    | 25 | AND THAT'S WHAT REALLY MATTERS WHEN IT COMES TO THE          |

12:30PM 1    DEFENDANT'S INTENT THERE, BUT I DON'T WANT TO GET INTO ARGUING

12:30PM 2    THAT MOTION UNTIL IT'S TIME.

12:30PM 3            THE COURT:  WHAT IS -- THANK YOU.

12:30PM 4        WHAT -- IF YOU DECIDE TO USE THIS TESTIMONY OR THIS

12:30PM 5    EVIDENCE ABOUT THESE OTHER MACHINES, WOULD IT BE IN A DIFFERENT

12:31PM 6    WAY THAN YOU USED IT OR ATTEMPTED TO USE IT IN THE OTHER CASE?

12:31PM 7        IS THERE A DIFFERENT THEORY OF ADMISSIBILITY, OR WILL YOU

12:31PM 8    BE USING IT FOR THE SAME PURPOSE?

12:31PM 9            MR. BOSTIC:  I BELIEVE IT'S ADMISSIBLE FOR THE SAME

12:31PM 10   PURPOSE AS IT PREVIOUSLY WAS, YOUR HONOR.

12:31PM 11       SO EVERY PATIENT WHO PAID FOR THERANOS TESTING WAS --

12:31PM 12   WELL, LET ME BACK UP ACTUALLY.

12:31PM 13       EVERY PATIENT WHO PATRONIZED THERANOS'S BLOOD TESTING WAS

12:31PM 14   AN INTENDED VICTIM OF THE CHARGED SCHEME TO DEFRAUD PATIENTS.

12:31PM 15   EVERY PATIENT WHO WALKED THROUGH THOSE DOORS AND GOT ANY KIND

12:31PM 16   OF BLOOD TESTING WAS AN INTENDED VICTIM OF THE ALLEGED SCHEME.

12:31PM 17       VICTIMS WHO PAID FOR THAT TESTING ENDED UP BEING ACTUAL

12:31PM 18   VICTIMS ACCORDING TO THE COURT'S DEFINITION FROM PREVIOUS

12:31PM 19   LITIGATION.  THEY ENDED UP BEING ACTUAL VICTIMS OF THAT SCHEME

12:31PM 20   TO DEFRAUD.

12:31PM 21       SO PATIENT E.T., WHO WAS ATTRACTED TO THERANOS BASED ON

12:32PM 22   THE THINGS THAT WERE IN THE PUBLIC RECORD ABOUT THE COMPANY,

12:32PM 23   FALSE INFORMATION THAT THE DEFENDANTS CONTRIBUTED TO, SHE WAS

12:32PM 24   ATTRACTED TO THERANOS, RELIED ON THOSE RESULTS TO BE ACCURATE,

12:32PM 25   AND SHE PAID FOR THOSE RESULTS.  THAT MAKES HER A VICTIM OF THE

| | | |
|---|---|---|
| 12:32PM | 1 | SCHEME TO DEFRAUD, SO HER TESTIMONY SHOULD BE ADMISSIBLE. |
| 12:32PM | 2 | IN CONNECTION WITH THAT TESTIMONY, THE GOVERNMENT SHOULD |
| 12:32PM | 3 | BE ABLE TO BRING OUT THE FACT THAT ONE OF HER RESULTS AT LEAST |
| 12:32PM | 4 | WAS DEMONSTRABLY INACCURATE. THAT DEPRIVED HER OF THE BENEFIT |
| 12:32PM | 5 | OF THE BARGAIN WITH THERANOS, BECAUSE WHEN SHE WENT TO THAT |
| 12:32PM | 6 | COMPANY, AS SHE TESTIFIED, SHE WANTED ACCURATE RESULTS, SHE HAD |
| 12:32PM | 7 | BEEN LED TO BELIEVE BY THE DEFENDANT'S STATEMENTS THAT SHE |
| 12:32PM | 8 | WOULD RECEIVE ACCURATE RESULTS, AND SHE DID NOT. |
| 12:32PM | 9 | SO THAT MAKES HER A VICTIM OF THE SCHEME TO DEFRAUD THAT |
| 12:32PM | 10 | DIDN'T GET THE BENEFIT OF THE BARGAIN, AND HER TESTIMONY SHOULD |
| 12:32PM | 11 | BE ADMISSIBLE IN THE SAME SCOPE AS IT PREVIOUSLY WAS. |
| 12:32PM | 12 | MR. CAZARES: THIS ISSUE REGARDING THE ADVERTISING |
| 12:32PM | 13 | AS DISTINCT OR AS KIND OF INTERRELATED TO THE ACTUAL TESTING |
| 12:33PM | 14 | THAT IS ALLEGED TO BE INACCURATE I THINK IS MISLEADING. |
| 12:33PM | 15 | WHAT THE GOVERNMENT IS PROPOSING TO THIS COURT RIGHT NOW |
| 12:33PM | 16 | IS THERANOS PROPOUNDED VERY BROADLY ADVERTISING ABOUT THERANOS |
| 12:33PM | 17 | TESTING AT LARGE TO TRY TO ATTRACT PATIENTS TO COME TAKE THEIR |
| 12:33PM | 18 | TESTING BECAUSE IT WAS MORE ACCURATE AND CHEAPER IS ESSENTIALLY |
| 12:33PM | 19 | WHAT THE ALLEGATION IS. |
| 12:33PM | 20 | BUT THE PROBLEM IS THAT THE INDICTMENT LIMITS THE ACTUAL |
| 12:33PM | 21 | TESTING THAT IS ALLEGEDLY INACCURATE AND UNRELIABLE AND WITH |
| 12:33PM | 22 | WHICH MS. HOLMES AND MR. BALWANI WERE MISLEADING THESE PATIENTS |
| 12:33PM | 23 | TO THERANOS TECHNOLOGY. THERE'S NOWHERE IN THE INDICTMENT |
| 12:33PM | 24 | WHERE COMMERCIAL TESTING IS IDENTIFIED AS BEING INACCURATE AND |
| 12:33PM | 25 | UNRELIABLE. |

12:33PM 1      AND THE CASES THAT THE GOVERNMENT CITES TO ARE SIMPLY

12:33PM 2   INAPPLICABLE HERE.  THOSE CASES RELATE TO SITUATIONS WHERE THE

12:33PM 3   INDICTMENT ESSENTIALLY ALLEGED THE BARE BONES STATUTORY

12:33PM 4   LANGUAGE, SO THERE ARE GAPS, THERE ARE PLACES WHERE IMPLIED

12:33PM 5   ALLEGATIONS CAN FILL THOSE GAPS.

12:33PM 6      NOT THE CASE HERE.  WE HAVE VERY DETAILED, 12 PAGE

12:34PM 7   INDICTMENT.  SO I DON'T THINK THAT KIND OF THEORY STANDS HERE.

12:34PM 8   IT JUST DOESN'T WORK HERE.

12:34PM 9      THE ISSUE RELATING TO WHETHER OR NOT THIS COMMERCIAL

12:34PM 10  TESTING IS A PART OF THE ADVERTISING THAT THERANOS USED TO

12:34PM 11  ATTRACT PATIENTS, I THINK IT'S A RED HERRING AND IT'S

12:34PM 12  MISLEADING, YOUR HONOR, BECAUSE THAT'S NOT WHAT -- THE

12:34PM 13  INDICTMENT TETHERS THERANOS TESTING TO FINGERSTICK TESTING

12:34PM 14  THROUGHOUT THE INDICTMENT.

12:34PM 15     IT'S BEEN READ THAT WAY BY THE GOVERNMENT, BY THE COURT.

12:34PM 16     AND THIS ISSUE WASN'T RAISED IN THE HOLMES CASE.  IT

12:34PM 17  WASN'T RAISED SPECIFICALLY BEFORE THE HOLMES TRIAL.  I DON'T

12:34PM 18  KNOW WHY IT WASN'T.

12:34PM 19     BUT WHAT HAPPENED IN THE HOLMES TRIAL SHOULD NOT BE

12:34PM 20  APPLICABLE TO THE BALWANI CASE UNLESS THE COURT IS ABLE TO

12:34PM 21  RESOLVE THIS.

12:34PM 22     I THINK OUR READING OF THE INDICTMENT IS CORRECT.  I THINK

12:34PM 23  THE GOVERNMENT HAS TO LAY A FOUNDATION TYING THE TESTING THAT

12:34PM 24  THEY'RE GOING TO INTRODUCE INACCURATE AND UNRELIABLE

12:34PM 25  THEORETICAL RESULTS TO TO THE THERANOS PROPRIETARY TESTING,

| | |
|---|---|
| 12:34PM | 1 |
| 12:35PM | 2 |
| 12:35PM | 3 |
| 12:35PM | 4 |
| 12:35PM | 5 |
| 12:35PM | 6 |
| 12:35PM | 7 |
| 12:35PM | 8 |
| 12:35PM | 9 |
| 12:35PM | 10 |
| 12:35PM | 11 |
| 12:35PM | 12 |
| 12:35PM | 13 |
| 12:35PM | 14 |
| 12:35PM | 15 |
| 12:35PM | 16 |
| 12:35PM | 17 |
| 12:35PM | 18 |
| 12:35PM | 19 |
| 12:35PM | 20 |
| 12:35PM | 21 |
| 12:35PM | 22 |
| 12:35PM | 23 |
| 12:35PM | 24 |
| 12:36PM | 25 |

YOUR HONOR.  I DON'T THINK THERE'S ANY OTHER READING.

THE COURT:  OKAY.

MR. BOSTIC.

MR. BOSTIC:  JUST VERY BRIEFLY, YOUR HONOR.

I DON'T SEE HOW THE DEFENSE CAN SAY THAT THE INDICTMENT IS LIMITED TO THERANOS TECHNOLOGY ONLY WHEN IT EXPRESSLY INCLUDES THE HIV TEST.

