**Docket No. 22-10338**

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

———————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RAMESH "SUNNY" BALWANI,

*Defendant-Appellant.*

————————————————

*Appeal from a Decision of the United States District Court for the Northern District of California,*
*No. 5:18-cr-00258-EJD-2 · Honorable Edward J. Davila*

## *AMICUS CURIAE* BRIEF ON BEHALF OF
## THE NATIONAL ASSOCIATION OF CRIMINAL DEFENSE
## LAWYERS IN SUPPORT OF APPELLANT AND REVERSAL

DANIEL M. SULLIVAN, ESQ.
BRIAN T. GOLDMAN, ESQ.
BENJAMIN B. ALLEN, ESQ.
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, New York 10017
Tel: (646) 837-5151
dsullivan@hsgllp.com
bgoldman@hsgllp.com
ballen@hsgllp.com

*Attorneys for Amicus Curiae,*
*The National Association of Criminal Defense Lawyers*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, *amicus curiae*, the National Association of Criminal Defense Lawyers, certifies that it has no parent corporation and no publicly held corporation owns any of its stocks.

Date: May 11, 2023

/s/ *Brian T. Goldman*
Daniel M. Sullivan
Brian T. Goldman
Benjamin B. Allen

HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, New York
(646) 837-5129
bgoldman@hsgllp.com

*Attorneys for Amicus Curiae*

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ................................................. i

TABLE OF AUTHORITIES ............................................................... iii

INTEREST OF *AMICUS CURIAE* ..................................................... 1

STATEMENT ................................................................................. 2

ARGUMENT ................................................................................. 3

I.   SCIENTIFIC EVIDENCE PLAYS AN INCREASINGLY
     CRUCIAL ROLE IN CRIMINAL CONVICTIONS ............................ 3

II.  THE LAY TESTIMONY OFFERED BELOW
     SKIRTED RULES 701 AND 702 ................................................. 7

     A.   FRE 701 And 702 Are Designed To Distinguish Between The
          Treatment Of Lay And Expert Testimony ................................. 7

     B.   The Government's Purported "Lay" Testimony Did Not Comply
          With These Strictures ........................................................ 9

III. THIS COURT SHOULD REAFFIRM THE PROTECTIONS OF
     FRE 701 AND 702 ................................................................. 14

CONCLUSION .............................................................................. 16

CERTIFICATE OF COMPLIANCE ..................................................... 18

CERTIFICATE OF SERVICE ............................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ake v. Oklahoma,*
    470 U.S. 68 (1985) ..................................................................................4

*Daubert v. Merrill Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ...........................................................................8, 13

*Hangarter v. Provident Life & Acc. Ins. Co.,*
    373 F.3d 998 (9th Cir. 2004) ................................................................11

*Jenkins v. Whittaker Corp.,*
    785 F.2d 720 (9th Cir. 1986) ................................................................11

*Rodriguez v. Gen. Dynamics Armament & Tech. Prod.,*
    510 F. App'x 675 (9th Cir. 2013) .....................................................11, 15

*Sealy, Inc. v. Easy Living, Inc.,*
    743 F.2d 1378 (9th Cir. 1984) ..............................................................12

*United States v. Afyare,*
    632 F. App'x 272 (6th Cir. 2016) ..........................................................15

*United States v. Alvarado,*
    209 F. App'x 685 (9th Cir. 2006) ..........................................................15

*United States v. Amaral,*
    488 F.2d 1148 (9th Cir. 1973) ................................................................3

*United States v. Bighead,*
    128 F.3d 1329 (9th Cir. 1997) ................................................................9

*United States v. Chavez-Lopez,*
    767 F. App'x 431 (4th Cir. 2019) ..........................................................11

*United States v. Durham,*
    464 F.3d 976 (9th Cir. 2006) ..................................................................7

*United States v. Figueroa-Lopez,*
    125 F.3d 1241 (9th Cir. 1997) .......................................................2, 8, 11

*United States v. Finley,*
    301 F.3d 1000 (9th Cir. 2002)....................................................10

*United States v. Frazier,*
    387 F.3d 1244 (11th Cir. 2004).....................................................4

*United States v. Ganier,*
    468 F.3d 9206 (6th Cir. 2006)....................................................11

*United States v. Halamek,*
    5 F.4th 1081 (9th Cir. 2021) ........................................................9

*United States v. Hampton,*
    718 F.3d 978 (D.C. Cir. 2013) ...................................................13

