**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50064 |
| *Plaintiff-Appellee*, | D.C. No. 8:21-cr-00017-JVS-1 |
| v. | |
| FRANCISCO LUCAS, Jr., AKA Choko, AKA Francisco Lucas, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted En Banc January 23, 2024
Pasadena, California

Filed May 2, 2024

Before: Mary H. Murguia, Chief Judge, and Kim McLane
Wardlaw, Johnnie B. Rawlinson, Consuelo M. Callahan,
Sandra S. Ikuta, Morgan Christen, Mark J. Bennett, Bridget
S. Bade, Kenneth K. Lee, Lucy H. Koh and Holly A.
Thomas, Circuit Judges.

Opinion by Chief Judge Murguia

# SUMMARY[*]

## Criminal Law

Vacating a sentence and remanding, the en banc court held that clear and convincing evidence is not required for factual findings under the advisory Sentencing Guidelines, even when potentially large enhancements are at stake; fact-finding by a preponderance of the evidence is sufficient to satisfy due process at sentencing.

The en banc court therefore overruled *United States v. Staten*, 466 F.3d 708 (9th Cir. 2006), and its progeny.

The en banc court remanded for the district court to apply the proper standard in the first instance.

## COUNSEL

Bram M. Alden (argued), Assistant United States Attorney, Criminal Appeals Section Chief; Bradley E. Marrett, Assistant United States Attorney, Santa Ana Branch Office; Stephanie S. Christensen, Acting United States Attorney; E. Martin Estrada, United States Attorney; United States Department of Justice, Office of the United States Attorney; for Plaintiff-Appellee.

Sonam A.H. Henderson (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender;

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Federal Public Defender's Office, Los Angeles, California; for Defendant-Appellant.

Jessica Agatstein and Vincent Brunkow, Federal Defenders of San Diego Inc., San Diego, California, for Amici Curiae Ninth Circuit Federal Public and Community Defenders.

**OPINION**

MURGUIA, Chief Judge:

We voted to rehear this case en banc to reconsider our heightened standard of proof for factual findings at sentencing. Under this standard, we have long required trial courts to make factual findings by clear and convincing evidence "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the conviction." *United States v. Staten*, 466 F.3d 708, 717 (9th Cir. 2006) (quoting *United States v. Lynch*, 437 F.3d 902, 916 (9th Cir. 2006) (en banc) (per curiam)).

On rehearing en banc, we overrule our prior precedent and fully adopt the "preponderance of the evidence" standard. We remand this case for the district court to apply the proper standard in the first instance.

I

Francisco Lucas, Jr., was previously convicted of two felonies under state law in California. While Lucas was on probation in late 2020, law enforcement searched his cell phone and found photographs and videos that appeared to depict Lucas in his home with a firearm and magazine. Lucas was indicted for and pleaded guilty to a single count

4                          USA v. Lucas

of illegal possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

At sentencing, the main issue was whether to apply a heightened base offense level, which turned on whether Lucas possessed a "semiautomatic firearm that is capable of accepting a large capacity magazine." U.S. Sent'g Guidelines Manual § 2K2.1(a)(4)(B) (U.S. Sent'g Comm'n 2021) ("U.S.S.G."). Relevant to this appeal, Application Note 2 to this Guideline defines "large capacity magazine" as a magazine that "at the time of the offense . . . could accept more than 15 rounds of ammunition." U.S.S.G. § 2K2.1 app. n.2.[1] The government conceded in its sentencing memorandum that "the magazine was not seized in this case, and thus the magazine itself was not examined by investigators." Nonetheless, the government maintained "that the magazine could hold more than 15 rounds of ammunition."

Both parties submitted reports from experts who had reviewed the photograph and video evidence. The government expert observed that the magazine in the photos appeared unusually long, "consistent with an extended magazine that is capable of accepting more than 15 rounds of ammunition." Although he had never encountered a magazine with a blocker installed to limit capacity, the expert acknowledged that magazines could be modified in

---

[1] "Application Notes . . . serve to 'interpret' and 'explain' the Guidelines for district courts." *United States v. Prien-Pinto*, 917 F.3d 1155, 1157 (9th Cir. 2019) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)) (brackets omitted). Because the parties have assumed that Application Note 2 applies, the court does as well.

that way.[2]  Accordingly, the expert explained that "[w]ithout physical examination, it cannot be conclusively determined whether the magazine seen in photographs and video is capable of accepting more tha[n] 15 rounds of ammunition or only ten (10) rounds of ammunition."  The defense expert offered a largely similar analysis.

