## Docket No. 22-10338

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

———————— • ————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RAMESH SUNNY BALWANI,

*Defendant-Appellant.*

_____

*Appeal from a Decision of the United States District Court for the Northern District of California,*
*No. 5:18-cr-00258-EJD-1 · Honorable Edward J. Davila*

### *AMICUS CURIAE* BRIEF ON BEHALF OF THE NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS IN SUPPORT OF APPELLANT AND PETITION FOR REHEARING *EN BANC* OR PANEL REHEARING

DONALD M. FALK, ESQ.
SCHAERR|JAFFE LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
Tel: (415) 562-4942
dfalk@schaerr-jaffe.com

DANIEL M. SULLIVAN, ESQ.
BRIAN T. GOLDMAN, ESQ.
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, New York 10017
Tel: (646) 837-5151
dsullivan@hsgllp.com
bgoldman@hsgllp.com

*Attorneys for Amicus Curiae The National Association of Criminal Defense Lawyers*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, *amicus curiae*, the National Association of Criminal Defense Lawyers, certifies that it has no parent corporation and no publicly held corporation owns any of its stocks.

Date: May 16, 2025

/s/ *Brian T. Goldman*
Daniel M. Sullivan
Brian T. Goldman

HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, New York
(646) 837-5129
bgoldman@hsgllp.com

*Attorneys for Amicus Curiae*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT.................................................................i

INTEREST OF *AMICUS CURIAE*.......................................................... 1

STATEMENT.............................................................................. 2

ARGUMENT ............................................................................. 3

I.    SCIENTIFIC EVIDENCE PLAYS AN
INCREASINGLY CRUCIAL ROLE IN CRIMINAL CONVICTIONS..................... 3

II.   THE PANEL'S HARMLESSNESS ANALYSIS
UNDERMINES THE PROTECTIONS OF FRE 701 AND 702 ............................ 7

CONCLUSION ........................................................................ 12

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Ake v. Oklahoma,*
470 U.S. 68 (1985) ................................................................................. 5

*Glossip v. Oklahoma,*
145 S. Ct. 612 (2025) ............................................................................ 3

*Napue v. Illinois,*
360 U.S. 264 (1959) ............................................................................... 3

*Rodriguez v. General Dynamics Armament and Tech. Products,*
510 F. App'x 675 (9th Cir. 2013) ..................................................... 8

*Sealy, Inc. v. Easy Living, Inc.,*
743 F.2d 1378 (9th Cir. 1984) .......................................................... 9

*United States v. Alvarado,*
209 F. App'x 685 (9th Cir. 2006) ..................................................... 8

*United States v. Amaral,*
488 F.2d 1148 (9th Cir. 1973) .......................................................... 4

*United States v. Figueroa-Lopez,*
125 F.3d 1241 (9th Cir. 1997) .......................................................... 3

*United States v. Frazier,*
387 F.3d 1244 (11th Cir. 2004) ........................................................ 5

*United States v. Hampton,*
718 F.3d 978 (D.C. Cir. 2013) ....................................................... 10

*United States v. Hawkins,*
934 F.3d 1251 (11th Cir. 2019) ........................................................ 8

*United States v. Holguin,*
51 F.4th 841 (9th Cir. 2022) .......................................................... 10

*United States v. Johnson,*
617 F.3d 286 (4th Cir. 2010) ............................................................. 9

*United States v. Lloyd*,
807 F.3d 1128 (9th Cir. 2015) ................................................................. 3, 8

*United States v. Peoples*,
250 F.3d 630 (8th Cir. 2001) ....................................................................... 9

*United States v. Ruiz*,
257 F.3d 1030 (9th Cir. 2011) ..................................................................... 2

*United States v. Valencia-Lopez*,
971 F.3d 891 (9th Cir. 2020) ..................................................................... 11

*United States v. W.R. Grace*,
526 F.3d 499 (9th Cir. 2008) ..................................................................... 10

**Other Authorities**

American Bar Association, *Standards for Criminal Justice: Standards Relating to Discovery and Procedure Before Trial Standard 2.1* (1970).. 10

Bennett L. Gershman, *Misuse of Scientific Evidence by Prosecutors*, 28 OKLA. CITY U. L. REV. 17 (2003) ............................................................................ 5

Brandon L. Garrett & Peter J. Neufeld, *Invalid Forensic Science Testimony and Wrongful Convictions*, 95 VA. L. REV. 1 (2009) ............................................ 6

