No. 22-10338

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

      v.

RAMESH "SUNNY" BALWANI,

    Defendant-Appellant.

_____

**UNITED STATES' RESPONSE TO APPELLANT'S PETITION FOR
PANEL REHEARING AND REHEARING EN BANC**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 18-CR-00258-EJD-2
_____

**CRAIG H. MISSAKIAN**
United States Attorney

**MERRY JEAN CHAN**
Chief, Appellate Section, Criminal Division

**KELLY I. VOLKAR**
Assistant United States Attorney

450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
(415) 436-7185

**Attorneys for Plaintiff-Appellee**
July 29, 2025                 **UNITED STATES OF AMERICA**

## TABLE OF CONTENTS

BACKGROUND ................................................................................2

ARGUMENT ....................................................................................8

    I.     NO DUE PROCESS VIOLATION OCCURRED..............................8

         A.    The panel appropriately applied plain-error review ...................8

         B.    The panel correctly held that Balwani failed to show falsity under *Napue*'s first prong ........................................................11

         C.    Alternatively, the panel could have rejected Balwani's *Napue* claim on the second and third prong........................................17

    II.    THE PANEL DID NOT ERR IN APPLYING LONGSTANDING HARMLESSNESS ANALYSIS TO EVIDENTIARY ERRORS......20

CONCLUSION ................................................................................23

CERTIFICATE OF COMPLIANCE ................................................24

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*Berger v. United States*, 295 U.S. 78 (1935) .............................................................12

*Chapman v. California*, 386 U.S. 18 (1967).............................................................18

*Clements v. Madden*, 112 F.4th 792 (9th Cir. 2024) ........................................ 15, 16

*Davis v. United States*, 589 U.S. 345 (2020) ............................................................9

*Glossip v. Oklahoma*, 145 S. Ct. 612 (2025) ............................................. 15, 16, 18

*Greer v. United States*, 593 U.S. 503 (2021) ............................................................9

*Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005) (en banc)......................... 15, 16, 17

*Henry v. Ryan*, 720 F.3d 1073 (9th Cir. 2013) .......................................................14

*Johnson v. United States*, 520 U.S. 461 (1997) .......................................................9

*Napue v. Illinois*, 360 U.S. 264 (1959) .......................................................... *passim*

*Neder v. United States*, 527 U.S. 1 (1999)..............................................................22

*United States v. Al Jaberi*, 97 F.4th 1310 (11th Cir. 2024) ............................. 10, 13

*United States v. Alli*, 344 F.3d 1002 (9th Cir. 2003) ..........................................9, 20

*United States v. Bagley*, 473 U.S. 667 (1985) .......................................................12

*United States v. Bingham*, 653 F.3d 983 (9th Cir. 2011)........................................9

*United States v. Brumfield*, 89 F.4th 506 (5th Cir. 2023).......................................10

*United States v. Bush*, 944 F.3d 189 (4th Cir. 2019) ...................................... 11, 13

*United States v. Cardena*, 842 F.3d 959 (7th Cir. 2016)................................. 11, 13

*United States v. Cooper*, 173 F.3d 1192 (9th Cir. 1999) ..........................................9

*United States v. Crespo*, No. 23-1126, 2024 WL 3439417 (3d Cir. 2024) .............10

*United States v. Ellingford*, 499 F. App'x 671 (9th Cir. 2012) ................................9

*United States v. Figueroa-Lopez*, 125 F.3d 1241 (9th Cir. 1997) ............... 8, 20, 21

*United States v. Garrison*, 839 F. App'x 968 (6th Cir. 2020) ......................... 11, 13

*United States v. Holmes*, 129 F.4th 636 (9th Cir. 2025)................................. *passim*

*United States v. Houston*, 648 F.3d 806 (9th Cir. 2011) ................................. 18, 20

*United States v. Mangual-Garcia*, 505 F.3d 1 (1st Cir. 2007) .................. 10, 14, 20

*United States v. Mickling*, 642 F. App'x 821 (10th Cir. 2016) ...............................11

*United States v. Plaza*, 752 F. App'x 37 (2d Cir. 2018).........................................10

*United States v. Renzi*, 769 F.3d 731 (9th Cir. 2014) ................................. 12, 13, 20

*United States v. Sanfilippo*, 564 F.2d 176 (5th Cir. 1977).....................................10

*United States v. Stein*, 846 F.3d 1135 (11th Cir. 2017)............................. 10, 13, 17

*United States v. Straker*, 800 F.3d 570 (D.C. Cir. 2015).......................................11

*United States v. Taum*, No. 22-10306, 2024 WL 4562805
(9th Cir. Oct. 24, 2024)..........................................................................................9

*United States v. West*, 612 F.3d 993 (8th Cir. 2010) ....................................... 11, 13

*Womack v. Del Papa*, 497 F.3d 998 (9th Cir. 2007) ....................................... 10, 21

## FEDERAL RULES

Fed. R. Crim. P. 16.................................................................................................21

Fed. R. Evid. 702 ......................................................................................... 8, 21, 23

No. 22-10338

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

 Plaintiff-Appellee,

   v.

