No. 22-10338

IN THE
# United States Court of Appeals for the Ninth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RAMESH "SUNNY" BALWANI,

*Defendant-Appellant*.

On Appeal from United States District Court
for the Northern District of California
No. 5:18-cr-00258-EJD-2, Hon. Edward J. Davila

## REPLY IN SUPPORT OF
## PETITION FOR REHEARING EN BANC
## OR PANEL REHEARING

Jeffrey B. Coopersmith
CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98101

Amari L. Hammonds
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071

Amy Walsh
Aaron P. Brecher
Sachi Schuricht
Brenna Ferris Neustater
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ........................................................................ 1

REASONS FOR GRANTING THE PETITION........................................... 1

    I.    The Panel's Rejection of Balwani's *Napue* Claim Conflicts with Binding Authority and Sister Circuits. ............................... 1

    II.    The Panel's Harmlessness Determination on the Evidentiary Errors Undermines the Federal Rules. ......................................... 7

    III.    The Government's Arguments on Abandonment and Waiver Lack Merit....................................................................... 9

CONCLUSION...................................................................... 12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Duncan v. Bonta*,
133 F.4th 852 (9th Cir. 2025) ...................................................................... 2

*Glossip v. Oklahoma*,
145 S. Ct. 612 (2025) ................................................................... 1, 2, 3, 5

*Hayes v. Brown*,
399 F.3d 972 (9th Cir. 2005) ......................................................... 2, 3, 11

*N. Mariana Islands v. Bowie*,
243 F.3d 1109 (9th Cir. 2001) .................................................................. 5

*Napue v. Illinois*,
360 U.S. 264 (1959) ......................................................... 1, 2, 3, 4, 6, 7, 11

*Neely-Bey Tarik-El v. Conley*,
912 F.3d 989 (7th Cir. 2019) .................................................................. 10

*Socop-Gonzalez v. INS*,
272 F.3d 1176 (9th Cir. 2001) .............................................................. 9, 11

*United States v. Abreu*,
32 F.4th 271 (3d Cir. 2022) .................................................................... 11

*United States v. Alli*,
344 F.3d 1002 (9th Cir. 2003) .................................................................. 3

*United States v. Figueroa-Lopez*,
125 F.3d 1241 (9th Cir. 1997) ............................................................... 7, 8

*United States v. Hernandez-Estrada*,
749 F.3d 1154 (9th Cir. 2014) ................................................................. 11

*United States v. LaPage*,
231 F.3d 488 (9th Cir. 2000) ................................................................. 4, 5

*United States v. Mangual-Garcia,*
   505 F.3d 1 (1st Cir. 2007)...............................................................6

*United States v. Robinson,*
   68 F.4th 1340 (D.C. Cir. 2023).................................................5, 6

*United States v. Ruiz,*
   257 F.3d 1030 (9th Cir. 2011)........................................................7

*United States v. Sanfilippo,*
   564 F.2d 176 (5th Cir. 1977) .........................................................6

*United States v. Stein,*
   846 F.3d 1135 (11th Cir. 2017).................................................2, 6

*United States v. Varela-Rivera,*
   279 F.3d 1174 (9th Cir. 2002)......................................................11

*Voice Tech Corp. v. Unified Pats., LLC,*
   110 F.4th 1331 (Fed. Cir. 2024)....................................................9

**Rules and Regulations**

9th Cir. G.O. 5.5(d)...........................................................................9

Fed. R. Crim. P. 16..........................................................................7

Fed. R. Evid. 701.............................................................................7

Fed. R. Evid. 702.................................................................1, 7, 8, 9

## INTRODUCTION

The government's response to Balwani's petition underscores the need for en banc review. The government fails to recognize that the panel decision creates a split of authority on what constitutes falsity under *Napue v. Illinois*, 360 U.S. 264 (1959). And it misunderstands that the panel's approach to harmlessness under Federal Rule of Evidence 702 will demolish that Rule's protections across countless cases.

En banc review—or, at a minimum, panel rehearing—is necessary.

## REASONS FOR GRANTING THE PETITION

### I. The Panel's Rejection of Balwani's *Napue* Claim Conflicts with Binding Authority and Sister Circuits.

**1.** As the government agrees, the panel's decision held that *Napue*'s falsity prong cannot be satisfied by actually false testimony based on "mistaken recollection." Resp11.[1] Thus, the panel's decision requires both falsity *and* the witness's knowledge of the falsity for a *Napue* violation. This flatly conflicts with the Supreme Court's decision in *Glossip v. Oklahoma*, 145 S. Ct. 612

---

[1] Balwani uses the following abbreviations: "Pet" (Balwani's petition for rehearing en banc or panel rehearing); "Add" (addendum to Balwani's petition) "Resp" (government response to the petition; "OB" (Balwani's opening brief); "AB" (government's answering brief); "ARB" (Balwani's reply brief).