AND SIMILARLY, I DON'T KNOW HOW THE DEFENSE CAN SAY THERE'S NO EVIDENCE OF COMMERCIAL TESTING IN THE INDICTMENT WHEN, AGAIN, HIV, WHICH WAS RUN ON THAT COMMERCIAL DEVICE, IS SITTING RIGHT THERE PROVIDING EXPRESS NOTICE TO THE DEFENSE ON THAT.

MR. CAZARES:  YOUR HONOR, CAN WE GO TO PARAGRAPH 16 OF THE INDICTMENT?

THE COURT:  I'M SORRY.

MR. BOSTIC, HAD YOU FINISHED?

MR. BOSTIC:  I'M FINISHED.  THANK YOU, YOUR HONOR.

THE COURT:  MR. CAZARES, WHERE ARE YOU?

MR. CAZARES:  PARAGRAPH 16 OF THE INDICTMENT AT PAGES 6 AND 7, LINES 24 TO 28.  THIS FIRST SENTENCE, ONE SENTENCE, LONG SENTENCE, BUT THIS IS HOW THE GOVERNMENT ALLEGED THE INDICTMENT:  "DESPITE REPRESENTING TO DOCTORS AND PATIENTS THAT THERANOS COULD PROVIDE ACCURATE, FAST, RELIABLE AND CHEAP BLOOD TESTS AND TEST RESULTS, HOLMES AND BALWANI KNEW THROUGH, AMONG OTHER MEANS, THEIR INVOLVEMENT IN THERANOS'S DAY-TO-DAY

12:36PM 1    OPERATIONS AND THEIR KNOWLEDGE OF COMPLAINTS RECEIVED FROM

12:36PM 2    DOCTORS AND PATIENTS THAT THERANOS'S TECHNOLOGY WAS, IN FACT,

12:36PM 3    NOT CAPABLE OF CONSISTENTLY PRODUCING ACCURATE AND UNRELIABLE

12:36PM 4    RESULTS."

12:36PM 5        THEN THE PARAGRAPHS CONTINUES.  "IN PARTICULAR," THAT'S

12:36PM 6    NOT EXPANDING THE SCOPE, THAT'S DEFINING WHAT IT MEANS FOR THIS

12:36PM 7    THERANOS TECHNOLOGY TO BE INACCURATE AND UNRELIABLE.  "IN

12:36PM 8    PARTICULAR, HOLMES AND BALWANI KNEW THAT THERANOS WAS NOT

12:36PM 9    CAPABILITY OF CONSISTENTLY PRODUCING ACCURATE AND RELIABLE

12:36PM 10   RESULTS FOR CERTAIN BLOOD TESTS, INCLUDING, BUT NOT LIMITED TO,

12:36PM 11   THE LIST, INCLUDING HIV."

12:36PM 12       I CAN'T SEE HOW THE GOVERNMENT COULD POSSIBLY UNTETHER THE

12:36PM 13   LIST OF TESTS IN THE INDICTMENT FROM THERANOS'S TECHNOLOGY.

12:36PM 14       THE LISTING OF HIV --

12:36PM 15          THE COURT:  EXCUSE ME, MR. CAZARES.

12:36PM 16       I'M SORRY.  MR. BOSTIC, IS THAT WHAT YOU'RE DOING?  YOU'RE

12:36PM 17   UNTETHERING THAT?

12:36PM 18          MR. BOSTIC:  SO, YOUR HONOR, I UNDERSTAND THE BASIS

12:37PM 19   FOR THE DEFENDANT'S READING AND THE REASON WHY THE DEFENSE

12:37PM 20   WANTS TO READ THE INDICTMENT THAT WAY.

12:37PM 21       THAT IS ONE POSSIBLE WAY TO READ THE INDICTMENT.

12:37PM 22       BUT AS I SAID BEFORE, IT'S INCOMPATIBLE.  THAT

12:37PM 23   INTERPRETATION IS INCOMPATIBLE WITH THE PRESENCE OF HIV ON THAT

12:37PM 24   LIST.

12:37PM 25       AND IT'S NOT STRICTLY CALLED FOR BY THE LANGUAGE ITSELF.

12:37PM 1    THE LANGUAGE ITSELF, AS I SAID BEFORE, DOES MENTION THERANOS'S

12:37PM 2    TECHNOLOGY.

12:37PM 3    THAT IS ONE OF THE REASONS WHY THE REPRESENTATIONS ABOUT

12:37PM 4    THERANOS'S ABILITY TO RETURN ACCURATE RESULTS WAS FALSE.  THOSE

12:37PM 5    RESULTS -- THOSE REPRESENTATIONS WERE FALSE PARTLY BECAUSE OF

12:37PM 6    THE PROBLEMS WITH THERANOS TECHNOLOGY, BUT THAT'S NOT THE ONLY

12:37PM 7    REASON WHY THEY WERE FALSE.

12:37PM 8    AND ANOTHER REASON WHY THEY WERE FALSE WAS BECAUSE

12:37PM 9    THERANOS HAD TO RELY ON COMMERCIAL UNMODIFIED DEVICES WHICH, BY

12:37PM 10   DEFINITION, COULD NOT HAVE BEEN ESPECIALLY OR EXCEPTIONALLY

12:37PM 11   ACCURATE.

12:37PM 12   MR. CAZARES:  YOUR HONOR, ON LINE 28, IF INSTEAD OF

12:38PM 13   "IN PARTICULAR" THE GOVERNMENT SAID "IN ADDITION TO," THEN THE

12:38PM 14   READING THAT THE GOVERNMENT IS PROFFERING HERE MIGHT BE

12:38PM 15   SOMEWHAT POSSIBLE OR PLAUSIBLE.

12:38PM 16   BUT "IN PARTICULAR" IS A LIMITATION, IT'S A TETHERING,

12:38PM 17   IT'S A DEFINITIONAL USE.

12:38PM 18   AND THE PROBLEM ALSO IS THAT THE GOVERNMENT DOES NOT ALSO

12:38PM 19   WANT TO ADMIT IT MAKES MISTAKES.  THEY BELIEVED HIV WAS ON

12:38PM 20   THERANOS PROPRIETARY TECHNOLOGY.

12:38PM 21   ONE OF THE OTHER ASSAYS LISTED HIGHER IS GONORRHEA.

12:38PM 22   GONORRHEA IS NOT A BLOOD TEST.  THE INDICTMENT THROUGHOUT LISTS

12:38PM 23   BLOOD TESTING.

12:38PM 24   GONORRHEA WAS A PELVIC SWAB TEST RUN ON AN UNMODIFIED FDA

12:38PM 25   COMMERCIAL DEVICE.

12:38PM 1      AND IF THE GOVERNMENT BELIEVES MY PROFFER IS INACCURATE,

12:38PM 2   THEY CAN SUBMIT SOMETHING TO THE COURT.

12:38PM 3      THE FACT IS THAT THE INDICTMENT HAS MISTAKES.  THEY

12:38PM 4   MISTAKENLY IDENTIFIED GONORRHEA AS A THERANOS PROPRIETARY TEST,

12:38PM 5   EVEN A BLOOD TEST, AND THEY MISTAKENLY IDENTIFIED HIV AS A

12:38PM 6   THERANOS PROPRIETARY BLOOD TEST AND IT SIMPLY WASN'T.

12:38PM 7      AND SO FOR THAT REASON THEY SHOULDN'T BE PERMITTED TO

12:38PM 8   INTRODUCE EVIDENCE OF THE INACCURACY AND UNRELIABILITY OF THAT

12:39PM 9   TESTING UNTIL THEY TETHER IT TO THERANOS FINGERSTICK.

12:39PM 10          THE COURT:  OKAY.  THANK YOU.

12:39PM 11          MR. BOSTIC:  YOUR HONOR, JUST ON THAT?

12:39PM 12          THE COURT:  YES.

12:39PM 13          MR. BOSTIC:  THE INDICTMENT ACTUALLY DOESN'T

12:39PM 14   EXPRESSLY IDENTIFY THOSE ASSAYS AS PROPRIETARY THERANOS TESTS.

12:39PM 15   IT DOESN'T DO THAT.

12:39PM 16      AND THE KIND OF LANGUAGE PARSING THAT THE DEFENSE IS

12:39PM 17   ASKING THE COURT TO DO I THINK WOULD BE MORE APPROPRIATE IF WE

12:39PM 18   WERE INTERPRETING A STATUTE OR A SET OF PATENT CLAIMS.

12:39PM 19      BUT WHEN WE'RE LOOKING AT AN INDICTMENT WHOSE PURPOSE IS

12:39PM 20   TO SIMPLY PROVIDE NOTICE TO THE DEFENSE OF THE SCOPE OF THE

12:39PM 21   CASE, I THINK THAT KIND OF HYPERTECHNICAL OR OVERLY ANALYTICAL

12:39PM 22   INTERPRETATION IS EXACTLY WHAT THE NINTH CIRCUIT CASE LAW CITED

12:39PM 23   BY THE GOVERNMENT WARNS AGAINST.