*United States v. Holguin,*
    51 F.4th 841 (9th Cir. 2022) .................................................10, 14

*United States v. Lloyd,*
    807 F.3d 1128 (9th Cir. 2015)..................................................2, 14

*United States v. Peoples,*
    250 F.3d 630 (8th Cir. 2001)......................................................15

*United States v. Smith,*
    640 F.3d 358 (D.C. Cir. 2011) ...................................................12

*United States v. Tsosie,*
    709 F. App'x 447 (9th Cir. 2017)...............................................15

*United States v. W.R. Grace,*
    526 F.3d 499 (9th Cir. 2008)......................................................13

## Other Authorities

ABA, *Standards for Criminal Justice: Standards Relating to Discovery and Procedure Before Trial Standard 2.1 (1970)* .............................13

Bennett L. Gershman, *Misuse of Scientific Evidence By Prosecutors,* 28 OKLA. CITY U. L. REV. 17 (2003)..............................................5

Brandon L. Garrett & Peter J. Neufeld, *Invalid Forensic Science Testimony and Wrongful Convictions,* 95 VA. L. REV. 1 (2009) .................................6

David E. Bernstein, *The Unfinished Daubert Revolution*, 10 ENGAGE: J. FEDERALIST SOC'Y PRAC. GROUPS 35 (2009)..............................................14

Erin Murphy, *The Mismatch Between Twenty-First-Century Forensic Evidence and Our Antiquated Criminal Justice System*, 87 S. CAL. L. REV. 633 (2014) ........................................................4

Hon. Donald E. Shelton, *Juror Expectations for Scientific Evidence in Criminal Cases: Perceptions and Reality About the "CSI Effect" Myth*, 27 T.M. COOLEY L. REV. 1 (2010).................................................5

Jean R. Sternlight, *Justice in A Brave New World?*, 52 CONN. L. REV. 213 (2020).....................................................4, 5, 7

Joseph L. Peterson *et al.*, *The Uses and Effects of Forensic Science in the Adjudication of Felony Cases*, 32 J. FORENSIC SCI. 1730 (1987) ...........3

Michael J. Saks & Jonathan Jay Koehler, *The Coming Paradigm Shift in Forensic Identification Science*, 309 SCIENCE 892 (2005)......................6

N. J. Schweitzer & Michael J. Saks, *The Gatekeeper Effect: The Impact of Judges' Admissibility Decisions on the Persuasiveness of Expert Testimony*, 15 PSYCH. PUB. POL'Y & L. 1 (2009)......................................5

Paul C. Giannelli & Kevin C. McMunigal, *Prosecutors, Ethics, and Expert Witnesses*, 76 FORDHAM L. REV. 1493 (2007)..........................................13

Paul C. Giannelli, *Forensic Science*, 34 J.L. MED. & ETHICS 310 (2006)..........3

**Rules**

Fed. R. Crim. P. 16(a)(1)(G) ..............................................................13

Fed. R. Evid. 701...................................................................*passim*

Fed. R. Evid. 702...................................................................*passim*

Fed. R. Evid. 701 advisory comm.'s note to 2000 amend. ..................................8

Fed. R. Evid. 702 advisory comm.'s note to 2000 amend. ..................................5

## INTEREST OF *AMICUS CURIAE*

The National Association of Criminal Defense Lawyers is a nonprofit bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crime or misconduct.

NACDL was founded in 1958. It has a nationwide membership of thousands of members, including private criminal defense lawyers, public defenders, military defense counsel, law professors, and judges. NACDL is the only nationwide professional bar association for public defense and private criminal defense lawyers.

NACDL is dedicated to advancing the proper, efficient, and just administration of criminal justice. Each year, NACDL files amicus briefs in this Court and others in cases that present issues of broad importance to criminal defendants, criminal defense lawyers, and the criminal justice system. The question addressed in this *amicus* brief, involving the protections afforded criminal defendants regarding expert witness testimony and evidence, is such an issue.[1]

---

[1] *Amicus* affirms that no counsel for a party authored this brief in whole or in part, and that no person other than *amicus* and its counsel made a monetary contribution to the preparation or submission of this brief. *Amicus* further represents that all parties consented to the submission of this *amicus* brief.