The district court found that Lucas had possessed a large capacity magazine.  Even if the magazine were modified to accept less ammunition, the district court reasoned that "it was susceptible to easy conversion to accept a high capacity magazine."  In a footnote, the district court briefly alluded to the government's discussion of a recorded jail phone call.  That recorded call involved an individual incarcerated alongside Lucas who said that Lucas was "here for a 40 Glock with a 30 round stick."  Altogether, the district court found this evidence clear and convincing, "notwithstanding the absence of either the weapon or the magazine."  The district court therefore applied the sentencing enhancement and sentenced Lucas to a 57-month term of incarceration.[3]

A divided three-judge panel reversed the sentence. *United States v. Lucas*, 70 F.4th 1218, 1220 (9th Cir.), *vacated*, 77 F.4th 1275 (9th Cir. 2023).  The panel majority

---

[2] Magazines that are altered to accept only ten cartridges are sometimes referred to as "California compliant" due to California's limit on magazine capacity.  *See* Cal. Penal Code § 32310 (prohibiting large-capacity magazines); Cal. Penal Code § 16740 (defining a "large-capacity magazine" as "any ammunition feeding device with the capacity to accept more than 10 rounds").

[3] Application of the heightened base offense level increased Lucas's advisory Guidelines range from 33–41 months to 63–78 months.  The district court varied downward in recognition of Lucas's "difficulties in growing up, particularly impoverished in gang neighborhoods."  The Guidelines range after the downward variance was 57–71 months.

first assumed that application of the Section 2K2.1(a)(4)(B) sentencing enhancement requires the heightened standard of proof. 70 F.4th at 1221–22. The panel then held that "the district court clearly erred in finding, by clear and convincing evidence, that Lucas's magazine could accept more than 15 rounds." *Id.* at 1222. Thus, "the district court improperly increased Lucas's base offense level." *Id.* at 1223.

We received supplemental briefing on "whether the clear and convincing standard applies for factual findings that have an extreme impact on the sentence in light of *Beckles v. United States*, 580 U.S. 256 (2017)." We subsequently voted to rehear the case en banc.

## II

### A

The federal Sentencing Guidelines became law in 1987. Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. 1, 1 (1988). The Guidelines were intentionally formulaic, *see id.* at 6–7, and undoubtedly "limit[ed] a sentencing judge's discretion," *United States v. Brady*, 895 F.2d 538, 540 (9th Cir. 1990). "One of the most important features of the original Guidelines was that sentencing within the Guidelines range was mandatory." *United States v. Fisher*, 502 F.3d 293, 301 (3d Cir. 2007). Thus, in response to this new Guidelines regime, we soon recognized "that a defendant's due process right to ensure the reliability of information used at sentencing includes the requirement that facts underlying sentencing factors be proved according to a specified standard of proof." *United States v. Wilson*, 900 F.2d 1350, 1354 (9th Cir. 1990). And like every other circuit, we identified preponderance of the evidence as the

appropriate standard. *Id.*; *see also United States v. Restrepo*, 946 F.2d 654, 655–56 (9th Cir. 1991) (en banc) (collecting cases).

At the same time, we hinted that "there may be an exception to the general rule that the preponderance standard satisfies due process when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction." *Restrepo*, 946 F.2d at 659 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 87–91 (1986)); *see also id.* at 662 (Tang, J., concurring) ("[T]he quantitative effect of a sentencing factor does remain relevant in deciding what procedural safeguards are appropriate."). In carving out that exception, we followed the lead of the Third Circuit, which had recognized that "if a sentencing factor has an extreme effect on the sentence, . . . the factor must be proven by clear and convincing evidence." *Id.* at 656 n.1 (citing *United States v. Kikumura*, 918 F.2d 1084, 1101–02 (3d Cir. 1990)).[4] Since *Restrepo*, the clear and convincing standard became well-established circuit precedent. *See United States v. Jordan*, 256 F.3d 922, 927–31 (9th Cir. 2001); *United States v. Mezas de Jesus*, 217 F.3d 638, 643 (9th Cir. 2000); *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999).

---

[4] As *Restrepo* acknowledged, the Eighth Circuit also countenanced a heightened standard of proof for certain sentencing facts. *See Restrepo*, 946 F.2d at 656 n.1 (citing *United States v. Townley*, 929 F.2d 365, 370 (8th Cir. 1991)); *see also id.* at 678 n.8 (Norris, J., dissenting). This movement towards the clear and convincing evidence standard flowed from the Supreme Court's dicta in *McMillan* about when a sentencing factor is "a tail which wags the dog of the substantive offense." *See McMillan*, 477 U.S. at 88; *see also Restrepo*, 946 F.2d at 656 n.1; *Kikumura*, 918 F.2d at 1101; *Townley*, 929 F.2d at 369–70.