David E. Bernstein, *The Unfinished Daubert Revolution*, 10 ENGAGE: J. FEDERALIST SOC'Y PRAC. GROUPS 35 (2009) ............................................. 11

Erin Murphy, *The Mismatch Between Twenty-First-Century Forensic Evidence and Our Antiquated Criminal Justice System*, 87 S. CAL. L. REV. 633 (2014) ................................................................................................ 4

Hon. Donald E. Shelton, *Juror Expectations for Scientific Evidence in Criminal Cases: Perceptions and Reality About the "CSI Effect" Myth*, 27 T.M. COOLEY L. REV. 1 (2010) .................................................................. 5

Jean R. Sternlight, *Justice in A Brave New World?*, 52 CONN. L. REV. 213 (2020) ............................................................................................. 4, 6, 7

Joseph L. Peterson *et al.*, *The Uses and Effects of Forensic Science in the Adjudication of Felony Cases*, 32 J. FORENSIC SCI. 1730 (1987) ...................... 4

Michael J. Saks & Jonathan Jay Koehler, *The Coming Paradigm Shift in Forensic Identification Science*, 309 SCIENCE 892 (2005) ................................. 6

N. J. Schweitzer & Michael J. Saks, *The Gatekeeper Effect: The Impact of Judges' Admissibility Decisions on the Persuasiveness of Expert Testimony*, 15 PSYCH. PUB. POL'Y & L. 1 (2009) ......................................... 5

Paul C. Giannelli & Kevin C. McMunigal, *Prosecutors, Ethics, and Expert Witnesses*, 76 FORDHAM L. REV. 1493 (2007) ...................................... 10

Paul C. Giannelli, *Forensic Science*, 34 J.L. MED. & ETHICS 310 (2006) ..................... 3

**Rules**

Fed. R. App. P. 40 ............................................................................................. 7

Fed. R. Crim. P. 16 ........................................................................................... 9

Fed. R. Evid. 702 ........................................................................... 2, 3, 5, 11, 12

## INTEREST OF *AMICUS CURIAE*

The National Association of Criminal Defense Lawyers is a nonprofit bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crime or misconduct.

NACDL was founded in 1958.  It has thousands of members nationwide, including private criminal defense lawyers, public defenders, military defense counsel, law professors, and judges.  NACDL is the only nationwide professional bar association for public defense and private criminal defense lawyers.

NACDL is dedicated to advancing the proper, efficient, and just administration of criminal justice.  Each year, NACDL files amicus briefs in this Court and others in cases that present issues of broad importance to criminal defendants, criminal defense lawyers, and the criminal justice system.  The question addressed in this *amicus* brief, involving the protections afforded criminal defendants regarding expert witness testimony and evidence, is such an issue.[1]

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than *amicus* and its counsel made a monetary contribution to the preparation or submission of this brief.  All parties have consented to the submission of this *amicus* brief.

1

## STATEMENT

NACDL submitted an *amicus* brief on the merits in this appeal to point out significant prosecutorial abuses relating to the use of supposedly lay witnesses—Drs. Rosendorff and Pandori—to offer expert testimony on the essential question whether Theranos technology worked.

The panel recognized that "some aspects of these witnesses' testimonies veered into expert territory" because, in part, "[t]hese opinions required the witnesses to draw on their respective specialized experience and background in clinical labs."  Pet. Add. 3, 25.   Because the district court erred in allowing the government to launder this expert testimony through lay witnesses on a critical issue, Mr. Balwani's conviction should have been vacated.

Instead, the panel held that any error in admitting this testimony was harmless because, the panel believed, Messrs. Rosendorff and Pandori "would have easily qualified as experts."  Pet. Add. 26.

Rehearing is warranted because this disregard for Federal Rule of Evidence 702 is an important and "recurring issue" in many criminal cases. *United States v. Ruiz*, 257 F.3d 1030, 1032 (9th Cir. 2011) (en banc).  The government has repeatedly "subvert[ed] the requirements" of the federal rules, and "blur[r]ed the distinction between" expert and lay testimony.  *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997); *see United*

*States v. Lloyd*, 807 F.3d 1128, 1155–56 (9th Cir. 2015). If allowed to stand as precedent, the panel's credential-based approach to harmless-error review will exacerbate this problem, which unfairly tilts the scales of justice against criminal defendants. That approach conflicts with that of other circuits, further supporting rehearing here. And although this brief focuses on the panel's misapplication of Rule 702, the panel's departure from *Napue v. Illinois*, 360 U.S. 264 (1959), and *Glossip v. Oklahoma*, 145 S. Ct. 612 (2025), *see* Pet. 12–18, makes the need for rehearing and reversal even clearer.