RAMESH "SUNNY" BALWANI,

 Defendant-Appellant.

_____

**UNITED STATES' RESPONSE TO APPELLANT'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

 Defendant-Appellant Ramesh "Sunny" Balwani challenges small portions of the panel's opinion utilizing two frameworks that he relied upon but now asserts are inapplicable and require this Court to rehear this heavily-litigated case en banc. First, Balwani identifies a fictitious circuit split to challenge the panel's application of plain-error review to an unpreserved false-testimony claim centered on one witness statement made during a four-month-long criminal fraud trial that concededly does not affect all counts of conviction. Second, Balwani challenges the Court's longstanding harmlessness standard as applied to minor evidentiary errors. Balwani does not and cannot meet the standard for en banc or panel rehearing. This Court should deny Balwani's petition.

# BACKGROUND

Balwani and his co-conspirator, Elizabeth Holmes, fraudulently secured over $800 million in investments from dozens of investors in their company, Theranos. PSR ¶ 28.[1] Theranos claimed that "[o]ne tiny drop changes everything" and that it would "revolutionize medical laboratory testing[.]" *United States v. Holmes*, 129 F.4th 636, 644-48 (9th Cir. 2025). Specifically, Balwani and Holmes falsely claimed Theranos had manufactured a blood analyzer device that was more accurate than conventional devices and required smaller samples of blood drawn from a finger rather than a vein. *Id.* They lied to investors about receiving validation from major pharmaceutical companies, and said Theranos's device was being used in the battlefield by the U.S. military to treat wounded soldiers. *Id.* They falsely asserted that Theranos was profitable and had a healthy ongoing relationship with Walgreens, through which Theranos provided blood tests to patients. *Id.* "Investors, health care professionals[,] and Silicon Valley spectators were captivated by the potential of Theranos's revolutionary technology." *Id.*

"But the vision sold by Holmes and Balwani was nothing more than a mirage." *Id.* In truth, former Theranos scientists—including former laboratory

---

[1] PSR refers to the under-seal Presentence Investigation Report, PFREB to Balwani's Petition for Panel Rehearing and Rehearing En Banc, ER to Appellant's Excerpts of Record, SER to the Supplemental Excerpts of Record, AOB to the Appellant's Opening Brief, ARB to the Appellant's Reply Brief, and GAB to the Government's Answering Brief.

2

directors Dr. Adam Rosendorff and Dr. Mark Pandori—confirmed that Theranos's device could never complete more than 12 types of blood tests, and even then, "the system was plagued by issues and repeatedly failed quality control tests."  PSR ¶ 31.  Real patients paid the price:  one was told by Theranos that she had miscarried when she carried a viable pregnancy, another was told incorrectly that she was HIV positive, and another was incorrectly informed that he might have prostate cancer.  PSR ¶¶ 51-58.

A grand jury returned an indictment charging Balwani and Holmes with two conspiracies to commit wire fraud:  one against investors (Count 1), along with six counts of wire fraud against investor-victims, who invested in December 2013 (Counts 3-5) and in 2014 (Counts 6-8), and one against patients (Count 2), paired with four counts of wire fraud related to patient-victims (Counts 9-12).  25-ER-6886-900.  Following two separate four-month-long trials with hundreds of exhibits and dozens of witnesses, a jury acquitted Holmes of the patient-related counts, hung on the December 2013 investor counts, and found her guilty on Counts 1 and 6-8, and a separate jury found Balwani guilty of all twelve counts. *Holmes*, 129 F.4th at 648.

At both trials, Bryan Tolbert testified as a representative of Hall Group (Count 5), and Chris Lucas testified as a representative of BDV (Count 4), both of whom invested in Theranos in 2006 and again on December 31, 2013.  GAB-50-

3

53.  On December 20, 2013, Holmes held a conference call with Theranos

investors considering an additional investment, including Tolbert and Lucas, and

Tolbert recorded the call (without Holmes knowing).  *Id.*  Balwani was not present

on the conference call.  *Id.*  Indeed, during Balwani's trial, Tolbert and Lucas both

testified that they had never met or spoken with Balwani.  *Id.*

During Holmes's trial, the government played portions of Tolbert's

recording of the conference call led by Holmes for the jury.  *Id.*  On the recording,

Holmes made multiple false statements to Tolbert, Lucas, and other existing

investors, including about purportedly ongoing work with pharmaceutical

companies and the military, the financial health of Theranos, the state of

Theranos's technology, and the likelihood of a national rollout with Walgreens.