(2025), this Court's longstanding en banc precedent in *Hayes v. Brown*, 399 F.3d 972, 981 (9th Cir. 2005), and the law of other circuits.  Pet2-3 & n.1.

The government ignores this conflict.  Indeed, it fails to address a single court of appeals case in the petition.  Instead, it largely relies on cases addressing whether "mere inconsistencies" establish falsity in the first place.  Resp13.  Doing so conflates two circumstances: (1) "a prior statement that is merely inconsistent with a government witness's testimony" (either could be true), *United States v. Stein*, 846 F.3d 1135, 1149 (11th Cir. 2017); and (2) a fact the government knows or should have known to be true that the witness incorrectly recalls.  The government acknowledges this case presents the latter situation, Resp14, which most circuits agree satisfies *Napue*'s first prong.

Nor can the government obscure the panel's departure from *Glossip* or *Hayes*.  It concedes *Glossip* "states that a witness's 'beliefs are beside the point.'"  Resp16 (quoting 145 S. Ct. at 630).  The government cannot dismiss that statement as dictum, *contra id.*:  The parties and Court-appointed amicus briefed falsity; the lower court's analysis of this issue was a key "mistake[]" in its "interpretation of *Napue*," *Glossip*, 145 S. Ct. at 630; and in any event, this Court "follow[s] the Supreme Court's considered dicta," *Duncan v. Bonta*, 133 F.4th 852, 873 (9th Cir. 2025).

The government also attempts to distinguish *Glossip* and *Hayes* based on the reason for the false testimony (*Hayes*), or the type of fact the witness got wrong (*Glossip*). Resp16. But these cases' due process principles stretch further: "Due process protects defendants against the knowing use of *any* false evidence by the State …." *Hayes*, 399 F.3d at 981 (emphasis added). All that "matters is that [the] testimony was false and a prosecutor knowingly let it stand." *Glossip*, 145 S. Ct. at 630. As in *Hayes*, "[i]t is reprehensible for the [government] to seek refuge in the claim" that Tolbert might have tried his best to testify accurately when the government knew he fell short. 399 F.3d at 981.

Unable to escape the panel's clear conflict with binding precedent and sister circuits, the government tries to blur the lines by making various arguments about why the "kind of falsity" here does not "demand[] governmental correction." Resp15. It asserts that both parties "understood" how Tolbert's testimony conflicted with the tape, and that Balwani "could have" tried harder to "impeach" Tolbert or re-raise the defense's falsity concerns after the district court excluded the tape. Resp14-17. None of these arguments saves the panel's erroneous interpretation of *Napue*'s falsity prong. And this Court has long rejected such arguments as irrelevant to the government's "independent obligation" to "immediately … correct known misstatements of its witnesses." *United States v. Alli*, 344 F.3d 1002, 1007 (9th

3

Cir. 2003). "[T]he government's duty" is "not discharged merely because defense counsel knows, and the jury may figure out, that the testimony is false." *United States v. LaPage*, 231 F.3d 488, 492 (9th Cir. 2000).

The government's related accusation of "gamesmanship" rings hollow. Resp19. That distortion of the record repeats several of the panel's errors in concluding Balwani failed to preserve his *Napue* challenge, Pet15. The record is beyond dispute: Balwani fought to put the truth about what Holmes said before the jury; the government fought (successfully) to hide that truth, then repeatedly weaponized the resulting false testimony in closing. *See* 2-ER-326-27, 2-ER-357-59; ARB36-37; Pet15-16.[2] Our Constitution demands much more from prosecutors. No matter what the Court concludes about preservation of the *Napue* issue specifically, it is the government's gamesmanship that due process prohibits.

**2.** The government also asks the Court to leave the panel's erroneous precedent in place because "the panel could have rejected Balwani's *Napue*

---

[2] The government even persuaded the court that admitting this purported "hearsay" might require setting "limitations" on Balwani's arguing that other evidence established Holmes' statement was true. 2-ER-335; *see* 2-ER-335-38. This was wrong. Add43-44. Neither the panel nor the government has explained what could have changed in the hour between the "decision that [the court] just made," 2-ER-359, and Tolbert's testimony, 12-ER-3239, to have required Balwani to re-litigate the issue and invite that impossible choice.

4

claim on the second and third prong." Resp17. The petition explained why this is wrong. Pet15-16. The government's responses are unconvincing.