12:39PM 24          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

12:39PM 25      LET'S MOVE TO 2, WHICH IS GOVERNMENT'S MIL 7 TO ADMIT

| | |
|---|---|
| 12:39PM | 1 |
| 12:39PM | 2 |
| 12:40PM | 3 |
| 12:40PM | 4 |
| 12:40PM | 5 |
| 12:40PM | 6 |
| 12:40PM | 7 |
| 12:40PM | 8 |
| 12:40PM | 9 |
| 12:40PM | 10 |
| 12:40PM | 11 |
| 12:40PM | 12 |
| 12:40PM | 13 |
| 12:40PM | 14 |
| 12:40PM | 15 |
| 12:41PM | 16 |
| 12:41PM | 17 |
| 12:41PM | 18 |
| 12:41PM | 19 |
| 12:41PM | 20 |
| 12:41PM | 21 |
| 12:41PM | 22 |
| 12:41PM | 23 |
| 12:41PM | 24 |
| 12:41PM | 25 |

1  EXHIBIT 4621, THAT'S THE EXHIBIT IN THE PREVIOUS TRIAL, THE CMS

2  LETTER, INCLUDING THE JANUARY 26TH LETTER AND THE CMS 2567

3  FORM.

4       MR. BOSTIC:  AND, YOUR HONOR, I'LL PASS THE MIKE TO

5  MY COLLEAGUE FOR THAT.

6       THE COURT:  GREAT.

7       MS. VOLKAR:  GOOD AFTERNOON, YOUR HONOR.

8     MS. VOLKAR ON BEHALF OF THE UNITED STATES.

9       THE COURT:  THANK YOU.

10       MS. VOLKAR:  I REPRESENT THAT I AM FULLY VACCINATED

11  AND HAVE MY BOOSTER SHOT.  MAY I PLEASE REMOVE MY MASK?

12       THE COURT:  YES.  THANK YOU.

13       MS. VOLKAR:  THANK YOU.

14       THE COURT:  THIS IS IN DOCUMENT 1155.  IT'S

15  MOTION -- EXCUSE ME.  DOCUMENT 1155, IT'S YOUR MIL 7.

16     I THINK IT'S AT PAGE 7, IS IT?  I THINK THAT'S RIGHT.  LET

17  ME SEE.

18     YES.  ALL RIGHT.

19     MS. VOLKAR.

20       MS. VOLKAR:  THANK YOU, YOUR HONOR.

21     I'D LIKE TO BEGIN WITH A THEME THAT YOU WILL HEAR

22  REPEATEDLY FROM THE GOVERNMENT TODAY, WHICH IS THE COURT

23  REACHED A WELL-REASONED RESULT IN ITS PRIOR ORDER IN THE PRIOR

24  CASE, ECF 798.

25       AND ALTHOUGH THAT ORDER DOES NOT BIND MR. BALWANI, THE

12:41PM 1    COURT IS ENTITLED TO UTILIZE ITS WELL REASONED ANALYSIS AND

12:41PM 2    REACH THE SAME CONCLUSION, AND THIS IS THE FIRST OF MANY TIMES

12:41PM 3    THAT THE GOVERNMENT WILL ASK THE COURT TO DO THAT.

12:41PM 4        THE COURT GRANTED THE GOVERNMENT'S MOTION TO ADMIT THE CMS

12:41PM 5    REPORT IN ECF 798 AT PAGES 16 TO 20, AND IT SHOULD DO SO HERE

12:41PM 6    FOR THE SAME REASONS.

12:41PM 7        MY UNDERSTANDING, AND I BELIEVE THE REASON WHY MR. BALWANI

12:41PM 8    WANTED TO LINK THIS ARGUMENT TO THE MOTION IN LIMINE NUMBER 1

12:42PM 9    FOR MR. BALWANI WAS THIS UNMODIFIED COMMERCIAL DEVICE, WHICH

12:42PM 10   IT'S MY UNDERSTANDING THE SOLE NEW ARGUMENT THAT MR. BALWANI'S

12:42PM 11   TEAM RAISES THAT HAS NOT ALREADY BEEN ADDRESSED BY THE COURT OR

12:42PM 12   THE PARTIES.

12:42PM 13       AND FOR THE REASONS EXPRESSED BY MY COLLEAGUE, MR. BOSTIC,

12:42PM 14   THE GOVERNMENT'S VIEW IS THAT MR. BALWANI'S TEAM READS THE

12:42PM 15   INDICTMENT TOO NARROWLY.

12:42PM 16       AND, AGAIN, THE MAIN ASSAY THAT THEY POINT TO AS A REASON

12:42PM 17   TO EXCLUDE LARGE SWATHS OF THE CMS REPORT, INCLUDING PORTIONS

12:42PM 18   THAT WERE ADMITTED IN THE PRIOR TRIAL, IS BECAUSE PT INR WAS

12:42PM 19   NOT IN THEIR VIEW RUN ON THERANOS'S TECHNOLOGY, EVEN THOUGH IT

12:42PM 20   IS EXPRESSLY LISTED IN THE ASSAYS LISTED IN PARAGRAPH 16 OF THE

12:42PM 21   COMPLAINT.

12:42PM 22       AND SO THE GOVERNMENT'S VIEW IS AS MR. BOSTIC ADDRESSED.

12:42PM 23   DUE TO IT EXPLICITLY BEING LISTED, THE DEFENDANT HAS BEEN ON

12:43PM 24   NOTICE AND THAT IS NOT A REASON TO EXCLUDE THE CMS REPORT.

12:43PM 25       AND WHILE I'M HAPPY TO ADDRESS THE ARGUMENTS THAT WE'VE

12:43PM 1    SPOKEN ABOUT MANY TIMES BEFORE YOUR HONOR WITH PRIOR COUNSEL, I

12:43PM 2    WILL REST ON OUR PRIOR ARGUMENTS IN OUR BRIEFING WITH RESPECT

12:43PM 3    TO THOSE UNLESS THE COURT HAS QUESTIONS.

12:43PM 4            THE COURT:  OKAY.  THANK YOU.

12:43PM 5        MR. CAZARES.

12:43PM 6            MR. CAZARES:  FIRST I'LL START WHERE MS. VOLKAR LEFT

12:43PM 7    OFF REGARDING THE NOTICE ISSUE.

12:43PM 8        THE GOVERNMENT REPEATEDLY STATES, BOTH IN RELATION TO THIS

12:43PM 9    MOTION IN NUMBER 7 FOR THE GOVERNMENT AND IN MR. BALWANI'S

12:43PM 10   MOTION NUMBER 1, THAT THE IDENTIFICATION OF AN ASSAY ITSELF

12:43PM 11   PROVIDES NOTICE TO MR. BALWANI THAT EVERYTHING RELATING TO THAT

12:43PM 12   ASSAY IS SOMEHOW NOW AT ISSUE IN THE TRIAL.

12:43PM 13       BUT THE PROBLEM IS THAT THAT NOTICE THEORY IGNORES THE

12:43PM 14   REST OF THE LANGUAGE IN THE INDICTMENT, INCLUDING WHAT I'VE

12:43PM 15   JUST ARGUED BEFORE IN RELATION TO MOTION IN LIMINE NUMBER 1,

12:43PM 16   THAT THERANOS TECHNOLOGY AND PROPRIETARY TESTING THAT IS

12:43PM 17   ALLEGED TO BE INACCURATE AND UNRELIABLE.

12:44PM 18       TO THE EXTENT THAT THERANOS USED MULTIPLE METHODS FOR

12:44PM 19   DIFFERENT ASSAYS, WHICH IS THE CASE FOR ALMOST ALL OF THE

12:44PM 20   ASSAYS IDENTIFIED IN THE INDICTMENT, THE NOTICE THAT THE

12:44PM 21   GOVERNMENT PROVIDED IN THIS INDICTMENT WAS THAT THE INACCURACY

12:44PM 22   AND UNRELIABILITY OF -- THE INDICTMENT PROVIDED NOTICE OF THE

12:44PM 23   INACCURACY AND UNRELIABILITY ISSUES RELATING TO PT INR, CBC,

12:44PM 24   HIV AND THE OTHER LISTED ASSAYS.

12:44PM 25       THERE IS NO NOTICE IN THIS INDICTMENT TO MR. BALWANI THAT

12:44PM 1      COMMERCIAL TESTING FOR THESE SAME ASSAYS IS AT ISSUE.

12:44PM 2          IF THAT IS NOW AT ISSUE, YOUR HONOR, WE'RE TALKING ABOUT

12:44PM 3      HUNDREDS OF THOUSANDS, MAYBE MILLIONS OF RESULTS RELATING TO

12:44PM 4      THESE MOST COMMONLY ISSUED TESTS, AND THAT'S NOW GOING TO BE A

12:44PM 5      PART OF THIS TRIAL THEORETICALLY ACCORDING TO THE GOVERNMENT

12:44PM 6      NOW.

12:44PM 7          IT WOULDN'T BE LIMITED TO JUST THE ONE OR TWO HIV TESTS OR

12:44PM 8      THE ONE OR TWO CBC TESTS.  SOME OF THESE TESTS ARE SOME OF THE

12:45PM 9      MOST COMMONLY RUN IN THE LAB, POTASSIUM, SODIUM.  I KNOW THE

12:45PM 10     COURT IS FAMILIAR WITH ALL OF THESE THINGS.

12:45PM 11         THAT'S NOT WHAT IS NOTICED IN THIS INDICTMENT.  WHAT IS

12:45PM 12     NOTICED IN THIS INDICTMENT IS ALLEGATIONS OF INACCURACY AND

12:45PM 13     UNRELIABILITY REGARDING THERANOS'S PROPRIETARY TECHNOLOGY.

12:45PM 14         NOW, WITH RESPECT TO THE CMS REPORT AND THE PT INR, THE

12:45PM 15     REPORT ITSELF IDENTIFIES THE 81 TESTS THAT ARE IDENTIFIED AS

12:45PM 16     POTENTIALLY INACCURATE BY THE CMS SURVEYOR, MS. BENNETT, WERE

12:45PM 17     RUN ON AN UNMODIFIED BCS-XP MACHINE THAT'S LISTED IN THE REPORT

12:45PM 18     THAT THE GOVERNMENT WANTS TO INTRODUCE.  THAT'S NOT THERANOS

12:45PM 19     PROPRIETARY TECHNOLOGY.