## STATEMENT

NACDL submitted an *amicus* brief in the pending appeal captioned *Holmes v. United States*, No. 22-10312 (9th Cir. 2023), to point out significant prosecutorial abuses relating to the disclosure and testimony of a critical expert witness, Dr. Das, in Ms. Holmes' criminal trial. At Ms. Holmes' trial, Dr. Das purported to offer testimony as to whether Theranos technology actually worked—a critical fact question at trial. Mr. Balwani's criminal conviction was secured by a similar gambit, namely the use of *three* supposedly lay witnesses to offer expert testimony on the same essential question of whether Theranos technology worked.

The Federal Rules of Evidence prohibit the use of lay witnesses to offer expert testimony. Indeed, that is the entire point of Rules 701 and 702. Mr. Balwani, like Ms. Holmes, was denied the protections of these rules.

Unfortunately, it is not unusual for prosecutors to disregard these safeguards. The government has in the past "subvert[ed] the requirements" of the federal rules, and "blur[r]ed the distinction between" expert and lay testimony. *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997); *see United States v. Lloyd*, 807 F.3d 1128, 1155–56 (9th Cir. 2015).

This appeal, like Ms. Holmes', offers an opportunity for this Court to call the government to account for these harmful practices.

## ARGUMENT

### I. SCIENTIFIC EVIDENCE PLAYS AN INCREASINGLY CRUCIAL ROLE IN CRIMINAL CONVICTIONS

**A.** Expert testimony is a vital part of many criminal proceedings. Studies have consistently found that the prosecutor's presentation of scientific testimony can swing a verdict from innocent to guilty. As one study remarked, "one quarter of the citizens who had served on juries which were presented with scientific evidence believed that[,] had such evidence been absent, they would have changed their verdicts—from guilty to not guilty." Paul C. Giannelli, *Forensic Science*, 34 J.L. MED. & ETHICS 310, 316 (2006) (quoting Joseph L. Peterson *et al.*, *The Uses and Effects of Forensic Science in the Adjudication of Felony Cases*, 32 J. FORENSIC SCI. 1730, 1748 (1987)). This Court recognized as much over fifty years ago. *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973) (noting the "peculiar risks of expert testimony" because "[s]cientific or expert testimony [has an] aura of special reliability and trustworthiness.").

**B.** Today, highly advanced science and technology are integrated much more into society than ever before. DNA evidence is, of course, well

3

known among the general public and used frequently. But there are other examples. We now regularly use "cameras, geo-tracking, facial recognition software, brain scans," and many other tools to collect and understand evidence. Jean R. Sternlight, *Justice in A Brave New World?*, 52 CONN. L. REV. 213, 217 (2020); *see* Erin Murphy, *The Mismatch Between Twenty-First-Century Forensic Evidence and Our Antiquated Criminal Justice System*, 87 S. CAL. L. REV. 633, 636–37 (2014).

Correspondingly, the need for federal courts to act as gatekeepers for admitting scientific testimony is even more critical today, as technological advances make such evidence more influential on juries than in the past, and more influential even than other forms of evidence. For these reasons, courts have recognized that expert testimony creates a unique risk of prejudice as it "may be assigned talismanic significance in the eyes of lay jurors." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004); *see also Ake v. Oklahoma*, 470 U.S. 68, 81 (1985) ("When jurors make this determination about issues that inevitably are complex and foreign, the testimony of [experts] can be crucial.").

Commentators, too, caution that "when judges allow expert testimony to reach the jury although the evidence is of low quality, they imbue it with

undeserved credibility."  N. J. Schweitzer & Michael J. Saks, *The Gatekeeper Effect: The Impact of Judges' Admissibility Decisions on the Persuasiveness of Expert Testimony*, 15 PSYCH. PUB. POL'Y & L. 1 (2009).  It is perhaps out of concern for this effect that the Federal Rules of Evidence advisory committee has advised courts not to use the word "expert" to avoid "put[ting] their stamp of authority" on the testimony.  Fed. R. Evid. 702 advisory comm.'s note to 2000 amend. (quotation omitted); *see* Bennett L. Gershman, *Misuse of Scientific Evidence by Prosecutors*, 28 OKLA. CITY U. L. REV. 17, 29–30 (2003) ("The expert, more than any other witness who testifies in a U.S. courtroom, possesses the greatest capacity to mislead the jury.").

At the same time, jurors expect prosecutors to "use the advantages of modern science and technology as tools to meet their burden of proving guilt beyond a reasonable doubt."  Hon. Donald E. Shelton, *Juror Expectations for Scientific Evidence in Criminal Cases: Perceptions and Reality About the "CSI Effect" Myth*, 27 T.M. COOLEY L. REV. 1, 31 (2010); *see also* Sternlight, at 223 ("[J]uries these days tend to crave the supposed certainty of such evidence—what some have called the 'CSI effect.'" (citations omit-

ted)). Thus, the expectations of the average juror today both pressure prosecutors to present scientific evidence and magnify the impact that evidence has on the jury.