Sentencing law underwent a sea change with *United States v. Booker*, which rendered the Guidelines advisory rather than mandatory. 543 U.S. 220, 264 (2005) ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). Yet post-*Booker*, our court recommitted to the clear and convincing standard. *Staten*, 466 F.3d at 718 (holding that "the clear and convincing standard still pertains post-*Booker* for an enhancement applied by the district court that has an extremely disproportionate effect on the sentence imposed"). We noted that *Booker* "does not discuss the role that standards of proof play in criminal sentencing," and that *Booker* was therefore not clearly irreconcilable with the clear and convincing standard. *Id.* at 718–20. Further, we explained that "our heightened standard on sentencing due process jurisprudence traces back to a case, *United States v. Kikumura*, in which the reliance on disputed facts to greatly increase a sentence was discretionary rather than mandatory." *Id.* at 719; *see also id.* at 719–20 (citing *Kikumura*, 918 F.2d at 1097–1101). Because *Booker* did not require our court to overturn the heightened standard of proof, the clear and convincing standard survived.

In *Beckles*, the Supreme Court reaffirmed the advisory nature of the modern Guidelines. *See* 580 U.S. at 265–67 (rejecting a void-for-vagueness challenge to a Guidelines sentence). Critically, the Court elaborated that any expectation grounded in due process "that a criminal defendant would receive a sentence within the presumptively applicable Guidelines range did not survive our decision in [*Booker*]." *Id.* at 266 (alteration in original) (quoting *Irizarry v. United States*, 553 U.S. 708, 713 (2008)). In other words, the Court made clear that *Booker* fundamentally changed what process is due at sentencing.

Although we have continued to apply the heightened standard post-*Beckles*, *e.g.*, *United States v. Lonich*, 23 F.4th 881, 910–16 (9th Cir. 2022), until now our court has yet to meaningfully grapple with the growing tension between the clear and convincing standard and what due process requires of sentencing under the now-advisory Guidelines. *But see United States v. Buchan*, No. 19-50272, 2021 WL 4988020, at *3–6 (9th Cir. Oct. 27, 2021) (R. Nelson, J., concurring) (suggesting "that the clear and convincing evidence rule is clearly irreconcilable with *Beckles*" or alternatively that it should be reversed en banc).

B

The government argues that the preponderance of the evidence standard is sufficient to satisfy due process for fact-finding under the advisory Guidelines, even when a fact has an extremely disproportionate effect on the sentence.[5]  We agree.

As an initial point, the Third Circuit case that first inspired our heightened standard is no more. *See Fisher*, 502 F.3d at 305 (holding that "*Kikumura* is no longer valid as long as the Guidelines are advisory").  In *Fisher*, the Third Circuit explained that while "concerns about the 'tail

---

[5] At oral argument, the government conceded that the preponderance standard is both sufficient *and* necessary.  Even advisory Guidelines are extraordinarily influential at sentencing.  *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016) (explaining that "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar"); *Gall v. United States*, 552 U.S. 38, 49 (2007) (describing the Guidelines as "the starting point and the initial benchmark" for sentencing proceedings).  Given this reality, it follows that defendants retain a due process interest in accurate fact-finding at sentencing.  The preponderance standard strikes an appropriate constitutional balance. *See Wilson*, 900 F.2d at 1354; *see also McMillan*, 477 U.S. at 91.

wagging the dog' were valid under a mandatory guideline system . . . these concerns were put to rest when *Booker* rendered the Guidelines advisory." *Id.* In the wake of *Booker*, the Third Circuit held that "sentencing judges are free to find facts by a preponderance of the evidence, provided that the sentence actually imposed is within the statutory range, and is reasonable." *Id.*

This approach is consistent with the standard in nearly every other circuit—except ours. *See United States v. Walker-Couvertier*, 860 F.3d 1, 17 (1st Cir. 2017); *United States v. Vaughn*, 430 F.3d 518, 525 (2d Cir. 2005); *United States v. Grubbs*, 585 F.3d 793, 802–03 (4th Cir. 2009); *United States v. Brika*, 487 F.3d 450, 461–62 (6th Cir. 2007); *United States v. Reuter*, 463 F.3d 792, 793 (7th Cir. 2006); *United States v. Villareal-Amarillas*, 562 F.3d 892, 897–98 (8th Cir. 2009); *United States v. Robertson*, 946 F.3d 1168, 1171–72 (10th Cir. 2020); *United States v. Arcila Ramirez*, 16 F.4th 844, 855 n.8 (11th Cir. 2021); *United States v. Mohammed*, 89 F.4th 158, 164–65 (D.C. Cir. 2023).[6]