## ARGUMENT

### I.    SCIENTIFIC EVIDENCE PLAYS AN INCREASINGLY CRUCIAL ROLE IN CRIMINAL CONVICTIONS

**A.** Expert testimony is vital to many criminal proceedings. Studies have consistently found that the prosecutor's presentation of scientific testimony can swing a verdict from innocent to guilty. As one study remarked, "one quarter of the citizens who had served on juries which were presented with scientific evidence believed that[,] had such evidence been absent, they would have changed their verdicts—from guilty to not guilty." Paul C. Giannelli, *Forensic Science*, 34 J.L. MED. & ETHICS 310, 316 (2006) (quoting Joseph L. Peterson *et al.*, *The Uses and Effects of Forensic Science in the Adjudication of Felony Cases*, 32 J. FORENSIC SCI. 1730, 1748 (1987)). This Court recognized as

much over fifty years ago, noting the "peculiar risks of expert testimony" aris-ing from its "aura of special reliability and trustworthiness." *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973).

**B.** Today, highly advanced science and technology are integrated much more into society than ever before. DNA evidence is, of course, well known among the general public and used frequently. But there are other examples. We now regularly use "cameras, geo-tracking, facial recognition software, brain scans," and many other tools to collect and understand evidence. Jean R. Sternlight, *Justice in A Brave New World?*, 52 CONN. L. REV. 213, 217 (2020); *see* Erin Murphy, *The Mismatch Between Twenty-First-Century Forensic Evidence and Our Antiquated Criminal Justice System*, 87 S. CAL. L. REV. 633, 636–37 (2014).

Correspondingly, the need for federal courts to act as gatekeepers for admitting scientific testimony is even more critical today, as technological advances make such evidence more influential on juries than in the past, and more influential even than other forms of evidence. For these reasons, courts have recognized that expert testimony creates a unique risk of prejudice as it "may be assigned talismanic significance in the eyes of lay jurors." *United*

*States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004). When jurors must resolve "issues that inevitably are complex and foreign, the testimony of [experts] can be crucial." *Ake v. Oklahoma*, 470 U.S. 68, 81 (1985).

Commentators, too, caution that "when judges allow expert testimony to reach the jury although the evidence is of low quality, they imbue it with undeserved credibility." N. J. Schweitzer & Michael J. Saks, *The Gatekeeper Effect: The Impact of Judges' Admissibility Decisions on the Persuasiveness of Expert Testimony*, 15 PSYCH. PUB. POL'Y & L. 1 (2009). It is perhaps out of concern for this effect that the Federal Rules of Evidence advisory committee has advised courts not to use the word "expert" to avoid "put[ting] their stamp of authority" on the testimony. Fed. R. Evid. 702 advisory comm.'s note to 2000 amend. (quotation omitted); *see* Bennett L. Gershman, *Misuse of Scientific Evidence by Prosecutors*, 28 OKLA. CITY U. L. REV. 17, 29–30 (2003) ("The expert, more than any other witness who testifies in a U.S. courtroom, possesses the greatest capacity to mislead the jury.").

At the same time, jurors expect prosecutors to "use the advantages of modern science and technology as tools to meet their burden of proving guilt beyond a reasonable doubt." Hon. Donald E. Shelton, *Juror Expectations for Scientific Evidence in Criminal Cases: Perceptions and Reality About the "CSI Effect" Myth*, 27 T.M. COOLEY L. REV. 1, 31 (2010). "[J]uries these days tend to

5

crave the supposed certainty of [scientific or technical] evidence—what some have called the 'CSI effect.'"  Sternlight, at 223 (citations omitted).  Thus, the expectations of the average juror today both pressure prosecutors to present scientific evidence and magnify the impact that evidence has on the jury.