GAB-50-51, GAB-61.  As relevant here, Holmes stated on the recording that "the

ability to take a technology like this and put it in flight, specifically on a medevac,

has the potential to change survival rates."  23-ER-6246-47.  Tolbert testified about

his understanding of Holmes's statements, namely that "it represented capabilities

that Theranos and the company had developed and were, you know, were

operational at that point."  23-ER-6255-58.

During Balwani's trial, the government did not seek to admit the

December 20, 2013, recording of Holmes and instead introduced evidence of calls

that Balwani led with existing investors, including with Patrick Mendenhall on

4

December 22, 2013—an investor-victim who did not participate on the December 20 conference call nor testify during Holmes's trial. GAB-50-53. Mendenhall took detailed notes of his phone call with Balwani which memorialized Balwani making false statements. *Id.*; *see* PSR ¶ 47; 7-SER-1602-04 (Balwani told Mendenhall that the science behind Theranos was complete, that no new invention was needed, and that Theranos was completely vertically integrated—none of which was true). Tolbert testified shortly after Mendenhall, and he summarized his recollection of Holmes's recorded statements, including "that Theranos devices were employed on the medevac helicopters and being used to kind of improve survival rates of military personnel who had been injured in combat." GAB-52. Tolbert testified that he did not remember what was said on the call word-for-word but that he had reviewed the transcript of the recording recently. 12-ER-3237-42. Lucas subsequently testified that Holmes had described Theranos's purported work with the military to him "[m]ultiple times." 15-ER-4204-05.

Balwani raised—for the first time on appeal—a challenge that Tolbert testified falsely, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959), prohibiting the government from knowingly presenting false testimony. GAB-50-62. Balwani did not contemporaneously object to the challenged testimony, did not ask questions on cross-examination about the military portion of the recording, did not

seek to admit the recordings while Tolbert was testifying, and did not seek to impeach him or refresh his recollection with portions of the transcript. *Id.* Balwani never raised *Napue* or alleged prosecutorial misconduct despite lengthy argument over whether the recordings were admissible. *Id.* And, while "the district court left open the possibility of introducing the tape at a later point," *Holmes*, 129 F.4th at 662 n.10, Balwani chose to switch tactics and drop the matter. Instead, Balwani folded the absence of the recording into his defense theme, arguing in closing that the government was hiding evidence from the jury. GAB-59-60.

On appeal, Balwani raised three alleged trial errors: constructive amendment, erroneously admitted expert testimony, and *Napue* error. AOB-26-55. Until this PFREB, Balwani focused on his now-abandoned constructive amendment claim, which applied to all counts of conviction whereas the alleged *Napue* error applied only to investor-related counts. *See* Oral Argument at 1:00-15:10, 23:00, *United States v. Balwani*, No. 22-10338 (June 11, 2024), https://www.ca9.uscourts.gov/media/video/?20240611/22-10338/ (hereinafter "OA"). For his *Napue* claim, Balwani alleged that he sufficiently preserved the argument to avoid plain-error review or, alternatively, met the plain-error standard. AOB-57 n.17; ARB-36-38; OA at 16:55-17:15.

The panel affirmed. As relevant here, the panel agreed with Balwani that certain aspects of Rosendorff's and Pandori's testimony crossed into expert testimony but held any error in admitting such testimony was harmless. *Holmes*, 129 F.4th at 652-54. The panel disagreed that Balwani had sufficiently preserved his *Napue* argument and applied plain-error review to the three portions of testimony that Balwani challenged. *Id.* at 662-64. The panel found two were not actually false, and found that the third statement by Tolbert regarding the military's use of Theranos devices on medevac helicopters, described above, while technically false, was based on mistaken recollection. *Id.* The panel also concluded that "misrepresentations [concerning the technological capabilities of Theranos's device] constituted only one of numerous types of misrepresentations to investors that the government" proved, including "Theranos's financial status, its reliance on third-party testing devices, its partnerships with Walgreens and the military, and pharmaceutical companies' purported validation of Theranos's technology." *Id.* at 652.