The government understood that Tolbert's testimony deviated from Holmes' statements, *contra* Resp17, because it had *prominently featured those statements* in the Holmes trial through Tolbert's recording. The government cannot now claim amnesia about the tape's destructive effect on its case there, particularly given its tactics at Balwani's trial. Pet10-11, 15; OB56-58. Even assuming government ignorance, the government fails to address its "'duty' … to act when put on notice of the real possibility of false testimony." *N. Mariana Islands v. Bowie*, 243 F.3d 1109, 1118 (9th Cir. 2001).

Nor can the government show the false testimony was harmless "beyond a reasonable doubt," *Glossip*, 145 S. Ct. at 627, by minimizing Tolbert's false testimony as merely "one statement made by one investor," Resp18. The government made this testimony central to its closing and rebuttal as both key proof of fraud and demonstrative of investors' credibility. Pet16. That Holmes' jury "heard the recording and *still* convicted on four investor-related counts," Resp19, does not undermine the false testimony's materiality across the investor case. Holmes' mixed verdict reinforces that had the government confessed the falsity, *LaPage*, 231 F.3d at 492, "it is not beyond reason that a juror might harbor doubt as to one count or another," *United States v.*

*Robinson*, 68 F.4th 1340, 1348 (D.C. Cir. 2023), or as to all investors' memories. The government's due process violation clears *Napue*'s bar for relief, even under plain-error review.

**3.** The government also fails to undermine the case for en banc review of the second, independent circuit conflict presented here, regarding the application of plain-error review to Balwani's *Napue* claim in the first place. Pet17-18. Again, the government does not dispute that it capitalized on testimony the panel deemed false. Resp18-19. In the Fifth and Eleventh Circuits, that fact means the usual *Napue* standard applies, not plain-error review. *Stein*, 846 F.3d at 1147; *United States v. Sanfilippo*, 564 F.2d 176, 178 (5th Cir. 1977).

The government's own cases note "division" over which "circumstances" trigger full review of a *Napue* claim. *United States v. Mangual-Garcia*, 505 F.3d 1, 10 (1st Cir. 2007) (cited at Resp10). The government misses the point when it notes that "every other circuit also applies plain-error review to unpreserved *Napue* claims." Resp10. None of the government's cited cases implicates the issue here: Whether plain-error review *still* applies when the government capitalizes on false testimony in closing. Neither the Fifth nor Eleventh Circuit case the government invokes address a prosecutor's exploitation of false testimony or cite *Stein* or *Sanfilippo*'s binding precedents.

6

At best, the government has merely shown that most circuits have not addressed a *Napue* violation under these circumstances. En banc review is warranted to reconcile this Court's precedent with those that have.

## II. The Panel's Harmlessness Determination on the Evidentiary Errors Undermines the Federal Rules.

The panel's conclusion that erroneously admitted expert opinions by lay witnesses was harmless merely because those witnesses "would have" qualified as experts thwarts the aims of Federal Rule of Evidence 702 and the corresponding disclosure requirements in Federal Rule of Criminal Procedure 16. *See* Add26; Pet19-21. The panel's decision licenses district courts to ignore Rule 702 whenever a witness has impressive credentials—essentially eliding Rules 702(b)-(d). Without en banc review, all future panels of this circuit—bound by the panel's decision here—must conclude that such errors are harmless. *United States v. Ruiz*, 257 F.3d 1030, 1032 (9th Cir. 2011) (en banc) (explaining that en banc review is warranted when an error will present a "recurring issue" across many cases).

Contrary to the government's suggestion, Balwani never urged the Court to adopt the harmlessness analysis in *United States v. Figueroa-Lopez*, 125 F.3d 1241 (9th Cir. 1997). *Contra* Resp20-21. Instead, he invoked *Figueroa-Lopez* because its analysis of Rules 701 and 702—later incorporated into the Rules' advisory committee notes—eviscerated the government's merits

arguments. *See* OB36, 44-46. Nor does the Court need to overrule *Figueroa-Lopez*'s approach to harmlessness outright to grant relief or fix the panel's error. That case involved law-enforcement testimony that the defendant's actions were consistent "with those of an experienced narcotics trafficker." *Figueroa-Lopez*, 125 F.3d at 1247. That's a far cry from data-free testimony about whether novel technology produced accurate and reliable blood tests. *See* Pet9-10. In any event, reexamining established doctrines that undercut evidentiary rules and fair procedures is precisely why en banc review exists.

The government also argues that evidence of *other* purported misrepresentations beyond the accuracy and reliability of the blood-testing technology makes the Rule 702 errors harmless. Resp22-23. That contention is meritless. First, Balwani rebutted the same argument in his initial briefing. *See* OB6-9; ARB22-24. Second, the argument can apply only to the investor-fraud counts, where other alleged misrepresentations were at issue. It does not bear at all on the five patient-fraud counts on which the jury convicted Balwani. The government has conceded that representations about accuracy and reliability were the ones that "mattered" to those patient counts. 3-ER-408 (quoting 19-ER-5198).