12:45PM 20         MS. HOLMES DID RAISE THIS ISSUE IN HER MOTION IN LIMINE TO

12:45PM 21     EXCLUDE THIS EVIDENCE.  SHE RAISED RELEVANCE ARGUMENTS, WHICH

12:45PM 22     WE RENEW.  SHE RAISED HEARSAY ARGUMENTS, WHICH WE RENEW.  BUT

12:45PM 23     THIS ISSUE WAS NEVER RAISED.

12:45PM 24         AND I DON'T THINK THE GOVERNMENT -- I DON'T THINK THE

12:45PM 25     GOVERNMENT DISPUTES THE FACT THAT MOST OF THE CMS REPORT AND

12:46PM 1    MOST OF THE FINDINGS RELATE TO THINGS OTHER THAN THERANOS

12:46PM 2    PROPRIETARY FINGERSTICK TESTING.

12:46PM 3              THE COURT:  SO THERE ARE SOME IN THE REPORT THAT DO

12:46PM 4    RELATE TO THIS?

12:46PM 5              MR. CAZARES:  THERE ARE SOME.  THERE ARE SOME.  ONE

12:46PM 6    OF THE ALLEGATIONS THAT WERE IN THE REDACTED VERSION OF THE

12:46PM 7    REPORT THAT MS. HOLMES AND THE GOVERNMENT AGREED TO INTRODUCE

12:46PM 8    RELATING TO SOME QUALITY CONTROL ISSUES WHERE THE DEVICE FAILED

12:46PM 9    QUALITY CONTROL AND THE LAB STILL, IN VIOLATION OF POLICIES,

12:46PM 10   RELEASED PATIENT RESULTS AND CMS IDENTIFIED THAT AND DINGED

12:46PM 11   THEM FOR THOSE VIOLATIONS.

12:46PM 12         THAT RELATED TO THE FINGERSTICK PROPRIETARY TESTING.  I

12:46PM 13   WOULD CONCEDE THAT.  THEORETICALLY THAT WOULD BE ADMISSIBLE.

12:46PM 14         WE STILL THINK IT MAY BE PRECLUDED FOR OTHER REASONS, BUT

12:46PM 15   AT A MINIMUM, SURE, THERE A FOUNDATION WOULD HAVE BEEN LAID AND

12:46PM 16   UNDER THE ARGUMENTS WE MADE IN MOTION IN LIMINE NUMBER 1,

12:46PM 17   THEORETICALLY THAT WOULD BE ADMISSIBLE.

12:46PM 18         BUT THAT WOULD BE ALMOST ALL THAT WOULD BE ADMISSIBLE FROM

12:46PM 19   THAT CMS REPORT.

12:46PM 20         THE IMMEDIATE JEOPARDY FINDING IS SPECIFICALLY TETHERED TO

12:46PM 21   THE HEMATOLOGY TESTING, AND THE HEMATOLOGY TESTING AT THAT TIME

12:47PM 22   WAS COMMERCIAL DEVICES.

12:47PM 23              THE COURT:  OKAY.

12:47PM 24         MS. VOLKAR.

12:47PM 25              MS. VOLKAR:  YOUR HONOR, I'D LIKE TO MAKE A FEW

12:47PM 1    POINTS IN RESPONSE TO THAT.

12:47PM 2         TWO, ON THE READING OF THE INDICTMENT -- SO FIRST, AS MY

12:47PM 3    COLLEAGUE, MR. BOSTIC, POINTED OUT, MY COLLEAGUE ACROSS THE

12:47PM 4    AISLE FOCUSSES ON THE LANGUAGE OF THE INDICTMENT.

12:47PM 5         BUT WE SHOULD NOT LOSE SIGHT OF THE FACT, AND YOUR HONOR

12:47PM 6    OF COURSE REFERENCED THIS IN ONE OF THE MORE RECENT RULINGS IN

12:47PM 7    THE OTHER TRIAL, THE INDICTMENT IS A TOOL TO PROVIDE NOTICE TO

12:47PM 8    THE DEFENDANT.

12:47PM 9         AND WHEN YOUR HONOR ORDERED THE GOVERNMENT TO PROVIDE A

12:47PM 10   BILL OF PARTICULARS, WHICH ALSO INCLUDES THESE ASSAYS THAT ARE

12:47PM 11   LISTED IN PARAGRAPH 16, THAT WAS TO PROVIDE FURTHER NOTICE

12:47PM 12   BECAUSE THERE ARE SO MANY DIFFERENT ASSAYS OUT THERE.  AND, OF

12:47PM 13   COURSE, WE HAD THAT DISCUSSION ON MULTIPLE OCCASIONS WITH

12:47PM 14   YOUR HONOR AND PRIOR COUNSEL.

12:47PM 15        AND THESE SAME ASSAYS THAT WE'RE REFERRING TO IN

12:47PM 16   PARAGRAPH 16 ARE ALSO ON THAT BILL OF PARTICULARS.  THESE HAVE

12:48PM 17   BEEN PROVIDED TO THE DEFENDANT FOR YEARS.

12:48PM 18        AND THE POINT THERE IS THAT NOTICE IS THE KEY REQUIREMENT

12:48PM 19   OF THE INDICTMENT.  SO THE SORT OF HYPERTECHNICAL PARSING MAY

12:48PM 20   HAVE A PLACE IN A STATUTE OR OTHER CONTRACTS OR TYPE DOCUMENTS,

12:48PM 21   BUT NOT NECESSARILY IN THE INDICTMENT.

12:48PM 22        NOW, REGARDLESS OF THAT PRIMARY POINT, TO TAKE

12:48PM 23   MR. BALWANI'S POSITION AND PARSE THE LANGUAGE IN THAT WAY, WE

12:48PM 24   ALSO KNOW THAT THERE ARE CANONS OF INTERPRETATIONS SUCH AS WE

12:48PM 25   SHOULDN'T READ PORTION OF THE DOCUMENT TO BE SURPLUS.

12:48PM 1        AND ESSENTIALLY WHAT MR. BALWANI'S TEAM IS ASSERTING HERE

12:48PM 2    IS THAT WE SHOULD JUST STRIKE SEVERAL OF THE ASSAYS FROM THIS

12:48PM 3    LIST THAT HAS BEEN PROVIDED SINCE SEPTEMBER OF 2018 TO THE

12:48PM 4    DEFENDANT AS SURPLUSAGE JUST BECAUSE OF THE WORDS "IN

12:48PM 5    PARTICULAR."

12:48PM 6        AND IF I'M ALSO NOT MISTAKEN, WE ALSO KNOW THERE ARE

12:48PM 7    CANONS THAT SAY WORDS THAT ARE ESSENTIALLY MODIFIERS OR

12:49PM 8    BEGINNING SENTENCES OR STARTING, WHILE WE CAN'T READ THEM OUT,

12:49PM 9    THEY OFTEN HAVE LESS, THEY HAVE LESS SIGNIFICANCE IN THE TEXT

12:49PM 10   THAN THE SUBSTANCE OF THE WORDS.

12:49PM 11       AND SO TO USE "IN PARTICULAR," A TRANSITIONAL PHRASE, TO

12:49PM 12   READ OUT MULTIPLE ASSAYS, WHICH WE KNOW THERE ARE HUNDREDS OF

12:49PM 13   ASSAYS AND THE IDEA OF THE GOVERNMENT PROVIDING THESE ASSAYS,

12:49PM 14   THESE 25 ASSAYS, WAS TO NARROW THAT FIELD, TO USE THE WORDS "IN

12:49PM 15   PARTICULAR" TO REMOVE CERTAIN OF THESE ASSAYS WOULD REACH AN

12:49PM 16   ABSURB RESULT THAT I DON'T THINK IS WARRANTED, AND I THINK

12:49PM 17   YOUR HONOR HAS SEEN THE TYPE OF EVIDENCE THAT THE GOVERNMENT

12:49PM 18   HAS PRESENTED THROUGH THE PRIOR TRIAL WITH RESPECT TO THESE

12:49PM 19   ASSAYS.

12:49PM 20       NOW, I WANTED TO MOVE TO MY OTHER POINT, WHICH IS A

12:49PM 21   FACTUAL ONE, RELATED SPECIFICALLY TO THE CMS REPORT.

12:49PM 22       SPECIFICALLY, ONE FACTUAL POINT THAT RELATES TO THE CMS

12:50PM 23   REPORT, BUT ALSO TO THESE ASSAYS LISTED IN THE INDICTMENT MORE

12:50PM 24   BROADLY IN PARAGRAPH 16, AT DIFFERENT TIMES THROUGHOUT THE

12:50PM 25   HISTORY OF THE COMPANY, SOME OF THESE ASSAYS WERE MOVED TO

12:50PM 1     THERANOS TECHNOLOGY, OR ATTEMPTED TO MOVE TO THERANOS

12:50PM 2     TECHNOLOGY.

12:50PM 3         WE HEARD FROM PRIOR COUNSEL HOW THERE WAS THE DEVICE

12:50PM 4     ITSELF, THERE WERE THE ASSAYS, THE CHEMISTRY, AND THEN THERE

12:50PM 5     WAS SORT OF THESE COMMERCIAL DEVICES.  THERE WERE MULTIPLE

12:50PM 6     DIFFERENT METHODS, AND SOMETIMES AN ASSAY WAS DEVELOPED FROM

12:50PM 7     THERANOS, BUT IT WASN'T NECESSARILY TRANSITIONED TO THE DEVICE.

12:50PM 8         AND SOMETIMES THERE WERE ATTEMPTS MADE IN RESEARCH AND

12:50PM 9     DEVELOPMENT TO TRY TO BRING THESE ASSAYS TO THE DEVICE OR TO

12:50PM 10     THE FINGERSTICK TECHNOLOGY, AND SOMETIMES THEY WERE ELEVATED

12:50PM 11     FOR A MONTH OR TWO OR LONGER, AND THEN MOVED BACK TO THE

12:50PM 12     COMMERCIAL DEVICE.