**C.** DNA evidence provides a useful example. Recent data based on exonerations of wrongfully convicted individuals suggest that "erroneous forensic science expert testimony is the second most common contributing factor to wrongful convictions." *See* Michael J. Saks & Jonathan Jay Koehler, *The Coming Paradigm Shift in Forensic Identification Science*, 309 SCIENCE 892, 892 (2005). The Innocence Project database at Benjamin N. Cardozo School of Law reveals that, in 63% of DNA exoneration cases, the trial evidence contained errors in results obtained by forensic-science expert witnesses—and in 27% of such cases, the testimony of expert witnesses contained seriously misleading assertions. *Id.* Another recent study examining the effects of expert testimony in the cases of people later exonerated found that flawed expert evidence was involved in <u>sixty</u> percent of verified false convictions. *See* Brandon L. Garrett & Peter J. Neufeld, *Invalid Forensic Science Testimony and Wrongful Convictions*, 95 VA. L. REV. 1, 1–2 (2009). And this data only concerns successful exonerations; it likely underestimates

the total number of wrongful convictions obtained by means of misleading expert testimony and scientific evidence.

In short, the "growing importance of technical evidence," Sternlight, at 258, and the concurrent need for experts to help interpret such evidence, has amplified the need for courts to enforce rules and procedures that protect criminal defendants from the abuse or misuse of expert testimony.

## II.   THE LAY TESTIMONY OFFERED BELOW SKIRTED RULES 701 AND 702

### A.   FRE 701 And 702 Are Designed To Distinguish Between The Treatment Of Lay And Expert Testimony

The rules of evidence, among other tools, guide courts in ensuring that expert evidence is properly introduced.  Federal Rules of Evidence 701 and 702 constitute critical aspects of that guidance.  Those rules are designed to set clear lines of demarcation between lay and expert testimony, ensuring that a defendant's due process rights are protected when prosecutors rely on expert evidence and that expert testimony is appropriately qualified.

Rules 701 and 702 distinguish between lay and expert testimony.  The former must be "predicated upon concrete facts within [the witness's] own observation and recollection," while the latter can encompass "opinions or conclusions drawn from such facts." *United States v. Durham*, 464 F.3d 976,

982 (9th Cir. 2006) (quotation omitted). To clarify the demarcation between Rules 701 and 702, the Federal Rules advisory committee amended Rule 701 two decades ago to expressly state that lay testimony under Rule 701 may "not [be] based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c). As the committee explained at the time, the amendment sought to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory comm.'s note to 2000 amend.

This Court's decision in *Figueroa-Lopez* explains why trial courts must strictly enforce the boundaries between lay and expert testimony: "[a] holding to the contrary would encourage the Government to offer all kinds of specialized opinions without pausing first properly to establish the required qualifications of their witnesses." 125 F.3d at 1246. As Judge Trott colorfully observed, "[t]he mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702. Otherwise, a layperson witnessing the removal of a bullet from a heart during an autopsy could opine as to the cause of the decedent's death." *Id.*

The distinction between lay and expert testimony is not a mere formality—it goes to the core of the accused's fundamental right to mount a defense. As Judge Noonan explained in dissent (a dissent ultimately vindicated in part in *United States v. Halamek*, 5 F.4th 1081, 1088 (9th Cir. 2021)), "if the rules of evidence"—including the "demanding criteria" of *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)—"are relaxed . . . we gravely damage the rights of the accused." *United States v. Bighead*, 128 F.3d 1329, 1337 (9th Cir. 1997) (Noonan, J., dissenting). Ushering expert testimony into the trial through lay witnesses, of course, entirely releases the government from its burden to comply with Rules 701 and 702 and thereby deprives the defendant of a fair trial.

**B.     The Government's Purported "Lay" Testimony Did Not Comply With These Strictures**

The government introduced three former Theranos employees—Erika Cheung, Adam Rosendorff, and Mark Pandori—as lay witnesses in Mr. Balwani's criminal prosecution. At trial, however, all three of these witnesses offered highly specialized testimony concerning the accuracy and reliability of Theranos' blood-testing services. The trial court should have required that these witnesses be qualified under Rule 702.