Of course, mere disagreement with our sister circuits does not compel a change in circuit precedent. But the overwhelming consensus here makes plain that there is no longer any sound legal foundation for requiring a heightened standard of proof. Before *Booker*, "a defendant had an entitlement to be sentenced within his guidelines range absent circumstances justifying upward departure." *Brika*,

---

[6] The Fifth Circuit also appears to have embraced the preponderance of the evidence standard. *United States v. Simpson*, 741 F.3d 539, 559 (5th Cir. 2014) ("[W]e have never actually required a heightened burden for factual determinations at sentencing."); *see also United States v. Ramirez-Urbina*, No. 22-50404, 2023 WL 3620754, at *1 (5th Cir. May 24, 2023) (stating that defendant's arguments for a clear and convincing evidence standard were "foreclosed by our precedent").

487 F.3d at 461.  Now, however, the "post-*Booker* advisory nature of the Guidelines eliminates any due process argument for a heightened standard of proof at sentencing." *Grubbs*, 585 F.3d at 801 (citing *Fisher*, 502 F.3d at 308); *see also Reuter*, 463 F.3d at 793 ("With the guidelines no longer binding the sentencing judge, there is no need for courts of appeals to add epicycles to an already complex set of (merely) advisory guidelines by multiplying standards of proof.").

Considering this landscape, our continued adherence to the heightened standard of proof makes little sense.  We join our sister circuits in holding that clear and convincing evidence is not required for factual findings under the Guidelines, even when potentially large enhancements are at stake; fact-finding by a preponderance of the evidence is sufficient to satisfy due process at sentencing.  We therefore overrule *Staten*, 466 F.3d at 718, and its progeny.

Going forward, "the only constraints on sentencing judges are the statutory maximum and minimum for the offense at issue and the sentencing statutes, particularly 18 U.S.C. § 3553(a)." *Brika*, 487 F.3d at 461; *see also Reuter*, 463 F.3d at 793 ("The judge is cabined, but also liberated, by the statutory sentencing factors." (citing 18 U.S.C. § 3553(a))).  Put differently, "challenges to 'large enhancements . . . should be viewed through the lens of *Booker* reasonableness rather than that of due process.'" *Grubbs*, 585 F.3d at 802–03 (quoting *Brika*, 487 F.3d at 462) (omission in original).

## III

Turning back to Lucas's sentence, the question is whether a preponderance of the evidence establishes that Lucas possessed a semiautomatic firearm that is "capable of

12                          USA v. Lucas

accepting a large capacity magazine" within the meaning of
U.S.S.G. § 2K2.1(a)(4)(B). *See United States v. Kilby*, 443
F.3d 1135, 1141 (9th Cir. 2006) (defining a preponderance
of the evidence as "more likely than not"). It is most
appropriate that the district court answer this question in
light of the newly articulated standard for fact-finding at
sentencing.[7] We therefore vacate Lucas's sentence and
remand for resentencing on an open record. *See United
States v. Matthews*, 278 F.3d 880, 885 (9th Cir. 2002) (en
banc) ("[A]s a general matter . . . we will remand for
resentencing on an open record—that is, without limitation
on the evidence that the district court may consider.").

**VACATED and REMANDED.**

---

[7] The government never recovered or physically examined the firearm or
magazine at issue, so neither the government expert nor Lucas's expert
could confirm whether the magazine had been modified. The recorded
jail call may corroborate that Lucas possessed a large capacity magazine,
and the government expert testified he had "never encountered" a
firearm magazine "with a blocker installed in it to limit the ammunition
capacity." On the other hand, Lucas adduced evidence that modified
magazines were available from online sources. Meanwhile, the district
court found that regardless of whether Lucas possessed a "California
compliant" firearm, the weapon was nevertheless "susceptible to easy
conversion to accept a high capacity magazine." However, this
reasoning appears at odds with the district court's apparent reliance on
Application Note 2; if Application Note 2 applies, it plainly
circumscribes analysis of the magazine to its capacity "at the time of the
offense." U.S.S.G. § 2K2.1 app. n.2.