**C.**  DNA evidence provides a useful example.  Recent data based on exonerations of wrongfully convicted individuals suggest that "erroneous forensic science expert testimony is the second most common contributing factor to wrongful convictions."  *See* Michael J. Saks & Jonathan Jay Koehler, *The Coming Paradigm Shift in Forensic Identification Science*, 309 SCIENCE 892, 892 (2005).  The Innocence Project database at Benjamin N. Cardozo School of Law reveals that, in 63% of DNA exoneration cases, the trial evidence contained errors in results obtained by forensic-science expert witnesses—and in 27% of such cases, the testimony of expert witnesses contained seriously misleading assertions.  *Id.*  Another recent study examining the effects of expert testimony in the cases of people later exonerated found that flawed expert evidence was involved in *sixty* percent of verified false convictions.  *See* Brandon L. Garrett & Peter J. Neufeld, *Invalid Forensic Science Testimony and Wrongful Convictions*, 95 VA. L. REV. 1, 1–2 (2009).  And this data only concerns successful exonerations; it likely underestimates the total number of wrongful convictions obtained through misleading expert testimony and scientific evidence.

6

In short, the "growing importance of technical evidence," Sternlight, at 258, and the concurrent need for experts to help interpret such evidence, has amplified the need for courts to enforce rules and procedures that protect criminal defendants from the abuse or misuse of expert testimony.

## II. THE PANEL'S HARMLESSNESS ANALYSIS UNDERMINES THE PROTECTIONS OF FRE 701 AND 702

The panel correctly held that lay witnesses Rosendorff and Pandori offered expert testimony on the fundamental question whether "there were problems with Theranos's laboratory tests"—i.e., whether the Theranos technology worked. Pet. Add. 23.

But the panel got it wrong on the harmlessness analysis. The Panel simply relied on the fact that these witnesses "testified as to [their] background," including education and work history. *Id.* at 26. Therefore, the panel assumed that Rosendorff and Pandori would have "easily qualified" as expert witnesses had the government sought to introduce them as such. *See id.* But that breezy analysis cannot be right given the importance of drawing clear—and strict—lines of demarcation between expert and lay witnesses in criminal cases, making this issue one of "exceptional importance" warranting *en banc* review. *See* Fed. R. App. P. 40(b)(2)(D).

*First*, it is not uncommon for prosecutors to offer expert testimony from lay witnesses. For example, in *United States v. Alvarado*, 209 F. App'x 685, 687 (9th Cir. 2006), the government solicited testimony drawing on an Immigration and Customs agent's specialized experience in law enforcement. Because the government had not disclosed the agent as an expert, but only as a lay witness, this Court overturned the district court's decision to allow the agent to testify. *Id.* The Court took the same approach in *Rodriguez v. General Dynamics Armament and Tech. Products*, reversing and remanding for a new trial where a lay witness presented "specialized and highly technical testimony" and plaintiffs "did not receive all of the photographs, physical evidence, or any of the historical malfunction investigation files that [expert] relied on in his testimony." 510 F. App'x 675, 676 (9th Cir. 2013).

A harmlessness analysis that only looks to credentials worsens this practice and creates intra-circuit tension with cases in this Circuit that look beyond credentials when undertaking purportedly the same inquiry. *United States v. Lloyd*, 807 F.3d 1128, 1157 (9th Cir. 2015) (admitting testimony based on specialized knowledge was not harmless error were there was no showing that witnesses' "opinions were reliable"). The approach is also at odds with the analytical framework used by other circuits in analogous circumstances. *See United States v. Hawkins*, 934 F.3d 1251, 1266 (11th Cir.

8

2019) (vacating conviction where improper expert testimony, *inter alia*, "went to the crux of the Government's case" (quotation marks omitted)); *United States v. Johnson*, 617 F.3d 286, 294 (4th Cir. 2010) (improper expert testimony not harmless because "the Supreme Court has made clear that in addition to having the requisite specialized knowledge, the expert's testimony must 'be the reliable product of reliable principles and methods that are reliably applied to the facts of the case." (quotation marks omitted)); *United States v. Peoples*, 250 F.3d 630, 642 (8th Cir. 2001) (rather than looking to witness' qualifications, applying rule that "erroneous admission of [expert] testimony is not harmless when there is a significant possibility that the testimony had a substantial impact on the jury").

**Second**, excusing the violations here as harmless permits the government to dispense with critical due-process and fair notice requirements.