Balwani seeks rehearing on two narrow grounds, challenging the panel's holding that: (1) Tolbert's mistaken recollection was not false under *Napue*, and (2) Rosendorff's and Pandori's expert testimony was harmless. PFREB-12-21. In doing so, Balwani raises two arguments for the first time in his petition: that applying plain-error review to an unpreserved *Napue* challenge created a circuit

7

split (*compare* PFREB-17-18, *with* AOB-57 n.17, ARB-36–38, *and* OA at 16:55-17:15); and that harmlessness established in *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246-47 (9th Cir. 1997), will permit litigants to "evade Rule 702" in future cases (*compare* PFREB-19-21, *with* AOB-46-52, *and* ARB-16-21).

## ARGUMENT

## I.   NO DUE PROCESS VIOLATION OCCURRED

### A.   The panel appropriately applied plain-error review

Until this petition, Balwani has consistently argued that he adequately preserved his *Napue* claim and, alternatively, that he could meet the plain-error standard.  *See* AOB-57 n.17; ARB-36-38; *see also* OA at 16:55-17:15.  In his PFREB, Balwani has pivoted and novelly claims that the panel, in finding his *Napue* challenge unpreserved and applying plain-error review, creates a circuit split.  PFREB-17-18.  Not so.

The panel correctly concluded that plain-error review applied where "Balwani failed to contemporaneously object to the aspects of Lucas's and Tolbert's testimonies that he now argues are false[,]" and he did not argue that "the recording was necessary to impeach their credibility, refresh their recollections, or correct false testimony." *Holmes*, 129 F.4th at 662 & n.10.  Rather, "Balwani raised this *Napue* claim for the first time *after* trial, at his bail motion before the district court." *Id.*  While Balwani sought to introduce the recording and invoked

8

"the best evidence rule and the rule of completeness," "these arguments did not sufficiently bring to the district court's attention the substance of his *Napue* claim." *Id.* Furthermore, the district court never "precluded Balwani from using the recording to impeach Tolbert or Lucas or otherwise rais[e] *Napue* claims." *Id.*

This Court has long applied plain-error review to unpreserved *Napue* claims. *See*, *e.g.*, *United States v. Taum*, No. 22-10306, 2024 WL 4562805, at *2 (9th Cir. Oct. 24, 2024); *United States v. Ellingford*, 499 F. App'x 671, 672 (9th Cir. 2012); *United States v. Bingham*, 653 F.3d 983, 995 (9th Cir. 2011); *United States v. Alli*, 344 F.3d 1002, 1008 (9th Cir. 2003); *United States v. Cooper*, 173 F.3d 1192, 1203 (9th Cir. 1999). This aligns with the Supreme Court's repeated instruction not to "shield any category of errors from plain-error review." *Davis v. United States*, 589 U.S. 345, 347 (2020) ("When a criminal defendant fails to raise an argument in the district court, an appellate court ordinarily may review the issue only for plain error."); *Johnson v. United States*, 520 U.S. 461, 466 (1997) (rejecting argument that structural errors fall outside the ambit of Federal Rule of Criminal Procedure 52(b) governing plain-error review); *see Greer v. United States*, 593 U.S. 503, 511-12 (2021) (rejecting defendant's request to make a "'futility' exception to Rule 52(b)").

Nonetheless, Balwani now asserts that the panel's application of plain error creates "a conflict among the circuits on the standard of review for [unpreserved]

*Napue* claims." PFREB-17-18. By "neglect[ing] to address this issue in his opening or reply briefs[,]" Balwani "has waived this claim." *Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007). In any event, neither case Balwani cites— *United States v. Stein*, 846 F.3d 1135, 1145-50 (11th Cir. 2017), nor *United States v. Sanfilippo*, 564 F.2d 176, 177-79 (5th Cir. 1977)—even addressed, much less analyzed, whether the defendant properly preserved his false-testimony claim such that plain-error review should apply. And both circuits have since applied plain- error to unpreserved false-testimony claims. *See United States v. Al Jaberi*, 97 F.4th 1310, 1326-27 (11th Cir. 2024) (applying plain-error review to false- testimony claim); *United States v. Brumfield*, 89 F.4th 506, 519-20 (5th Cir. 2023) (rejecting defendant's argument that *Brady* claim preserved *Napue* argument for appeal and reviewing for plain error).