8

The logic of the panel's decision does not merely chip away at Rule 702's gatekeeping function. It shatters it. To keep faith with that Rule, en banc review is needed.

## III. The Government's Arguments on Abandonment and Waiver Lack Merit.

The government peppers its response with erroneous claims that Balwani has "abandoned" arguments pressed in his initial appeal but not reasserted in his petition and "waived" arguments in his petition. *E.g.*, Resp6, 7, 21. Those contentions collide with the record and Ninth Circuit law.

*First*, Balwani has nowhere abandoned claims from his appeal by not re-raising them in his petition. "The *en banc* court does not review the original panel decision, nor does it overrule the original panel decision. Rather, the *en banc* court acts as if it were hearing the case on appeal for the first time." *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1186 n.8 (9th Cir. 2001), *overruled on other grounds by Smith v. Davis*, 953 F.3d 582 (9th Cir. 2020) (en banc); 9th Cir. G.O. 5.5(d) (requiring an order "vacating the three-judge panel opinion" when a case is taken en banc).

Thus, if the Court grants the petition, it may review all errors below. This principle tracks courts' approach to discretionary review across many contexts. *See, e.g.*, *Voice Tech Corp. v. Unified Pats., LLC*, 110 F.4th 1331, 1339-40 (Fed. Cir. 2024) (ruling that issues presented to an administrative board but

not in an optional petition for board rehearing were not forfeited on appellate review of the board's decision); *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1001 (7th Cir. 2019) ("It is the general rule that a litigant does not abandon an argument by failing to raise it in a motion to reconsider.").

Targeting splits of authority and issues that will recur across many cases reflects careful attention to this Court's standards for en banc review. It does not show abandonment. The panel's constructive-amendment analysis, for instance, overlooked language in the indictment showing that its list of purportedly unreliable blood tests reached only Theranos' proprietary technology. *Compare* 25-ER-6892-93 (Paragraph 16 of the indictment listing problematic tests as an example—"[i]n particular"—of problems with "Theranos's technology"), *with* Add42-43. The panel ignored the government's demonstrable flip-flop on the indictment's meaning. *See generally* Add40-43; OB14-15 & n.5; ARB6-7. And it looked past the government's concession that the alleged investor-fraud scheme implicated the accuracy of only Theranos' proprietary technology. *Compare* Add42, *with* AB19. These errors and others merit rehearing and reversal even if the errors discussed in the petition better match the standards for en banc review.

***Second***, Balwani did not waive any arguments in his petition. The petition's arguments mirror Balwani's earlier briefing:

10

- Tolbert's testimony was false under *Napue* (an argument pressed since post-trial briefing). FER-41-43; OB53-56; Pet12.

- The government's honest-mistake argument conflicts with *Hayes*. *Compare* AB54-55, *with* ARB26-28; Pet13-14.

- Plain-error review is improper. OB57 n.17; ARB36-37; Pet17-18.

- The *Napue* error requires reversal even on plain-error review. OB57 n.17; ARB37-38; Pet16.

- The government's drive-by footnote urging that Rosendorff and Pandori would have qualified as experts cannot show harmlessness. *Compare* AB49 n.12, *with* ARB20-21; Pet19-21.

That is enough to preserve these arguments. Preservation "requires advancement of the same legal principle, not citation to the same legal precedent." *United States v. Abreu*, 32 F.4th 271, 275 (3d Cir. 2022). Because Balwani "thoroughly explored" these issues, nothing more is needed. *United States v. Varela-Rivera*, 279 F.3d 1174, 1177 (9th Cir. 2002).[3]

---

[3] A "party does not necessarily forfeit an issue by first raising it in a petition for rehearing *en banc*" in any event. *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1160 (9th Cir. 2014); *accord Socop-Gonzalez*, 272 F.3d at 1186 n.8 ("If the original panel issues a clearly erroneous opinion, and the case is called *en banc* on grounds that would correct the opinion but which were not raised before the original panel, the *en banc* panel would certainly be permitted, if not encouraged, to decide the case on the correct, unraised grounds.").

## CONCLUSION

The Court should grant the petition.

August 1, 2025

Respectfully submitted,

*/s/ Amy Walsh*

Jeffrey B. Coopersmith
CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98101

Amari L. Hammonds
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071

Amy Walsh
Aaron P. Brecher
Sachi Schuricht
Brenna Ferris Neustater
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

*Counsel for Defendant-Appellant*

12