12:50PM 13         AND THE ONLY REASON I SAY THAT IS, FOR EXAMPLE, MY

12:50PM 14     UNDERSTANDING OF -- AND MY RECOLLECTION OF THE TESTIMONY IN THE

12:50PM 15     LAST TRIAL IS THAT THE CBC PANEL, WHILE A VERY COMMON TEST, WAS

12:51PM 16     AT SOME TIMES ON THERANOS DEVICES WITH THERANOS ASSAYS OR

12:51PM 17     CHEMISTRY, AND AT OTHER TIMES WAS RUN ON UNMODIFIED DEVICES.

12:51PM 18         SO ANOTHER FAULT IN MR. BALWANI'S ARGUMENT FROM A FACTUAL

12:51PM 19     PERSPECTIVE IS IT'S TRYING TO REMOVE SOME OF THESE ASSAYS

12:51PM 20     ALTOGETHER, WHEN SOME OF THEM HAVE A HISTORY THAT IS MORE

12:51PM 21     COMPLICATED THAN THAT AND WOULD REQUIRE MUCH MORE DETAILED

12:51PM 22     PARSING.

12:51PM 23         MOVING BACK TO SOMETHING THAT MY COLLEAGUE MENTIONED WITH

12:51PM 24     RESPECT TO THE CMS INSPECTOR SARAH BENNETT, SHE ALSO HAS SAID

12:51PM 25     TO THE GOVERNMENT ON MORE THAN ONE OCCASION THAT CMS INSPECTORS

| | | |
|---|---|---|
| 12:51PM | 1 | WERE LIKE BUILDING INSPECTORS.  THEY GO IN AND THEY'RE LOOKING |
| 12:51PM | 2 | FOR IRREGULARITIES AND DEFICIENCIES IN THE LAB PRACTICES. |
| 12:51PM | 3 | BECAUSE THAT IS THEIR ULTIMATE GOAL, THEY'RE NOT ALWAYS WRITING |
| 12:51PM | 4 | DOWN EVERY DEFICIENCY THAT THEY SEE, AND SOMETIMES IF THEY SEE |
| 12:51PM | 5 | A DEFICIENCY WITH ONE ASSAY, THEY MAY REMARK ON THAT IN THE |
| 12:52PM | 6 | REPORT EVEN IF IT APPLIES TO MULTIPLE ASSAYS THAT THEY HAVE |
| 12:52PM | 7 | SEEN. |
| 12:52PM | 8 | AND SO ANOTHER NEARLY IMPOSSIBLE PARSING THAT MR. BALWANI |
| 12:52PM | 9 | WOULD ASK US TO DO BASED ON THE FACTS IN THIS CASE IS BECAUSE |
| 12:52PM | 10 | THE CMS REPORT REFERS TO, FOR EXAMPLE, PT INR AND HEMATOLOGY, |
| 12:52PM | 11 | AN ASSAY LISTED IN THE INDICTMENT BUT NOT NECESSARILY RUN |
| 12:52PM | 12 | EXCLUSIVELY OR ON THE FINGERSTICK TECHNOLOGY, THAT THE |
| 12:52PM | 13 | IMMEDIATE JEOPARDY FINDING FOR THAT, WE MUST LIVE IN A WORLD |
| 12:52PM | 14 | WHERE THAT ONLY APPLIED TO THAT ASSAY AND NO OTHER ASSAYS. |
| 12:52PM | 15 | AND IF SARAH BENNETT WERE HERE, I THINK SHE WOULD TELL |
| 12:52PM | 16 | YOU, AND SHE WOULD TELL THE COURT IF NEED BE, OR THE JURY IF |
| 12:52PM | 17 | NEED BE, THAT THAT'S NOT HOW THE CMS REPORT WORKED.  THE CMS |
| 12:52PM | 18 | REPORT WAS A LIMITED SET OF DEFICIENCIES, BUT FREQUENTLY |
| 12:52PM | 19 | REPRESENTED A MUCH BROADER SET OF PROBLEMS THAT THE INSPECTORS |
| 12:52PM | 20 | SAW AND THE INSPECTORS TOLD THE DEFENDANTS ABOUT. |
| 12:52PM | 21 | THE COURT:  OKAY. |
| 12:52PM | 22 | MR. CAZARES:  YOUR HONOR, THE GOVERNMENT DIDN'T CALL |
| 12:52PM | 23 | MS. BENNETT IN MS. HOLMES'S TRIAL.  THEY DIDN'T FEEL HER |
| 12:53PM | 24 | TESTIMONY WAS IMPORTANT ENOUGH I GUESS TO PROVE THEIR CASE. |
| 12:53PM | 25 | WHAT COUNSEL IS DESCRIBING RIGHT NOW IS THAT THERE ARE A |

12:53PM 1    PENUMBRA, I GUESS, OF VIOLATIONS IN THE CMS REPORT THAT SHOULD

12:53PM 2    BE READ INTO IT AND THAT THE GOVERNMENT CAN NOW RELY ON HAS NO

12:53PM 3    BASIS IN LAW.

12:53PM 4        I MEAN, ESSENTIALLY IF THE GOVERNMENT CAN'T PARSE THIS

12:53PM 5    REPORT AND IDENTIFY WHAT IS AT ISSUE IN THEIR INDICTMENT, HOW

12:53PM 6    CAN A JURY BE PRESENTED WITH THIS MASSIVE REPORT THAT HAS

12:53PM 7    RELATIVELY DAMNING INFORMATION AND ALLEGATIONS, INCLUDING

12:53PM 8    IMMEDIATE JEOPARDY AND THREAT OF HARM TO PATIENTS, HOW IS A

12:53PM 9    JURY SUPPOSED TO PARSE IT?

12:53PM 10       AND THAT'S THE 403 ARGUMENT THAT WE ALSO RAISE.

12:53PM 11       BUT MORE IMPORTANTLY LASTLY WITH RESPECT TO THE CMS

12:53PM 12   REPORT, AS WE RECALL, IT WAS ADMITTED IN THE HOLMES TRIAL FOR

12:53PM 13   MS. HOLMES'S STATE OF MIND, HER INTENT.

12:53PM 14       AND THE GOVERNMENT'S ARGUMENT WAS THAT THE REPORT ITSELF,

12:53PM 15   WHEN IT WAS ISSUED, WAS, HEY, IT WAS RELEVANT TO ESTABLISHING

12:53PM 16   HER STATE OF MIND, INTENT TO DEFRAUD, BECAUSE THROUGHOUT 2016

12:53PM 17   MS. HOLMES CONTINUED TO DEFEND THE LAB AND MAKE PUBLIC

12:54PM 18   STATEMENTS, AND SO CONCURRENT WITH HER RECEIPT OF THESE

12:54PM 19   ALLEGATIONS BY CMS, DISCUSSIONS WITH DR. DAS, SHE CONTINUED TO

12:54PM 20   DEFEND THE LAB.

12:54PM 21       THE PROBLEM IS THAT THE CMS REPORT CAME OUT IN SEPTEMBER

12:54PM 22   OF 2015.  AS OF SEPTEMBER 21ST, 2015, THERANOS STOPPED

12:54PM 23   FINGERSTICK TESTING.  SO ANY ALLEGATIONS IN THE CMS REPORT

12:54PM 24   REGARDING FINGERSTICK TESTING DID NOT CONTINUE AFTER THAT.

12:54PM 25       SO THERE'S NO NOTICE TO MR. BALWANI REGARDING A CONTINUED

12:54PM 1   USE OF INACCURATE AND UNRELIABLE FINGERSTICK TESTING.

12:54PM 2       BY APRIL/MAY, MR. BALWANI RESIGNED.  BY JULY OF 2016 HE

12:54PM 3   WAS GONE.  HE WASN'T MAKING PUBLIC STATEMENTS.  HE WASN'T DOING

12:54PM 4   NEWS REPORT AT THAT TIME.

12:54PM 5       SO I DON'T SEE WHERE THE GOVERNMENT'S THEORY THAT THE CMS

12:54PM 6   REPORT IS RELEVANT TO MR. BALWANI'S STATE OF MIND OR INTENT

12:54PM 7   FITS EITHER IN THE PATIENT TESTING OR IN PARTICULAR IN THE

12:54PM 8   INVESTOR CASE BECAUSE THE LAST INVESTORS WERE IN THE SPRING OF

12:55PM 9   2015, MONTHS BEFORE CMS EVER SHOWED UP.

12:55PM 10      SO IF THE THEORY OF ADMISSIBILITY IS FOR MR. BALWANI'S

12:55PM 11  STATE OF MIND, TEMPORALLY IT SIMPLY DOESN'T WORK.

12:55PM 12          THE COURT:  IS THERE ANY, IS THERE ANY CONNECTION?

12:55PM 13  I THINK THE EVIDENCE CAME OUT IN THE OTHER TRIAL, I DON'T KNOW

12:55PM 14  IF IT WILL IN THIS ONE, THAT YOUR CLIENT -- I THINK THERE WERE

12:55PM 15  MULTIPLE WITNESSES WHO SAID THAT YOUR CLIENT WAS, AND I'LL JUST

12:55PM 16  PUT IT IN THE VERNACULAR, THE LAB GUY, AND HE HAD ACCESS TO THE

12:55PM 17  LAB GUY -- EXCUSE ME -- TO THE LAB.

12:55PM 18      THERE MAY BE EVIDENCE IN THIS CASE THAT HE PARTICIPATED IN

12:55PM 19  THE HIRING OF LAB DIRECTORS, ET CETERA, THAT TYPE OF THING.

12:55PM 20      DOES THAT OVERLAP WITH THE TIMING OF THE CMS REPORT AS TO

12:55PM 21  THE ISSUE OF KNOWLEDGE AND INTENT AND NOTICE?