**1.** Consider first the nature of the testimony. Each of the three witnesses testified about their highly specialized, technical understanding of Theranos' technology. Specifically:[2]

> ➤ Ms. Cheung offered testimony concerning quality control testing conducted on Theranos' machines, and the range of acceptable results for those tests required by law. *See, e.g.*, 4-ER-944–46.

> ➤ Mr. Rosendorff spoke to allowable rates of error in the Theranos machines, including referencing ranges of different companies' testing equipment and discussing whether certain errors were emblematic of systematic problems. *See, e.g.*, 9-ER-2347; 9-ER-2349–50.

> ➤ Mr. Pandori offered opinions on the quality control performance of Theranos machines and what that indicated about the accuracy of Theranos' test results. *See, e.g.*, 5-ER-1023.

**2.** None of this testimony is permissible unless admitted under Rule 702. An expert "need only exceed 'the common knowledge of the average layman'" to be classified as an expert (and not lay) witness. *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (quoting *United States v. Finley*,

---

[2] The testimony discussed in the text is provided by way of example. The particulars of each of these witnesses' testimony are set forth in Mr. Balwani's brief. *See* Dkt. 21 ("Balwani Br.") at 37–40.

301 F.3d 1000, 1007 (9th Cir. 2002)).  The foregoing testimony plainly exceeded that standard by relying directly upon scientific and technical knowledge (as well as industry-wide knowledge in the case of Mr. Rosendorff) that went well beyond what a lay person would possess.  S*ee, e.g.*, *United States v. Chavez-Lopez*, 767 F. App'x 431, 435 (4th Cir. 2019) ("[E]xpert testimony is necessary to describe specialized medical tests but not to describe reading a thermometer." (citing *United States v. Ganier*, 468 F.3d 920, 926 (6th Cir. 2006))); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (affirming use of expert testimony on industry standards).

The fact that these witnesses were presented as percipient witnesses did not authorize them to offer expert testimony; if it did, the purposes behind the rules governing expert testimony could be easily circumvented.  *See Figueroa-Lopez*, 125 F.3d at 1246 ("The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702."); *Rodriguez v. Gen. Dynamics Armament & Tech. Prod.*, 510 F. App'x 675, 676 (9th Cir. 2013) ("[E]ven when the expertise involved is specialized knowledge gained as part of a witness's job," any part of the testimony "based upon scientific, technical, or other specialized knowledge within the

11

scope of Rule 702 is governed by the standards of Rule 702." (internal quotation omitted)); *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011) (Kavanaugh, J.) ("[K]nowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." (internal quotation omitted)).

That these three lay witnesses offered expert testimony cannot be waived away as some minor procedural footfall. For one, shepherding plainly expert testimony through lay witnesses deprives a defendant of due notice needed to cross-examine the testimony and put on their own expert, if needed. *See Jenkins v. Whittaker Corp.*, 785 F.2d 720, 728 (9th Cir. 1986) ("The trial court properly exercised its discretion in excluding [an] expert['s] testimony . . . because [the defendant] gave the plaintiffs no advance notice of the fact and substance of his expert testimony and therefore no opportunity to prepare to meet it."). Thus, "[f]ailure to give notice of an expert witness's testimony" is "clearly prejudicial." *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1383 (9th Cir. 1984).

Federal Rule of Criminal Procedure 16 underscores the importance of such notice to the defendant by requiring that the government provide all potentially testifying expert witnesses' opinions in writing, including the bases

12

for the opinions, "sufficiently before trial." Fed. R. Crim. P. 16(a)(1)(G). The pretrial disclosures called for by Rule 16 are "mandatory" for good reason. *United States v. W.R. Grace*, 526 F.3d 499, 510–12 (9th Cir. 2008). Indeed, the "importance of comprehensive discovery in cases in which scientific proof is offered in evidence cannot be overstated." Paul C. Giannelli & Kevin C. McMunigal, *Prosecutors, Ethics, and Expert Witnesses*, 76 FORDHAM L. REV. 1493, 1507 (2007). The American Bar Association (ABA) has long recognized in its Criminal Justice Standards that "scientific proof and the testimony of experts . . . is practically impossible for the adversary to test or rebut at trial without an advance opportunity to examine it closely." *Id.* (quoting ABA, *Standards for Criminal Justice: Standards Relating to Discovery and Procedure Before Trial Standard 2.1*, at 66 (1970)).