"Failure to give notice of an expert witness's testimony" is "clearly prejudicial." *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1383 (9th Cir. 1984). Federal Rule of Criminal Procedure 16 underscores the importance of such notice to the defendant by requiring that the government provide all potentially testifying expert witnesses' opinions in writing, including the bases for the opinions, "sufficiently before trial." Fed. R. Crim. P. 16(a)(1)(G). The pretrial disclosures called for by Rule 16 are "mandatory" for good reason. *United*

9

*States v. W.R. Grace*, 526 F.3d 499, 510–12 (9th Cir. 2008). And the "importance of comprehensive discovery in cases in which scientific proof is offered in evidence cannot be overstated." Paul C. Giannelli & Kevin C. McMunigal, *Prosecutors, Ethics, and Expert Witnesses*, 76 FORDHAM L. REV. 1493, 1507 (2007). The American Bar Association (ABA) has long recognized in its Criminal Justice Standards that "scientific proof and the testimony of experts . . . is practically impossible for the adversary to test or rebut at trial without an advance opportunity to examine it closely." *Id.* (quoting ABA, *Standards for Criminal Justice: Standards Relating to Discovery and Procedure Before Trial Standard 2.1*, at 66 (1970)).

***Third***, beyond due process concerns, the government's disregard of the notice requirement permits prosecutors to skirt the strict pre-trial demands of *Daubert*. "A lay opinion witness may tell jurors 'what was in the evidence,' but not 'tell them what inferences to draw from it.'" *United States v. Hampton*, 718 F.3d 978, 986 (D.C. Cir. 2013) (Brown, J., concurring). For lay witness testimony, there must be a connection between the witness's percipient testimony and his or her conclusion. *See, e.g.*, *United States v. Holguin*, 51 F.4th 841, 865–66 (9th Cir. 2022) ("For much of his lay opinion testimony, there was no discernable connection between [the government witness's] investiga-

10

tive activities and his conclusions."). If there is no such connection the testi-

mony must be treated as putative expert testimony, and it must clear *Daub-

ert*—and it is critically important that trial courts require the government to

meet this burden. As one commentator observed, application of Rule 702's

standards serves the interests of justice—and fair law enforcement.

> [T]o the extent Rule 702 would exclude bad expert testimony in
> criminal cases, prosecutors should be supportive of that goal. Re-
> lying on junk science may occasionally help prosecutors secure a
> conviction, but securing convictions based on quackspertise is
> hardly the way to promote justice.

David E. Bernstein, *The Unfinished Daubert Revolution*, 10 ENGAGE: J. FEDERALIST

SOC'Y PRAC. GROUPS 35, 36 (2009). And these policy concerns are not limited to

the extreme case of "junk science." Expert testimony that has not survived the

crucible of *Daubert* review should be viewed as presumptively invalid and un-

fair.

Yet the harmless-error analysis here allows the Government to sidestep

these strict demands merely by satisfying this Court that the experts were

well-credentialed—without having to meet any of the other demands that

*Daubert* requires, such as employing a reliable methodology to connect the ex-

pert's "experience" to "his conclusion." *United States v. Valencia-Lopez*, 971

F.3d 891, 901 (9th Cir. 2020). Here, as in *Valencia-Lopez*, "[t]he issue is not

11

whether [Dr. Rosendorff or Dr. Pandori] had knowledge and experience sufficient to allow him to testify as an expert"; rather, the issue is whether either witness "provided a reliable basis for his opinion[.]" *Id*. The district court did not inquire. In the absence of that necessary inquiry under Rule 702, that testimony—which was facially and indisputable central to the government's case—should not have been admitted.

\* \* \*

This high-profile criminal prosecution provides a useful vehicle for this Court to insist that the guardrails imposed by these rules be respected. Repeated reliance on unqualified scientific evidence undermines the integrity of criminal trials. This Court should rehear this appeal to ensure that violations of Rule 702 do not come without consequence.

## CONCLUSION

The Court should grant rehearing *en banc* or panel rehearing.

May 16, 2025

Respectfully submitted,

*/s/ Brian T. Goldman*
Daniel M. Sullivan
Brian T. Goldman

HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, New York
(646) 837-5129
bgoldman@hsgllp.com

Donald M. Falk
SCHAERR|JAFFE LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 562-4942
dfalk@schaerr-jaffe.com

*Attorneys for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type style requirements of Fed. R. App. P. 29(b)(4) and Fed. R. App. P. 32(a)(5)(A) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point font.

This brief complies with the type-volume limitations of Fed. R. App. P. 29(b)(4) and Fed. R. App. P. 32(a)(7)(B) because it contains 2,499 words excluding the parts exempted by Fed. R. App. P. 32(f).

May 16, 2025

_/s/ Brian T. Goldman_
Brian T. Goldman

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 16, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

May 16, 2025

_____*/s/ Brian T. Goldman*_____
Brian T. Goldman