In stark contrast to Balwani's claim, every other circuit also applies plain- error review to unpreserved *Napue* claims. *See*, *e.g.*, *United States v. Mangual- Garcia*, 505 F.3d 1, 9-11 (1st Cir. 2007) (finding waived defendant's argument that the prosecution violated *Napue* and then used the cooperator's false testimony in closing argument); *United States v. Plaza*, 752 F. App'x 37, 45 (2d Cir. 2018) (reviewing prosecutorial misconduct claims, including for allegedly eliciting false testimony, under plain-error standard); *United States v. Crespo*, No. 23-1126, 2024 WL 3439417, at *1 n.1 (3d Cir. 2024) (applying plain-error review to *Napue*

challenge because defendants "failed to object at trial"); *United States v. Bush*, 944 F.3d 189, 197-98 (4th Cir. 2019) (rejecting under plain-error standard a *Napue* claim that was "an afterthought that was not preserved in the trial proceedings"); *United States v. Garrison*, 839 F. App'x 968, 981-82 (6th Cir. 2020) (unpreserved false-testimony claims are reviewed for plain error); *United States v. Cardena*, 842 F.3d 959, 976-78 (7th Cir. 2016) (reviewing unpreserved *Napue* claim for plain error and finding none); *United States v. West*, 612 F.3d 993, 996-97 (8th Cir. 2010) (rejecting under plain-error review false-testimony claim); *United States v. Mickling*, 642 F. App'x 821, 822-26 (10th Cir. 2016) (rejecting *Napue* claim under plain-error review); *United States v. Straker*, 800 F.3d 570, 603-04 (D.C. Cir. 2015) ("Because none of the *Napue* violations asserted on appeal was raised below, we review for plain error[.]").

In sum, the panel's application of plain-error review to Balwani's unpreserved *Napue* claim does not create conflict with other circuits.

## B. The panel correctly held that Balwani failed to show falsity under *Napue*'s first prong

Balwani challenges the panel's application of plain-error review to only one of three statements that he originally challenged as violating *Napue*: Tolbert's statement regarding the military's use of Theranos devices on medevac helicopters. PFREB-12-16. The panel properly construed that Tolbert's "mistaken recollection" was insufficient to meet *Napue*'s falsehood requirement, *Holmes*,

129 F.4th at 662-64, and its decision does not conflict with Supreme Court, this Court's, or sister circuit precedent.

Due process rests on "the adversary system as the primary means by which truth is uncovered[.]" *United States v. Bagley*, 473 U.S. 667, 675 & n.6 (1985). However, within that adversary system, "the prosecutor's role transcends that of an adversary[,]" seeking in a criminal prosecution "that justice shall be done." *Id.* To "ensure that a miscarriage of justice does not occur[,]" the Supreme Court has recognized several instances where "the prosecutor [must] assist the defense in making its case[.]" *Id.* One such protection prohibits "the prosecutor's knowing failure to disclose that testimony used to convict the defendant was false" because it involves "a corruption of the truth-seeking function of the trial process." *Id.* at 678, 680 (quotation omitted). Thus, under *Napue*, a defendant is entitled to a new trial if he establishes: "(1) that the testimony was actually false, (2) that the government knew or should have known that it was false, and (3) that the testimony was material, meaning there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Renzi*, 769 F.3d 731, 751-52 (9th Cir. 2014) (quotation omitted).

These due process rights serve the overarching principle that a criminal defendant may not be "deprive[d] . . . of a fair trial[.]" *Bagley*, 473 U.S. at 675; *accord Berger v. United States*, 295 U.S. 78, 88 (1935) (noting the government

12

"may prosecute with earnestness and vigor[,]" and "may strike hard blows[,]" so long as they are not "foul ones"). As such, where the adversarial system plays out fairly and the defendant received a fair trial, courts have long rejected *Napue* or similar due process claims.

Indeed—contrary to Balwani's claim that the panel's decision conflicts with clearly established Ninth Circuit precedent and most sister circuits (PFREB-13)—courts have routinely held, as this panel did, that "[m]ere inconsistencies or honestly mistaken recollections generally do not satisfy the falsehood requirement." *Renzi*, 769 F.3d at 751-52; *accord Al Jaberi*, 97 F.4th at 1326-27 (rejecting *Napue* claim where witness misstated the caliber of firearm because *Napue* is not meant to focus on testimony that is the "result of a mistake, confusion, or faulty memory"); *Garrison*, 839 F. App'x at 982 ("The statements must be 'indisputably false,' and 'mere inconsistencies' are not sufficient." (citation omitted)); *Bush*, 944 F.3d at 198 ("Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." (quotation omitted)); *Cardena*, 842 F.3d at 978 (same); *Stein*, 846 F.3d at 1149 ("[I]t is well-established that a prior statement that is merely inconsistent with a government witness's testimony is insufficient to establish prosecutorial misconduct." (quotation omitted)); *West*, 612 F.3d at 996 ("Merely inconsistent

statements do not establish use of false testimony [and] [i]t is not improper to put on a witness whose testimony may be impeached." (quotations omitted)).