12:55PM 22          MR. CAZARES:  WELL, THERE ARE REFERENCES IN THE CMS

12:55PM 23  REPORT TO DEFICIENCIES IN THE HIRING OF, FOR EXAMPLE, THE LAB

12:56PM 24  DIRECTOR, DR. DHAWAN AT THE TIME.  THOSE FACTS TOOK PLACE IN

12:56PM 25  2014 AND '15.

12:56PM 1         THE REPORT DIDN'T COME OUT UNTIL JANUARY OF 2016.  SO THIS

12:56PM 2    REPORT NOTICE PROVIDED BY CMS AFTER THE FACTUAL EVENTS TOOK

12:56PM 3    PLACE, THAT'S NOTICE AND INTENT OF NOTHING.  IT'S AFTER THE

12:56PM 4    FACT.  IT'S TOO LATE.

12:56PM 5         YOU CAN'T USE THIS EVIDENCE OF CMS'S FINDINGS TO SOMEHOW

12:56PM 6    REACH BACK IN TIME AND SAY, OH, LOOK, WHAT DR. ROSENDORFF SAID

12:56PM 7    WAS TRUE, SO THIS PROVIDES NOTICE OF YOU OF THAT.  OR THIS

12:56PM 8    REPORT --

12:56PM 9            THE COURT:  IT'S NOTICE TO MR. BALWANI.

12:56PM 10          MR. CAZARES:  THAT'S WHAT I'M SAYING, NOTICE TO

12:56PM 11    MR. BALWANI.

12:56PM 12        WHAT THE GOVERNMENT IS TRYING TO SAY --

12:56PM 13           THE COURT:  WELL, ISN'T THAT SAYING, WELL, THIS

12:56PM 14    EVIDENCE SHOWS THAT AT THAT TIME, WITHIN THE TIMING OF THE

12:56PM 15    INDICTMENT, HE KNEW OR SHOULD HAVE KNOWN ABOUT THIS,

12:56PM 16    IRRESPECTIVE OF THE TIME THAT THE ULTIMATE REPORT CAME OUT?

12:56PM 17          MR. CAZARES:  THAT'S BOLSTERING.  THAT'S NOT NOTICE.

12:57PM 18         BECAUSE MR. BALWANI, AT THE TIME THAT THOSE EVENTS ARE

12:57PM 19    TAKING PLACE, HIS INTERACTIONS WITH DR. ROSENDORFF OR HIS

12:57PM 20    HIRING OF DR. DHAWAN, WHATEVER YOU WANT TO SAY ABOUT HIS STATE

12:57PM 21    OF MIND AT THE TIME, IT'S NOT INFORMED BY WHAT CMS BOTH FINDS

12:57PM 22    AND REPORTS TO HIM.

12:57PM 23         THEIR FINDING IS SIMPLY THEORETICALLY CONFIRMING,

12:57PM 24    CUMULATIVE AT SOME LEVEL, BUT IT'S NOT NOTICE.

12:57PM 25          THE COURT:  SO THE NOTICE BEGINS WHEN HE RECEIVES A

12:57PM 1    COPY OF THEIR DOCUMENT THAT INFORMS HIM?

12:57PM 2        MR. CAZARES:  THEIR REPORTS OF WHAT THEY'RE DOING.

12:57PM 3    AND I KNOW THE GOVERNMENT IS GOING TO SIT HERE AND SAY,

12:57PM 4    WELL, THEY HAD EXIT MEETINGS ON SEPTEMBER 22ND AND 23RD OF 2015

12:57PM 5    WITH MS. BENNETT AND MR. YAMAMOTO WHERE MS. HOLMES AND

12:57PM 6    MR. BALWANI WERE TOLD ABOUT SOME OF THE DEFICIENCIES THEY WERE

12:57PM 7    FINDING.

12:57PM 8        TRUE.

12:57PM 9    BUT YOU KNOW WHAT?  FINGERSTICK TESTING HAD ALREADY

12:57PM 10   STOPPED, SO THERE'S NO NOTICE OF PATIENT FRAUD GOING FORWARD

12:57PM 11   BECAUSE IT HAD ALREADY STOPPED.

12:57PM 12   THE INVESTOR CASE HAD ALREADY ENDED IN APRIL/MAY.  NO

12:57PM 13   FURTHER INVESTORS AT THAT TIME.

12:57PM 14   SO EVEN THE EXIT INTERVIEWS OR DISCUSSIONS WHICH TOOK

12:58PM 15   PLACE ON SEPTEMBER 22ND AND 23RD WOULDN'T THEMSELVES PROVIDE

12:58PM 16   NOTICE OF ANYTHING RELATING TO MR. BALWANI, BESIDES THE FACT

12:58PM 17   THAT THE GOVERNMENT NEVER BOTHERED TO CALL CMS WITNESSES IN THE

12:58PM 18   HOLMES TRIAL.  MAYBE THEY WILL IN OUR TRIAL AND WE'LL HAVE A

12:58PM 19   DIFFERENT SITUATION.

12:58PM 20   BUT NOTICE, CMS PROVIDES NOTHING.

12:58PM 21       THE COURT:  OKAY.

12:58PM 22       MR. CAZARES:  IT'S THEORETICALLY CUMULATIVE

12:58PM 23   AFFIRMATION.

12:58PM 24       THE COURT:  MS. VOLKAR.

12:58PM 25       MS. VOLKAR:  THANK YOU, YOUR HONOR.

12:58PM  1        AS MR. BALWANI AND HIS COUNSEL WELL KNOW, THE GOVERNMENT

12:58PM  2   IS NOT BOUND TO SEEK TO ADMIT THE SAME PORTIONS OF THE CMS

12:58PM  3   REPORT IN THAT TRIAL IN THIS COMING TRIAL, JUST AS MR. BALWANI

12:58PM  4   IS NOT BOUND BY THE RULINGS OF THAT PRIOR TRIAL OR ANY TRIAL

12:58PM  5   STRATEGY DECISIONS OF MS. HOLMES'S COUNSEL.

12:58PM  6        SO THAT'S IN PARTICULAR WITH RESPECT TO WHICH PORTIONS OF

12:58PM  7   THE REPORT THE GOVERNMENT CHOSE TO ULTIMATELY SEEK TO ADMIT.

12:58PM  8        THE GOVERNMENT'S POSITION HAS ALWAYS BEEN THE ENTIRETY OF

12:58PM  9   THE REPORT IS ADMISSIBLE, AND ADMISSIBLE FOR ITS TRUTH.  AND

12:58PM 10   THAT HAS NOT CHANGED, AND WE ARGUED THAT BEFORE YOUR HONOR

12:59PM 11   BEFORE ULTIMATELY SEEKING TO ADMIT IT FOR A LIMITED PURPOSE

12:59PM 12   THROUGH DR. DAS.

12:59PM 13        AND WE DID NOT CALL SARAH BENNETT OR A CMS INSPECTOR IN

12:59PM 14   THAT CASE, BUT OF COURSE THE GOVERNMENT IS FREE TO MAKE

12:59PM 15   DECISIONS IN THIS CASE AS THE TRIAL UNFOLDS.

12:59PM 16        AS TO IF THE GOVERNMENT -- I JUST WANT TO ADDRESS THE 403

12:59PM 17   AND IF THE GOVERNMENT CAN'T PARSE THROUGH, HOW COULD THE JURY?

12:59PM 18        OF COURSE THE GOVERNMENT IS WELL AWARE OF WHAT IS IN THE

12:59PM 19   REPORT AND IS VERY CAPABLE OF PARSING THROUGH IT AND HAS DONE

12:59PM 20   SO WITH THE BENEFIT OF MS. BENNETT AND MR. YAMAMOTO ON MANY

12:59PM 21   OCCASIONS.

12:59PM 22        THE DEFENSE, OF COURSE, HAS THE MEMORANDA OF THOSE

12:59PM 23   INTERVIEWS.

12:59PM 24        AND THEN AS FAR AS THE STATE OF MIND, AGAIN, MR. BALWANI'S

12:59PM 25   COUNSEL, MY COLLEAGUE REFERENCES THE ARGUMENTS WE MADE TO

12:59PM 1    CONNECT THE REPORT TO MS. HOLMES'S STATE OF MIND.

12:59PM 2        OF COURSE WE WOULD MAKE DIFFERENT ARGUMENTS BASED ON THE

12:59PM 3    FACTS AND EVIDENCE THAT COME IN AT THIS TRIAL TO CONNECT IT TO

12:59PM 4    MR. BALWANI.

12:59PM 5        ON ITS FACE, I WOULD LIKE TO START WHERE MR. CAZARES

01:00PM 6    ENDED, WHICH IS THOSE EXIT INTERVIEWS.  ALTHOUGH MR. BALWANI

01:00PM 7    WOULD LIKE TO DRAW A CLEAN, NEAT LINE BETWEEN THE CMS

01:00PM 8    INSPECTIONS WHEN THE CMS INSPECTORS WERE TELLING MR. BALWANI,

01:00PM 9    WHO WAS THE MAIN REPRESENTATIVE FROM THERANOS THEY DEALT WITH,

01:00PM 10   WHAT WAS HAPPENING, WHAT THEY WERE FINDING IN THE LAB IN REAL

01:00PM 11   TIME, THEY NEEDED TO COME BACK IN NOVEMBER BECAUSE THEY NEEDED

01:00PM 12   TO SEE IMMEDIATE CHANGES.

01:00PM 13       WHEN THEY CAME BACK IN NOVEMBER, THEY INFORMED MR. BALWANI

01:00PM 14   THAT SEVERAL OF THOSE DEFICIENCIES HAD NOT BEEN FIXED.