Beyond due process concerns, the government's disregard of the notice requirement permits prosecutors to skirt the strict demands of *Daubert* by interpreting Rule 701 in an impermissibly broad fashion. "A lay opinion witness may tell jurors 'what was in the evidence,' but not 'tell them what inferences to draw from it.'" *United States v. Hampton*, 718 F.3d 978, 986 (D.C. Cir. 2013) (Rogers Brown, J., concurring). For lay witness testimony, there must be a connection between the witness's percipient testimony and his or

13

her conclusion. *See, e.g., Holguin*, 51 F.4th at 865–66 ("For much of his lay opinion testimony, there was no discernable connection between [the government witness's] investigative activities and his conclusions."). If there is no such connection the testimony must be treated as putative expert testimony, and it must clear *Daubert*—and it is critically important that trial courts require the government to meet this burden. *See* David E. Bernstein, *The Unfinished Daubert Revolution*, 10 ENGAGE: J. FEDERALIST SOC'Y PRAC. GROUPS 35, 36 (2009) ("[T]o the extent Rule 702 would exclude bad expert testimony in criminal cases, prosecutors should be supportive of that goal. Relying on junk science may occasionally help prosecutors secure a conviction, but securing convictions based on quackspertise is hardly the way to promote justice.").

## III. THIS COURT SHOULD REAFFIRM THE PROTECTIONS OF FRE 701 AND 702

The Court has the opportunity in this case, as well as in Ms. Holmes', to curtail the government's improper use of expert testimony and reaffirm the crucial role the rules governing such testimony play in protecting criminal defendants from abuse. The errors here, like those condoned in Ms. Holmes' trial, reflect the trial courts' failure to respect the fundamental dif-

14

ference between lay and expert testimony. Dr. Das's late-disclosed and un-supported testimony against Ms. Holmes and the testimony of the three experts presented in lay clothing here ignored the protections both defendants deserved. And these are just two examples of the government skirting Rules 701 and 702.

It is not uncommon for prosecutors to offer expert testimony from lay witnesses. For example, in *United States v. Alvarado*, 209 F. App'x 685, 687 (9th Cir. 2006), the government solicited testimony drawing on an Immigration and Customs agent's specialized experience in law enforcement. Because the government had not disclosed the agent as an expert, but only as a lay witness, this Court overturned the district court's decision to allow the agent to testify. *Id.*[3] This Court has not hesitated to reverse where the line between Rules 701 and 702 was overstepped. *Rodriguez*, 510 F. App'x at 676 (reversing and remanding for a new trial where a lay witness presented

---

[3] *See also, e.g.*, *Lloyd*, 807 F.3d at 1155–56 (admitting testimony based on specialized knowledge was not harmless error where lay witness was neither noticed nor qualified as an expert); *United States v. Tsosie*, 709 F. App'x 447, 450 (9th Cir. 2017) (government's doctor lay witness precluded from offering expert testimony because not disclosed); *United States v. Afyare*, 632 F. App'x 272, 292 (6th Cir. 2016) (upholding district court's decision to exclude testimony based on determination that the prosecution was "proffering an expert in lay witness clothing" and concerns over "the basis for or reliability of the witnesses' determination."); *United States v. Peoples*, 250 F.3d 630, 642 (8th Cir. 2001) (conviction set aside where government's witness, "[u]nder the guise of offering lay opinion," provided expert testimony).

"specialized and highly technical testimony" and plaintiffs "did not receive all of the photographs, physical evidence, or any of the historical malfunction investigation files that [expert] relied on in his testimony.").

This high-profile criminal prosecution provides a useful vehicle for this Court to insist that the guardrails imposed by these rules be respected. Repeated reliance on unqualified scientific evidence undermines the integrity of criminal trials. A strong statement from this Court may serve to discourage the government from continuing to circumvent the meaningful strictures of these rules by funneling purportedly "expert" opinions through fact witnesses.

## CONCLUSION

The Court should reverse the conviction and remand for a new trial.

May 11, 2023              Respectfully submitted,

/s/ *Brian T. Goldman*
Daniel M. Sullivan
Brian T. Goldman
Benjamin B. Allen

HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, New York
(646) 837-5129
bgoldman@hsgllp.com

*Attorneys for Amicus Curiae*

17

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 22-10338

I am the attorney or self-represented party.

**This brief contains** | 3,237 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⊙ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [              ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Brian T. Goldman | **Date** | May 11, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Form 8                                                   *Rev. 12/01/22*