The panel here faithfully followed this precedent in rejecting Balwani's *Napue* claim as to Tolbert's testimony. *Holmes*, 129 F.4th at 662-64. The panel construed Holmes's words on the recording the way Balwani advocated (and contrary to the government's reading) that Holmes referred to potential rather than actual use by the military of Theranos's device on medevac helicopters. *Id.* The panel thus found that Tolbert's testimony was "technically" "inaccurate[.]" *Id.* Nonetheless, the panel found nothing to suggest that Tolbert's testimony was anything more than "mistaken recollection" and, therefore, it was not false or misleading in the way necessary to support a *Napue* claim. *Id.* (citations omitted); *accord Henry v. Ryan*, 720 F.3d 1073, 1084 (9th Cir. 2013) (holding testimony is not "actually false" merely because the witness's recollection is "mistaken, inaccurate[,] or rebuttable.").

The panel was correct. Whatever Holmes's exact words were—which Tolbert testified he did not remember word-for-word—Tolbert testified to his recollection of what Holmes said. GAB-50-58. To the extent Balwani disagreed with the precision of Tolbert's recollection, Balwani could have impeached Tolbert, as is typical in the adversarial process. *See*, *e.g.*, *Mangual-Garcia*, 505 F.3d at 9-11 (rejecting *Napue* claim where "the defendant [knew] about the

14

false testimony and fail[ed] to bring it to the jury or the court's attention" perhaps "for strategic reasons" thus he "will not be allowed to question his own strategic choices on appeal" (internal alterations omitted)).  This is not the kind of falsity that demands governmental correction to satisfy the demands of due process.

The panel did not graft in a new witness-knowledge requirement to the falsity prong of *Napue*, as Balwani claims, and nothing in the panel's holding conflicts with Supreme Court and this Court's prior decisions.  PFREB-1-3, 12-16 (citing *Glossip v. Oklahoma*, 145 S. Ct. 612 (2025); *Clements v. Madden*, 112 F.4th 792 (9th Cir. 2024); and *Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005) (en banc)).  As an initial matter, the government conceded falsity in both *Glossip* and *Clements*—which it does not here—and which is the *Napue* prong that the panel rested upon in this case.  *Compare Holmes*, 129 F.4th at 662-64, *with Glossip*, 145 S. Ct. at 618, *and Clements*, 112 F.4th at 801.  Furthermore, in *Glossip*, *Clements*, and *Hayes*, the prosecution failed to disclose key evidence rendering false testimony of a primary cooperating witness upon which the convictions rested.  *Glossip*, 145 S. Ct. at 618-30; *Clements*, 112 F.4th at 801-03; *Hayes*, 399 F.3d at 974-77.  By contrast, the government disclosed—and Balwani possessed—the recording, its transcript, and Tolbert's prior testimony about the recording.  GAB-50-62.  This prompted Balwani's counsel, at oral argument, to confirm that "[e]veryone understood what this tape was about."  OA at 16:42.

Thus, the facts alone distinguish the panel's decision here from the facts facing the Court in *Glossip*, *Clements*, and *Hayes*.

Moreover, Balwani presents an overbroad reading of the holdings in *Glossip* and *Hayes*. PFREB-13-14. In *Glossip*, the witness falsely testified "that he had never seen a psychiatrist, when in fact he had" and the prosecution knew that he had seen a psychiatrist. 145 S. Ct. at 630. Although the Court states that a witness's "beliefs are beside the point" in what is arguably dicta given that the falsity prong was uncontested, the Court nonetheless was analyzing a binary fact— whether the witness had or had not seen a psychiatrist. *Id.* Thus, the panel's decision that Tolbert's interpretation of an oral statement made during an hour-long recorded call might have been a mistaken recollection is not in conflict with *Glossip*.

Similarly, in *Hayes*, this Court en banc held that a prosecutor cannot avoid *Napue*'s due process requirements by simply withholding the key information from the witness so that his "false testimony [had] the ring of truth." 399 F.3d at 981. In *Hayes*, the government reached an immunity deal with the witness's counsel but did not tell the witness directly. *Id.* at 979-80. In sharp contrast, Tolbert listened to the recording recently, had reviewed the transcript, admitted that he did not know the exact words Holmes used (12-ER-3237-42), and, as the panel noted, the district court did not "preclude[ ] Balwani from using the recording to impeach

16

Tolbert or Lucas[.]" *Holmes*, 129 F.4th at 662 n.10. Thus, the panel's decision here as to Tolbert's testimony is consistent with *Hayes*.