01:00PM 15       AND SO THE ONLY VERSION OF EVENTS WHERE THE PATIENT

01:00PM 16   TESTING FRAUD IS NOT AT ALL AT PLAY WITH RESPECT TO CMS'S

01:00PM 17   INTERACTIONS WITH MR. BALWANI IS IF YOU BUY THEIR VIEW THAT

01:00PM 18   ONLY TESTS RUN ON THE FINGERSTICK OR EDISON DEVICE ARE

01:00PM 19   RELEVANT.

01:00PM 20       AND AGAIN, WE GO BACK TO THAT IS SIMPLY NOT TRUE.  THAT'S

01:00PM 21   SIMPLY NOT THE WAY THAT THE INDICTMENT IS WRITTEN.  THE

01:00PM 22   INDICTMENT STATES THE PATIENT FRAUD IS 2013 TO 2016.  THAT IS

01:00PM 23   THE TIME PERIOD THAT PATIENTS WERE RECEIVING THERANOS TESTS AT

01:01PM 24   WALGREENS STORES, AND AT THE TIME PERIOD THAT THE PATIENTS WERE

01:01PM 25   BEING INFORMED THAT THEY WOULD RECEIVE AN ACCURATE AND RELIABLE

01:01PM 1    TEST WHEN THERANOS, AND PARTICULARLY DEFENDANTS, KNEW THAT THAT

01:01PM 2    WAS NOT TRUE.

01:01PM 3        AND ONE OF THE KEY PIECES OF EVIDENCE THAT THE GOVERNMENT

01:01PM 4    COULD PUT FORWARD TO SHOW THAT MR. BALWANI KNEW THAT WAS NOT

01:01PM 5    TRUE WAS IN SEPTEMBER OF 2015, THE CMS INSPECTORS TELL HIM,

01:01PM 6    THESE DEFICIENCIES PUT PATIENT TEST RESULTS AT RISK, OR

01:01PM 7    PATIENTS AT RISK.  PLEASE FIX THEM.

01:01PM 8        THEY COME BACK IN NOVEMBER, AND THEY SAY, YOU HAVEN'T

01:01PM 9    FIXED THEM.  THAT IS ONE OF THE WAYS THAT THE GOVERNMENT COULD

01:01PM 10   CHOOSE, IF IT DOES, TO SHOW THAT THE DEFENDANT WAS NOT

01:01PM 11   PROVIDING THE ACCURATE AND RELIABLE, AND KNEW HE WAS NOT

01:01PM 12   PROVIDING THE ACCURATE AND RELIABLE TESTS THAT HE PURPORTED TO.

01:01PM 13       THE COURT:  WOULD THAT -- I'M SORRY TO INTERRUPT

01:01PM 14   YOU.

01:01PM 15       WOULD THAT BE INDEPENDENT OF THE CMS LETTER THEN?

01:02PM 16       MS. VOLKAR:  I THINK THAT WOULD BE -- WELL, THE

01:02PM 17   FINDINGS --

01:02PM 18       THE COURT:  WHAT I MEAN IS, IT COULD BE INDEPENDENT

01:02PM 19   OF THE CMS LETTER?

01:02PM 20       IN OTHER WORDS, THE WITNESS COULD GET UP AND SAY, WE FOUND

01:02PM 21   DEFICIENCIES, WE TOLD HIM AT TIME 1 AND WE TOLD HIM AT TIME 2,

01:02PM 22   AND NOT EVEN HAVE TO DEAL WITH THE LETTER.  IS THAT A

01:02PM 23   POSSIBILITY?

01:02PM 24       MS. VOLKAR:  THAT WOULD NOT BE THE GOVERNMENT'S

01:02PM 25   PREFERENCE OBVIOUSLY, YOUR HONOR.

01:02PM 1      AND THE GOVERNMENT'S POINT IS THAT CMS TOLD MR. BALWANI

01:02PM 2  THE SUBSTANCE OF WHAT WAS IN THAT LETTER MONTHS BEFORE HE

01:02PM 3  RECEIVED THE LETTER.

01:02PM 4      SO MR. CAZARES -- AND I APOLOGIZE IF I WAS NOT CLEAR --

01:02PM 5  MR. CAZARES WAS POINTING OUT A TIMELINE, AND HE CORRECTLY NOTES

01:02PM 6  THAT THE LETTER ITSELF WAS NOT PROVIDED UNTIL JANUARY OF 2016.

01:02PM 7      AND NOW MS. HOLMES, MY RECOLLECTION, SAID THAT SHE DIDN'T

01:02PM 8  KNOW WHAT WAS GOING TO BE IN THAT LETTER UNTIL SHE RECEIVED IT.

01:02PM 9      THAT'S NOT TRUE FOR MR. BALWANI.

01:02PM 10          THE COURT:  I SEE.

01:02PM 11          MS. VOLKAR:  MR. BALWANI KNEW AS OF SEPTEMBER OF

01:02PM 12  2015 ESSENTIALLY WHAT WAS GOING TO GO IN THAT LETTER.

01:02PM 13          THE COURT:  THERE WAS AN INDEPENDENT SOURCE OF

01:02PM 14  INFORMATION I SUPPOSE.

01:02PM 15          MR. CAZARES:  AND JUST TO CORRECT THE RECORD ON

01:03PM 16  THAT, YOUR HONOR, BECAUSE I'M THE ONE WHO DEPOSED MS. BENNETT,

01:03PM 17  AT THE EXIT INTERVIEWS ON THE 22ND AND 23RD OF SEPTEMBER, 2015,

01:03PM 18  SHE TESTIFIED UNDER OATH THAT SHE NOTIFIED MS. HOLMES AND

01:03PM 19  MR. BALWANI THAT THEY, THE SURVEYORS, WERE CONSIDERING

01:03PM 20  CONDITION LEVEL DEFICIENCIES, WHICH ARE SERIOUS, CONDITION

01:03PM 21  LEVEL, BUT NO DETERMINATIONS HAD BEEN MADE YET ABOUT WHETHER

01:03PM 22  IMMEDIATE JEOPARDY, THE MOST SERIOUS OF THE DEFICIENCIES, HAD

01:03PM 23  BEEN FOUND OR DETERMINED.

01:03PM 24      AND SHE FURTHER TESTIFIED THAT THAT DECISION WAS NOT MADE

01:03PM 25  UNTIL MONTHS LATER.

01:03PM 1        SO THE IDEA THAT MR. BALWANI WAS TOLD, YOU'RE PUTTING

01:03PM 2    PATIENTS AT RISK RIGHT NOW AND YOU NEED TO STOP OR YOU NEED TO

01:03PM 3    DO SOMETHING ABOUT IT, THAT'S NOT WHAT TOOK PLACE.  THAT'S NOT

01:03PM 4    WHAT IS IN MS. BENNETT'S SWORN TESTIMONY.

01:03PM 5        AGAIN, IF THE GOVERNMENT IS GOING TO CALL HER, I GUESS SHE

01:03PM 6    CAN CLARIFY THE RECORD.  BUT THE GOVERNMENT HASN'T SUBMITTED

01:03PM 7    MOST OF THESE FACTUAL ARGUMENTS.

01:03PM 8        THE COURT:  SO IF HE WAS PUT ON NOTICE THAT THERE

01:04PM 9    WERE PROBLEMS, IS THAT ENOUGH?

01:04PM 10       MR. CAZARES:  NO, UNLESS IT WAS TIED TO THERANOS

01:04PM 11   FINGERSTICK TESTING.

01:04PM 12       IF THE GOVERNMENT WANTED TO CHARGE THE CASE THE WAY THAT

01:04PM 13   THEY SAY THEY HAVE CHARGED IT, PUTTING AT ISSUE ALL 9 MILLION

01:04PM 14   TEST RESULTS THROUGHOUT THE HISTORY OF THE LAB, ALL THEY HAD TO

01:04PM 15   DO WAS CHARGE THERANOS ITSELF WAS INCAPABLE OF PRODUCING

01:04PM 16   ACCURATE AND RELIABLE RESULTS.  THAT'S IT.

01:04PM 17       THERANOS:  INACCURATE.

01:04PM 18       THAT'S NOT WHAT THEY DID.

01:04PM 19       THEY SAID THERANOS ADVERTISED ITS TESTING, AND THEN GOT

01:04PM 20   SPECIFIC.  WHAT WAS IT ABOUT THERANOS TESTING?  IT'S

01:04PM 21   FINGERSTICK TESTING.

01:04PM 22       IT'S PLAIN AS DAY, YOUR HONOR, AND I'LL SUBMIT ON THAT

01:04PM 23   POINT.

01:04PM 24       THE COURT:  OKAY.