In sum, the panel's decision did not depart from well-settled precedent. Indeed, the panel aligned closely with the Eleventh Circuit's decision in *Stein* (on which Balwani relies, PFREB-17), which rejected a false-testimony claim where the trial court denied admission, on hearsay grounds, of an email that defense proffered, and the defendant argued on appeal that the email would have proved that the government knowingly permitted false testimony. 846 F.3d at 1148-50. The panel did not err, particularly under plain-error review.

### C. Alternatively, the panel could have rejected Balwani's *Napue* claim on the second and third prong

Finally, while the panel appropriately denied Balwani's *Napue* claim on the falsity prong, it may also do so on the second or third prong. *See* GAB-55-62. This makes rehearing particularly inappropriate. *Contra* PFREB-15-16.

For the second prong, there is no evidence that Tolbert intentionally lied, let alone that the government knew or should have known that Tolbert's testimony was false. There is no evidence that the government believed Balwani's nuanced interpretation of Holmes's statement, particularly given that Balwani did not raise this issue in the moment. GAB-50-58. To the extent such hindsight interpretation is reasonable, it shows Holmes's intent to deceive, as investors did not share that understanding. *Id.* Indeed, testimony at trial showed that Holmes misrepresented

17

Theranos's work with the military to several different investors, not just Tolbert. *See Holmes*, 129 F.4th at 647. At bottom, Balwani seeks to challenge the government's decision not to seek admission of two exhibits admitted in his co-defendant's trial. But he cannot challenge that evidentiary choice via *Napue*. *See*, *e.g.*, *United States v. Houston*, 648 F.3d 806, 814 (9th Cir. 2011) (finding no falsity where allegations "at most point to evidence creating an inference of falsity" and the "inconsistencies were fully explored and argued to the jury"). There was no error, let alone plain error.

Moreover, Balwani cannot demonstrate materiality. GAB-58-62. Under *Napue*'s third prong, the Court may still affirm if the constitutional error was harmless, meaning where the Court determines "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Glossip*, 145 S. Ct. at 627 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). The Court asks whether the defendant received "a [fair] trial resulting in a verdict worthy of confidence." *Houston*, 648 F.3d at 814 (quotation omitted).

Balwani cannot overcome *Napue*'s third prong. Balwani's *Napue* challenge relates to one statement made by one investor, when multiple investors testified to hearing similar misrepresentations by Holmes. *See Holmes*, 129 F.4th at 647. Balwani concedes that his *Napue* claim does not extend to the patient-related counts, and, while he asserts the testimony "artificially bolstered" the testimony of

18

these other investors (PFREB-16), the jury in Holmes's trial heard the recording and *still* convicted on four investor-related counts. GAB-58-62.

Furthermore, Balwani challenges one statement from Tolbert—a witness who never spoke with Balwani—and ignores the overwhelming evidence presented against him directly. GAB-50-62. For example, Balwani lied directly to investor-victim Mendenhall about the capabilities of Theranos's device, created the null protocol to shield device failures from investors, and lied to investors about Theranos's finances, undisclosed use of third-party devices, and faltering relationship with Walgreens. GAB-5-16, GAB-60-62. And investor-victims in 2014 and 2015 who were not present on the 2013 recorded call received written materials containing false statements. *Id.*

Additionally, if the Court were to indulge Balwani's claim, it would reward gamesmanship given defense counsel's clear tactical decision to fold the absence of the recording into the defense's trial theme that the government was hiding evidence from the jury. GAB-59-60. Balwani had the recording and was not precluded from impeaching Tolbert on the relevant testimony. *Id.* Balwani chose not to question Tolbert on cross-examination about the military statements. *Id.* Instead, in closing argument, Balwani used the absence of the recording to call into question the credibility of the prosecution's case, telling the jury that "truth is fatal to this prosecution" and invited the jury to "think about why the government [did]

19

not play you that tape of exactly the best evidence of what Holmes said on that day." 6-SER-1203-06, 1367. Balwani's decision to drop the matter after Tolbert began testifying could have been a "tactical judgment" about what was "worth more to the defense[.]" *Alli*, 344 F.3d at 1008; *accord Mangual-Garcia*, 505 F.3d at 9-11.

In sum, the overwhelming evidence presented at trial demonstrates that the jury's "verdict [is] worthy of confidence." *Houston*, 648 F.3d at 814. Balwani cannot establish the allegedly false statements were material, particularly when viewed through the lens of plain-error review. *See Renzi*, 769 F.3d at 751-52. The panel appropriately rejected Balwani's *Napue* claim on the first prong. However, if so inclined, the panel could amend its opinion to address the second and third prong of *Napue*, which would also support denying Balwani's claim. No further rehearing is necessary.