01:04PM 25       MS. VOLKAR.

| | | |
|---|---|---|
| 01:04PM | 1 | MS. VOLKAR: YOUR HONOR, IF I MAY BE HEARD? |
| 01:04PM | 2 | SO I THINK THERE'S TWO IMPORTANT THINGS TO PARSE OUT HERE. |
| 01:04PM | 3 | ONE IS WE'VE CIRCLED BACK TO WHAT I UNDERSTAND |
| 01:04PM | 4 | MR. BALWANI'S PRIMARY ARGUMENT TO BE, AND IT OF COURSE TIES |
| 01:04PM | 5 | INTO WITH MR. BALWANI'S MOTION IN LIMINE NUMBER 1, AND THAT IS |
| 01:04PM | 6 | THAT ONLY FINGERSTICK TESTS ARE RELEVANT BECAUSE OF THE |
| 01:05PM | 7 | LANGUAGE IN THE INDICTMENT. |
| 01:05PM | 8 | I'LL SUBMIT ON MY PRIOR ARGUMENTS. I DON'T THINK THAT'S |
| 01:05PM | 9 | THE CORRECT READING OF THE INDICTMENT, AND MR. BOSTIC ALSO |
| 01:05PM | 10 | DISCUSSED THAT. |
| 01:05PM | 11 | SO THAT IS ONE ASPECT AND I THINK THE PRIMARY ASPECT THAT |
| 01:05PM | 12 | THE BRIEFING TALKS ABOUT. |
| 01:05PM | 13 | THERE IS ALSO THE RELEVANCE TO THE ELEMENTS THAT ARE BEING |
| 01:05PM | 14 | CHARGED, AND WE'VE BEEN TALKING ABOUT MR. BALWANI'S KNOWLEDGE, |
| 01:05PM | 15 | STATE OF MIND, INTENT. THAT WAS IN ECF 798. |
| 01:05PM | 16 | YOUR HONOR FOUND THAT THAT WAS A KEY PART OF THE RELEVANCE |
| 01:05PM | 17 | TO MS. HOLMES, AND SO THE GOVERNMENT SUBMITS IT STILL REMAINS A |
| 01:05PM | 18 | KEY PART OF THE RELEVANCE FOR MR. BALWANI. |
| 01:05PM | 19 | BUT THERE'S ALSO ANOTHER ASPECT THAT THE GOVERNMENT HASN'T |
| 01:05PM | 20 | GOTTEN A CHANCE TO DISCUSS YET, BUT MENTIONED IN THE BRIEFING. |
| 01:05PM | 21 | THE DOCUMENT, THE CMS REPORT, ALSO DEMONSTRATES FALSITY, |
| 01:05PM | 22 | AN ELEMENT UNTETHERED TO MR. BALWANI'S INTENT AND STATE OF MIND |
| 01:05PM | 23 | SPECIFICALLY. |
| 01:05PM | 24 | BUT THE CMS REPORT CAN DEMONSTRATE, IT'S ONE PIECE OF |
| 01:05PM | 25 | EVIDENCE THAT COULD DEMONSTRATE THAT THE TEST RESULTS AND WHAT |

01:06PM 1    THE DEFENDANTS WERE PROMISING WAS, IN FACT, FALSE.

01:06PM 2        SO THAT'S ANOTHER -- AND I DON'T THINK THAT IS TETHERED BY

01:06PM 3    THE TIMELINE THAT MR. CAZARES HAS BEEN TALKING ABOUT AND

01:06PM 4    SEVERAL OF THE OTHER ITEMS, AND SO I WANT TO MAKE SURE THAT

01:06PM 5    THAT DOESN'T GET LOST IN THE SHUFFLE, WHICH IS THAT THERE ARE

01:06PM 6    MULTIPLE BASES WHY THE REPORT, IN ADDITION TO ANYTHING THAT THE

01:06PM 7    CMS INSPECTORS MAY OR MAY NOT TESTIFY ABOUT, BUT THE REPORT

01:06PM 8    ITSELF CAN BE A KEY PIECE OF EVIDENCE IF THE GOVERNMENT SEEKS

01:06PM 9    TO ADMIT IT, AND WE DO THINK THAT, AS YOUR HONOR DID

01:06PM 10   PREVIOUSLY, IT SHOULD GRANT THE GOVERNMENT'S MOTION IN LIMINE

01:06PM 11   NUMBER 7 AND FIND THE CMS REPORT AND COVER LETTER ADMISSIBLE.

01:06PM 12       MR. CAZARES:  YOUR HONOR, THAT LACKS --

01:06PM 13       THE COURT:  I WONDER IF THIS IS ALSO DEPENDENT ON

01:06PM 14   WHETHER THE GOVERNMENT MAKES A DECISION TO INTRODUCE THIS

01:06PM 15   DOCUMENT, AND I'M JUST SUGGESTING, SHOULD THE COURT DEFER THIS

01:06PM 16   UNTIL THE GOVERNMENT MAKES A DECISION AS TO WHAT IT WANTS TO

01:06PM 17   DO?

01:06PM 18       YOU'RE ASKING TODAY, THROUGH MIL 7, TO INTRODUCE IT

01:07PM 19   ENTIRELY?

01:07PM 20       MS. VOLKAR:  YES, YOUR HONOR.  AND THE REASON FOR

01:07PM 21   THAT IS SIMILAR TO LAST SUMMER WHEN WE WERE PREPARING.

01:07PM 22       KNOWING IF THE DOCUMENT WAS ADMISSIBLE, WHICH AGAIN GOING

01:07PM 23   BACK TO LAST MAY WE UNDERSTOOD IT WAS, IT HELPS US TO SET UP

01:07PM 24   OUR LIST OF WITNESSES, IT HELPS US DETERMINE HOW TO PROCEED AT

01:07PM 25   TRIAL.

01:07PM 1    THEN SHORTLY BEFORE TRIAL IN THE HOLMES CASE, IT CHANGED A

01:07PM 2    LITTLE BIT AND IT SORT OF WAS CHALLENGED MULTIPLE TIMES AGAIN

01:07PM 3    BY THE HOLMES COUNSEL, AND I KNOW YOUR HONOR IS VERY FAMILIAR

01:07PM 4    WITH THE BACK AND FORTH ON THAT.

01:07PM 5    BUT THE GOVERNMENT'S POSITION HAS NEVER CHANGED.  THE

01:07PM 6    DOCUMENT IS ADMISSIBLE.  KNOWING AHEAD OF TIME, RATHER THAN

01:07PM 7    HAVING IT DEFERRED, WOULD HELP US PREPARE OUR TRIAL STRATEGY.

01:07PM 8    OF COURSE IF YOUR HONOR WANTS TO DEFER, YOU'VE SEEN THAT

01:07PM 9    WE CAN PROVE OUR CASE, EVEN IF IT'S ADMITTED FOR A LIMITED

01:07PM 10   PURPOSE, BUT OUR FIRST PREFERENCE IS THAT THE DOCUMENT IS

01:07PM 11   ADMISSIBLE, IT'S RELEVANT, IT'S NOT HEARSAY, IT'S NOT 403 FOR

01:07PM 12   ALL OF THE REASONS YOUR HONOR PREVIOUSLY STATED, AND WE THINK

01:07PM 13   THAT THIS NEW THEORY THAT MR. BALWANI IS RAISING, PURPORTEDLY

01:08PM 14   THAT IT'S NOT COVERED BY THE ASSAYS IN THE INDICTMENT, IS

01:08PM 15   FLAWED FOR A NUMBER OF REASONS THAT WE HAVE ALREADY DISCUSSED.

01:08PM 16   THANK YOU.

01:08PM 17        MR. CAZARES:  YOUR HONOR, AS TO THE LAST COUPLE OF

01:08PM 18   POINTS, FIRST -- I WON'T BELABOR THIS -- AS TO FALSITY, WHETHER

01:08PM 19   OR NOT THE CMS REPORT IS RELEVANT TO FALSITY SO YOU DON'T HAVE

01:08PM 20   TO GO TO INTENT OR NOTICE TO MR. BALWANI, THAT FALSITY WOULD BE

01:08PM 21   ACCURACY AND RELIABILITY OF THE TESTS AT ISSUE.

01:08PM 22   MS. BENNETT HAS TESTIFIED UNDER OATH IT WAS NOT HER JOB TO

01:08PM 23   MEASURE OR DETERMINE ACCURACY OR UNRELIABILITY.

01:08PM 24   WITH RESPECT TO THE MOST SERIOUS VIOLATIONS SHE FOUND WITH

01:08PM 25   RESPECT TO PT INR, SHE COULD NOT TELL ME.  SHE OVER AND OVER

01:08PM 1    SAID THE RESULTS WERE DIFFERENT.  SHE COULD NOT SAY THEY WERE

01:08PM 2    INACCURATE.  AND THAT IS TRUE THROUGHOUT THE CMS REPORT.

01:08PM 3          WITH RESPECT TO THE TIMING OF THE COURT'S DECISION AND

01:08PM 4    WHETHER THE PARTIES NEED THAT INFORMATION NOW OR IT COULD BE

01:08PM 5    DEFERRED, IF THE GOVERNMENT JUST CALLS DR. DAS AND TRIES TO

01:09PM 6    INTRODUCE THE REPORT IN THE WAY THEY DID IN THE HOLMES TRIAL,

01:09PM 7    IT SIMPLY IS INAPPLICABLE.  IT'S NOT ADMISSIBLE BECAUSE IT'S

01:09PM 8    PURE NOTICE.

01:09PM 9          IF THEY'RE GOING TO TRY TO GO THIS FALSITY ROUTE AND CALL

01:09PM 10   MS. BENNETT OR MR. YAMAMOTO, OUR ARGUMENTS WITH RESPECT TO

01:09PM 11   THERANOS PROPRIETARY TESTING STILL APPLY, BUT THEN THERE WILL

01:09PM 12   BE OTHER ISSUES WHICH I GUESS WE WILL HAVE TO DEAL WITH AT THAT

01:09PM 13   TIME.

01:09PM 14         BUT WE BELIEVE THAT A FOUNDATION NEEDS TO BE ESTABLISHED

01:09PM 15   BY THE GOVERNMENT TETHERING THE TESTING TO THE CHARGES IN THE

01:09PM 16   INDICTMENT.

01:09PM 17              THE COURT:  OKAY.  THANK YOU.

01:09PM 18              MR. CAZARES:  THANK YOU.

01:09PM 19              THE COURT:  THANK YOU VERY MUCH.

01:09PM 20         NEXT ON OUR LIST IS BALWANI'S, MR. BALWANI'S MOTION IN

01:09PM 21   LIMINE NUMBER 3 TO EXCLUDE EVIDENCE OF VOIDING TEST RESULTS.

01:09PM 22              MR. BRECHER:  GOOD AFTERNOON.  AARON BRECHER FOR

01:10PM 23   MR. BALWANI.

01:10PM 24         CONSISTENT WITH MR. COOPERSMITH'S REPRESENTATIONS ABOUT

01:10PM 25   OUR TEAM'S VACCINATION STATUS AND THE COURT'S EARLIER COMMENTS,