## II. THE PANEL DID NOT ERR IN APPLYING LONGSTANDING HARMLESSNESS ANALYSIS TO EVIDENTIARY ERRORS

The panel held that two of three challenged witnesses crossed the line into expert territory at times—Rosendorff and Pandori—but that any error was harmless under *Figueroa-Lopez*, 125 F.3d 1241 (9th Cir. 1997), because they "would have easily qualified as experts, and their extensive experiences allowed them to draw reliable conclusions about problems with Theranos's device and testing services." *Holmes*, 129 F.4th at 652-54. For the first time in his petition,

Balwani abandons—and does not even cite *Figueroa-Lopez*—and instead argues that, by accepting *his* invitation to follow *Figueroa-Lopez* in this case (AOB-35-49), the panel's application of harmless-error review permits district courts "to abandon their role as gatekeepers[.]" PFREB-18-21. As an initial matter, Balwani has waived this argument. *See Womack*, 497 F.3d at 1004. Regardless, the panel did not err in applying the framework that Balwani proposed and rehearing is not warranted on this ground.[2]

Balwani cites no authority for his bold prediction that, by faithfully applying a longstanding harmless-error analysis, the panel's decision will permit litigants to evade expert witness disclosure and reliability requirements. PFREB-18-21. Instead, he relies on recent changes expanding disclosure requirements under Federal Rule of Criminal Procedure 16 and a clarification of admissibility standards under Federal Rule of Evidence 702, neither of which relate to harmless error. *Contra id.* Balwani cannot overcome the longstanding principle that harmless-error review "serves a very useful purpose insofar as it blocks setting

---

[2] For similar reasons, the brief by *Amicus Curiae* National Association of Criminal Defense Lawyers (Dkt. 94) is inapposite. *Amicus* warns of misuse of forensic evidence, such as DNA evidence—which was irrelevant in this case—and asserts it is a "recurring issue" for the government to flout expert disclosure requirements in this circuit—yet cites only two cases where this occurred in the past fifteen years. *Id.* at 2-8. Finally, *amicus* cites decisions from other circuits finding Rule 702 errors not harmless based on the facts presented, which is wholly different than not applying a harmlessness analysis at all. *Contra id.* at 8-9.

21

aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." *Neder v. United States*, 527 U.S. 1, 19 (1999) (noting the harmless-error doctrine focuses on the "underlying fairness of the trial" (quotations and alterations omitted)).

Rehearing is particularly unwarranted here, given that Balwani challenges only the panel's decision that Rosendorff's and Pandori's credentials render any minor trial errors harmless and ignores the additional reasons such errors are harmless in the full context of this trial. For example, Balwani's challenge does not reach the third witness (Erika Cheung), who also testified about the inaccuracy of Theranos testing, nor the panel's alternative holding that, given the remainder of Rosendorff's unobjected-to testimony, "[e]ven if certain portions of his testimony were erroneously admitted, it is unlikely they materially affected the impact of Rosendorff's testimony in its entirety." *Holmes*, 129 F.4th at 654 n.4.

Finally, the government argued any such evidentiary errors would also be harmless given the testimony Balwani contested related to only one of multiple categories of misrepresentations—the inability of Theranos to consistently provide accurate and reliable test results. GAB-48-49. The panel agreed with respect to a similar expert-lay opinion challenge raised by Holmes, finding any error in admitting limited expert opinion from a former Theranos scientist harmless because it "constituted only one of numerous types of misrepresentations to

investors that the government" proved. *Holmes*, 129 F.4th at 652. This holding applies equally to Rosendorff's and Pandori's testimony and, if inclined, the panel could always amend its opinion to make clear that this additional harmlessness ground applies to all Rule 702 errors. No further rehearing is necessary.

## CONCLUSION

Balwani's petition should be denied.


Dated: July 29, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

MERRY JEAN CHAN
Chief, Appellate Section, Criminal Division

*/s/ Kelly I. Volkar*
KELLY I. VOLKAR
Assistant United States Attorney

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** _____ **22-10338** _____

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/**response to petition** is *(select one)*:

[X] Prepared in a format, typeface, and type style that complies with Fed. R. App.

P. 32(a)(4)-(6) and complies with the length limit designated by court order

dated <u>7/8/2025</u> (Dkt. 96), containing the following number of words: **4,986**.

OR

[  ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** _____ */s/ Kelly I. Volkar* _____ **Date** July 29, 2025 _____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

24